BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Ivy A. Wang (State Bar No. 224899)
  iwang@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
Atari Interactive, Inc.

COASTSIDE LEGAL
Kenneth B. Wilson (State Bar No. 130009)
  ken@coastsidelegal.com
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

Attorneys for Defendant
Redbubble, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>  Plaintiff,<br><br>  vs.<br><br>REDBUBBLE INC.,<br><br>  Defendant.<br><br>AND RELATED ACTIONS | Case No. 3:18-cv-03451-JST<br>[*Related to Case Nos. 3:18-cv-03843-JST; 3:18-cv-04115; and 4:18-cv-04949-JST*]<br><br>Hon. Jon S. Tigar<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: October 17, 2018<br>Time: 2:00 pm<br>Crtrm.: 9 |

Pursuant to this Court's June 14, 2018, Clerk's Notice Setting Case Management Conference, Dkt. No. 12, and following the conference of counsel on October 2, 2018, all parties herein, through their respective counsel, respectfully submit the following joint statement in advance of the October 17, 2018, case management conference.

**1.   Jurisdiction and Service.**

All parties agree that this Court has subject matter jurisdiction and personal jurisdiction. All parties agree that defendant Redbubble Inc. ("Defendant" or "Redbubble") has been served. Redbubble filed an answer to the complaint on July 26, 2018.

**2.   Facts.**

**A.   Plaintiffs' Summary of the Facts**

Plaintiff Atari Interactive, Inc. ("Plaintiff" or "Atari") is one of the most famous video game brands in history. Founded in the early 1970s in California, Atari became the pioneer in the video game industry during the 1970s and continuing into the 1980s, developing and releasing (a) home video consoles – e.g., the Atari 2600 – that set new standards in design and function, and (b) a series of hit games – e.g., Pong, Breakout, Asteroids, and many others. Atari became known to relevant consumers and the public at large by its inherently distinctive trade name, as well as its inherently distinctive A-shaped or "Fuji" logo design.

Atari has marketed, promoted, licensed, and sold products, including a catalog of more than 200 well-known games, worldwide under the Atari name and logo for over four decades. Atari also has an active licensing business through which Atari has extended its brand into other media, merchandising, and publishing categories. It goes without saying that video gamers – new and old – recognize and revere Atari's place as a very well-known and iconic pioneer of the video game industry.

/ / /

1    Accordingly, the Atari name, logo, and classic video games are valuable
2 intellectual property owned by Atari, and Atari has taken significant steps to protect
3 them from infringement.  Atari obtained registrations with the United States Patent
4 and Trademark Office for many of its trademarks and registrations with the United
5 States Copyright Office for many of its copyrights.  Through commercial use and
6 contractual agreements with its predecessors-in-interest, Atari is the owner of
7 USPTO Registration No. 4,214,210 for the ATARI name and logo used in
8 connection with, among other things, "printed matter, namely posters, stickers" and
9 "articles of clothing"; and Atari is the owner of USPTO Registration No. 4,324,638
10 for the PONG name used in connection with, among other things "printed matter,
11 namely posters, stickers" and "articles of clothing."

12    Through contractual agreements with its predecessors-in-interest, Atari is also
13 the owner of multiple copyright registrations for, among others, the following video
14 games, including the visual elements thereof:  *Centipede, Asteroids*, *Pong*,
15 *Breakout*, *Missile Command*, *Adventure*, *Combat*, and *Yar's Revenge*.  Through
16 extensive and continuous promotion and sales, unsolicited press, and word of
17 mouth, Atari also owns common law rights in various trademarks and trade dress,
18 including the Atari name and logo, the *Centipede, Asteroids*, *Pong*, *Breakout*,
19 *Missile Command*, *Adventure*, *Combat*, and *Yar's Revenge* names and graphics, and
20 the overall look and feel of the Atari 2600 game console and joystick.

21    Atari understands and believes that Defendants operate an online marketplace
22 through their website, www.teepublic.com, where visitors can upload designs that
23 Defendants then display on a variety of apparel – from t-shirts to phone cases to
24 stickers – pictured on the site.  Defendants offer for sale the products on display.  If
25 a visitor to the site orders a product, Defendants make, ship, and process the
26 payment for the product.  Defendants then split the profits with the person who
27 originally uploaded the design.
28 / / /

This year, as part of its intellectual property enforcement efforts, Atari discovered that Defendants were advertising, marketing, creating, displaying, and offering for sale a variety of counterfeit Atari products.  Many of the counterfeit products incorporated exact replicas of the registered ATARI trademark (name and logo) on products in the classes for which the marks are registered.  Other counterfeit products incorporated easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button, or designs from Atari's copyrighted video games.

Atari thus sued Defendants for trademark infringement, counterfeiting, copyright infringement, trademark dilution, false designation of origin, unfair competition, contributory trademark infringement, contributory copyright infringement, vicarious trademark infringement, and vicarious copyright infringement.  Atari seeks actual damages, Defendants' wrongful gain, statutory damages, treble damages, punitive damages, attorney's fees and costs, and permanent injunctive relief.

### B. Defendant's Summary of the Facts

Atari's description of Redbubble's business is almost completely in error and reflects a fundamental misunderstanding of how Redbubble operates. Like the Amazon Marketplace and eBay, Redbubble is a global online marketplace platform hosted at redbubble.com (the "Redbubble Marketplace").  Founded in 2006, and publicly traded on the Australian Securities Exchange since May 2016, Redbubble was formed with the goal of giving independent artists a meaningful new way to sell their creations. More than 845,000 independent third-party artists (also referred to as "Sellers" or "Third-Party Sellers") use the Redbubble platform to upload and sell their creative designs on high-quality, everyday products such as apparel, stationery, housewares, bags, and wall art.  Purchasers can browse through more than 16 million designs on the Marketplace, and nearly 315 million products bearing these designs are currently offered for sale by these Sellers.

The Redbubble Marketplace is not only a platform through which products can be listed and sold, but the Marketplace software also automatically performs various online services to facilitate the transactions that occur through the Marketplace.  In particular, the Marketplace software connects Sellers automatically to third-party manufacturers who print and pack the products before third-party shippers pick up the products and deliver them to customers.  The platform also provides Sellers access to third-party payment processors who collect and process customer payments.  This transaction process is entirely Seller-directed and automated by the Redbubble Marketplace software.

Put another way, Redbubble does not design or upload the content sold over the Redbubble Marketplace.  It did not print or otherwise manufacture the products that Atari claims are infringing (the "Accused Products"), nor does Redbubble own or control the facilities in which those products were made or the equipment or processes for doing so. Redbubble never took possession, control or ownership of or title to the Accused Products. Redbubble personnel did not pack, ship, perform quality control on or otherwise handle those products.  And Redbubble does not sell or offer to sell the Accused Products; that's done by the Third-Party Sellers.

Like with any marketplace, there is a risk that bad actors will abuse the system by attempting to use it to sell unauthorized or counterfeit products. However, as noted in its User Agreement, "[r]especting other people's intellectual property is an essential principle of Redbubble's community."  To that end, Redbubble has taken significant steps, in excess of its legal obligations, to prevent misuse of the Marketplace, and has directed substantial resources toward eliminating third-party infringement and improving its anti-piracy measures.

For example, Sellers using the Redbubble Marketplace must confirm that they own or have all rights to use any uploaded content and that the content "will not infringe the intellectual property rights or any other rights of any person or entity… Each time they upload listings to the Marketplace, Sellers must also check a box

JOINT CASE MANAGEMENT STATEMENT

affirmatively acknowledging that they "have the right to sell products containing this artwork."  Redbubble enforces these rules in accordance with a detailed IP/Publicity Rights Policy, which largely tracks the "notice and takedown" provisions of the DMCA.  So if a content owner like Atari provides notice that a particular listing infringes its intellectual property rights, Redbubble promptly (*i.e.*, typically within one business day) removes those listings and notifies the third-party Seller who uploaded them. In accordance with that policy, Redbubble will also "disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others."

In addition, although it has no legal obligation to do so, for certain content owners, Redbubble provides further assistance by proactively policing the Redbubble Marketplace for potentially infringing content, using screening criteria based on information from content owners (and almost always created in collaboration with those content owners).  Redbubble also uses a combination of proprietary and third-party software tools that seek to identify scaled and/or repeat abusers of the Redbubble Marketplace.  Redbubble currently conducts proactive policing for marks belonging to nearly 200 content owners, including some of the largest content owners in the world, such as Disney, Warner Bros., and Universal Music Group, and polices for almost 1,400 individual properties for these content owners.  To date, these proactive policing efforts have resulted in the disabling or removal of approximately 1,700,000 listings from the Redbubble Marketplace, covering more than 47 million products, and Redbubble has disabled and/or terminated roughly 318,000 Seller accounts for violation of its User Agreement and/or IP/Publicity Rights Policy.

Redbubble did not have an opportunity to remove the listings for Atari's Accused Products before suit was filed because Atari never gave Redbubble pre-filing notice of its claims.  However, upon receiving notice of the suit, Redbubble

1 promptly removed the designs identified by Atari in the Complaint.  Redbubble also
2 began proactively policing for Atari's content and continues to do so, although Atari
3 has not cooperated in these efforts to date, rendering its policing efforts more
4 difficult.

5     Redbubble does not believe that any of the facts in its Statement are
6 reasonably in dispute, and taken together, they will warrant entry of judgment in
7 Redbubble's favor as a matter of law at the summary judgment stage.

8 **3.**     **Legal Issues.**

9     **A.**     **Plaintiff's Summary of the Key Legal Issues**

10     At this early stage, Plaintiff anticipates the key legal issues will be the
11 following:

12 - Does Atari own valid trademarks and copyrights?
13 - Did Defendants infringe upon any of Atari's trademarks and
14     copyrights?
15 - Did Defendants infringe willfully and/or with malice, fraud, or reckless
16     disregard for Atari's rights?
17 - What amount of damages – whether actual damages, wrongful profits,
18     statutory damages, and/or punitive damages – should be awarded to
19     Atari?
20 - Is any party entitled to attorneys' fees and costs, and, if so in what
21     amount?
22 - Is Atari entitled to permanent injunctive relief, and, if so, in what form?

23     **B.**     **Defendant's Summary of the Key Legal Issues**

24     In addition to the issues identified by Atari, Redbubble identifies at least the
25 following additional issues.

26 - Whether Redbubble can be deemed to engage in any volitional conduct
27     that could serve as a basis for direct copyright infringement when it
28     does not itself upload or copy designs for or make, sell or distribute the

Accused Products. *See, e.g., Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017) (confirming the "volitional conduct" requirement and holding that "courts must determine 'who is close enough to the [infringing] event to be considered the most important cause'"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1370 (N.D. Cal. 1995).

- Whether Section 512(c) of the DMCA immunizes an online marketplace like Redbubble claims based on content uploaded by third-party Sellers, given that Atari never provided pre-filing notice of its claims and that upon receiving notice of these claims, Redbubble promptly removed the listings for the Accused Products . *See, e.g., Ventura Content Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) (affirming grant of summary judgment in favor of video hosting website); *UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F. 3d 1006 (9th Cir. 2013) (same).

- Whether Redbubble can be held liable for contributory copyright infringement, given the steps that Redbubble takes to prevent infringement via the Redbubble Marketplace, when Redbubble lacked "actual knowledge of specific acts of infringement" with respect to the Accused Products, and Atari failed to provide Redbubble with notice of the Accused Products (other than listings identified in the Complaint, which Redbubble promptly disabled upon receiving notice). *See, e.g., Perfect 10, Inc. v. Giganews, Inc.,* 847 F. 3d 657, 670-72 (9th Cir. 2017) (affirming summary judgment in favor of defendant on contributory infringement claim); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) ("absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of

1       the system allows for the exchange of copyrighted material").
2    •  Whether Redbubble can be held liable for vicarious copyright
3       infringement with respect to Atari's purportedly copyrighted images
4       when Redbubble does not possess image-recognition technology or
5       other practical capabilities that would enable it to locate the allegedly
6       infringing images.  *See, e.g., Perfect 10, Inc. v. Amazon. com, Inc.,* 508
7       F. 3d 1146 ("Without image-recognition technology, Google lacks the
8       practical ability to police the infringing activities of third-party
9       websites" cached on Google's servers).
10   •  Whether Redbubble can be held liable for vicarious copyright
11      infringement where there is no evidence that the small amount of
12      allegedly infringing content on the Redbubble Marketplace constitutes
13      there is no evidence that infringing material is a draw for customers or
14      a means by which Redbubble increases its user base, particularly given
15      Redbubble's written policies and practices discouraging infringement
16      and its proactive policing to prevent infringement (among other things).
17      *See, e.g., Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004*).*
18   •  Whether Redbubble is entitled to an award of attorneys' fees on Atari's
19      copyright infringement claims because Atari knew or should have
20      known, given the controlling case law, that there was no reasonable
21      likelihood that it would succeed on its claims.  *See, e.g., Shame on You*
22      *Productions, Inc. v. Banks,* 893 F.3d 661 (9th Cir. 2018); *SOFA*
23      *Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273 (9th
24      Cir. 2013); *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL
25      5597274, at *5 (N.D. Cal. Nov. 3, 2014).
26   •  Whether Redbubble can be deemed to "use" Atari's trademarks as
27      required for a direct liability claim under the Lanham Act where
28      Redbubble does not make, sell or even view or take possession of the

Accused Products, and never takes title to such products. *See, e.g., Tiffany (NJ) Inc. v. eBay Inc.*, 600 F. 3d 93, 103 (2d Cir. 2010) (affirming a finding of no direct trademark infringement after noting that eBay never took possession of items sold through its marketplace and did not directly sell allegedly infringing products to customers); Milo & Gabby, LLC v. Amazon.com, Inc., 2015 WL 4394673 (W.D. Wash. July 16, 2015) aff'd 693 F. App'x 879 (Fed. Cir. 2017) (granting summary judgment that Amazon.com is not liable for direct trademark infringement based on sale of products listed by third parties on its site); Tre Milano, LLC v. Amazon.com, Inc., , 2012 WL 3594380 (Cal. App. 2012)a (holding that Amazon was not liable for direct infringement because it was not a seller of the accused products).

- Whether Redbubble can be held liable for contributory trademark infringement, given the steps that Redbubble takes to prevent infringement via the Redbubble Marketplace, when Redbubble lacked knowledge of which particular listings were purportedly infringing with respect to the Accused Products, and Atari failed to provide Redbubble with notice of the Accused Products (other than listings identified in the Complaint, which Redbubble promptly disabled upon receiving notice). *Tiffany Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) ("[f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary"); *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963-64 (C.D. Cal. 1997), *aff'd on other grounds*, 194 F. 3d 980 (9th Cir. 1999) ("Because the property

right protected by trademark law is narrower than that protected by copyright law, liability for contributory infringement of a trademark is narrower than liability for contributory infringement of a copyright").

- Whether Redbubble can be held liable for vicarious trademark infringement where the alleged direct infringement, if any, was committed by independent third-party Sellers whose only relationship with Redbubble is as a service provider, as set forth in the Redbubble User Agreement. *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) ("a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.").

- Whether at least some of the Accused Products are non-infringing because they are ornamental or fair uses, parodies, or otherwise protectable as free speech. *See, e.g., University of Alabama Bd. of Trustees vs. New Art Life, Inc.*, 683 F.3d 1266 (11th Cir. 2012) (paintings, prints, calendars and mugs incorporating realistic portrayals of the University of Alabama's trademarked football uniforms were protected by the First Amendment and therefore did not violate the Lanham Act); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 924-38 (6th Cir. 2003) (discussing applicability of the First Amendment to Lanham Act and Ohio state law right of publicity claims); *Anheuser-Busch, Inc. v. L & L Wings, Inc*., 962 F. 2d 316 (4th Cir. 1992) (T-shirt design containing the Budweiser can and label mashed up with elements of the Myrtle Beach tourist scene could qualify as a parody).

- Whether Redbubble is entitled to an award of attorneys' fees on Atari's Lanham Act claims because Atari knew or should have known, given the controlling case law, that there was no reasonable likelihood that it

would succeed on its claims.  *See, e.g.*, 15 U.S.C. § 1117(a); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002).

**4.   Motions.**

The parties anticipate they will file motions for summary judgment or partial summary judgment.

**5.   Amendment of Pleadings.**

At this time, no party anticipates amending the pleadings.  To the extent Atari discovers, through the discovery process or its own further investigation, additional trademarks or copyrights that it believes Defendants infringed or additional persons or entities responsible for the alleged infringement, then Atari will likely seek to amend the complaint to include those additional trademarks or copyrights or defendants at that time.

**6.   Evidence Preservation.**

The parties have reviewed the ESI Guidelines and confirm that they have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evidence in this action.

**7.   Disclosures.**

The parties have agreed to exchange initial disclosures on or before October 31, 2018.

**8.   Discovery.**

The parties have discussed the discovery they anticipate serving.  Each side anticipates noticing depositions of Rule 30(b)(6) representatives and serving written discovery in the form of document demands and perhaps interrogatories or requests for admissions.  The parties may notice additional depositions – e.g., depositions of witnesses disclosed in initial disclosures – but require additional information before determining the scope of those additional depositions.  The parties contemplate entering into a stipulated protective order protecting certain confidential and commercially sensitive information that may be disclosed in discovery.  Counsel

have, to date, worked collaboratively and professionally together, and they will endeavor to do so throughout the discovery process so as to avoid unnecessary motion practice.

**9. Class Actions.**

This is not a class action.

**10. Related Cases.**

This case is related to three other cases currently pending before this Court: *Atari v. SunFrog*, *Atari v. Zazzle*, and *Atari v. TP Apparel et al.*

**11. Relief.**

Atari seeks actual damages, Defendants' wrongful gain, statutory damages, treble damages, punitive damages, attorney's fees and costs, and permanent injunctive relief. The amount of actual damages and wrongful gain requires additional discovery. To remedy trademark counterfeiting, Title 15, U.S.C. section 1117(c) provides for $1,000 to $200,000 in damages per counterfeit mark infringed for non-willful infringement, and up to $2 million in damages per counterfeit mark infringed for willful infringement. To remedy copyright infringement, Title 17, U.S.C. section 504 provides for $750 to $30,000 in damages per copyright infringed for non-willful infringement, and up to $150,000 in damages per copyright infringed for willful infringement.

Redbubble seeks a declaration that it has not violated Plaintiff's rights, and an award of costs and reasonable attorneys' fees.

**12. Settlement and ADR.**

The parties have agreed to mediation with a Magistrate Judge as their preferred form of ADR. The parties have engaged in some informal settlement discussions, but no settlement appears possible at this juncture.

**13. Consent to Magistrate Judge for all Purposes.**

The parties have not consented to a Magistrate Judge for all purposes.

/ / /

## 14. Other References.

The parties do not believe any other references are appropriate at this time.

## 15. Narrowing of Issues.

The parties believe that the issues can be narrowed by motion for summary judgment. Other than that, the parties are not currently aware of issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial, or request bifurcation. However, Redbubble reserves the right to move for bifurcation prior to trial if it appears at that time that bifurcation may simplify and/or expedite the presentation of evidence at trial.

## 16. Expedited Trial Procedure.

The parties do not believe this case is appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A.

## 17. Scheduling

### A. Plaintiff's Proposed Schedule

| | |
|---|---|
| Trial: | September 23, 2019 |
| Pretrial Conference: | August 30, 2019 |
| Last Day to Hear Dispositive Motions: | July 18, 2019 |
| Discovery Cutoff: | June 17, 2019 |
| Last Day to Designate Experts: | April 1, 2019 |
| Last Day to Designate Rebuttal Experts: | May 1, 2019 |

### B. Defendant's Proposed Schedule

| | |
|---|---|
| Trial: | March 16, 2020 |
| Pretrial Conference: | February 21, 2020 |
| Last Day to Hear Dispositive Motions: | December 12, 2019 |
| Fact Discovery Cutoff: | July 19, 2019 |
| Last Day to Designate Experts: | July 26, 2019 |
| Last Day to Designate Rebuttal Experts: | September 6, 2019 |
| Expert Discovery Cutoff: | October 4, 2019 |

**18.     Trial.**

Plaintiffs have demanded a jury.  The parties expect a 5-7 day trial.

**19.     Disclosure of Non-Party Interested Entities or Persons.**

The parties have filed their Certification of Interested Entities or Persons required by Civil Local Rule 3-16.

**20.     Professional Conduct**

Counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully Submitted:

Dated:  October 9, 2018        BROWNE GEORGE ROSS LLP
                                                    Keith J. Wesley
                                                    Ivy A. Wang

                                              By:      */s/ Ivy A. Wang*
                                                    Ivy A. Wang
                                              Attorneys for Plaintiff Atari Interactive, Inc.

Dated:  October 9, 2018        COASTSIDE LEGAL
                                                    Kenneth B. Wilson

                                              By:      */s/ Kenneth B. Wilson*
                                                    Kenneth B. Wilson
                                              Attorneys for Defendant Redbubble, Inc.