1  BROWNE GEORGE ROSS LLP
   Keith J. Wesley (State Bar No. 229276)
2    kwesley@bgrfirm.com
   Matthew L. Venezia (State Bar No. 313812)
3    mvenezia@bgrfirm.com
   Milin Chun (State Bar No. 262674)
4    mchun@bgrfirm.com
   2121 Avenue of the Stars, Suite 2800
5  Los Angeles, California 90067
   Telephone: (310) 274-7100
6  Facsimile: (310) 275-5697

7  Attorneys for Plaintiff
   Atari Interactive, Inc.

8

9                    UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

11

12 | ATARI INTERACTIVE, INC.,              | Case No. 4:18-cv-03451-JST

13 |         Plaintiff,                    | *[Related to Case Nos. 3:18-cv-03843-JST; 3:18-cv-04115; 4:18-cv-04949-JST; and 4:19-cv-00264-JST]*

14 |      vs.

15 | REDBUBBLE, INC.,

16 |         Defendant.                    | **PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

17 | AND RELATED ACTIONS

18

19 |                                       | Judge:   Hon. Jon S. Tigar
                                            Date:    July 8, 2020
20 |                                       | Time:    2:00 pm
                                            Crtrm.:  9

21

22

23

24

25            **REDACTED VERSION OF DOCUMENT
              PROPOSED TO BE FILED UNDER SEAL**

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 8, 2020, at 2:00 p.m., or as soon thereafter as it may be heard, in Courtroom 6 of the above-titled Court, located at 1301 Clay Street, Oakland, California 94612, the Honorable Jon S. Tigar presiding, plaintiff Atari Interactive, Inc. ("Atari") will, and hereby does, move this Court to enter summary judgment on liability in its favor (the "Motion").

This Motion will be, and hereby is, made pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Motion is based on the following grounds. Defendant Redbubble, Inc. ("Redbubble") offers for sale on its website www.redbubble.com, and has in fact sold, hundreds of products infringing upon Atari's registered trademarks for PONG® and ATARI®, as well as Atari's copyrighted designs associated with several of its well-known video games. Redbubble's products are counterfeits, and no reasonable juror could conclude otherwise. Atari thus moves to establish liability for trademark counterfeiting and copyright infringement based on the 193 infringing products depicted in Exhibit F to the declaration of Keith J. Wesley ("Wesley Decl."). Redbubble controls every aspect of the sales process for these counterfeit goods and is thus liable for direct infringement. Alternatively, Redbubble is vicariously and contributorily liable as a matter of law because of its integral role in the infringement.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), the Wesley Decl., the declarations of Frederic Chesnais ("Chesnais Decl."), Matthew L. Venezia ("Venezia Decl."), Tim Lapetino ("Lapetino Decl."), Christopher Lucero ("Lucero Decl."), Jamie Goldberg Gerson ("Gerson Decl."), Francisco Cuellar ("Cuellar Decl."), Phillip Paley ("Paley Decl."), Terri Walters ("Walters Decl."), and any other evidence and argument the Court may consider.

Dated:  April 29, 2020

BROWNE GEORGE ROSS LLP
Keith J. Wesley
Matthew L. Venezia
Milin Chun

By:     _/s/Matthew L. Venezia_
Matthew L. Venezia
Attorneys for Plaintiff Atari Interactive, Inc.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  STATEMENT OF FACTS......................................................................................3

    A.  Atari and Its Intellectual Property .............................................................3

        1.  History of Atari .............................................................................3

        2.  Evolution of Atari.........................................................................4

        3.  Atari's Trademarks and Copyrights ............................................5

    B.  The Redbubble Platform ...........................................................................6

        1.  Redbubble's Sales Process ...........................................................6

        2.  Redbubble's Sales of Infringing Products..................................11

    C.  Infringing Atari Products on Redbubble .................................................12

        1.  Items Listed for Sale ..................................................................12

        2.  Completed Sales .........................................................................14

III.  ARGUMENT ........................................................................................................14

    A.  Standard of Review .................................................................................14

    B.  Redbubble Is Liable for Trademark Counterfeiting ...............................15

        1.  Atari's Marks Are Valid and Protectable ...................................16

        2.  Counterfeit Atari and Pong Marks Create a Likelihood of Confusion ........16

        3.  Redbubble Uses Atari's Marks ..................................................16

        4.  Redbubble Is Vicariously Liable for Its Third-Party Printers' Use of Atari's Marks.................................................................20

        5.  Alternatively, Atari Is Liable for Contributory Trademark Counterfeiting.................................................................21

    C.  Redbubble Is Liable for Copyright Infringement....................................22

        1.  Atari Owns Copyright Registrations for Its Video Games .........................22

        2.  Atari's Protected Artwork and Game Graphics Have Been Copied ...........22

        3.  Redbubble Is Liable for Its Direct Copyright Infringement........................22

        4.  Redbubble Is Vicariously Liable for Its Users' Copyright Infringement ................................................................23

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS
## (Continued)

Page

a.   Redbubble Has the Right and Ability to Supervise the Infringing Activity..............................................................................23

b.   Redbubble Has a Financial Incentive in the Infringements .............24

5.   Redbubble Is Liable for Contributory Copyright Infringement ...................25

IV.   Conclusion.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>FEDERAL CASES</u>

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ............................................................................................23, 24

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ....................................................................................................16

*Applied Info. Scis. Corp. v. eBay, Inc.*,
511 F.3d 966 (9th Cir. 2007) ....................................................................................................15

*Born to Rock Design Inc. v. CafePress.com, Inc.*,
No. 10 Civ. 8588(CM), 2012 WL 3954518 (S.D.N.Y. Sep. 7, 2012)........................................18

*Bryant v. Maffucci*,
923 F.2d 979 (2d Cir. 1991) ......................................................................................................14

*Chanel v. Veronique Idea Corp.*,
795 F. Supp. 2d 262 (S.D.N.Y. 2011) .......................................................................................16

*Coach, Inc. v. Horizon Trading USA Inc.*,
908 F. Supp. 2d 426 (S.D.N.Y. 2012) .......................................................................................16

*Erickson Prods., Inc. v. Kast*,
921 F.3d 822 (9th Cir. 2019).....................................................................................................25

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) .................................................................................................23, 24

*H–D U.S.A., LLC v. SunFrog, LLC*,
311 F. Supp. 3d 1000 (E.D. Wis. 2018) ......................................................................17, 18, 19

*Hells Angels Motorcycle Corp. (Aust.) Pty Ltd. v Redbubble Ltd.*,
[2019] FCA 355 ......................................................................................................................2, 15

*Levi Strauss & Co. v. Shilon*,
121 F.3d 1309 (9th Cir. 1997)..............................................................................................18, 19

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
453 F.3d 377 (6th Cir. 2006) ....................................................................................................18

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
658 F.3d 936 (9th Cir. 2011)................................................................................................21, 25

*Luvdarts, LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013)...................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

<u>Page</u>

3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................................14

4

5

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ..................................................................................16

6

*Ohio State University v. Redbubble, Inc.*,
369 F. Supp. 3d 840 (S.D. Ohio 2019) .....................................................................15

7

8

*Pasillas v. McDonald's Corp.*,
927 F.2d 440 (9th Cir. 1991) ....................................................................................22

9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ....................................................................................20

10

11

*Phillip Morris USA Inc. v. Shalabi*,
352 F. Supp. 2d 1067 (C.D. Cal. 2004)..........................................................14, 16, 18

12

13

*Pokémon Co. Int'l, Inc. v Redbubble Ltd.*,
[2017] FCA 1541 ...............................................................................................15, 19

14

*PoloFashions, Inc. v. Craftex, Inc.*,
816 F.2d 145 (4th Cir. 1987) ....................................................................................16

15

16

*Shapiro, Bernstein & Co. v. H. L. Green Co.*,
316 F.2d 304 (2d Cir. 1963) .....................................................................................25

17

18

*Starbucks Corp. v. Amcor Packaging Dist.*,
No. 2:13-1754 WBS CKD, 2016 WL 3543371 (E.D. Cal. June 23, 2016) ...............17

19

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010) ................................................................................21, 22

20

21

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
667 F.3d 1022 (9th Cir. 2011) ..................................................................................23

22

23

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) ....................................................................................22

24

*Universal Pictures Co. v. Harold Lloyd Corp.*,
162 F.2d 354 (9th Cir. 1947) ....................................................................................22

25

26

*Zobmondo Ent., LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) ..................................................................................16

27

28

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES
### (Continued)

**Page**

**FEDERAL STATUTES**

15 U.S.C. §§ 1057(b), 1115(a) ........................................................................................16

15 U.S.C. § 1114(1)(a) ....................................................................................................16

15 U.S.C. § 1127 .............................................................................................................16

Lanham Act ................................................................................................................16, 18

**STATE STATUTES**

Cal. Com. Code § 2206(1)(b) .....................................................................................17, 21

Cal. Rev. & Tax Code § 6203(a) .....................................................................................17

**RULES**

FED. R. CIV. P. 56(a) .......................................................................................................14

**OTHER AUTHORITIES**

6 PATRY ON COPYRIGHT § 21:38 (Mar. 2020) ................................................................23

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Defendant Redbubble owns and operates a "print-on-demand" website, www.redbubble.com. Redbubble encourages users of its site to upload their designs, which Redbubble then virtually affixes to pictures of products that Redbubble offers for sale on the site. To motivate a user to upload his design, Redbubble promises the user a cut of the profit from any sale of his design. Incentivized to make money, Redbubble users often upload counterfeit or infringing designs, taking advantage of the goodwill of well-known intellectual properties to make a quick dollar. (After all, far more people are searching the internet (and Redbubble's search engine) for "Fortnite t-shirt" or "Tiger King mug" than "unique nature design created by Jane Doe.") Customers then order the counterfeit goods from www.redbubble.com; Redbubble processes the payment and facilitates the manufacturing and shipping of the counterfeit product; and Redbubble sends the previously agreed upon percentage to the user and keeps the rest for itself. The intellectual property owner, not surprisingly, gets nothing (except likely a lost sale of its corresponding authentic product).

Although myriad brands have been (and continue to be) infringed on Redbubble, the brand in question here is the venerable video game brand Atari. Redbubble advertised, offered for sale, and sold no less than products—primarily apparel—bearing exact copies of plaintiff Atari's registered ATARI® and PONG® trademarks and copyrighted video game graphics. Below are a few comparisons of officially licensed Atari products and Redbubble counterfeits. In total, 193 examples can be found in the comparison chart marked as Exhibit F to the Wesley Decl.



PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

 

There can be no reasonable dispute that the products pictured above—as well as the rest of the Redbubble products depicted in Exhibit F to the Wesley Decl.—are counterfeits. There is no need to empanel a jury to determine that the registered Atari logo on the officially licensed t-shirt is the same as the Atari logo on the infringing Redbubble t-shirt.

Atari instead anticipates that Redbubble will primarily argue that it is not liable (at least directly) because it is a mere passive intermediary. A serious examination of the evidence renders Redbubble's position to be (to put it mildly) unfounded and illogical. Indeed, as a federal court in Redbubble's home country observed:  "[I]t would be difficult to imagine a more directly engaged participant than one deploying the business model adopted by Redbubble." *Hells Angels Motorcycle Corp. (Aust.) Pty Ltd. v Redbubble Ltd.*, [2019] FCA 355, ¶ 435.

The evidence, *from Redbubble testimony and documents*, shows that Redbubble is the moving force behind every aspect of the infringement on its website. Specifically:

- Redbubble solicits its users to upload designs;

- Redbubble creates an online listing on the website for the design, affixing the design virtually to a product—*e.g.*, t-shirt, sticker, mug, etc.;

- Redbubble operates a search engine that drives customers to the design when they search terms related to the design;

- Redbubble decides which third-party manufacturing partner will actually create the product and works with the partner to have it created;

- Redbubble provides the manufacturer Redbubble-branded packaging, including stickers, bags, labels, and tags, to affix to the product;

- Redbubble communicates with the customer regarding the product order;

- Redbubble handles shipping, customer complaints, and product returns;

- Redbubble receives and processes payments for all product orders;

- Redbubble pays the user and manufacturer an agreed-upon amount of the customer payment and keeps a much larger amount as profit; and

- There is no communication between the purchaser and the user who uploaded the design or the manufacturer of the product. The purchaser is purchasing from Redbubble a Redbubble product.

Just like any other retailer that contracts with third-party brands to sell their licensed products (the origin of most licensed products in this country), Redbubble advertises, offers for sale, and sells goods. Indeed, when making representations to investors and tax authorities that have consequences if found to be false, Redbubble all but concedes that it is just like any other retailer that must abide by intellectual property laws. For example:

- Redbubble considers itself a principal and the manufacturers of its products as its agents. (Wesley Decl., Exh. D (Toy Depo.), Ex. 1058, p. 51.)

- Redbubble paid sales tax in California because it understood (at least prior to a recent Supreme Court decision) that tax must be paid in the state *where the seller— i.e.*, Redbubble—has a physical presence. (*Id.* at Exh. 1058, p. 69.)

- Redbubble acknowledges (at least for tax purposes) that it "controls a substantial part of the process"; is "construed to be the party responsible for satisfying the performance obligation"; and thus is the principal and the design uploader is the agent. (*Id.* at Exh. 1060, p. 54.)

In sum, as explained in more detail below, no less than 193 different counterfeit Atari designs were advertised, offered for sale, and sold on www.redbubble.com. Redbubble is liable as a matter of law for that conduct. The lone issues that are reasonably in dispute and thus necessitate a trial are (a) Redbubble's intent; and (b) remedies.

## II.    STATEMENT OF FACTS

### A.    Atari and Its Intellectual Property

#### 1.    History of Atari

Atari is an originator in the video game industry. (Lapetino Decl., Exh. A, ¶¶ 18–20.) Starting in the mid-1970's, Atari created the first successful, commercial coin-operated arcade games. (*Id.* at ¶ 18.) *Pong* was one of Atari's most successful arcade games, selling $3.2 million worth of games and sequels by 1974. (*Id.*) Atari then proceeded to produce numerous other successful games in arcade format, including *Asteroids*, *Breakout*, and *Centipede*. (*Id.* at ¶¶ 29, 30, 38.)

1  But Atari is perhaps even more well-known for producing the most successful home video

2  game console of the 1980s, the Atari 2600. (*Id.* at ¶ 19.) The Atari 2600 console popularized

3  cartridge-based video game consoles selling approximately *30 million* units. (*Id.*) Atari also

4  produced numerous successful games for its 2600 console, including *Adventure*, *Asteroids*,

5  *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*. (*Id.* at ¶¶ 28–33, 38.)

6  The commercial success and advertising of Atari created strong brand recognition for Atari

7  and its games in the 1970's and 1980's that persists to this day. (*Id.* at ¶¶ 18–22; Lucero Decl., Exh.

8  A, ¶¶ 26–39; Chesnais Decl., ¶¶ 17–20 & Exhs. E, F.) That recognition is evidenced by

9  Redbubble's own search data, ████████████████████████████████

10  (Wesley Decl., Exh. D (Toy Depo.), pp. 166:19–167:8 & Exh. 1044.)

11  **2.   Evolution of Atari**

12  Throughout the decades, Atari and its games have remained well-known. Atari sold its

13  Jaguar console in the 1990's, and its Atari Flashback and Greatest Hits products in the 2000's and

14  2010's—providing gameplay of the Atari classics. (Lapetino Decl., Exh. A, ¶ 22; Chesnais Decl., ¶

15  8.) And Atari is now preparing to release its new Atari VCS console, an anticipated product for

16  which Atari raised in excess of $3 million in crowdfunding. (Chesnais Decl., ¶ 9.)

17  Atari has long monetized the goodwill associated with its video game products by licensing

18  its intellectual property for use on a variety of consumer products, including apparel. (*Id.* at ¶ 15.)

19  Atari has license agreements with several apparel companies, allowing those apparel companies to

20  use Atari's intellectual properties in exchange for a licensing fee. (*Id.* at ¶ 17 & Exh. E.) All in all,

21  licensing fees accounted for more than ████████ in revenue for Atari in 2019 alone. (*Id.* at ¶ 20.)

22  Officially licensed Atari products can be found at major retailers such as Game Stop,

23  Target, and Amazon. (Lucero Decl., Exh. A, ¶¶ 30, 39.) The allocation of shelf and inventory space

24  to Atari-branded products evidences the continued value of the brand. (*Id.* at ¶¶ 31, 39.) Similarly,

25  Atari recently entered into an agreement with GSD Group to open several Atari-themed hotels.

26  (Chesnais Decl., ¶ 18 & Exh. F.) Atari's intellectual property also regularly appears in pop culture,

27

28

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  for instance, in Steven Spielberg's 2018 film *Ready Player One*. (*Id.* at ¶ 19.)

2          **3.**      **Atari's Trademarks and Copyrights**

3      Atari owns federal registrations for its ATARI® and PONG® trademarks for use on clothing,

4  namely t-shirts, sweat shirts, and hats. (*Id.* at ¶¶ 12, 13 & Exhs. A, B.) Examples of these marks are

5  pictured below. (Lapetino Decl., Exh. A, ¶¶ 24, 28.)



13      Additionally, Atari holds copyright registrations for its Atari Greatest Hits games. (Chesnais

14  Decl., ¶¶ 14, 15 & Exhs. C, D.) The Atari Greatest Hits games allow users to play Atari's video

15  games, and include original artwork from those games, including *Adventure*, *Asteroids*, *Breakout*,

16  *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*, among others. (*Id.* at ¶ 8.) Examples of

17  copyrighted elements from these games are picture below. (Cuellar Decl., ¶ 4 & Exhs. C, F, G.)

  

28      In addition to trademark and copyright registrations obtained by Atari itself, Atari also owns

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

registrations that were obtained by its predecessors-in-interest—*i.e.*, entities that owned the Atari brand prior to Atari Interactive, Inc. Atari acquired the pre-existing registrations through a series of written assignments and corporate mergers that are set forth in the Chesnais Declaration and Exhibits G–O thereto.

> **B.**      **The Redbubble Platform**

>       **1.**      **Redbubble's Sales Process**

Redbubble operates a print-on-demand website. Redbubble users upload designs onto the Redbubble website, and customers can purchase items, primarily t-shirts, emblazoned with those designs. (Wesley Decl., Exh B (Deshais Depo.), p. 30:8–20 & Exh. 1068.) Redbubble does not maintain stock of the items listed for sale on its website, but instead facilitates the printing of those items when ordered, *i.e.*, on-demand. (*Id.* at pp. 43:22–44:6.)

Once a Redbubble user uploads a design, that design is virtually affixed by Redbubble onto Redbubble's model photos, and is then hosted on Redbubble's website in a product listing. (Paley Decl., Exhs. A–F; Walters Decl., Exhs. F–K.) A sample product listing hosted on Redbubble's website is below.





This particular listing utilizes artwork from Atari's classic *Centipede* game. If the imagery did not make that clear (it does to anyone who knows the Atari brand), the listing is titled "Centipede Slim Fit T-Shirt." The listing has the Redbubble logo at the top left, and describes the t-shirt the design is to be printed on, representing it as "ethically sourced," among other things. Lastly, the listing states that it was "designed by" (*not* sold by) one of Redbubble's users.

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1    Redbubble uses its Redbubble-generated product images in its paid advertisements with

2   ████████████████████████████████████████████████ (Wesley

3   Decl., Exh. D (Toy Depo.), pp. 48:18–49:17 & Exh. 1060, p. 4.) Redbubble's advertisements also

4   appear on third-party websites, for instance, CNN.com. (Venezia Decl., ¶ 2–4 & Exh. A.) These

5   advertisements feature a thumbnail of the final product photos created by Redbubble, often

6   alongside authentic, licensed products from companies like Trevco. (*See* Paley Decl, Exhs. G, H;

7   Chesnais Decl, Exh. E-4.) Examples are below.

8

9   

21   Lured to Redbubble's website by such advertisements, a customer who then decides to

22   purchase an item can do so by adding the item to his or her shopping cart, and checking out on the

23   Redbubble website. (Wesley Decl., Exh. B (Deshais Depo.), pp. 55:1–7, 62:1–18; Walters Decl., ¶¶

24   2, 5.) Redbubble processes the payment itself (*i.e.*, takes the money) and provides an order

25   confirmation, accepting the customer's offer to purchase the item. (Wesley Decl., Exh. B (Deshais

26   Depo.), pp. 55:1–7, 62:19–23; Walters Decl., ¶¶ 5–7 & Exhs. D, E.) A sample order confirmation is

27   below.

28

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12



13  Notably, this screenshot shows the next two steps—"Made and Shipped" and "Est. Shipping"—on

14  a page that only references Redbubble.

15          Next, the customer will receive a shipping confirmation from Redbubble. (Walters Decl., ¶

16  3 & Exh. B.) When the order arrives, it will be in a Redbubble shipping container, with the

17  products placed in individual Redbubble bags. (*Id.* at ¶¶ 4, 8 & Exh. C; Wesley Decl., Exh. B

18  (Deshais Depo.), pp. 63:18–65:14.) The products will also have a removable Redbubble tag. (*Id.*)

19  Representative samples of this packaging are below.

20

21



22

23

24

25

26

27  Should there be an issue with the product, the tag advises the customer to contact Redbubble

28

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   concerning returns, and in fact, ████████████████████████████████████

2   (Wesley Decl., Exh. B (Deshais Depo.), pp. 43:4–20, 56:2–6, 65:15–66:1 & Exh. 1068.)

3           Through discovery, Atari understands that ███████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████ (*Id.* at

7   pp. 43:22–45:22.) ████████████████████████████████████████████

8   ████████████████████████████ (*Id.* at pp. 43:4–20, 50:12–15, 56:7–10 & Exh.

9   1068.)

10          While Redbubble has previously argued that it does not have contracts with its third-party

11  printers, █████████████████████████████████████████████ (*Id.* at p.

12  98:11–25.) Further, Redbubble treats its printers as its agents for tax purposes. (*Id.* at Exh. D (Toy

13  Depo.), pp. 25:15–26:2 & Exh. 1058, p. 51.) And even if not reduced to writing, Redbubble and its

14  printers act as partners, as confirmed by Redbubble's Senior Strategy leader:

15              "It's actually really important for us to have a global network of

16              fulfillers. These are companies that we partner with to produce our

17              goods."

18  (Venezia Decl., Exh. B, 1:55–2:01.) Redbubble's SVP, Global Operations, further stated:

19              "We rely on a third-party network of partners that are very good at

20              what they do."

21  (*Id.* at Exh. D, 0:16–0:22.) In this partnership, Redbubble exercises substantial control over the

22  printers. Redbubble's GM Products explained:

23              "We work really closely with our suppliers to make sure the product

24              is suitable to the local market."

25  (*Id.* at Exh. C, 0:49–0:53.) As a specific example, Redbubble's SVP, Global Operations provided:

26              "We also have our quality manager physically visit every single

27              fulfiller and perform quality controls at the location of printing to

                make sure that the blank products, whether it's a t-shirt or a phone

28              case, or the printing performs to our expectations."

1  (*Id.* at Exh. D, 2:00–2:16.) Redbubble goes to these lengths understanding that the products

2  manufactured by the third-party printers are perceived in the marketplace to be sold by Redbubble.

3  (*Id.* at Exh. C, 1:44–1:52 ("[W]e have a team of product developers whose job it is to make sure

4  that all Redbubble products fit to the Redbubble standard.")

5          **2.**     **Redbubble's Sales of Infringing Products**

6        Redbubble is stocked with counterfeit merchandise, incorporating the trademarks and

7  copyrighted materials from any well-known brand one could think of. (*See* Cuellar Decl., Exh. B.)

8  The examples are endless, but a handful of representative examples include Calvin Klein, Maserati,

9  Marvel, The Wizard of Oz, Pink Floyd, and Coca-Cola. (*Id.*) By way of illustration, the below

10  screenshot shows the first twelve results when a customer searches for Calvin Klein (similar items

11  go on for pages).



23        Sales of counterfeit merchandise fuel a large percentage of Redbubble's annual revenue,

24  which reached $307 million AU in 2019 ($194 million US). (Wesley Decl., Exh. D (Toy Depo.), p.

25  47:8–22 & Exh. 1060, p. 4.) ███████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████ (*Id.* at pp. 180:11–181:20 & Exh. 1054, p.

28  RBAT097243.) Similarly, Redbubble's 2019 Annual Report brags that 76% of its product revenue

1   originated from "authentic sellers." (*Id.* at pp. 45:11–46:13 & Exh. 1060, pp. 5, 13.) Atari is

2   skeptical, but even taking Redbubble at its word, that means Redbubble sold $46.56 million US

3   worth of "inauthentic" products in 2019 alone (the remaining 24% of sales multiplied by

4   Redbubble's 2019 revenue).

5        While Atari may not be able to determine the exact percentage, Redbubble's laissez-faire

6   approach to infringements on its website suggests that most infringing items are never detected, and

7   thus Redbubble's internal numbers likely understate the level of infringements on its platform.

8   ███████████████████████████████████████████████████████████████████

9   ████████████████████████████████████ (*Id.* at Exh. C (Greenhough Depo.), pp.

10  21:15–22:1, 23:7–16, 123:16–124:16; Gerson Decl., Exh. A, ¶ 27; Cuellar Decl., Exh. L.)

11       Further, even where such a complaint is received, ████████████████████

12  ████████████████████████████████████ (Wesley Decl., Exh. D (Toy

13  Depo.), pp. 146:9–20, 149:7–150:5; Gerson Decl., Exh. A, ¶ 32.) Redbubble also fails to promptly

14  suspend the accounts of users selling infringing items, Counterfind identifying 412 instances where

15  Redbubble users were allowed three or more violations before their accounts were suspended (in

16  one instance a seller was allowed 34 violations).[1] (Gerson Decl., Exh. A, ¶¶ 35, 36.)

17       Redbubble's head-in-the-sand attitude can perhaps best be shown by the testimony of its

18  30(b)(6) witness and in-house counsel responsible for intellectual property matters:

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ██

22  ████████████████

23  (Wesley Decl., Exh. D (Toy Depo.), p. 43:8–22.)

24      **C.**    **Infringing Atari Products on Redbubble**

25          **1.**    **Items Listed for Sale**

26       Atari located no less than 114 counterfeit Atari products for sale on Redbubble, each with

---

[1] Counterfind works on behalf of intellectual property holders to locate infringements on
Redbubble, and other similar platforms, and send takedown notices.

an exact copy of the ATARI® mark. (*Id.* at Exh. F.) When considering slight variations, *e.g.*, use of the logo in place of the second "A" in Atari, that number balloons further. (*Id.* at Exh. A-2.) Additionally, Atari located no less than 18 counterfeit Pong products, each with an exact copy of the PONG® mark. (*Id.* at Exh. F.) Comparisons are below, with authentic products on the left, and counterfeit Redbubble products to the right. (Cuellar Decl., Exhs. A, M, N; Chesnais Decl., ¶ 21.)



Similarly, Atari located no less than 61 products utilizing copyrighted materials from Atari's games, including *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*. (*Id.*) Examples are below, with the authentic copyrighted elements to the left, and the infringing products to the right.



PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT







### 2. <u>Completed Sales</u>

Redbubble does not simply advertise the above-referenced infringing products—sales are significant. ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

(Wesley Decl., Exh. D (Toy Depo.), pp. 170:19–173:20 & Exh. 1049.) While that number is large, it is likely understated, only accounting for those infringements Redbubble located and disclosed.

## III.   <u>ARGUMENT</u>

### A.   <u>Standard of Review</u>

Pursuant to FED. R. CIV. P. 56(a), a "party may move for summary judgment on "[a] claim or defense or the part of [a] claim or defense." Summary judgment shall be granted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* When the moving party satisfies its burden of demonstrating the absence of a genuine issue of fact for trial, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, it must "come forward with enough evidence to support a jury verdict in its favor." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1071 (C.D. Cal. 2004) (The opposing party "may not rest upon

1    mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'").

2        **B.**      **Redbubble Is Liable for Trademark Counterfeiting**

3        To prevail on its claim for direct trademark infringement, Atari must demonstrate that "(1)

4    it has a valid, protectable trademark, and (2) that [Redbubble's] use of the mark is likely to cause

5    confusion." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Here, it is not

6    in serious dispute that Atari's marks are valid and protectable, nor is it in serious dispute that use of

7    counterfeit ATARI® and PONG® marks on Redbubble is likely to cause confusion.

8        Moreover, contrary to what Redbubble will argue, Redbubble uses Atari's marks in

9    commerce. When Redbubble made similar arguments in defense of its infringement of the Hells

10   Angels' intellectual property, in finding that Redbubble was liable for trademark infringement, an

11   Australian Federal Court explained:

12            Redbubble is the supplier of the goods (clothing) bearing the trade
              marks because it enables the sale and purchase transaction, confirms
13            the order, takes payment, receives revenue for itself and facilitates
              revenue payable to the artist, instructs the fulfiller, arranges delivery
14            and places its own name and logo on the goods in the form of swing
              tags as part of its set of procedures for the supply of the goods. The
15            artist makes the work available for selection by consumers for
              application to selected goods. Redbubble is directly engaged in all
16            facets of the transaction for the supply of goods bearing the works, to
              the consumer. That is the way the Redbubble business model works,
17            and the way that it is designed to work.

18
19
20   *Hells Angels Motorcycle Corp. (Aust.) Pty Ltd. v Redbubble Ltd.*, [2019] FCA 355, ¶ 62; *see also*

21   *Pokémon Co. Int'l, Inc. v Redbubble Ltd.*, [2017] FCA 1541, ¶ 67 (holding Redbubble liable for

22   infringement of Pokémon's intellectual property).[2]

23

24   _____

25   [2] Atari is aware that one district court held otherwise in *Ohio State University v. Redbubble, Inc.*,
     369 F. Supp. 3d 840 (S.D. Ohio 2019). However, Ohio State did not conduct discovery and that
26   decision was thus made without the benefit of the evidence concerning Redbubble's operations that
     is before this Court. Nonetheless, that decision is currently being reviewed by the Sixth Circuit.
27   Atari, respectfully, agrees with Ohio State and *amici curiae* International Trademark Association
     and University of Michigan (joined by several other major universities) that *Ohio State University*
28   was wrongly decided.

1

### 1.   Atari's Marks Are Valid and Protectable

Atari's ATARI® and PONG® marks are valid and protectable. "[F]ederal registration provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is a protectable mark." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (internal quotations omitted); 15 U.S.C. §§ 1057(b), 1115(a). Again, the ATARI® mark and the PONG® mark are both federally registered trademarks. (Chesnais Decl., ¶¶ 12, 13 & Exhs. A, B.)

### 2.   Counterfeit Atari and Pong Marks Create a Likelihood of Confusion

While courts ordinarily consider the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) to determine whether a likelihood of confusion exists, where a counterfeit mark is used, likelihood of confusion must be presumed. *PoloFashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148–49 (4th Cir. 1987) (use of a counterfeit mark "so unassailably established" the likelihood of confusion as to warrant summary judgment on liability); *Phillip Morris USA*, 352 F. Supp. 2d at 1073 (same); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (same); *Chanel v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 267 (S.D.N.Y. 2011) (same).

Here, Atari moves for summary judgment on liability only as to those products with identical copies of its ATARI® and PONG® marks, examples of which can be seen above. (Wesley Decl., Exh. F.) Because these items use identical copies of Atari's marks, by definition, they are counterfeits. 15 U.S.C. § 1127 ("A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."). There can be no reasonable dispute that these items use counterfeit marks, and thus likelihood of confusion is established.

### 3.   Redbubble Uses Atari's Marks

The Lanham Act provides that actionable use of a trademark includes "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services[.]" 15 U.S.C. § 1114(1)(a). The plain language of this statute is broad, and it has thus rightly been interpreted to cover new forms of infringement made possible by the internet. *See, e.g.*, *Network Automation, Inc.*

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  *v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144–45 (9th Cir. 2011) (holding that the purchase of a

2  trademark as a search engine keyword is "use in commerce").

3      By the clear language of Section 1114, particularly giving the statute the broad construction

4  to which it is entitled, and in consideration of the evidence, Redbubble's claim that it does not use

5  Atari's marks is specious.

6      ***First***, Redbubble sells the products listed on its website. No matter how cleverly Redbubble

7  describes its business model, the reality is this. Customers come to Redbubble's website and pay

8  Redbubble to send them infringing products. (Wesley Decl., Exh. B (Deshais Depo.), pp. 55:1–7,

9  62:1–23; Walters Decl., ¶¶ 2–8.) When Redbubble confirms and promises to ship an order, it

10 accepts the customer's offer, and a sales contract is formed between Redbubble and the customer.

11 Cal. Com. Code § 2206(1)(b) ("An order or other offer to buy goods for prompt or current

12 shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the

13 prompt or current shipment of conforming or nonconforming goods[.]"); *see also Starbucks Corp.*

14 *v. Amcor Packaging Dist.*, No. 2:13-1754 WBS CKD, 2016 WL 3543371, at *5 (E.D. Cal. June 23,

15 2016) (representation that ordered goods will be supplied is acceptance). Indeed, in its public

16 filings, Redbubble conceded its role as the seller for tax purposes, collecting and remitting sales tax

17 to the State of California—*i.e.*, the state where the "seller" (Redbubble) is based.[3] (Wesley Decl.,

18 Exh. D (Toy Depo.), p. 20:8–13 & Exh. 1058, p. 69.)

19     *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) ("*SunFrog*") is

20 further instructive. SunFrog offers a similar platform to Redbubble, allowing users to upload

21 designs, attaching those designs to various items such as t-shirts, and selling those products to

22 customers. SunFrog processes payment, prints, and ships the orders. *Id.* at 1013–14. Harley-

23 Davidson identified numerous products on SunFrog's website adorned with Harley-Davidson's

24 trademarks. *Id.* at 1017. The court recognized SunFrog as the seller in holding that SunFrog

25 engaged in direct trademark infringement. *Id.* at 1036. The court correctly explained that the facts

26

27 ───────────────
[3] California law requires that "every retailer engaged in business in this state and *making sales of*
28 *tangible personal property* . . . shall, at the time of making the sales . . . collect the tax from the
purchaser[.]" Cal. Rev. & Tax Code § 6203(a) (emphasis added).

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

before it established a "fairly straightforward case of counterfeiting." *Id.* at 1023; *see also Ohio State Univ. v. Skreened Ltd.*, F. Supp. 3d 905, 915, 922 (S.D. Ohio 2014) (granting summary judgment against print-on-demand company for trademark infringement and counterfeiting); *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10 Civ. 8588(CM), 2012 WL 3954518, at *5–6 (S.D.N.Y. Sep. 7, 2012) (holding print-on-demand business model results in "use in commerce").

The same result must follow here. Like SunFrog, Redbubble controls every aspect of the sales completed on its website. Redbubble affixes the uploaded designs to images that it provides, the end result being a product listing hosted on Redbubble's website. (*See* Paley Decl., Exhs. A–F; Walters Decl., Exhs. F–K.) Orders for infringing products are placed on Redbubble's website, and Redbubble processes the payments (*i.e.*, takes the money). (Wesley Decl., Exh. B (Deshais Depo.), pp. 55:1–7, 62:1–23; Walters Decl., ¶¶ 2, 5–7 & Exhs. D, E.) ███████████████████ ████████████████████████████████████████████ ██████████████ (Wesley Decl., Exh. B (Deshais Depo.), pp. 43:4–20, 56:2–6, 65:15–66:1 & Exh. 1068; Walters Decl., ¶¶ 2, 3, 6, 7 & Exhs. A, B, D, E.) Indeed, Redbubble itself concedes in its public filings that it is the primary moving force behind the sales, and, for that reason, is the principal of the sales transaction, with the user who uploaded the design simply being Redbubble's agent. (Wesley Decl., Exh. D (Toy Depo.), Exh. 1060, p. 54.)

That Redbubble pays third-party printers to manufacture the products makes no difference. The seller of an infringing product bears strict liability, regardless of whether it knew the product was infringing or whether the product was manufactured by a third party. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006) (holding the seller of infringing goods bears strict liability with third-party's manufacturing of the goods providing no defense); *Phillip Morris USA*, 352 F. Supp. 2d at 1073–74 (holding retailers' lack of knowledge goods were infringing provided no defense).

***Second***, Redbubble offers for sale the products on its website. Such an offer to sell infringing goods, standing alone, is direct infringement in violation of the Lanham Act. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) (holding naked offer to sell counterfeit Levi Strauss labels actionable regardless of whether the offeror is in possession of the

counterfeit goods or completes the sale).

Here, again, Redbubble affixes designs uploaded by its users to its model images and creates product listing pages with the new combined images. (Paley Decl., Exhs. A–F; Walters Decl., Exhs. F–K.) These pages include the material terms of the transaction, *i.e.*, the product to be purchased and the price. (*Id.*) Redbubble's customers can click "Add to cart" and proceed to finalize the transaction on Redbubble's website should they wish to purchase a product on the offered terms. (Wesley Decl., Exh. B (Deshais Depo.), pp. 55:1–7, 62:1–18; Walters Decl., ¶¶ 2, 5.)

Redbubble's anticipated defense that it routes orders to third-party printers is irrelevant. As set forth in *Levi Strauss*, for purposes of infringement based on product offerings, it does not matter whether the offered goods are in existence, let alone who manufactures them. *Levi Strauss*, 121 F.3d at 1312. This is similar to the conclusion an Australian Federal Court reached:

> "Whatever the terms of trade may be through the terms and conditions of sale adopted by Redbubble, it has exhibited articles in public by projecting images on products which were able to be sold to potential customers. That was done by way of trade by Redbubble. The URL and screenshot of the articles exhibited in Annexure 3 are of specified articles exhibited in public for sale through the terms and conditions governing the transaction between the end user, the artist and Redbubble."

*Pokémon Co.*, [2017] FCA 1541, ¶ 52. The Australian Federal Court correctly disregarded Redbubble's obfuscation for the obvious:  Redbubble offers for sale its infringing products to all comers. This Court should reach the same conclusion.

***Third***, Redbubble advertises the items for sale on its website. As a threshold matter, the product listings discussed above, in addition to being offers to sell, constitute advertisements. *See SunFrog*, 311 F. Supp. 3d at 1013–14 ("[SunFrog's] website includes an online retail marketplace where consumers can purchase the products *advertised* thereon. . . . SunFrog then *advertises* and offers these finished products on its website.") (emphasis added).

Further, Redbubble ███████████████████████████████████████ ███████, with advertisements also appearing on third-party websites like CNN.com. (Wesley Decl., Exh. D (Toy Depo.), pp. 48:18–49:17 & Exh. 1060, p. 4; Venezia Decl., ¶ 2–4 & Exh. A.)

These advertisements feature a thumbnail of the final product photos created by Redbubble and often appear alongside authentic products, thus directly competing with authentic products in the marketplace. (Paley Decl, Exhs. G, H; Venezia Decl., Exh. A.) Redbubble is in fact contractually obligated to advertise, its User Agreement providing that it will "market to and obtain orders from customers for the purchase of your products over the website[.]" (Cuellar Decl., Exh. J.)

In sum, no reasonable juror could conclude that Redbubble is not directly liable for trademark counterfeiting based on its advertising, offering for sale, and/or sales of the products depicted in Exhibit F to the Wesley Decl. Summary judgment on liability for trademark counterfeiting thus should be granted. Out of an abundance of caution, however, Atari will now proceed to an analysis of secondary liability for trademark counterfeiting as well.

### 4.   Redbubble Is Vicariously Liable for Its Third-Party Printers' Use of Atari's Marks

The doctrine of vicarious liability does not allow Redbubble to avoid liability by hiring third-party printers to fulfill its orders. Vicarious liability for trademark infringement arises where "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (internal quotation omitted).

Here, Redbubble and its printers have an ongoing relationship where they share in the ill-gotten gains from the sale of counterfeits on Redbubble—Redbubble itself describing the printers as its partners.[4] (Venezia Decl., & Exhs. B, D.) Within that partnership, Redbubble exercises significant control over the infringing products, dictating the type of products and manner of printing to be used, and sending its quality manager to the printers' facilities to perform quality controls. (*Id.* at Exhs. C, D.) ███████████████████████████████ (*Id.* at Exh. B (Deshais Depo.), pp., 44:22–45:22, 49:19–22, 63:18–64:5.) Redbubble further makes customer-facing representations about the manufacturing process—such as statements about the

---

[4] For accounting purposes, Redbubble treats itself as principal, and the printers as its agents. (Wesley Decl., Exh. D (Toy Depo.), pp. 25:15–26:2 & Exh. 1058, p. 51.)

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

quality of the t-shirts—even going so far as representing that its products are manufactured by "happy people in matching socks." (Walters Decl., Exhs. C, F–K; Paley Decl., Exhs. A–F.) Thus, Redbubble is vicariously liable for the printers' manufacture of infringing items.

Further, even if the Court credited Redbubble's argument that its printers are the sellers for purchases made on Redbubble, Redbubble would still be vicariously liable for the sales. If Redbubble's printers are the sellers, Redbubble binds them in transactions when it promises to ship the completed products. Cal. Com. Code § 2206(1)(b). That is, once customers pay Redbubble they are entitled to performance from *someone*, and if it is not Redbubble, it must be the printers.

## 5.  Alternatively, Atari Is Liable for Contributory Trademark Counterfeiting

In prior litigation, Redbubble essentially admitted liability for contributory trademark counterfeiting. (RJN, Exh. A at 25:29–42 ("The Redbubble software does facilitate the transaction and there is no dispute about that, but the facilitation of a transaction is not direct trademark infringement. Facilitation in the words of the *Coach* case is contributory trademark infringement.") Contributory liability arises where the defendant had "[d]irect control and monitoring of the instrumentality used by a third party to infringe" and "continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement[.]" *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011) (internal quotation omitted).

Redbubble's business and legal strategy is to attempt to position itself as a contributory infringer, such that it will not be required to police infringements on its website absent express notice from the intellectual property holder. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) is the primary authority cited in support of the proposition that a contributory infringer must have "[s]ome contemporary knowledge of which particular listings are infringing or will infringe in the future[.]" But in addition to being distinguishable because Redbubble does not operate in a similar manner to eBay, even in *Tiffany*, the court acknowledged:

> "A service provider is not, we think, permitted willful blindness. When it has reason to suspect that users of its service are infringing a protected mark, it may not shield itself from learning of the particular infringing transactions by looking the other way."

*Id.* at 109. Redbubble's conscious decision to attempt to position itself as a contributory infringer—with knowledge that a large percentage of its revenue results from infringing sales—by directing its content moderation team to only address specific infringements for which Redbubble has already received a complaint is the definition of willful blindness. (*Id.* at Exh. C (Greenhough Depo.), pp. 21:15–22:1, 23:7–16, 123:16–124:16; Gerson Decl., Exh. A, ¶ 27; RJN, Exh. A at 25:29–42.)

## C.    Redbubble Is Liable for Copyright Infringement

To prevail on its claim for copyright infringement, Atari must demonstrate "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). Here, it is not in serious dispute that Atari owns copyright registrations for works that have been copied on the Redbubble platform. As set forth below, Redbubble is liable for both direct copyright infringement and vicarious copyright infringement, and alternatively, for contributory copyright infringement.

### 1.    Atari Owns Copyright Registrations for Its Video Games

As set forth above, Atari obtained copyright registrations for its Atari's Greatest Hits games. (Chesnais Decl., ¶¶ 14, 15& Exhs. C, D.) Atari's Greatest Hits games allow users to play *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*, among other games, and include original artwork from those games. (*Id.* at ¶ 8; Cuellar Decl., Exhs. C–I.)

### 2.    Atari's Protected Artwork and Game Graphics Have Been Copied

Products have been offered for sale, and sold, on Redbubble using copies of the original artwork and copies of the game graphics from *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*. (Wesley Decl., Exhs. A, F; Cuellar Decl., Exhs. C–I.) Side-by-side comparisons are instructive. Examples have been included above, however, given the voluminous nature of the infringements, images of each infringement side-by-side with the protected elements of Atari's intellectual property are included as Exhibit F to the Wesley Decl.

### 3.    Redbubble Is Liable for Its Direct Copyright Infringement

All parties participating in a copyright infringement are directly liable. *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 365 (9th Cir. 1947) (film writer was liable as

1  "participatory infringer" even though infringing work was released and distributed by third-party

2  studio). Innocent infringement is not a defense to liability, "rendering liable a vast array of parties

3  in the chain of infringement, including, the publisher, the printer, distributors, and bookstores." 6

4  PATRY ON COPYRIGHT § 21:38 (Mar. 2020) (collecting cases).

5        Here, Redbubble plays a key role in the chain of infringement. After a design is uploaded

6  by a Redbubble user, Redbubble copies that design onto one of its model photos in order to create a

7  new image of the product offered for sale. (Paley Decl., Exhs. A–F; Walters Decl., Exhs. F–K.)

8  Redbubble then exhibits that newly created infringing image on a product listing page created by

9  Redbubble and hosted on its website. (*Id.*) These volitional acts distinguish Redbubble from a

10  service provider that merely provides a platform to which a third party uploads infringing material.

11  *Cf. UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1030 (9th Cir. 2011)

12  (discussing safe harbor provided to service providers under certain circumstances where

13  infringement results solely "by reason of the storage at the direction of a user of material that

14  resides on a system or network controlled or operated by or for the service provider").

15        Accordingly, Redbubble is liable for direct copyright infringement.

16      **4.**     **Redbubble Is Vicariously Liable for Its Users' Copyright Infringement**

17        Vicarious liability for copyright infringement arises where the "defendant has the right and

18  ability to supervise the infringing activity and also has a direct financial interest in such activities."

19  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) ("*Napster*") (internal

20  quotation omitted). Here, Redbubble has both the right and ability to supervise infringements on its

21  platform and a direct financial incentive in those infringements.

22      **a.**     **Redbubble Has the Right and Ability to Supervise the Infringing**

23            **Activity**

24        *Napster* and *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996)

25  demonstrate that Redbubble has the right and ability to supervise infringing activity on its website.

26  Napster provided a well-known platform enabling peer-to-peer sharing of MP3 music files.

27  *Napster*, 239 F.3d at 1011. Napster had a policy allowing for termination of users' accounts where

28  it suspected illegal activity, or at its discretion, and could search for infringements by reviewing file

1  names, even though certain music files could be mislabeled. On these facts (in addition to a

2  showing of financial incentive), the court affirmed the finding that the plaintiff was likely to

3  succeed on its vicarious copyright infringement claim against Napster. *Id.* at 1023–24.

4        Similarly, in *Fonovisa*, 76 F.3d at 260, the defendant operated a swap meet. The defendant

5  had the right to terminate vendors for any reason, and those vendors occupied small booths within a

6  property that the defendant "controlled and patrolled." *Id.* at 262. On these facts, the court held that

7  dismissal of the plaintiff's vicarious copyright infringement claim on the grounds of lack of control

8  was improper. *Id.* at 263.

9        Redbubble's right and ability to supervise the infringing activities of its users is even

10  greater than in *Napster* and *Fonovisa*. Redbubble's user agreement not only gives Redbubble the

11  right to terminate users' access, but sets forth a specific policy in regard to the use of third-parties'

12  intellectual property on Redbubble. (Cuellar Decl., Exhs. J, K.) Further, where in *Napster* policing

13  was made more difficult because only the name of the MP3 music files could be reviewed, the

14  infringements on Redbubble are visual and readily available for Redbubble's review. (*See* Cuellar

15  Decl., Exhs. A, B; Paley Decl., Exhs. A–F; Walters Decl., Exhs F–K.) Indeed, similar to *Fonovisa*,

16  and setting aside whether they do a good job, ████████████████████████████████

17  ████████████████ (Wesley Decl., Exh. C (Greenhough Depo.), pp. 20:1–15, 21:15–22:8.)

18              **b.    Redbubble Has a Financial Incentive in the Infringements**

19        *Napster* and *Fonovisa* also show that Redbubble has a financial incentive in the

20  infringements on its platform. In *Napster*, the court found that the plaintiff was likely to succeed in

21  showing that Napster had a financial interest in its users infringements, because the presence of

22  infringing material on the platform attracted more users and by extension more potential future

23  revenue. *Napster*, 239 F.3d at 1023. In *Fonovisa*, the court found that space rental fees received

24  from vendors and incidental fees such as parking and food were sufficient to demonstrate the swap

25  meet's financial interest in its vendors' infringing activity. *Fonovisa*, 76 F.3d at 263.

26        Redbubble's financial interest in its users' infringing activity is greater. While the financial

27  benefit in both *Napster* and *Fonovisa* was indirect—greater revenue generated from use of the

28  platform itself—Redbubble benefits directly from its users' infringing activity by taking the

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

majority of the proceeds from infringing sales. (Wesley Decl., Exh. D (Toy Depo.), Exh. 1060, p. 4 (Redbubble retains more than 83% of the sales proceeds).) Indeed, retaining a portion of the proceeds from infringing sales is the quintessential financial interest. *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963) ("By reserving for itself a proportionate share of the gross receipts from Jalen's sales of phonograph records, Green had a most definite financial interest in the success of Jalen's concession[.]").

### 5.   Redbubble Is Liable for Contributory Copyright Infringement

Liability for contributory copyright infringement arises where the defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 831 (9th Cir. 2019) (internal quotation omitted). For the reasons set forth above, it cannot be reasonably disputed that Redbubble both materially contributes to (controls every aspect of the sales process) and induces (pays a fee for sales made) its users' infringement.

As to knowledge, *Erickson Prods.* explained the ambiguity in Ninth Circuit law as to the level of knowledge required. *Id.* at 832. That is, *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) finds "[w]illful blindness of specific facts" sufficient, whereas *Louis Vuitton Malletier*, 658 F.3d at 943 allows for a lesser "know or have reason to know" standard. The Court need not resolve any such ambiguity here. As set forth above in Section III.B.5., to the extent Redbubble does not have actual knowledge, it is willfully blind.

Redbubble is thus contributorily liable for its users copyright infringements.

## IV.   CONCLUSION

For the reasons set forth above, Atari respectfully requests that the Court grant this Motion.

Dated:  April 29, 2020

BROWNE GEORGE ROSS LLP
Keith J. Wesley
Matthew L. Venezia
Milin Chun

By:   _/s/Matthew L. Venezia_

Attorneys for Plaintiff Atari Interactive, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2020, I electronically filed the foregoing **PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

## SERVICE LIST

*Atari Interactive, Inc. v. Redbubble Inc.*
U.S.D.C. N.D. CA, Oakland Division Case No. 4:18-CV-03451-JST
[Related to Case Nos. 3:18-cv-03843-JST; 3:18-cv-04115; 4:18-cv-04949-JST;
and 19-cv-00264-JST]

Kenneth B. Wilson                          Attorneys for Defendant
COASTSIDE LEGAL                       Redbubble, Inc.
455 1st Avenue
Half Moon Bay, CA 94019
Tel:    (650)440-4211
Fax:    (650)440-4851
ken@coastsidelegal.com

Jonathan M. Masur                          Attorneys for Defendant
Zachary S. Davidson                      Redbubble, Inc.
ZUBER LAWLER &
   DEL DUCA LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 434-8538
Email: jmasur@zuberlawler.com
          zdavidson@zuberlawler.com

       Debora Sanfelippo
       dsanfelippo@zuberlawler.com


_____
Andrea A. Augustine

PLAINTIFF ATARI INTERACTIVE, INC.'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT