KENNETH B. WILSON (SBN 130009)
  ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
  jmasur@zuberlaw.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 434-8538
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
  zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>              Plaintiff,<br><br>     v.<br><br>REDBUBBLE, INC.,<br><br>              Defendant. | Case No. 4:18-cv-03451-JST<br><br>**DEFENDANT REDBUBBLE INC.'S NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Supporting Declarations]*<br><br>Judge:   Hon. Jon S. Tigar<br>Date:    July 15, 2020<br>Time:    2:00 p.m.<br>Crtrm.:   6 |

2911-1004 / 1616042.1

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 15, 2020, at 2:00 p.m. or as soon thereafter as the matter may be heard, defendant Redbubble Inc. ("Redbubble") will move, and hereby moves, for Summary Judgment on Plaintiff Atari Interactive, Inc.'s ("Plaintiff's") Complaint, and for partial summary judgment on each claim therein, as well as on Redbubble's DMCA defense, Plaintiff's prayer for enhanced damages based on trademark counterfeiting, on Plaintiff's request for enhanced remedies due to willful infringement, and for any form of damages on any claim. This motion will be heard in the courtroom of the Honorable Jon S. Tigar, located in the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Courtroom 6.

This Motion is made upon the ground that there are no genuinely disputed issues of material fact, and Redbubble is entitled to judgment as a matter of law on each claim and issue on which it has moved, with the exception of the motion as it is directed to all forms of damages, which is made on upon the ground that Plaintiff has failed to provide any disclosure or meaningful discovery relating to its damages claim, and therefore must be precluded from making such disclosures or disclosing such evidence for the first time at trial.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Anuj Luthra, Arnaud Deshais, James Toy, Kate Rickert, and Kenneth Wilson filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated:  May 27, 2020.

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR
ZACHARY S DAVIDSON

By:  */s/ Kenneth B. Wilson*
         Kenneth B. Wilson
         Attorneys for Defendant
         Redbubble Inc.

Case No. 4:18-cv-03451-JST
DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

2911-1004 / 1616042.1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

    A.    Background of Defendant Redbubble ......................................................2

    B.    Redbubble Does Not Design or Upload Content Sold on the Marketplace ..............2

    C.    Redbubble Did Not Sell or Offer to Sell the Accused Products ................3

    D.    Redbubble Does Not Print, Package, Manufacture or Ship Products ........4

    E.    Redbubble's Substantial Efforts to Combat Piracy ..................................5

    F.    Background of This Dispute ......................................................................6

III.  ARGUMENT ......................................................................................................7

    A.    Trademark Infringement ...........................................................................7

        1.    Plaintiff Has Not Proven Direct Trademark Infringement..........8

        2.    Plaintiff Has Not Proven Contributory Trademark Infringement ........11

        3.    Plaintiff Has Not Proven Vicarious Trademark Infringement ........13

        4.    Plaintiff Cannot Establish Counterfeiting ................................15

        5.    Plaintiff Cannot Establish Likelihood of Confusion, Which Is an Element of All of Its Lanham Act Claims..................16

    B.    COPYRIGHT INFRINGEMENT ...........................................................17

        1.    Plaintiff Has Not Proven Infringement by Anyone....................17

        2.    Plaintiff Has Not Proven Direct Copyright Infringement ..........18

        3.    Plaintiff Cannot Establish Contributory Copyright Infringement..........19

        4.    Plaintiff Cannot Establish Vicarious Copyright Infringement ........20

        5.    Redbubble Is Protected by the DMCA Safe Harbor Provisions ........21

    C.    DAMAGES ..............................................................................................24

        1.    Plaintiff's Litigation Misconduct Precludes Damages................24

        2.    Plaintiff Cannot Establish Willful Infringement .......................25

IV.   CONCLUSION ..................................................................................................26

i    Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

2911-1004 / 1616042.1

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001)..................................................................................17, 19, 20

5

6

*Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,*
    2015 WL 5311085 (C.D. Cal. 2015) ........................................................................... 12, 13

7

*Align Tech., Inc. v. Strauss Diamond Insts., Inc.,*
    2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ............................................................ 15, 16

8

9

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)......................................................................................... 16, 17

10

*Antonick v. Electronic Arts, Inc.,*
    841 F. 3d 1062 (9th Cir. 2016) .............................................................................................. 18

11

12

*Arcona, Inc. v. Farmacy Beauty, LLC,*
    2019 WL 1260625 (C.D. Cal., Mar. 19, 2019) ............................................................... 15

13

*Bastidas v. Good Samaritan Hosp. LP,*
    2017 WL 1345604 (N.D. Cal. Apr. 12, 2017) ................................................................. 25

14

15

*BMG Rights Management LLC v. Cox Communications, Inc.,*
    881 F.3d 293 (4th Cir. 2018).................................................................................................. 19

16

*Brookfield Comms., Inc., v. West Coast Enter. Corp.,*
    174 F.3d 1036 (9th Cir. 1999)................................................................................................. 8

17

18

*Coach, Inc. v. Goodfellow,*
    717 F.3d 498 (6th Cir. 2013) ........................................................................................ 11, 13

19

*Columbia Pictures Industries, Inc. v. Fung,*
    710 F.3d 1020 (9th Cir. 2013) ............................................................................................. 23

20

*Corbis Corp. v. Amazon.com, Inc.,*
    351 F.Supp.2d 1090 (W.D. Wash. 2004) ...................................................................... 22, 23

21

22

*CoStar Group, Inc. v. LoopNet, Inc.,*
    373 F.3d 544 (4th Cir. 2004)........................................................................................... 18, 22

23

24

*Evergreen Safety Council v. RSA Network, Inc.,*
    697 F.3d 1221 (9th Cir. 2012)................................................................................................ 25

25

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
    76 F.3d 259 (9th Cir. 1996) ................................................................................................... 20

26

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    563 U.S. 754 (2011) ................................................................................................................ 12

27

28

ii

Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

2911-1004 / 1616042.1

*GMA Accessories, Inc. v. BOP, LLC*,
   765 F. Supp. 2d 457 (S.D.N.Y. 2011) ........................................................................ 9

*Gucci America, Inc. v. Frontline Processing Corp.*,
   721 F. Supp. 2d 228 (S.D.N.Y. 2010) ...................................................................... 14

*H-D U.S.A., LLC v. SunFrog, LLC*,
   311 F. Supp.3d 1000 (E.D. Wis. 2018) .................................................................... 10

*Hendrickson v. eBay, Inc.*,
   165 F. Supp. 2d 1082 (C.D. Cal. 2001) .................................................................... 23

*Hoffman v. Constr. Protective Servs., Inc.*,
   541 F.3d 1175 (9th Cir. 2008) .................................................................................. 24

*Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*,
   425 F.3d 708 (9th Cir. 2005) ............................................................................. 15, 16

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
   921 F.3d 803 (9th Cir. 2019) .................................................................................... 24

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2007) ...................................................................................... 8

*Kelly-Brown v. Winfrey*,
   2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) ............................................................ 14

*Ketab Corp. v. Mesriani Law Group*,
   2015 WL 2084469 (C.D. Cal. May 5, 2015) ........................................................... 15

*Lindy Pen Co. v. Bic Pen Corp.*,
   725 F.2d 1240 (9th Cir. 1984) .................................................................................. 17

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   985 F. Supp. 949 (C.D. Cal 1997) ..................................................................... 12, 13

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   591 F.Supp.2d 1098 (N.D. Cal. 2008) ..................................................................... 14

*LTTB, LLC v. Redbubble Inc.*,
   385 F. Supp. 3d 916 (N.D. Cal. 2019) ..................................................................... 25

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ................................................................................................. 19

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   2015 WL 4394673 (W.D. Wash. July 16, 2015) ............................................ 9, 10, 22

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   693 F. App'x 879 (Fed. Cir. 2017) ....................................................................... 9, 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ............................................................... 17, 19, 20, 21

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

2911-1004 / 1616042.1

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007)........................................................................... 8, 23

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F. 3d 657 (9th Cir. 2017)................................................................... 8, 18, 20

*Perfect 10, Inc. v. VISA International Service Ass'n*,
    494 F.3d 788 (9th Cir. 2007).................................................................. 13, 14, 19

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012)................................................................................ 16

*Rosetta Stone Ltd. v. Google, Inc.*,
    730 F.Supp.2d 531 (E.D. Va. 2010)....................................................................... 14

*Seiler v. Lucasfilm, Ltd.*,
    808 F. 2d 1316 (9th Cir. 1986).......................................................................... 17, 18

*Spy Phone Labs LLC v. Google Inc.*,
    2016 WL 1089267 (N.D. Cal. 2016)...................................................................... 12

*The Ohio State University v. Redbubble Inc.*,
    369 F. Supp. 3d 840 (S.D. Ohio 2019)............................................................. passim

*Tiffany Inc. v. eBay, Inc.*,
    600 F.3d 93 (2nd Cir. 2010)............................................................................. passim

*Tre Milano, LLC v. Amazon.com, Inc.*,
    No. B234753, 2012 WL 3594380 (Cal. App. 2012) ....................................... 9, 10

*U.S. v. Sine*,
    493 F.3d 1021 (9th Cir. 2007)................................................................................... 9

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013)......................................................................... 22, 23

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017)................................................................................. 18

*United Pac. Ins. Co. v. Idaho First Nat. Bank*,
    378 F.2d 62 (9th Cir. 1967).................................................................................... 15

*Venegas v. Global Aircraft Service, Inc.*,
    2016 WL 5349723 (D. Me. 2016)......................................................................... 10

*Ventura Content, Ltd. v. Motherless, Inc.*,
    885 F.3d 597 (9th Cir. 2018)................................................................................. 23

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019)......................................................................... passim

*Viacom International, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2nd Cir. 2012) ................................................................ 12, 20, 22, 23

Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

1    *Wolk v. Kodak Imaging Network, Inc.*,
        840 F. Supp. 2d 724 (S.D.N.Y. 2012) ........................................................ 18, 23

2

3    **STATUTES**

4    15 U.S.C. § 1114 .............................................................................................. 8

5    15 U.S.C. § 1116 .............................................................................................. 15

6    15 U.S.C. § 1127 .............................................................................................. 8

7    17 U.S.C. § 103 ............................................................................................... 18

8    17 U.S.C. § 106 ............................................................................................... 17

9    17 U.S.C. § 501 ............................................................................................... 17

10   17 U.S.C. § 512 .................................................................................... 1, 5, 21, 22

11   47 U.S.C. § 230(c)(1) ......................................................................................... 8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    <u>INTRODUCTION</u>

3       As a matter of law, Redbubble is not liable for trademark infringement, counterfeiting, or

4   copyright infringement when independent third-party sellers upload and sell allegedly infringing

5   products through Redbubble's online marketplace ("Accused Products"), without Redbubble's

6   knowledge or direct involvement. The issues raised in this case are significant; indeed, were

7   Plaintiff's legal theories adopted and online marketplaces liable for each of their millions of

8   listings, it could have a disastrous effect on the viability of businesses like the Amazon

9   Marketplace, Craigslist, eBay and Etsy. But the cases addressing liability for Internet marketplaces

10  in general, and Redbubble in particular, have overwhelmingly rejected Plaintiff's approach.

11      Plaintiff does not and cannot claim that Redbubble engages in any volitional conduct with

12  respect to any product offered through its marketplace, as required for direct copyright and

13  trademark infringement; indeed, one court has held that Redbubble cannot be liable for direct

14  trademark infringement because it does not make, offer, advertise or sell accused products. *See*

15  *The Ohio State University v. Redbubble Inc.,* 369 F. Supp. 3d 840 (S.D. Ohio 2019) (granting

16  summary judgment on direct trademark infringement and unfair competition). Redbubble cannot

17  be liable for contributory copyright or trademark infringement because it has uniformly removed

18  allegedly infringing listings promptly upon receiving notice. Redbubble cannot be vicariously

19  liable for infringement because it lacks the type of relationship with or control over the alleged

20  third-party infringers. Redbubble cannot be liable for copyright infringement damages because

21  Redbubble is entitled to the safe harbor protections of Section 512(c) of the Digital Millennium

22  Copyright Act ("DMCA"). And Redbubble cannot be liable for counterfeiting or willful

23  infringement for third-party sales of Accused Products 1) that Redbubble never handles or even

24  sees; 2) for which third-party sellers have represented that they own the relevant rights; and 3) that

25  are not copies of products on which Plaintiff uses its registered marks.

26      Redbubble agrees with Plaintiff that there are no genuinely disputed material facts, but

27  those facts entitle Redbubble, not Plaintiff, to judgment as a matter of law. Accordingly,

28  Redbubble's motion for summary judgment should be granted, and Plaintiff's motion denied.

## II.     STATEMENT OF FACTS

### A.     Background of Defendant Redbubble

Like the Amazon Marketplace, the Redbubble Marketplace is a global online platform, hosted at redbubble.com. [Toy Decl. Exh. A] Founded in 2006, and the wholly-owned subsidiary of a publicly traded Australian company, Redbubble was formed to "[g]ive independent artists a meaningful new way to sell their creations." [Toy Decl. Exhs. A-B] These artists use the Redbubble Marketplace to upload and sell their creative designs on high-quality, everyday products such as T-shirts, mugs, phone cases and stickers. [Toy Decl. Exh. A]

The Marketplace software automatically facilitates transactions. It software automatically connects third-party artists or "Sellers" to third-party manufacturers, who print and pack the products for third-party shippers to deliver to customers, and provides those Sellers with access to third-party payment processors. [*See* Luthra Decl. ¶¶ 3, 8, 11-12; Deshais Decl. ¶¶ 2-6] This transaction process is entirely Seller-directed and automated. [Luthra Decl. ¶¶ 3, 11-12] No Redbubble personnel designed, uploaded, manufactured, offered for sale, sold, handled, distributed, advertised, or even viewed any of the Accused Products prior to their sale. [Deshais Decl. ¶ 11] Currently, there roughly 2,260,000 third-party Sellers, who have uploaded 28,364,660 product listings to the Redbubble Marketplace. [Rickert Decl. ¶¶ 2-3]

### B.     Redbubble Does Not Design or Upload Content Sold on the Marketplace

Redbubble did not design or upload any of the Accused Products. Rather, all listings on the Redbubble Marketplace are designed and uploaded solely by third-party Sellers, without any participation by Redbubble. [Luthra Decl. ¶¶ 6-8; Deshais Decl. ¶¶ 9-11] Redbubble was unaware of the content of those listings and was not involved in the Sellers' decisions to offer them. [*Id.*]

Only registered users can upload and sell creative products on the Redbubble Marketplace. [Luthra Decl. ¶ 4] To register, users must agree to the Redbubble User Agreement and policies that explicitly require that Sellers possess the rights to upload and sell the work, and that the Seller, not Redbubble, is responsible for and has exclusive control over the content of each listing. [Toy Decl. ¶ 5, Exh. C] Each time Sellers create a listing, they must specify the physical product type(s) to which it may be applied; must set the sale price; may also input a title, keyword "tags,"

1    and a description; and must explicitly confirm that they "have the right to sell products containing

2    this artwork, including (1) any featured company's name or logo, (2) any featured person's name

3    or face, and (3) any featured words or images created by someone else." [Luthra Decl. ¶¶ 5-6]

4          Sellers input the required data into the template to create a page that displays information

5    specific to their product listing, along with certain generic text and images that are automatically

6    generated by the software. [Toy Decl. ¶ 31] The Seller-created page displays the image uploaded

7    by the user on a stock image based on the product type specified by the Seller, without regard to

8    the specific design used, and without any knowledge or involvement by Redbubble. [*Id.*]

9          Once the Seller creates the Marketplace listing page, it is automatically displayed for sale

10   among the millions of product listings on the Marketplace. [Luthra Decl. ¶ 8; Deshais Decl. ¶ 11]

11   Potential customers may search for listings containing content of interest based on the keyword

12   tags and title, which are created solely by the uploading Seller – not Redbubble. [Luthra Decl. ¶ 7]

13         **C.       Redbubble Did Not Sell or Offer to Sell the Accused Products**

14         The agreements between Redbubble and Sellers specify that the Sellers, not Redbubble,

15   offer and sell products. Redbubble's User Agreement describes how the Marketplace enables

16   Sellers "to publish, sell, discuss and purchase art;" includes a section entitled "Offering your art

17   for sale on a physical product" that describes how a Seller "may offer their art for sale on a

18   physical product on the website by appointing Redbubble to facilitate the transaction….;" and

19   refers to Sellers, not Redbubble, offering products for "sale." [Toy Decl. Exh. C] Sellers

20   acknowledge that they "wish to use Redbubble's services to facilitate marketing and sale of [their]

21   art on a physical product….;" agree in a section entitled "Sale of your products" that they

22   determine the product price; and expressly confirm they are "the seller of the merchandise." [*Id.*]

23         The listing pages further confirm that the products sold via the Marketplace are offered by

24   third-party Sellers, not Redbubble. The search results pages specify that each listing is "by" or

25   "designed by" the third-party Seller, and each listing page identifies the third-party Seller both

26   below and to the right of the image, followed by a selection of the seller's other listings, if any,

27   and a link to "[Seller's] Shop."[1] [Toy Decl. ¶¶ 31-32, Exhs. F-G]

28

[1] Plaintiff cut off the lower part of  the page from its purported "reproduction" of a Redbubble

1   The Marketplace software allows third-party processors like PayPal, Stripe, or Amazon

2   Payments to receive payment from customers. [Luthra Decl. ¶ 11] The software automatically

3   credits the Seller-established margin to the Seller's account, less Redbubble's fixed service fee,

4   which varies by product type but is independent of the Seller's price.[2] [*Id.*; Toy Decl. ¶ 28]

5       Redbubble never took control of or title to the Accused Products. Rather, as specified at

6   Section 3.5 of Redbubble's Services Agreement, "[a]ll items purchased from the website are

7   manufactured pursuant to arrangements with third party suppliers under [Seller's] instructions.

8   This means that title and risk for loss for such items pass from [Seller] to the customer/purchaser

9   without passing through [Redbubble]." [Toy Decl. Exh. C]

10  **D.      Redbubble Does Not Print, Package, Manufacture or Ship Products**

11      Once an order is placed, the Marketplace software automatically forwards the order

12  information on behalf of the Seller to a third-party Manufacturer based on criteria like the delivery

13  location and product type. [Luthra Decl. ¶ 12] These Manufacturers are independent of

14  Redbubble; they are not affiliates of Redbubble, and Redbubble neither owns the manufacturing

15  facilities or equipment nor employs any of the personnel. [Deshais Decl. ¶¶ 4-5, 11]

16      Upon receipt of an order, the Manufacturer imprints the design onto a blank product from

17  the Manufacturer's own inventory, without any input or involvement from Redbubble. [Deshais

18  Decl. ¶ 2] Redbubble personnel do not review artwork prior to printing, participate in

19  manufacturing, pack or ship printed products, or perform pre-shipment quality control. [Deshais

20  Decl. ¶ 11] After a product is printed, a third-party shipper picks it up and ships the product

21  directly to the customer. [Deshais Decl. ¶ 6] At all relevant times, the product remains with third-

22  parties; Redbubble does not possess, handle, or even see the products. [Deshais Decl. ¶¶ 7, 9, 11]

23

24  listing page [Motion p. 7], as that image omits the name of the seller that appears below the
    "Features" box; additional listings by the same Seller; the link to "View [Seller's] Shop;" and the

25  Seller-input tags near the bottom of the page. [*See, e.g.,* Toy Decl. ¶¶ 31, 33, Exh. I]
    [2] Plaintiff falsely asserts, with no evidentiary support, that Redbubble "keeps a much larger

26  amount " than the third-part fulfillers and Sellers receive. [Plaintiff's Motion at 3] Redbubble
    receives a set fee for providing its facilitation services, which is averages out to be about the same

27  amount as the fulfiller's fee. [*See* Rickert Decl. Exhs. A-B] Sellers set their own price or margin,
    and therefore keep as much as profit as they choose. [Luthra Decl. ¶ 6]

28

1   When an order is placed and paid in full, the purchaser receives an automated confirming

2   email generated automatically by the Marketplace software containing a summary of the order,

3   including the Seller's name for each product sold, asking for feedback to the Seller "artists," and

4   providing comments from the Seller (such as "Thank You").[3] [Dkt. 64-77] This email is

5   substantively the same as confirming emails sent by other marketplaces. [Wilson Decl. Exhs. D-E]

6   **E.      Redbubble's Substantial Efforts to Combat Piracy**

7   There is a risk that bad actors will abuse any marketplace, including by attempting to sell

8   unauthorized or counterfeit products. However, Redbubble has taken significant steps, in excess of

9   its legal obligations, to prevent such abuses, and has devoted substantial resources toward

10   eliminating third-party infringement on the Marketplace. [Toy Decl. ¶¶ 8-24]

11   As discussed above, Redbubble requires Sellers to represent that they own and/or have the

12   right to sell the content that they upload and "will not infringe the intellectual property rights or

13   any other rights of any person or entity," when they register as users and every time they upload

14   listings. [Toy Decl. Exh. C; Luthra Decl. ¶ 5] Redbubble enforces these commitments in

15   accordance with a detailed IP/Publicity Rights Policy. [Toy Decl. ¶ 6, Exh. D] Under that policy,

16   modeled on the DMCA (17 U.S.C. § 512), if Redbubble receives notice that particular listings

17   infringe a third-party's intellectual property rights, Redbubble promptly (typically within one

18   business day) removes those listings and notifies the Seller. Redbubble will also "disable and/or

19   terminate … users who repeatedly infringe or are … charged with infringing the copyrights,

20   trademark rights, other intellectual property rights or publicity rights of others." [Toy Decl. ¶¶ 6-7,

21   Exh. D] Redbubble has received over 94,500 takedown requests from content owners, and

22   pursuant to those requests, Redbubble has removed more than 780,000 listings. [Rickert Decl. ¶ 4]

23   In addition, although it has no legal obligation to do so, Redbubble's 13-person

24   Marketplace Integrity ("MPI") Team proactively polices for potential infringement of rights

25   belonging to Plaintiff and over 300 other content owners, including some of the largest in the

26   world. [Toy Decl. ¶ 24] The MPI Team uses proprietary software tools to search listings,

27

28   [3] As with the image of the product listing page, Plaintiff's "reproduction" of the confirmation in its
brief cuts off the lower portions of the page referring to the Seller.

comparing Seller-generated titles, tags, and descriptions to identifying information provided by content owners.[4] [Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 10] The MPI Team manually reviews identified search results, including images of artwork, to determine whether a listing violates policing guidelines created by Redbubble, typically with content owner assistance. [Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 12-18] The MPI Team then promptly removes or prevents any listing that violates the guidelines from appearing on the site proactively and without receiving a specific takedown notice from the rightsholder. [*Id.*] The third-party Seller is automatically notified upon removal and is otherwise treated in accordance with the IP/Publicity Rights Policy. [Toy Decl. ¶ 15] Redbubble also uses a combination of proprietary and third-party software to identify high-volume or repeated abusers of the User Agreement. [Toy Decl. ¶ 19-23] When these tools identify high-risk behavior or characteristics, they may automatically disable the account and remove it from the Marketplace or put it on a watch list to by monitored by the MPI Team. [*Id.* ¶ 22-23]

Redbubble's MPI team proactively policies for about 2,300 individual properties, and on an average day, reviews over 6,700 new designs – about one-quarter of those uploaded that day. [Toy Decl. ¶ 24; Rickert Decl. ¶ 6] To date, proactive policing has resulted in the disabling or removal of nearly four million listings from the Redbubble Marketplace. [Rickert Decl. ¶ 9] And Redbubble has disabled and/or terminated almost 680,000 Seller accounts for violation of Redbubble policies, including its IP/Publicity Rights Policy. [*Id.* ¶ 10] Redbubble has disabled or removed approximately 670 listings under its proactive removal guidelines for Atari. [Rickert Decl. ¶ 8]

## F.   Background of This Dispute

Plaintiff claims to have obtained copyrights – in video games and visual elements thereof, including Centipede, Asteroids, Pong, and Breakout – and trademark rights – including the Atari name and logo, the Centipede, Asteroids, Pong, and Breakout names and graphics, and the look and feel of the Atari 2600 gear – as well as its corporate name, from the eponymous company that created them. Plaintiff holds federal registrations for marks, including a design mark with the Atari name and a word mark "Pong." In December, 2011, Plaintiff sent a takedown notice for a single

---

[4] When a content owner, like Plaintiff, does not collaborate with Redbubble by providing a complete list of what it believes its protected content is – logos, trademarks, characters, etc. – Redbubble must use its best judgment as to what terms to use. [Toy Decl. ¶ 11]

Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

1  listing that allegedly used visual elements of the Asteroids game. Redbubble removed the listing

2  that day and notified Plaintiff accordingly. [Toy Decl. Exh. E] On June 11, 2018, over six years

3  after its last communication, Plaintiff filed its Complaint in this action, asserting claims for direct,

4  contributory and vicarious trademark infringement, trademark counterfeiting, unfair competition,

5  false designation of origin, and direct, contributory and vicarious copyright infringement. [Dkt. 1]

6      Upon receiving notice of the Complaint, Redbubble disabled all of the listings it identified.

7  [Toy Decl. ¶ 26] Redbubble also began and continues proactively policing for Plaintiff's content,

8  although Plaintiff's refusal to cooperate in these efforts to date makes that more difficult. [Toy

9  Decl. ¶ 27] Nonetheless, Redbubble's policing efforts are empirically successful: since inception

10  of suit, there have been less than $1000 in sales of products removed due to Atari IP concerns, the

11  vast majority of which are not even arguably infringing. [*See* Rickert Decl. Exh. B, lines 3623-

12  4000] Total sales through the Redbubble Marketplace of listings that Redbubble has removed in

13  response to Atari's specific IP complaints have been about $42,000, and Redbubble's service fees

14  from those transactions total under $20,000. [Rickert Decl. Exh. A][5]

15  **III.   ARGUMENT**

16       **A.   Trademark Infringement**

17      Because Redbubble has not itself made *any* "use," let alone a potentially infringing

18  trademark use, of the marks at issue, Plaintiff cannot prevail on direct liability. Because every time

19  Plaintiff notified Redbubble of specific alleged infringements, Redbubble promptly removed the

20  identified listings and flagged the Sellers in accordance with Redbubble's repeat infringer policy,

21  Plaintiff cannot prove contributory infringement. And Redbubble lacks the type of relationship

22  with or control over third-party Sellers and/or fulfillers to subject Redbubble to liability for

23  vicarious trademark infringement. Moreover, because none of the Accused Products are exact

24  copies of products listed in Plaintiff's trademark registrations on which Plaintiff uses its registered

25  marks, they cannot be "counterfeits" as a matter of law. This issue is paramount, since Plaintiff's

26  multi-million-dollar statutory damages claim depends on a finding of counterfeiting; with that

27

28  [5] Redbubble's reports are expressed in Australian dollars, which have been converted to USD for purposes of this brief at today's exchange rate.

1  issue gone, this case is worth at most $20,000. [Rickert Decl. Exh. A] (Redbubble objects to

2  Plaintiff's citation to Toy Depo. Exh. 1049 as hearsay and lacking foundation.)

3  ### 1.  **Plaintiff Has Not Proven Direct Trademark Infringement**

4  To prevail on direct infringement, Plaintiff must demonstrate that Redbubble made an

5  affirmative "use" of a mark "in connection with the sale, offering for sale, distribution or

6  advertising" of the Accused Products. 15 U.S.C. § 1114(1).[6] This "use" requirement covers

7  offering, selling or manufacturing products bearing infringing marks, or applying infringing marks

8  to advertising materials (15 U.S.C. § 1127); those who just facilitate or enable "use" of infringing

9  marks cannot directly infringe. *See Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2nd Cir. 2010).

10  This Circuit has held that direct copyright infringement "requires 'volitional conduct,'"

11  noting "the unremarkable proposition that proximate causation historically underlines copyright

12  infringement liability no less than other torts." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657,

13  666 (9th Cir. 2017). A plaintiff "must provide some 'evidence showing [the defendant] exercised

14  control (other than by general operation of [its website]); selected any material for upload,

15  download, transmission, or storage; or instigated any copying, storage, or distribution." *VHT, Inc.*

16  *v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) Trademark infringement, like copyright

17  infringement, is a tort that is implicitly subject to the same "volitional conduct" requirement.

18  Plaintiff cannot show that Redbubble "used" Plaintiff's registered trademarks. Third-party

19  manufacturers, not Redbubble, made the Accused Products. [Deshais Decl. ¶¶ 2-11] Third-party

20  shippers, not Redbubble, delivered the Accused Products. [*Id.* ¶¶ 3, 11] Third-party Sellers, not

21  Redbubble, offered or sold Accused Products by uploading and listing the products and conveying

22  title to the purchasers. [Luthra Decl. ¶¶ 4-8; Toy Decl. ¶ 5, Exh. C] Third-party Sellers, not

23  Redbubble, placed marks on "advertisements" for Accused Products by creating the web page

24  listings, and third-party ad platforms (like Google), not Redbubble, selected and placed content

25  ---

[6] Plaintiff's false designation of origin and unfair competitions claims incorporate the allegations
26  of and are essentially the same as its direct trademark infringement claim. *See Brookfield Comms., Inc., v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046–47 n.8 (9th Cir. 1999). Its unfair
27  competition claim is also barred by 47 U.S.C. § 230(c)(1). *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (granting summary judgment of no unfair competition). Similarly,
28  like direct infringement, dilution requires a showing that the defendant is using the mark in commerce. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007).

1   into blank advertising space purchased by Redbubble.[7] [Deshais Decl. ¶¶ 4-8; Toy Decl. ¶ 36]

2       In *Ohio State v. Redbubble,* 369 F. Supp. 3d 840, the district court[8] granted summary

3   judgment that Redbubble does not sell products or otherwise engage in conduct that could qualify

4   as direct infringement. The court noted that, unlike print-on-demand companies like CafePress and

5   SunFrog that print and sell the products offered via their website, "Redbubble essentially offers to

6   'independent artists' an online platform through which to sell their goods…. Redbubble is not

7   directly producing the goods." *Id.* at 846. Instead, the district court analogized Redbubble's

8   business model to the Amazon Marketplace, which "has generally not been found directly liable

9   for direct … infringement because it merely facilitates sales between other parties." *Id.* at 844.

10      Cases assessing direct infringement liability for other online marketplaces or transactional

11  intermediaries have similarly held them immune because they do not sell or otherwise "use" the

12  marks in question. *See, e.g.*, *Tiffany*, 600 F. 3d at 103 (no direct infringement without possession

13  of items or direct sale to customers); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673

14  (W.D. Wash. July 16, 2015) (*Milo & Gabby I*), *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) (*Milo &

15  Gabby II*) (no direct infringement based on sale of products listed by third parties); *Tre Milano,

16  LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012) ("'parties [who] act

17  as intermediaries … and do not buy and resell the commodities' … are not directly liable for

18  infringement"); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011)

19  ("When parties act as intermediaries…, no sale between them has occurred"). Indeed, Plaintiff has

20  not cited, and Redbubble is unaware of, any case where an online marketplace that neither makes

21  nor sells allegedly infringing products has been held liable for *direct* trademark infringement.

22

23  [7] Redbubble *facilitates* advertising on behalf of artists by connecting its platform to third party ad
24  platforms (like Google) through APIs/product feeds but does not itself select or use the content
    displayed in those third-party ads. [Toy Decl. ¶ 33-36]
25  [8] Although *Ohio State* is clearly the most pertinent authority on direct infringement, Plaintiff
    relegates its discussion to a footnote that asserts baldly that the decision was "made without the
26  benefit of the evidence concerning Redbubble's operations that is before this Court." [Mot. at 15 n. 2]
    Instead, Plaintiff repeatedly relies on two Australian trial court decisions involving Redbubble, which
27  obviously utilized different legal procedures and standards. These decisions are inadmissible hearsay
    and irrelevant, and therefore should be disregarded. *U.S. v. Sine*, 493 F.3d 1021, 1036 (9th Cir.
28  2007) (foreign judgments and findings are inadmissible under both the hearsay provisions of FRE
    801 and because any probative value is outweighed by the prejudicial effect under FRE 403).

1    Instead of addressing these cases, Brandy Melville points to *H-D U.S.A., LLC v. SunFrog,*

2  *LLC*, 311 F. Supp.3d 1000, 1030 (E.D. Wis. 2018), falsely asserting that "SunFrog offers a similar

3  platform to Redbubble." [Mot. At 17] However, unlike Redbubble, "SunFrog advertises and sells

4  infringing products, operates printers that print the products, packs them for shipping, ships them,

5  and then processes payment." 311 F. Supp.3d at 1036. Redbubble does ***none*** of these things.

6  Indeed, the *Ohio State* court distinguished *SunFrog* on precisely this basis. 369 F. Supp. 3d at 846.

7    Plaintiff argues that Redbubble is directly liable as a "seller" under the UCC, yet ignores

8  controlling Section 2106, which defines a "sale" as "the passing of title from the seller to the buyer

9  for a price." Courts considering copyright and trademark cases have consistently held that a

10  "seller" must hold title; Redbubble never does. *See, e.g.*, *Milo & Gabby II*, 693 F. App'x at 886

11  (Amazon wasn't seller of products listed by third-parties; it "never held title to the accused

12  products" and "did not control … information or pictures … nor … price"); *Milo & Gabby I,* 2015

13  WL 4394673 at *6 ("Amazon was not the seller" where "third-party sellers retain full title to and

14  ownership"); *see also Tre Milano*, 2012 WL 3594380 at *12 (Amazon is not liable for direct

15  trademark infringement because "Amazon is a service provider, not the seller").

16    Plaintiff separately asserts, without case law support, that Redbubble "conceded its role as

17  a seller" by "collecting and remitting sales tax to the State of California." But facilitation of tax

18  collection for Marketplace transactions does not admit anything; the laws in many states,

19  including California, require "marketplace facilitators" like Redbubble to "calculate, collect, and

20  remit sales tax on behalf of sellers." *See* Cal. SB 92. California's statutory scheme expressly

21  distinguishes a marketplace facilitator from a "marketplace seller"; the facilitator "is considered

22  the seller and retailer for each sale facilitated through its marketplace" for sales tax purposes only.

23  *Id.* Thus, Plaintiff's repeated and misleading efforts to distort "admissions" that Redbubble is a

24  "seller" for sales tax purposes, and statements by Redbubble's parent that Redbubble is a

25  "principal" under Australian law "for accounting purposes only," should be disregarded.[9]

26  _____

27  [9] The purported "admissions" in Redbubble's Australian parent company's annual reports and
elsewhere are also inadmissible hearsay. *See Venegas v. Global Aircraft Service, Inc.*, 2016 WL
5349723 at *3 n. 4 (D. Me. 2016) ("to attribute statements of a corporate parent to a subsidiary

28  based on an agency theory, the Plaintiffs … must show that [the parent] was [the subsidiary]'s
agent and that the statements were made within the scope of their agency relationship").

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

1  Plaintiff's argument that Redbubble "advertises and offers for sale" products is without

2  merit, and was properly rejected by the Court in *Ohio State*. As confirmed here [*e.g.*, Deshais

3  Decl. ¶¶ 9, 11], "this argument ignores the fact that Redbubble is not the one placing Ohio State's

4  marks on its website. Rather, the marks are uploaded by the independent artists." 369 F. Supp. 3d

5  at 847. Indeed, because Redbubble never takes title, the products aren't Redbubble's to sell.

6  Plaintiff claims that Redbubble is directly liable because it "affixes designs uploaded by its

7  users to its model images and creates product listing pages with the new combined images," but

8  offers no evidence that ***Redbubble*** performs these acts. Rather, the Sellers "affix" their own

9  designs to blank generic product images provided by Redbubble. Sellers create listings; Redbubble

10  merely provides a container template for them to fill. Plaintiff's argument that Redbubble

11  advertises Accused Products on third-party sites is equally meritless. Redbubble merely purchases

12  "advertising ***space***," without designating what goes in it. [Toy Decl. ¶ 36] Redbubble does not

13  itself designate, or even have knowledge of the content of, the advertisements that third-party ad

14  platforms insert. [Toy Decl. ¶¶ 33-36] Plaintiff's claim that Redbubble is "contractually obligated

15  to advertise" is particularly misleading. Redbubble's Services Agreement, quoted by Plaintiff,

16  makes clear that Redbubble will "market to," not advertise to, customers. The Marketplace allows

17  broad access to products created, uploaded, and priced by Sellers, and to which Sellers attach

18  advertising or marketing keywords to make them easier to find. There is no authority to support

19  Plaintiff's claim that this clause can serve as a basis for a finding of direct infringement.

20  Finally, Plaintiff erroneously argues that Redbubble is directly liable because it "enables"

21  transactions, "facilitates" revenue payable to the artists, "instructs" the third-party manufacturers,

22  or "arranges" delivery of products by third-party shippers. Even if were these claims factually

23  supported, "facilitating" infringement may constitute *contributory* infringement, but not direct.

24  *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) (distinguishing direct from

25  contributory liability, which is "imposed on those who facilitate the infringement"); *Tiffany*, 600

26  F.3d at 103 ("contributory infringement [requires] culpably facilitating the infringing conduct").

27  ### 2.   Plaintiff Has Not Proven Contributory Trademark Infringement

28  To prevail on contributory trademark infringement, Plaintiff must prove that Redbubble

1    had "more than a general knowledge or reason to know that its service is being used to sell

2    counterfeit goods. Some contemporary knowledge of which particular listings are infringing or

3    will infringe in the future is necessary." *Tiffany*, 600 F.3d at 107-09 (granting summary judgment

4    even though infringing listings continued to appear after thousands of infringement notices). *See*

5    *also Spy Phone Labs LLC v. Google Inc.*, 2016 WL 1089267 (N.D. Cal. 2016) (applying *Tiffany*

6    analysis); *Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.* ("*AMPAS*")*,* 2015 WL

7    5311085 (C.D. Cal. 2015) (same). A notice letter "is not sufficient to impute knowledge of

8    infringement," and "use of an identical or similar mark does not necessarily constitute

9    infringement" because marks can be used in ways that create no confusion. *Lockheed Martin*

10   *Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997); *Spy Phone Labs* (no

11   liability for content specifically identified in notice absent certainty it infringed).[10]

12         The undisputed evidence shows that Redbubble removed listings for the Accused Products

13   promptly every time it received notice of claimed infringement. [Toy Decl. ¶ 26; Rickert Decl.

14   Exh. A] Plaintiff argues that Redbubble is liable nonetheless, because it is "willfully blind" to

15   infringement. But a "willfully blind" defendant "must (1) subjectively believe that there is a high

16   probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." *Global-*

17   *Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). And like knowledge of infringement,

18   "willful blindness" applies only with respect to "specific instances of infringement." *Viacom*

19   *International, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2nd Cir. 2012). Redbubble expends significant

20   resources to prevent infringement through proactive policing. [Toy Decl. ¶¶ 9-23; Rickert Decl.

21   ¶¶ 5-6, 8-10] And there is no evidence that Redbubble believed that there were ***specific instances***

22   ***of infringement*** of Atari's rights, yet deliberately avoided learning of them.

23         Despite these efforts, Plaintiff complains that Redbubble will "only address specific

24   infringements for which Redbubble has already received a complaint," and that "this is the

25   definition of willful blindness." Even if Plaintiff's characterization of Redbubble's activities were

26   accurate (the Toy and Rickert Declarations demonstrate that it is not), *Tiffany* confirms that cannot

27

28   ────────────────────────────
     [10] This legal principle also undermines Plaintiff's complaint at page 12 that Redbubble failed to
     disable the ability of users to use the word "Atari" as a search term or keyword.

1    qualify as willful blindness; eBay admittedly "knew as a general matter that counterfeit Tiffany

2    products were listed and sold through its website," but its failure to search for and remove them

3    was "insufficient to trigger liability." 600 F.3d at 109-10. Indeed, no authority suggests that a

4    defendant who proactively polices may be deemed willfully blind simply because a plaintiff

5    deems the results imperfect; to the contrary, courts consistently deny contributory liability for

6    "failing to do the policing work that [plaintiff] was required (and in the better position) to do

7    itself." *AMPAS*, 2015 WL 5311085 at *48; *see also Lockheed Martin*, 985 F. Supp. at 966

8    (defendant "has no affirmative duty to police the Internet in search of potentially infringing uses").

9        Finally, Plaintiff's claim that Redbubble admitted contributory infringement during the

10   *Ohio State* appellate hearing, where contributory infringement was not even at issue, is frivolous.

11   Ohio State had alleged that Redbubble was liable for direct infringement only, disclaiming

12   contributory infringement. At the hearing, Redbubble's counsel simply defended the grant of

13   summary judgment by noting, as had *Coach* and *Tiffany*, that **to the extent** facilitating infringing

14   conduct may give rise to a claim, that claim is for contributory, not direct, infringement. While

15   Redbubble acknowledged that it facilitates Marketplace transactions, there was no admission that

16   Redbubble also had the "contemporary knowledge of which particular listings are infringing or

17   will infringe in the future" needed for contributory infringement even in that case, let alone here,

18   which involves different marks and no notice provided in the seven years before suit was filed.

19   Plaintiff's claim to the contrary is baseless and should be disregarded.

20            **3.    Plaintiff Has Not Proven Vicarious Trademark Infringement**

21       To prevail on vicarious trademark infringement, Plaintiff must establish "that the

22   defendant and the infringer have an apparent or actual partnership, have authority to bind one

23   another in transactions with third parties or exercise joint ownership or control over the infringing

24   product." *Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir.

25   2007) (citations omitted). Plaintiff has offered no evidence that Redbubble is a partner with any

26   alleged direct infringer. [Deshais Decl. ¶¶ 4, 11; Toy Decl. ¶ 29] "To demonstrate the existence of

27   a partnership, a plaintiff must prove …: (1) the parties' sharing of profits and losses; (2) the

28   parties' joint control and management of the business; (3) the contribution by each party of

1  property, financial resources, effort, skill, or knowledge to the business; and (4) the parties'

2  intention to be partners." *Kelly-Brown v. Winfrey*, 2012 WL 701262, at \*7 (S.D.N.Y. Mar. 6,

3  2012), *aff'd in relevant part*, 717 F.3d 295 (2d Cir. 2013). Plaintiff has not done so.

4       Whether Redbubble or its parent company's employees may have occasionally said that

5  Redbubble "partners" with fulfillers is irrelevant. "Partner" is commonly used colloquially, and

6  "simply 'calling an organization a partnership does not make it one.'" *Kelly I*, 2012 WL 701262,

7  at \*7. Thus, "off-hand references to [third-parties like customers] as 'partners' [are] insufficient to

8  exhibit the type of behavior and relationship that can be considered an actual or apparent

9  partnership" for purposes of establishing vicarious liability. *Louis Vuitton Malletier, S.A. v.*

10  *Akanoc Solutions, Inc.*, 591 F.Supp.2d 1098, 1113 (N.D. Cal. 2008); *see also Gucci America, Inc.*

11  *v. Frontline Processing Corp.,* 721 F. Supp. 2d 228 (S.D.N.Y. 2010) ("vague, puffery-like

12  references to a 'partnership' … are not enough to support vicarious liability").

13       Plaintiff asserts without support that defining the universe of product types that Sellers can

14  offer through the Marketplace or visiting manufacturers to assess their general quality exercises

15  "joint control" over products.[11] But this merely establishes that Redbubble has a role in defining

16  the scope of the Marketplace and its participants. It does not prove "joint control" over the

17  "appearance and content" of the Accused Products. *See Rosetta Stone Ltd. v. Google, Inc.*, 730

18  F.Supp.2d 531, 550 (E.D. Va. 2010), *aff'd in relevant part,* 676 F.3d 144, 165 (4th Cir. 2012) (no

19  vicarious liability absent proof that Google "controls the appearance and content" of infringing

20  products or use of marks in those products); *Perfect 10, supra* (that direct infringers "operate their

21  businesses according to defendants' rules and regulations and defendants share the profits,

22  transaction by transaction," is insufficient to state a claim for vicarious infringement).

23       Finally, Plaintiff argues that "[i]f Redbubble's printers are the sellers, Redbubble binds

24  them in transactions." But Redbubble has never contended that the fulfillers are sellers; rather, as

25  set forth above, the third-party users who design and upload the products are. Nor is it the case (as

26  Plaintiff claims) that "once customers pay Redbubble they are entitled to performance from

27

28  [11] Plaintiff's claim at p. 20 that Redbubble performs "quality control" or "directs its shippers how to package and ship the products" is unsupported by the evidence Plaintiff cites, and illustrates the liberties that Plaintiff has taken with the truth in characterizing evidence throughout its papers.

Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

1  someone." To the contrary, both Redbubble and the fulfillers separately and independently have

2  the right to refuse an order, and they have exercised those rights. [Toy Decl. ¶ 30]

3                    **4.    <u>Plaintiff Cannot Establish Counterfeiting</u>**

4          Plaintiff cannot establish counterfeiting. A "counterfeit is something that purports to be

5  something that it is not." *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir.

6  1967) (citations omitted). Thus, to prevail on a counterfeiting claim, a plaintiff must prove that

7  "(1) [defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was

8  counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its

9  use was likely to confuse or deceive." *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425

10  F.3d 708, 721 (9th Cir. 2005); *Align Tech., Inc. v. Strauss Diamond Insts., Inc.*, 2019 WL 1586776,

11  at *11 (N.D. Cal. Apr. 12, 2019) (citations omitted) ("counterfeiting is the 'hard core' or 'first

12  degree' of trademark infringement that seeks to trick the consumer into believing he or she is

13  getting the genuine article, rather than a 'colorable imitation'").

14          Because "a claim for 'counterfeiting' under the Lanham Act must, by necessity, first

15  establish a claim of trademark infringement," Plaintiff's claim fails for the reasons set forth above.

16  *See Ketab Corp. v. Mesriani Law Group*, 2015 WL 2084469, at *3 n. 6 (C.D. Cal. May 5, 2015).

17  Counterfeiting also requires a showing that defendant used an "identical or substantially

18  indistinguishable" copy of a mark that is "registered on the principal register … for such goods or

19  services sold, offered for sale, or distributed and that is in use." 15 U.S.C. § 1116(d)(1)(B)(i). A

20  counterfeit must also be a "stitch for stitch copy" of plaintiff's own products when viewed in the

21  marketplace (considering such factors as surrounding packaging and any house labels), such that a

22  consumer "would be tricked into believing that the [Accused P]roduct is actually one of Plaintiff's

23  [] products." *Arcona, Inc. v. Farmacy Beauty, LLC*, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar.

24  19, 2019) (granting summary judgment of no counterfeiting). *see also Align, supra.*

25          Plaintiff has asserted that Redbubble counterfeited the Atari Mark, but the registration

26  certificate expressly limits that mark to "the word 'Atari' with a Fuji design above the word ***within***

27  ***a box***." [DE# 64-7, Chesnais Exh. A] Neither Plaintiff's own shirts nor the Accused Products

28  depict "a box." Without an "identical" copy of the registered mark, they are not "counterfeits." *See*

                                            15                    Case No. 4:18-cv-03451-JST

1    *Align, supra* at *11. Similarly, Plaintiff has offered evidence of products using the word PONG in

2    the phrase "PONG LEGEND," with a yellow, orange and red design, the Atari logo (not within a

3    box), and the phrase "I GOT SKILLS." [DE# 64-56, Cuellar Exh. N] No Accused Product is a

4    stitch for stitch copy of this product, and they therefore cannot be counterfeits. *Id.*

5          Finally, Plaintiff cannot demonstrate that Redbubble "intentionally used a counterfeit mark

6    in commerce knowing the mark was counterfeit." *Idaho, supra*. To the contrary, Redbubble is

7    unaware of specific designs uploaded and listed for sale by Sellers, including specifically the

8    designs for the Accused Products, absent notice. [*See* Deshais Decl. ¶ 11] Redbubble didn't make

9    the Accused Products, or even see those products during the manufacturing, sale and shipping

10   process. [*Id.*] When Plaintiff asserted that specific listings infringed its rights, Redbubble promptly

11   removed them. [Toy Decl. ¶ 2\69] And Redbubble proactively prevented listings that Plaintiff

12   might consider infringing from being offered. [Toy Decl. ¶¶ 8-23] There is no evidence to infer

13   that Redbubble knowingly or intentionally used any mark, let alone a counterfeit mark, or that it

14   did so knowing that the mark was counterfeit.

15          5.    **Plaintiff Cannot Establish Likelihood of Confusion, Which Is an**

16                **Element of All of Its Lanham Act Claims**

17          To prevail on its trademark claims, Plaintiff must also show that Redbubble's use of the

18   two marks at issue causes a likelihood of confusion. Likelihood of confusion is usually analyzed

19   using the *AMF, Inc. v. Sleekcraft Boats* factors: "(1) strength of the mark; (2) proximity of the

20   goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used;

21   (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's

22   intent in selecting the mark; and (8) likelihood of expansion of the product lines." 599 F.2d 341,

23   348-49 (9th Cir. 1979). Plaintiff attempts to avoid its burden under *Sleekcraft* by arguing that

24   Redbubble is a counterfeiter, but counterfeiting is inapplicable here.

25          "Given the open-ended nature of [*Sleekcraft*],… summary judgment on 'likelihood of

26   confusion' grounds is generally disfavored." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d

27   1190, 1210 (9th Cir. 2012). Yet Plaintiff offers no evidence or argument on any *Sleekcraft* factor,

28   effectively conceding that it cannot meet its burden. Plaintiff's response to Interrogatory No. 4

1   expressly admits that it "is not … aware of any instances of actual confusion." (Wilson Decl. Exh.

2   G at 5.) And leaving aside that Redbubble did not itself select *any* putative mark, *see supra*,

3   Plaintiff's boilerplate recitation of a putative "intent of Redbubble … to deceive users regarding

4   Atari's affiliation" (*Id.* at 6) ignores Redbubble's "prominent house marks and logos" and

5   consistent identification of each Seller. *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th

6   Cir. 1984). Nor has Plaintiff offered any evidence of the other *Sleekcraft* factors.

7         Plaintiff's failure to offer any likelihood of confusion argument, or sufficient evidence to

8   permit a finding in its favor thereon, independently requires that Plaintiff's motion be denied.

9         **B.**    **COPYRIGHT INFRINGEMENT**

10         As with the Lanham Act claims, there is no evidence that Redbubble engaged in any

11   volitional conduct that may have violated Plaintiff's rights under the Copyright Act, as required

12   for direct infringement. Redbubble cannot be vicariously liable without "both a legal right to stop

13   or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v.*

14   *Amazon.com, Inc.,* 508 F.3d 1146, 1173-74 (9th Cir. 2007). Atari has not established infringement

15   of its copyrights by anyone, because Atari has not proffered the subject matter of its registrations.

16   And Redbubble is immunized from damages under the safe harbor provisions of the DMCA.

17         **1.**    **Plaintiff Has Not Proven Infringement by Anyone**

18         A claim for direct copyright infringement requires that plaintiffs: "(1) … show ownership

19   of the allegedly infringed material and (2) … demonstrate that the alleged infringers violated at

20   least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc.*

21   *v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also* 17 U.S.C. § 501. To make this

22   showing, Plaintiff must offer evidence, beyond the registration certificates, of specifically what is

23   covered by the registration (e.g., what the registrant deposited with the Copyright Office as the

24   registered work. *Seiler v. Lucasfilm, Ltd.,* 808 F. 2d 1316, 1319 (9th Cir. 1986).

25         Atari moved for summary judgment on two versions of "Atari Greatest Hits," but neither

26   were listed either in the Complaint or in response to Redbubble's Interrogatories.  [Wilson Decl.,

27   Exh. G at 7] Moreover, the two registrations claim derivative works that expressly "exclude[] from

28   the claim" any preexisting "[o]riginal graphics and audio-visual materials." [Dkt. 64-9, -10]

---

17

Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

1    Derivative protection "extends only to the material contributed by the author of such work, as

2    distinguished from the preexisting material employed." 17 U.S.C. § 103(b); *Unicolors, Inc. v.*

3    *Urban Outfitters, Inc.*, 853 F.3d 980, 990 (9th Cir. 2017) ("copyright protections for a derivative

4    … are limited to the changes and contributions made"). Plaintiff's failure to present any evidence

5    of the "changes and contributions" included in the two registered works is fatal to its motion. *Id.*

6          Atari's evidentiary failures run deeper. Although it is an essential element of each

7    copyright claim, Atari did not produce any evidence of the specific content of the copyrights that

8    Atari identified in connection with its Complaint. (Wilson Decl. Exhs. E, F (Disclosures); I (RFP

9    Responses Nos. 16, 20, 22)) Because Atari did not produce evidence of the content of any

10   registered works, it cannot prevail on its copyright claims as a matter of law. *See Antonick v.*

11   *Electronic Arts, Inc.,* 841 F. 3d 1062, 1066 (9th Cir. 2016) (copyright plaintiff cannot prove

12   substantial similarity, and therefore cannot prevail on its claims, without placing the content of the

13   copyrighted works into evidence); *Seiler, supra* (same).

14              **2.    <u>Plaintiff Has Not Proven Direct Copyright Infringement</u>**

15          The second infringement prong – whether alleged infringers violated an exclusive right –

16   also requires a showing of "volitional conduct" by the defendant that "causes" infringement. *See*

17   *VHT,* 918 F.3d at 732; *Giganews,* 847 F.3d at 666 ("direct infringement requires … causation

18   (also referred to as 'volitional conduct') by the defendant"); *CoStar Group, Inc. v. LoopNet, Inc.*,

19   373 F.3d 544, 550 (4th Cir. 2004) (requiring "*conduct* by a person who causes in some meaningful

20   way an infringement") (emphasis in original); *Wolk v. Kodak Imaging Network, Inc*., 840 F. Supp.

21   2d 724, 742 (S.D.N.Y. 2012). As discussed above in the context of Plaintiff's trademark claim,

22   Redbubble has not engaged in any such conduct. *See, e.g., Giganews,* 847 F.3d at 668-70 (only

23   third parties that uploaded content, not defendant, could be liable for direct infringement).

24          Plaintiff's direct copyright infringement argument identifies only two bases for liability.

25   First, Plaintiff argues that Redbubble "copies" infringing designs onto model photos, but the

26   undisputed evidence establishes that third-party Sellers create any copies when they upload an

27   image. There is no evidence that Redbubble even sees the images, let alone copies them. Second,

28   Plaintiff asserts that Redbubble "exhibits that newly created infringing image on a product listing

18

Case No. 4:18-cv-03451-JST

DEFENDANT REDBUBBLE INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF ATARI'S MOTION FOR SUMMARY JUDGMENT

2911-1004 / 1616042.1

1    page created by Redbubble," but again, that process is initiated by the user, without direct

2    involvement by Redbubble. Redbubble's only role is providing the automated Marketplace where

3    the alleged infringement took place, which is insufficient for direct liability. *VHT*, 918 F.3d at 732.

4                    **3.     Plaintiff Cannot Establish Contributory Copyright Infringement**

5          Contributory infringement requires proof that Redbubble "(1) has knowledge of another's

6    infringement and (2) either (a) materially contributes to or (b) induces that infringement." *VISA*,

7    494 F.3d at 794-95. Contributory copyright infringement requires "actual, specific knowledge of

8    direct infringement," or turning a blind eye. *Napster*, 239 F.3d at 1020; *BMG Rights Management*

9    *LLC v. Cox Communications, Inc*., 881 F.3d 293, 311-12 (4th Cir. 2018) (same). Contributory

10   liability for a service provider, in particular, requires that it has "actual knowledge that specific

11   infringing material is available using its system, and can take simple measures to prevent further

12   damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10 v.*

13   *Amazon.com,* 508 F.3d at 1172-73.

14         Here, other than a 2011 takedown notice that Redbubble promptly responded to and that is

15   beyond the statute of limitations, there is no dispute that Redbubble did not have actual, specific

16   knowledge of any "specific instances of infringement" until Plaintiff identified alleged instances

17   of infringement in its Complaint. Nor is there any dispute that Redbubble promptly removed the

18   specific allegedly infringing material that Plaintiff identified. Accordingly, Redbubble cannot be

19   held liable on Plaintiff's contributory copyright infringement claim as a matter of law.[12]

20         As with trademark infringement, Plaintiff suggests, without evidence, that Redbubble is

21   "willfully blind" to direct infringement. But as discussed above, not only does Redbubble

22   immediately disable allegedly infringing content once becoming aware of it, but it also engages in

23   extensive proactive efforts identify and intercept, even where it might otherwise have been

24   [12] Plaintiff devotes half a sentence to "arguing" that Redbubble "induces" infringement because it
     "pays a fee for sales made," but Plaintiff offers no evidentiary support for this claim, nor could it,

25   since the third-party Seller decides how much, if anything, the Seller will make when the Seller
     sets a product's price. [Luthra Decl. ¶ 6] Nor does hosting a marketplace where a seller can earn a

26   profit equate to "inducing infringement;" inducement requires conduct that directly encourages
     ***infringement*** (as opposed to encouraging commerce). *See Metro-Goldwyn-Mayer Studios, Inc. v.*

27   *Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (inducement requires distribution of a device "with
     the object of promoting its use to infringe copyright, as shown by clear expression or other

28   affirmative steps taken to foster infringement").

1   unaware of such infringement in the ordinary course of business. There is simply no evidence that

2   Redbubble is "willfully blind" to "specific instances of infringement" *See Viacom,* 676 F.3d at 31

3   (like actual knowledge, willful blindness must apply with respect to "specific instances of

4   infringement," and "cannot be defined as an affirmative duty to monitor").

5               **4.      Plaintiff Cannot Establish Vicarious Copyright Infringement**

6           "To prevail on a claim for vicarious copyright infringement, a plaintiff must prove that the

7   defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial

8   interest in the infringing activity." *Giganews*, 847 F.3d at 673 (citations omitted). Plaintiff has not

9   satisfied and cannot satisfy at least the first prong of the test.

10          The "right and ability to supervise" requires "both a legal right to stop or limit the directly

11  infringing conduct, as well as the practical ability to do so." *VHT*, 918 F.3d at 746. In *VHT*, Zillow

12  hosted an online real estate marketplace where users could upload property listings and images.

13  VHT argued (like Plaintiff here) that Zillow was liable for vicarious infringement when third

14  parties posted infringing images on its site, arguing that Zillow's ability to terminate user accounts

15  and remove infringing listings constituted a "right and ability to supervise." The court disagreed,

16  finding "insufficient evidence that Zillow had the technical ability to screen out or identify

17  infringing VHT photos among the many photos that users saved or uploaded daily." *Id*. Even if

18  Zillow were technically able to eliminate infringement, "failure to change its operations to avoid

19  assisting [users] to distribute ... infringing content ... is not the same as declining to exercise a right

20  and ability to make [third parties] stop their direct infringement." *Id.*

21          Plaintiff argues that Redbubble had the right to review listings and terminate infringing

22  users, relying on *Napster* and *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir.

23  1996). However, the Ninth Circuit has held *Napster* and *Fonovisa* inapplicable where a service

24  provider lacks "the practical ability" to prevent infringement. Thus, in *Perfect 10 v. Amazon.com,*

25  508 F.3d at 1174, the court found that Google lacked the right and ability to supervise because

26  "Google's software lacks the ability to analyze every image on the internet, compare each image to

27  all the other copyrighted images that exist in the world ... and determine whether a certain image

28  on the web infringes someone's copyright." *See also VHT, supra* (distinguishing *Napster* where

1    "[o]nce VHT photos were uploaded to the [Zillow] Listing Platform with appropriate certification

2    of rights, ferreting out claimed infringement … was beyond hunting for a needle in a haystack").

3    Here, as in *Perfect 10* and *VHT*, there is no evidence that Redbubble has any technical or practical

4    way to screen out or identify infringing images from the more than 28,000,000 listings on its site.

5    Moreover, Redbubble has devoted substantial money and personnel towards ferreting out

6    infringement on its site. Thus, under *VHT* and its predecessor authority, Redbubble cannot as a

7    matter of law be liable for vicarious copyright infringement.[13]

8    **5.    Redbubble Is Protected by the DMCA Safe Harbor Provisions**

9    Section 512(c) of the DMCA precludes liability for monetary relief, and limits claims for

10   injunctive relief, if: 1) defendant qualifies as a "service provider," defined in Section 512(k)(1)(B)

11   as "a provider of online services or network access, or the operator of facilities therefor"; 2) the

12   claim arises out of "the storage at the direction of a user of material that resides on a system or

13   network controlled or operated by or for the service provider"; 3) the provider does not have actual

14   knowledge that the material is infringing or awareness of facts or circumstances from which

15   infringing activity is apparent, and upon obtaining such knowledge or awareness (by notice or

16   otherwise), acts expeditiously to remove or disable access to the allegedly infringing material; and

17   4) the provider does not "receive a financial benefit directly attributable to the infringing activity,

18   in a case in which the service provider has the right and ability to control such activity." 17 U.S.C.

19   § 512(c)(1). The service provider must also "adopt[] and reasonably implement[], and inform[]

20   subscribers and account holders of the service provider's system or network of, a policy that

21   provides for the termination in appropriate circumstances" of repeat infringers. 17 U.S.C. § 512(i).

22   The service provider must also designate and identify clearly on its web site "an agent to receive

23   notifications of claimed infringement." 17 U.S.C. § 512(c)(2). Redbubble is entitled to safe harbor.

24   (a)    **Service provider**

25   Redbubble clearly qualifies as "a provider of online services," entitled to DMCA safe

26   harbor protection. A service provider will qualify even if it "modif[ies] user-submitted material to

27

28   [13] While effectiveness is not the test, it is relevant to note that sales of even arguably infringing
     Atari listings have dropped to a trickle (less than $1,000 over the past two years).

1  facilitate storage and access," which Redbubble does not do. *UMG Recordings, Inc. v. Shelter*

2  *Capital Partners LLC*, 718 F.3d 1006, 1019 (9th Cir. 2013).

3                         (b)      **Stored at the direction of the user**

4        Listings are uploaded to the Redbubble Marketplace and stored "at the direction of" third-

5  party Sellers. [Deshais Decl. ¶ 11] Moreover, a service provider is immunized not only for

6  uploading and storing material, but for other activities that it could not have done but for user

7  uploads. *See UMG,* 718 F.3d at 1019-20 ("by reason of storage" element covers not only user-

8  uploaded videos, but also functions those uploads automatically triggered, such as processing and

9  reformatting); *see also Viacom,* 676 F.3d at 39 ("§ 512(c) safe harbor extends to software

10 functions performed 'for the purpose of facilitating access to user-stored material'"). Like the

11 Amazon Marketplace software, the Redbubble platform software performs functions "for the

12 purpose of facilitating access" to the listings uploaded by third-party Sellers, and therefore

13 satisfies this element. *See, e.g., Milo & Gabby I,* 2015 WL 4394673, at *6 (Amazon Marketplace

14 qualified for DMCA safe harbor protection); *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d

15 1090, 1100 (W.D. Wash. 2004) (same).

16                        (c)      **Notice and Takedown**

17       The third element of the DMCA test, that a service provider take down infringing content

18 upon receiving notice, parallels the "knowledge" and "material contribution" elements of

19 contributory infringement. Indeed, a service provider that does not avoid contributory

20 infringement can receive safe harbor under the "notice and takedown" prong. *See CoStar*, 164 F.

21 Supp. 2d at 706-08. For the reasons Redbubble is not liable for contributary infringement (*see*

22 *supra*), it also satisfies the third prong of the DMCA safe harbor test.

23                        (d)      **Financial Benefit and Right and Ability to Control**

24       Redbubble's showing that it lacks the right and ability to control relevant activity is

25 sufficient for safe harbor. 17 U.S.C. § 512(c); *Corbis*, 351 F.Supp.2d at 1109. As discussed above

26 in connection with vicarious infringement, Redbubble satisfies this requirement as interpreted in

27 the context of the Copyright Act in general.

28       Moreover, the DMCA requires that, beyond the vicarious liability test, the service provider

1   must also "exert substantial influence on the activities of users." *UMG*, *supra*; *see also Viacom*,

2   676 F.3d at 32. This requires "something more than the ability to remove or block access to

3   materials posted on a service provider's website," or to terminate users' access. *Columbia Pictures*

4   *Industries, Inc. v. Fung*, 710 F.3d 1020, 1045 (9th Cir. 2013); *UMG, supra*. In *Corbis*, for

5   example, the court found no triable dispute that Amazon.com lacked the right and ability to

6   control infringing activity on its zShop sites where "Amazon is never in possession of the products

7   sold by zShops vendors…, does not preview the products prior to their listing, does not edit the

8   product descriptions, does not suggest prices, or otherwise involve itself in the sale." *See also*

9   *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001) (similar); *UMG*, 718 F.3d at

10  1030 (video sharing service did not have the ability to control infringing activity, even though "(a)

11  the allegedly infringing material resided on [its] system; (b) [it] had the ability to remove such

12  material; (c) [it] could have implemented, and did implement, filtering systems; and (d) [it] could

13  have searched for potentially infringing conduct"); *Wolk*, 840 F. Supp. at 748 (S.D.N.Y. 2012)

14  ("right and ability to control must take the form of prescreening content, rendering extensive

15  advice to users regarding content and editing user content").

16      Redbubble's relevant conduct is similar to that of the *Amazon, eBay, UMG*, and *Wolk*

17  cases. Plaintiff cannot establish the "something more" needed to defeat DMCA protection.

18          (e)     **Repeat infringer policy**

19      Finally, the undisputed facts demonstrate that Redbubble satisfies the final requirement for

20  DMCA safe harbor: "adopt[ing] and reasonably implement[ing]" a policy for terminating repeat

21  infringers and communicated that policy to its users. There are no strict requirements for what

22  such a policy must include; indeed, the details of the policy need not even be written down. *See*

23  *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 615-16 (9th Cir. 2018). In fact, courts

24  have held that a service provider satisfies this requirement if it informs users that a policy exists, if

25  the policy has "a procedure for dealing with DMCA-compliant notifications," and "if, under

26  'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly

27  infringe copyright." *Id.* at 615-17 (quoting *CCBill*, 488 F.3d at 1109).

28      Redbubble has a policy for terminating repeat infringers; notifies users of this policy in its

1  User Agreement; and has terminated repeat infringers under appropriate circumstances. [Toy Decl.

2  ¶¶ 18-23, Exh. C] Redbubble satisfies this final requirement. *See Motherless*, 885 F.3d at 614-19.

3  ### C.   **DAMAGES**

4     Plaintiff is not entitled to recover statutory or enhanced damages under the Lanham Act

5  because it cannot prove counterfeiting. Plaintiff also cannot recover any damages because it failed

6  to disclose the basis or a computation for any damage claim in its Initial Disclosures or discovery;

7  and cannot recover enhanced damages for willful misconduct because it cannot prove willfulness.

8  ### 1.   **Plaintiff's Litigation Misconduct Precludes Damages.**

9     "Rule … 26(a)(1)(A)(iii) requires the disclosure of 'a computation of each category of

10  damages claimed by the disclosing party—who must also make available ... the documents or

11  other evidentiary material ... on which each computation is based…,' regardless whether the

12  opposing party requests such information." *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d

13  803, 821 (9th Cir. 2019). "'Rule 37(c)(1) gives teeth to these requirements by forbidding the use at

14  trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.'"

15  *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).

16     Plaintiff's Initial Disclosures merely listed the damages categories available for copyright

17  and trademark infringement (actual damages, defendant's profits or statutory damages), followed

18  by an averment that it "has not yet quantified the amount of actual damages or wrongful profits

19  because discovery and likely expert testimony is necessary for that quantification." [Wilson Decl.,

20  Exh. E at 2] Although Redbubble produced substantial financial information, including every

21  order placed for an Accused Product, Plaintiff never quantified its damages or its damages

22  disclosures, despite generally amending its disclosures the day before the close of fact discovery.

23  [*See* Wilson Decl. Exh. F]. Moreover, despite claiming a need for expert testimony in both sets of

24  Disclosures, Plaintiff never served an expert report that purported to quantify damages.

25     Consistent with Rule 37(c)(1), courts in this Circuit have repeatedly precluded plaintiffs

26  who failed to make a substantive disclosure under Rule 26(a)(1)(A)(iii) from offering a damages

27  case at trial. Thus, in *Ingenco*, the plaintiff's "initial disclosures, which were never supplemented,

28  never disclosed any damages information related to statutory claims"; the Ninth Circuit upheld

1    exclusion even though plaintiff's Rule 30(b)(6) designee arguably provided that information. 921

2    F.3d at 821. Even when a "[p]laintiff turned over the [supporting] "evidentiary materials," but

3    failed to turn over each computation until the last minute," exclusion is proper. *Bastidas v. Good*

4    *Samaritan Hosp. LP*, No. 3:13-CV-04388-SI, 2017 WL 1345604, at *7 (N.D. Cal. Apr. 12, 2017).

5            Plaintiff's flouting of its damages disclosure obligations mandates preclusion.

6                  **2.      Plaintiff Cannot Establish Willful Infringement**

7            There is no evidence that that Redbubble knowingly or intentionally used an Atari

8    trademark or copyright. Courts have consistently held that infringement is not willful where, as

9    here, the defendant reasonably believes that its use is not barred by law. *VHT,* 918 F.3d at 748-49.

10   In *VHT*, for example, Zillow's user agreement required users uploading listings to "represent that

11   they 'have all necessary rights and authority to enter into' the agreements," and that the uploaded

12   content "will not violate the intellectual property rights, or any other rights of any third party." *Id.*

13   at 732 (internal quotations omitted). As here, there was no evidence that defendant Zillow selected

14   any material or initiated its uploading. *Id.* at 734. The Ninth Circuit held that Zillow was not

15   "'actually aware' of its [users'] infringing activity," despite having received a blanket notice of

16   infringement from VHT, and reversed the jury's willfulness verdict. *Id.* at 748-49 (quoting

17   *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)).

18           Like the defendants in *Zillow*, Redbubble was entitled to and did in fact reasonably rely on

19   representations made by its users that they had the right to use the designs they uploaded to the

20   site. And like those defendants, there is no evidence that Redbubble was "actually aware" of

21   specific, ongoing infringing activity; when Redbubble learned of such activity, it has swiftly put

22   an end to it. Using the language from *Evergreen*, Redbubble "believes reasonably, and in good

23   faith, that [it] is not infringing." Indeed, Redbubble has prevailed in both U.S. cases against it that

24   have gone to judgment. *See Ohio State, supra*; *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916

25   (N.D. Cal. 2019) (granting summary judgment to Redbubble on Lanham Act claims). Redbubble

26   is thus entitled to a determination of no willfulness or counterfeiting (and a concomitant ruling that

27   Redbubble cannot be liable for regular or enhanced statutory damages) as a matter of law.

28

IV.     **CONCLUSION**

For the foregoing reasons, Redbubble's motion for summary judgment should be granted, and Plaintiff's motion for summary judgment should be denied.

Dated:  May 27, 2020.                        COASTSIDE LEGAL
                                             KENNETH B. WILSON


                                             ZUBER LAWLER & DEL DUCA LLP
                                             JOSHUA M. MASUR
                                             ZACHARY S DAVIDSON


                                             By:  */s/ Kenneth B. Wilson*
                                                     Kenneth B. Wilson
                                                     Attorneys for Defendant
                                                     Redbubble Inc.

2911-1004 / 1616042.1