1  BROWNE GEORGE ROSS LLP
   Keith J. Wesley (State Bar No. 229276)
2    kwesley@bgrfirm.com
   Matthew L. Venezia (State Bar No. 313812)
3    mvenezia@bgrfirm.com
   2121 Avenue of the Stars, Suite 2800
4  Los Angeles, California 90067
   Telephone: (310) 274-7100
5  Facsimile: (310) 275-5697

6  Attorneys for Plaintiff
   Atari Interactive, Inc.
7

8                 UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10

11  ATARI INTERACTIVE, INC.,            Case No. 4:18-cv-03451-JST
                                        *[Related to Case Nos. 3:18-cv-03843-JST; 3:18-*
12              Plaintiff,              *cv-04115; 4:18-cv-04949-JST; and 4:19-cv-*
                                        *00264-JST]*
13         vs.

14  REDBUBBLE, INC.,                    **ATARI INTERACTIVE, INC.'S**
                                        **OPPOSITION TO REDBUBBLE, INC.'S**
15              Defendant.              **MOTION FOR SUMMARY JUDGMENT**
                                        **AND REPLY IN SUPPORT OF ITS**
16  ─────────────────────────          **MOTION FOR SUMMARY JUDGMENT**

17  AND RELATED ACTIONS

18                                      Judge:   Hon. Jon S. Tigar
                                        Date:    July 15, 2020
19                                      Time:    2:00 pm
                                        Crtrm.:  6 - 2nd Flr.

20

21

22

23

24

25

26

27

28
    1568800.5

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTS .................................................................................................................2

III.   ARGUMENT .......................................................................................................2

    A.     Redbubble Is Liable for Trademark Counterfeiting ..................................2

        1.     Atari's Marks Have Been Infringed ................................................2

        2.     Redbubble Uses Atari's Marks in Commerce ................................4

             a.     Redbubble Misstates the Law of Direct Trademark Infringement ...........................................................5

             b.     Redbubble Uses Atari's Marks in Commerce ....................6

        3.     Redbubble is Liable for Vicarious Infringement...........................10

        4.     Redbubble is Liable for Contributory Infringement .....................11

    B.     Redbubble Is Liable for Copyright Infringement.....................................13

        1.     Atari Owns Copyrights for the Copied Game Graphics ..............13

        2.     Redbubble Directly Infringed Atari's Copyrights........................15

        3.     Redbubble Is Further Vicariously Liable for Its Users' Infringements ...............................................................16

        4.     Redbubble Is Liable for Contributory Copyright Infringement .................17

        5.     Redbubble Does Not Qualify for Protection Under the DMCA .................18

             a.     Redbubble Is Not a Service Provider .............................18

             b.     Redbubble Does Not Qualify for a Safe Harbor .........................19

    C.     A Reasonable Jury Could Find Redbubble's Infringement to Be Willful ............19

    D.     Atari May Recover Damages ..................................................................20

IV.    CONCLUSION ..................................................................................................20

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>FEDERAL CASES</u>

*A & M Records, Inc. v. Napster, Inc.*,
   114 F. Supp. 2d 896 (N.D. Cal. 2000) ..................................................................................17

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001)........................................................................................16, 17

*Alaska Stock, LLC v. Pearson Educ., Inc.*,
   975 F. Supp. 2d 1027 (D. Alaska 2013)................................................................................20

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
   No. 18-cv-06663-TSH, 2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) .......................................3

*American Broad. Cos. v. Aereo, Inc.*,
   573 U.S. 431 (2014) ....................................................................................................1, 5

*Applied Info. Scis. Corp. v. eBay, Inc.*,
   511 F.3d 966 (9th Cir. 2007) ............................................................................................5

*Arcona, Inc. v. Farmacy Beauty, LLC*,
   No. 2:17-cv-07058-ODW (JPR), 2019 WL 1260625 (C.D. Cal. Mar. 19, 2019)........................3

*Born to Rock Design Inc. v. CafePress.com, Inc.*,
   No. 10 Civ. 8588(CM), 2012 WL 3954518 (S.D.N.Y. Sep. 7, 2012)......................................6

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. C 10–3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ........................................14

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999).............................................................................................4

*Christopher Phelps & Assocs., LLC v. Galloway*,
   492 F.3d 532 (4th Cir. 2007)...........................................................................................14

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ......................................................................18, 19

*Entertainment One UK Ltd. v. 2012Shilliang*,
   384 F. Supp. 3d 941 (N.D. Ill. 2019) ...................................................................................4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ......................................................................................................12

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
   785 Fed. Appx. 417 (9th Cir. 2019) ..................................................................................19

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Gucci America, Inc. v. Frontline Processing Corp.*,
    721 F. Supp. 2d 228 (S.D.N.Y. 2010) ..................................................................................11

*H–D U.S.A., LLC v. SunFrog*,
    311 F. Supp. 3d 1000 (E.D. Wisc. 2018) ..........................................................................6, 7, 9

*Hells Angels Motorcycle Corp. (Aust.) Pty Ltd. v Redbubble Ltd.*,
    [2019] FCA 355 .......................................................................................................................5

*Ingenco Holdings, LLC v. Ace American Ins. Co.*,
    921 F.3d 803 (9th Cir. 2019)..................................................................................................20

*Kelly-Brown v. Winfrey*,
    No. 11 Civ. 7875(PAC), 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) ......................................10

*Levi Strauss & Co. v. Shilon*,
    121 F.3d 1309 (9th Cir. 1997)...............................................................................................8, 9

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
    601 Fed. Appx. 469 (9th Cir. 2015) ........................................................................................11

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    591 F. Supp. 2d 1098 (N.D. Cal. 2008) ..................................................................................11

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F.3d 936 (9th Cir. 2011)...................................................................................................13

*Milo & Gabby*,
    693 Fed. Appx. ........................................................................................................................15

*Milo & Gabby LLC v. Amazon.com, Inc.*,
    693 Fed. Appx. 879 (Fed. Cir. 2017) ......................................................................7, 8, 15, 16

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    No. C13–1932RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015)....................................18

*Navajo Nation v. Urban Outfitters, Inc.*,
    No. 12-cv-195, 2013 WL 12161826 (D.N.M. Nov. 6, 2013) ..................................................11

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011)..................................................................................................5

*New York Times Co., Inc. v. Tasini*,
    533 U.S. 483 (2001) ..............................................................................................................1, 5

1568800.5

-iii-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page**

3

*Nissan Motor Co. v. Nissan Computer Corp.*,
     378 F.3d 1002 (9th Cir. 2004) ................................................................4

4

*Ohio State University v. Redbubble, Inc.*,
     369 F. Supp. 3d 840 (S.D. Ohio 2019) ....................................................6

5

6

*Pasillas v. McDonald's Corp.*,
     927 F.2d 440 (9th Cir. 1991) ................................................................13

7

8

*Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp.*,
     770 F. Supp. 754 (D.P.R. 1991) ............................................................3

9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
     508 F.3d 1146 (9th Cir. 2007) ..................................................1, 5, 17

10

11

*Perfect 10, Inc. v. Giganews, Inc.*,
     847 F. 3d 657 (9th Cir. 2017) ................................................................5

12

13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
     494 F.3d 788 (9th Cir. 2007) ................................................................10

14

*Pokémon Co. Int'l, Inc. v Redbubble Ltd.*,
     [2017] FCA 1541 ...................................................................................6

15

16

*Pom Wonderful LLC v. Hubbard*,
     775 F.3d 1118 (9th Cir. 2014) ................................................................4

17

18

*Robinson v. Delicious Vinyl Records Inc.*,
     No. 13-cv-4111, 2013 WL 3983014 (C.D. Cal. Aug. 1, 2013) ...............11

19

*Rosetta Stone Ltd. v. Google, Inc.*,
     730 F. Supp. 2d 531 (E.D. Va. 2010), *aff'd in part*, 676 F.3d 144 (4th Cir. 2012) ..................11

20

21

*Starbucks Corp. v. Amcor Packaging Dist.*,
     No. 2:13-1754 WBS CKD, 2016 WL 3543371 (E.D. Cal. June 23, 2016) ................................6

22

23

*State of Idaho Potato Commission v. G&T Terminal Packaging, Inc.*,
     425 F.3d 708 (9th Cir. 2005) ................................................................19

24

*Streetwise Maps, Inc. v. VanDam, Inc.*,
     159 F.3d 739 (2d Cir. 1998) ................................................................14

25

26

*Tiffany (NJ) Inc. v. eBay Inc.*,
     600 F.3d 93 (2d Cir. 2010) ...............................................7, 8, 12, 19

27

28

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) ................................................................18, 19

*Undiscovered Corp. v. Heist Studios*,
    No. CV 18-5719 FMO, 2019 WL 8219489 (C.D. Cal. Oct. 1, 2019) .........................20

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) .................................................................13, 19

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019) ............................................................ *passim*

*Viacom International, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012) .........................................................................18

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
    No. 18-cv-07548-EDL, 2019 WL 7810815 (N.D. Cal. May, 2, 2019) .......................16

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ....................................................................11

**STATE CASES**

*Deicher v. Corkery*,
    205 Cal. App. 2d 654 (1962) ......................................................................10

*Holmes v. Lerner*,
    74 Cal. App. 4th 442 (1999) ......................................................................11

**FEDERAL STATUTES**

15 U.S.C. § 1114(1)(a) ...............................................................................5

15 U.S.C. § 1125(a)(1)(A) ...........................................................................4

15 U.S.C. § 1127 ....................................................................................3

17 U.S.C. § 512(c)(1) ...............................................................................18

17 U.S.C. § 512(c)(1)(B) ............................................................................19

17 U.S.C. § 512(c)(1)(C) ............................................................................19

17 U.S.C. § 512(k)(1) ...............................................................................18

1568800.5

-v-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(Continued)

**Page**

**STATE STATUTES**

Cal. Com. Code § 2206(1)(b) .................................................................................................. 6

**RULES**

FED. R. CIV. P. 37(c)(1) ........................................................................................................ 20

FED. R. EVID. 801(d)(2) ........................................................................................................ 10

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

I.      **<u>INTRODUCTION</u>**

Redbubble does not dispute that, at minimum, $46.56 million worth of infringing products are sold each year on redbubble.com. Nor does Redbubble dispute that its website is flooded with infringing products from any well-known brand one could think of. (For example, thousands upon thousands of infringing Atari products have been sold and offered for sale on redbubble.com.) Instead, Redbubble primarily argues that it does not actually *do anything*, because its "Marketplace software automatically facilitates transactions." But as information technology pioneer Ted Nelson explained:

> The good news about computers is that they do what you tell them
>
> to do. The bad news is that they do what you tell them to do.

It should come as no surprise therefore that there is no "I didn't do it; my computer did" defense to intellectual property infringement. *See, e.g., American Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 444 (2014) (automated process to route television broadcast to user is performance under the Copyright Act); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("*Perfect 10*") (automated communication by Google's computers of copyrighted images to Google's users is prima facie showing of infringement); *see also New York Times Co., Inc. v. Tasini*, 533 U.S. 483, 503 (2001) (equating electronic search function with an "inhumanly speedy librarian"). It makes no difference whether Redbubble's software sends an order to be manufactured by one of Redbubble's printing partners or a Redbubble employee delivers the order by hand. It makes no difference whether Redbubble's software submits an ad for a counterfeit t-shirt to Google or a Redbubble employee calls Google to place the ad. And, it makes no difference whether Redbubble's software deposits the proceeds from the sale of a counterfeit into Redbubble's bank account or a Redbubble employee is handed cash in a flea market. The end result is the same:  Redbubble receives money in exchange for a counterfeit product that would not exist but for Redbubble's actions.

Redbubble attempts to expand dramatically the application of existing laws protecting internet service providers from liability where third parties upload infringing content that cannot reasonably be moderated without assistance from the IP owner. *See, e.g., VHT, Inc. v. Zillow*

*Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019). Redbubble's attempts must fail, however, because Redbubble is the antithesis of a "passive intermediary." Redbubble does much more than host infringing photos—it uses the infringing marks and copyrights uploaded to its website to create pictures of the finished products for sale, commissions the manufacture of those products, advertises those products on third-party websites, and, indeed, controls every aspect of the sales process. As *VHT* explains, these actions render Redbubble liable because it is "*actively involved* in the infringement." *Id.* Moreover, unlike a company like eBay that offers for sale authentic products that are being (legally) re-sold, Redbubble only sells new products. In other words, if a product on Redbubble incorporates a well-known trademark, it is an infringing product. No help from an IP owner is needed.

Redbubble is correct on one point:  This case is important. If Redbubble is a "passive intermediary," then the roadmap for everyone and anyone to avoid IP infringement will have been stamped into the Federal Reporters. If Redbubble's position is accepted as law, counterfeiters could now automate and contract their way around the Lanham Act and Copyright Act. This is not the law and would be bad policy; Redbubble's creative attempts to cloud through legal fictions what is nothing more than basic, obvious infringement should not be countenanced by this Court.

## II.   FACTS

Atari set forth the facts concerning this matter in detail in its Motion for Summary Judgment (the "Motion") and evidence in support thereof. (Dkt. No. 73, 3:20–14:17.) Atari incorporates that discussion and evidence herein. Additional evidence is cited below.

## III.   ARGUMENT

### A.   Redbubble Is Liable for Trademark Counterfeiting

#### 1.   Atari's Marks Have Been Infringed

In the Motion, Atari demonstrated that it holds federal trademark registrations for the ATARI® and PONG® marks. (Dkt. No. 73, 5:3–4.) Atari further explained that where a counterfeit mark is used, likelihood of confusion must be presumed, consideration of the *Sleekcraft* factors being unnecessary. (*Id.* at 16:9–16.) Atari pinpointed numerous counterfeit products for sale on Redbubble with exact copies of the ATARI® and PONG® marks. (*Id.* at 12:26–13:4; Dkt. No. 64-

30.) Redbubble does not dispute (a) that the infringing products were offered for sale, and in many cases sold, on redbubble.com; (b) that Atari owns the ATARI® and PONG® marks; or (c) that counterfeit marks must be presumed to cause a likelihood of confusion. Instead, Redbubble argues that the Redbubble products identified by Atari are not counterfeits. This argument is frivolous.

As to ATARI®, Redbubble does not dispute that the accused products use an exact copy of Atari's logo, instead arguing that because the logo is not enclosed within a box, the products cannot be counterfeits. The pictures are instructive, *see* Dkt. No. 64-30—no reasonable jury could look at the accused products and determine they are not "identical with, or substantially indistinguishable from," the ATARI® mark. 15 U.S.C. § 1127. Redbubble's defense is akin to arguing that a t-shirt affixed with NIKE could not be counterfeit unless it also had the Swoosh logo, or that a fake hammer is not a counterfeit if it is branded with HOME DEPOT in the same font and orange color as the original, but without the outline of a box in the logo. Our intellectual property laws are not that easily circumvented by unscrupulous, minimally creative free riders. *Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp.*, 770 F. Supp. 754, 758–59 (D.P.R. 1991) (counterfeiter may not "escape liability by modifying registered trademarks of their honest competitors in trivial ways") (quoting 130 Cong. Rec. H12078 (Daily Ed. Oct. 10, 1983)).

Indeed, none of Redbubble's authorities even suggest that an exact facsimile is required. *See Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-cv-06663-TSH, 2019 WL 1586776, at *11 (N.D. Cal. Apr. 12, 2019) (scanner sleeve not counterfeit where the trademark registration did not include scanner sleeves, and the shape, color, and design of the sleeves were different); *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW (JPR), 2019 WL 1260625, at *3 (C.D. Cal. Mar. 19, 2019) (cosmetic not counterfeit where two products were different shapes, used different coloring and packaging schemes, and included different house marks; the photos included within the opinion being instructive).

Turning to PONG®, Redbubble does not dispute that the accused products use an exact copy of the PONG® mark, instead, it argues that they do not use the same accompanying designs as authentic Atari products—i.e., red, orange, and yellow stripes; the words "LEGEND" and "I GOT SKILLS"; and the ATARI® mark. But, Atari's claim is that Redbubble copies the federally

registered PONG® mark, not every element of one licensed t-shirt. (Indeed, counterfeiting may

occur even if, as Redbubble does, the spurious mark is used with product listings, regardless of use

on the products themselves. *See, e.g., Entertainment One UK Ltd. v. 2012Shilliang*, 384 F. Supp.

3d 941, 949–50 (N.D. Ill. 2019).) PONG® is a wordmark that "consists of standard characters

without claim to any particular font, style, size, or color." (Dkt. No. 64-8.) Thus, to copy the

PONG® mark is simply to use "PONG," which the accused products do.

   Moreover, while not required, analysis of the *Sleekcraft* factors weighs overwhelmingly in

favor of a likelihood of confusion. *See Entertainment One*, 384 F. Supp. at 949–50 (finding online

counterfeiting as a matter of law). In particular, there is no reasonable debate that the Redbubble

products would create a likelihood of (a) post-sale confusion, *Academy of Motion Picture Arts &*

*Sciences*, 944 F.2d 1446, 1456 (9th Cir. 1991), (b) initial interest confusion, *Nissan Motor Co. v.*

*Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004), or (c) confusion as to an affiliation

or endorsement. 15 U.S.C. § 1125(a)(1)(A). The Redbubble products use identical marks on the

same class of goods. (Dkt. Nos. 64-7, 64-8, 64-30.) This leads to likelihood of confusion "as a

matter of course." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th

Cir. 1999). The ATARI® and PONG® marks are strong, conceptually and in the marketplace, the

very reason why they were chosen for Redbubble's products and resulted in extensive sales. (Dkt.

No. 72, Wesley Decl. (Exh. D), Exh. 1049.) Redbubble's products are advertised side-by-side with

licensed Atari products, competing in the marketplace. (Dkt. No. 64-64–65.) Any lack of actual

confusion evidence does not weigh against the likelihood of confusion:  Atari is not a retailer that

has contact with customers such that it would have an opportunity to witness confusion. (Dkt. No.

64-6, ¶ 17.) *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014) ("difficulties in

gathering evidence of actual confusion make its absence generally unnoteworthy").

### 2.  Redbubble Uses Atari's Marks in Commerce

   In the Motion, Atari established that Redbubble uses Atari's marks in commerce because

Redbubble sells, offers to sell, and advertises the infringing products. (Dkt. No. 73, 16:23–20:10.)

In response, Redbubble argues that it has not made use of Atari's marks, because all actions were

taken by third parties. This argument is belied by the law, evidence, and common sense.

1568800.5   -4-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1
2

a.  **Redbubble Misstates the Law of Direct Trademark Infringement**

3  Redbubble attempts to read into trademark law the "volitional conduct" requirement from

4  copyright law, relying upon *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017)

5  ("*Giganews*"). But *Giganews* did not consider trademark claims. *Id.* at 665 ("Only the copyright

6  infringement claims are the subject of this appeal."). Redbubble thus presents no authority

7  requiring volitional conduct for a trademark infringement claim—volitional conduct not being an

8  element of such a claim. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir.

9  2007). Instead, the scope of "use in commerce" is set out in 15 U.S.C. § 1114(1)(a), and has

10  rightly been interpreted broadly to cover new forms of infringement made possible by the internet.

11  *See, e.g., Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144–45 (9th Cir.

12  2011) (holding purchase of a trademark as a search engine keyword is "use in commerce").

13  Moreover, even if a "volitional conduct" element were now inserted into the trademark

14  context (which this Court should not do absent clear guidance from a higher court), Redbubble

15  seeks a drastic enlargement of copyright law's version. In the copyright context, courts have

16  generally found a third-party's upload of infringing content to be insufficient, standing alone, to

17  create liability in the service provider. *See VHT*, 918 F.3d at 732 ("automatic copying, storage, and

18  transmission of copyrighted materials, when instigated by others, do[ ] not render an [Internet

19  service provider] strictly liable for copyright infringement") (internal quotations omitted)

20  (alterations in original). However, Redbubble seeks to expand this principle well beyond its

21  current scope. Redbubble argues it should be allowed to do *anything* with the infringing content

22  uploaded to its website, so long as it automates the process using software. Such an expansion

23  would be contrary to uniform law (and common sense) that there is no distinction between actions

24  taken by humans and actions automated by computers or software. *See Aereo*, 573 U.S. at 444;

25  *Perfect 10*, 508 F.3d at 1160; *New York Times*, 533 U.S. at 503; *see also VHT*, 918 F.3d at 732

26  (volitional conduct present when defendant is "*actively involved* in the infringement.").

27  District courts and Australian federal courts have consistently found the requisite "use" of

28  a trademark by print-on-demand websites, including Redbubble. *Hells Angels Motorcycle Corp.*

1568800.5

-5-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1   *(Aust.) Pty Ltd v Redbubble Ltd.*, [2019] FCA 355, ¶¶ 62, 435; *Pokémon Co. Int'l, Inc. v*

2   *Redbubble Ltd.*, [2017] FCA 1541, ¶ 67; *H–D U.S.A., LLC v. SunFrog*, 311 F. Supp. 3d 1000,

3   1023 (E.D. Wisc. 2018) ("*SunFrog*"); *Ohio State Univ. v. Skreened Ltd.*, F. Supp. 3d 905, 915,

4   922 (S.D. Ohio 2014); *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10 Civ. 8588(CM),

5   2012 WL 3954518, at *5–6 (S.D.N.Y. Sep. 7, 2012). Indeed, *Ohio State University v. Redbubble,*

6   *Inc.*, 369 F. Supp. 3d 840 (S.D. Ohio 2019) is the outlier; unpersuasive for the reasons explained

7   in the Motion. (Dkt. No. 73, 15 n.2.)

8   **b.**   **Redbubble Uses Atari's Marks in Commerce**

9       **Redbubble sells the infringing products.** In the Motion, Atari demonstrated that

10  Redbubble controls every aspect of the sales made on redbubble.com. (Dkt No. 73, 6:6–11:4.)

11  Atari further explained that when customers place an order on redbubble.com, and Redbubble

12  takes their money and promises to ship the ordered products, a sales contract is formed between

13  Redbubble and the customer. Cal. Com. Code § 2206(1)(b); *Starbucks Corp. v. Amcor Packaging*

14  *Dist.*, No. 2:13-1754 WBS CKD, 2016 WL 3543371, at *5 (E.D. Cal. June 23, 2016). Redbubble

15  makes no attempt to explain how it does not form sales contracts with its customers.

16      Redbubble argues that, pursuant to a separate section of the UCC, "sale" is defined to

17  require passage of title from the seller. Redbubble then tries to create the legal fiction that its users

18  are the sellers because they transfer title, based on § 3.5 of its Services Agreement with its users:

19          All items purchased from the website are manufactured pursuant to
20          arrangements with third party suppliers under your instructions. This
            means that title and risk for loss for such items pass from you to the
21          customer/purchaser without passing through us prior to the goods
22          being delivered to the customer under the customer's instructions.

23  (Dkt. No. 80-3, 12.) But Redbubble elsewhere concedes that:

24          Upon receipt of an order, the Manufacturer imprints the design onto
25          *a blank product from the Manufacturer's own inventory*, without
            any input or involvement from Redbubble.
26

27  (Dkt. No. 75, 4:16–17 (emphasis added).) In other words, according to Redbubble, at the time a

28  sale is made on redbubble.com, the manufacturer holds title to the physical product. And, it is

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1    undisputed that Redbubble's users have no interactions with the manufacturers, or even any ability

2    to choose who manufactures the products. (Dkt. No. 73-2, 43:22–44:6, 50:12–15.) Therefore,

3    according to Redbubble, the manufacturers transfer title of their inventory to users with whom

4    they do not know or communicate, based on agreements that they never enter into. This perfectly

5    illustrates but one of the legal gymnastic moves Redbubble tries to perform to insulate itself from

6    liability for selling counterfeits.

7         Redbubble fails to distinguish *SunFrog*, 311 F. Supp. 3d 1000, on this point. Like

8    Redbubble, Sunfrog users "upload designs or artwork to" SunFrog's website "for application to

9    products[.]" *Id.* at 1013. But even where SunFrog's users uploaded the designs, *SunFrog* held that

10   SunFrog "vigorously advertised and offered for sale goods[.] *Id.* at 1030. The only distinction

11   between Redbubble and SunFrog is that Redbubble hires out the printing of its products whereas

12   SunFrog does it in-house. That cannot alter the analysis of who sells the goods here; Redbubble

13   argues elsewhere it "has never contended that the fulfillers are sellers[.]" (Dkt. No. 75, 14:24.)

14        Redbubble's reliance on cases involving Amazon and eBay is misplaced. Redbubble is

15   nothing like Amazon or eBay—its own expert opining that Amazon is in a "very different

16   business[] than Redbubble." (Wesley Decl., Exh. D, ¶ 14.) In *Milo & Gabby LLC v. Amazon.com,*

17   *Inc.*, 693 Fed. Appx. 879, 880–81 (Fed. Cir. 2017), the court recognized that the majority of

18   products sold on Amazon are provided by the third-party sellers. The court further recognized that

19   passage of title "is not of 'talismanic' significance," but held where "the third-party sellers retain

20   title to the pillowcases at all times[,]" the court had not been provided reason to "find that Amazon

21   is a seller of the pillowcases at issue." *Id.* at 886, 890. Similarly, in *Tiffany (NJ) Inc. v. eBay Inc.*,

22   600 F.3d 93, 96–97 (2d Cir. 2010), the court recognized that eBay is an auction site that allows

23   third parties to sell their pre-existing goods. eBay does not sell the items, ever take possession of

24   the items, nor even "know whether or when an item is delivered to the buyer." *Id.* at 97.

25        Here, Redbubble's users are never in possession of the infringing products. (Dkt. No. 75,

26   4:16–21.) Nor could any reasonable jury find Redbubble's users ever hold title, where Redbubble

27   asserts that its manufacturers hold the blank inventory, and Redbubble is the only party with

28   which Redbubble's users are in privity. (Dkt. No. 80-3.) Instead, the evidence shows that

1   Redbubble enters into sales contracts with customers purchasing products on redbubble.com, and

2   then pays its printing partners to fulfill the orders. (Dkt. Nos. 73-2, 55:1–7, 62:1–23; 64-72, ¶¶ 2–

3   8.) This arrangement is ample reason to depart from the results reached in *Milo & Gabby* and

4   *Tiffany*.

5       Further, both Amazon and eBay clearly identify products as sold by third parties. (Cuellar

6   Decl., Exhs. C–D.) *See also Milo & Gabby*, 693 Fed. Appx. at 881 ("The product-detail pages for

7   the knock-off pillowcases identified ten different entities as third-party sellers."). Redbubble's

8   product listings state that its products are "Designed by" the user, *not* "Sold by." (Dkt. Nos. 64-

9   58–63, 64-79–84.) This reflects the objective realities that even Redbubble acknowledged prior to

10  implementing its current litigation strategy; conceding its role as seller for tax purposes. (Dkt. No.

11  73-3, 49.) Redbubble's attempt to explain away this admission is misleading. While Redbubble

12  points to Senate Bill No. 92—approved by California's Governor in June of 2019—Redbubble

13  conceded its role as seller for tax purposes in its 2018 Annual Report. (*Id.*; Cal. SB 92.)

14      In summary, Redbubble controls every aspect of the sales made on redbubble.com—

15  providing the platform, processing the orders, commissioning the manufacture of the infringing

16  products, arranging for shipping, and handling all customer service and returns; all while keeping

17  the majority of the proceeds for itself. (Dkt No. 73, 6:6–11:4.) And, based upon its representations

18  to customers, Redbubble enters into sales contracts with customers for products purchased on

19  redbubble.com. (*Id.* at 8:24–9:14.) A reasonable jury, when considering this evidence, would be

20  compelled to reach the unremarkable conclusion that it is Redbubble that is selling the infringing

21  products sold on Redbubble's website, redbubble.com.

22      **Redbubble offers to sell the infringing products.** In the Motion, Atari demonstrated that

23  Redbubble hosts product listing pages for the infringing products, which contain the material

24  terms of the transaction, and allow customers the option of purchasing the listed products entirely

25  on redbubble.com. (Dkt. No. 73, 18:25–19:7.) Atari further explained that such an offer to sell

26  infringing goods, standing alone, is direct infringement in violation of the Lanham Act. *Levi*

27  *Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997). Redbubble does not dispute any of

28  these facts or make any attempt to distinguish *Levi Strauss*. Instead, Redbubble argues that it does

1568800.5                                  -8-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

not offer the infringing products for sale because (1) it is Redbubble's users who upload the designs, and (2) Redbubble cannot offer the products for sale because Redbubble does not own them. These arguments fail.

**First**, just like Redbubble, Sunfrog users upload the designs, and the *SunFrog* court nonetheless held that "SunFrog, of course, . . . advertises and offers infringing designs for sale[.]" *SunFrog*, 311 F. Supp. 3d at 1030. Indeed, unlike Amazon or eBay, which simply display pre-existing photos, Redbubble assists its users in creating the infringing product listings by providing stock model photos, and software that affixes the infringing designs onto those photos. (Dkt. Nos. 64-58–63; 64-79–84; 75, 18:27–19:3.) Redbubble also provides product details—e.g., the type of t-shirt the design is to be printed on—based upon Redbubble's own requirements for its third-party printers. (Dkt. Nos. 64-58–63; 64-79–84; 68, Exhs. C–D.)

**Second**, as explained above, Redbubble does in fact form sales contracts to sell the products purchased on redbubble.com. *See, supra*, 6. Nonetheless, any dispute as to whether Redbubble holds title to the products sold on its website is irrelevant here. As explained in *Levi Strauss*, an offer to sell is actionable even where the offeror does not have the counterfeit goods. *Levi Strauss*, 121 F.3d at 1312. Again, Redbubble simply ignored this controlling authority.

**Redbubble advertises the infringing products.** In the Motion, Atari demonstrated that Redbubble's product listing pages constitute advertisements, and that Redbubble further pays to advertise its products on social media platforms and third-party websites. (Dkt. No. 73, 19:21–20:3.) Redbubble's counterfeit products appear next to authentic, licensed Atari products in search results, and alongside Redbubble marketing on third-party websites. (Dkt. Nos. 64-32, 64-64–65.) Redbubble did not dispute any of this.

Instead, Redbubble argues that it "merely purchases 'advertising space,' without designating what goes in it." (Dkt. No. 75, 11:10–12.) To be clear, Redbubble blames the "third-party ad platforms (like Google)" for "select[ing] and plac[ing] content into blank advertising space purchased by Redbubble":

> The third-party advertising platform—not Redbubble—determines the specific listing that gets displayed in an advertisement.

1  (Dkt. Nos. 75, 8:22–9:1; 80, ¶ 33.) Without any sense of irony, Redbubble further explained:

2         When Redbubble purchases ad space from Google, for example,

3         Google's software automatically decides which listings in the

       product feed will be displayed to any particular user in the context

4         of any particular ad.

5  (Dkt. No. 80, ¶ 35.) Elsewhere, Redbubble argues that it cannot be held liable for actions taken by

6  *its* software. Here, when convenient, Redbubble has no hesitation in arguing that Google chooses

7  the infringing advertisements where Google's software in fact automates the process. In any event,

8  the facts are not in reasonable dispute, whether directed by software or not, Redbubble purchases

9  advertising space for its products resulting in the placement of infringing advertisements.

10  Redbubble is "*actively involved*." *VHT*, 918 F.3d at 732. Thus, Redbubble is directly liable.

11                  **3.**     **Redbubble is Liable for Vicarious Infringement**

12         Redbubble agrees that vicarious liability for trademark infringement arises where "the

13  defendant and the infringer have an apparent or actual partnership, have authority to bind one

14  another in transactions with third parties or exercise joint ownership or control over the infringing

15  product." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (internal

16  quotation omitted). Undisputed evidence demonstrates that Redbubble is vicariously liable.

17         ***First***, Redbubble's descriptions of its printers as its partners and agents were far from

18  puffery; the statements were made through Redbubble's highest officials in investor-facing videos

19  and its 2018 Annual Report. (Dkt. Nos. 68, Exhs. B, D; 64-28, 52.) Redbubble's argument that its

20  corporate parent's annual reports are hearsay is incorrect in that the reports are statements on

21  behalf of not just the parent, but also the subsidiary, (Wesley Decl., Exh. C, 59:4–9); therefore,

22  they are an "opposing party's statement" offered against it. FED. R. EVID. 801(d)(2). This

23  establishes that Redbubble, at minimum, has an apparent partnership with its printers. *See Deicher*

24  *v. Corkery*, 205 Cal. App. 2d 654, 662 (1962) ("[T]he law imposes liability upon one who either

25  represents himself or consents to another representing him as a partner in an actual or apparent

26  partnership.").[1] In fact, Redbubble and its printers share the ill-gotten gains for sales of infringing

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[1] None of Redbubble's authorities involve statements made to investors. *See Kelly-Brown v.*

28

1   products on Redbubble. (Dkt. No. 64-28, 58–59 (showing the "Fulfiller expenses").) *See Holmes*

2   *v. Lerner*, 74 Cal. App. 4th 442, 454 (1999) ("profit sharing [is] evidence of a partnership").

3       ***Second***, Redbubble, alone, selects the printer and provides the Redbubble order

4   information to the printer. (Dkt. No. 73-2, 43:22–44:6.) Redbubble also performs in-person quality

5   checks, visits its printers, ensures the products they make "fit to the Redbubble standard," and

6   instructs them to use Redbubble-branded hang tags and stickers on products shipped to customers.

7   (*See* Dkt. No. 73, 9:18–11:4.) This control over the infringing products and the "displays,

8   hangtags, [and] receipts" is sufficient for vicarious infringement. *Navajo Nation v. Urban*

9   *Outfitters, Inc.*, No. 12-cv-195, 2013 WL 12161826, at *7 (D.N.M. Nov. 6, 2013); *see also Life*

10  *Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 Fed. Appx. 469, 472–73 (9th Cir. 2015)

11  (defendant liable for the infringing acts of telemarketers it hired and directed the conduct thereof);

12  *Robinson v. Delicious Vinyl Records Inc.*, No. 13-cv-4111, 2013 WL 3983014, at *6 (C.D. Cal.

13  Aug. 1, 2013) (defendant "directly engages" the infringers and "appears to have complete control

14  over the content of all promotional materials"). *Rosetta Stone Ltd. v. Google, Inc.*, 730 F. Supp. 2d

15  531, 549–50 (E.D. Va. 2010), *aff'd in part*, 676 F.3d 144, 165 (4th Cir. 2012) is distinguishable

16  because Google simply sold ad space, exercising no control over the content of the ads.

17      ***Third***, as to Redbubble's ability to bind its printers, Redbubble's declaration that its

18  printers "can and do decide unilaterally whether to fulfill or reject orders routed to them by the

19  platform software" is a sham—Redbubble's head of operations testified he was only aware of one

20  question from a printer regarding infringement, ever. (*See* Dkt. 80, ¶ 30; Wesley Decl., Exh. A,

21  70:17–71:4, 74:1–75:8.) *See Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012) (affirming

22  application of the sham affidavit rule).

### 4.   Redbubble is Liable for Contributory Infringement

24      In the Motion, Atari demonstrated that Redbubble is liable for contributory infringement

---

26  *Winfrey*, No. 11 Civ. 7875(PAC), 2012 WL 701262, at *7 (S.D.N.Y. Mar. 6, 2012) (statement in

27  magazine advertisement); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d
    1098, 1113 n.17 (N.D. Cal. 2008) ("off-hand references" made in deposition); *Gucci America, Inc.
    v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) ("vague, puffery-like

28  references" made "between these companies").

1  because its conscious decision to attempt to position itself as a contributory infringer, by enacting

2  a policy to not search for infringements absent prior notice from the rights holder, such that

3  Redbubble is free to sell counterfeits up until it receives such notice, is the definition of willful

4  blindness. (Dkt. No. 73, 21:9–22:5.) Even Redbubble's primary authority, *Tiffany*, 600 F.3d at

5  109, does not permit Redbubble willful blindness.

6       Redbubble points to *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011), a

7  patent case, to argue willful blindness requires that it "must (1) subjectively believe that there is a

8  high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." But

9  that describes Redbubble perfectly. Evidence is clear that Redbubble knows its platform is overrun

10  with infringements, e.g., the amount of infringing listings removed by its moderation team; and its

11  own annual report bragging that 76% of revenues comes from "authentic sellers" (leaving 24% of

12  revenue from inauthentic sellers). (Dkt. No. 64-28, 57; Dkt. No. 77, ¶¶ 4, 7, 9.) As to Atari, it is

13  undisputed that Atari sent Redbubble a cease and desist letter. (Dkt. No. 80-5.) And, again,

14  Redbubble took deliberate action to avoid learning the specifics when it enacted a policy to not

15  look for infringements absent a prior complaint from the rights holder. (Dkt. No. 73, 22:1–5.)

16       *Tiffany* is neither controlling in the Ninth Circuit, nor persuasive on these facts. In *Tiffany*,

17  certain of the Tiffany products sold on eBay were authentic, and with eBay never taking

18  possession of the products, it could not parse out the fakes without notice. *Tiffany*, 600 F.3d at 98

19  ("eBay knew that some portion of the Tiffany goods sold on its website might be counterfeit," but

20  "never saw or inspected the merchandise in the listings," and "in many instances it likely would

21  not have had the expertise to determine whether they were counterfeit.") (internal quotations

22  omitted). In that context, a specific notice requirement may make some sense. But here, unlike

23  eBay and Amazon, Redbubble only sells newly made products. If a product on Redbubble says

24  BOSTON CELTICS or FORD, there is no debate as to whether the product is a used re-sale

25  (which is legal) or a counterfeit (which is illegal). Any product bearing a well-known trademark

26  on Redbubble is unquestionably a counterfeit. In short, unlike eBay and Amazon, Redbubble does

27  not require specific notice from Atari (or any other well-known brand owner) as to which listings

28  using well-known IP must be taken down—they all must be taken down.

1    And, even absent a finding of willful blindness, Redbubble is not entitled to summary

2  judgment because significant evidence shows that Redbubble had "[d]irect control and monitoring

3  of the instrumentality used by a third party to infringe" and "continued to supply its services to

4  one who it knew or had reason to know was engaging in trademark infringement[.]" *Louis Vuitton*

5  *Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011).

6    Direct control and monitoring is undisputed. Next, just as to Counterfind clients,

7  Redbubble allowed over 1,000 repeat infringers to operate before suspending their accounts,

8  including over 400 users with three or more violations. (Dkt. No. 64-67, ¶¶ 35–36.) Counterfind's

9  data further shows that Redbubble takes significantly longer than other print-on-demand websites

10  to remove infringing items after receiving notice. (*Id.* at ¶¶ 30-31.) Further, even after this lawsuit

11  was filed, Redbubble failed to promptly remove infringing Atari items:  A Centipede t-shirt

12  product listing was produced to Redbubble on December 5, 2019, but remained on Redbubble's

13  website until at least March 23, 2020. (Venezia Decl., Exh. A; Dkt. No. 64-58.) *The Missile*

14  *command t-shirt used as an exemplar in Redbubble's summary judgment papers remains listed for*

15  *sale on redbubble.com.* (Cuellar Decl., Exh. B.) These failures, and others, are not reflected in

16  Redbubble's self-serving and misleading exhibits purporting to show prompt removal.

17    **B.    Redbubble Is Liable for Copyright Infringement**

18    There is no dispute that to prevail on its claim for copyright infringement, Atari must

19  demonstrate "(1) ownership of the allegedly infringed work and (2) copying of the protected

20  elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980,

21  984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). In

22  the Motion, Atari identified no fewer than 61 products with copies of the game graphics from

23  *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*. (Dkt.

24  Nos. 73, 13:18-20; 64-30.) Redbubble did not dispute that these 61 products are copies, and

25  copying is thus established. Instead, Redbubble argues that Atari did not demonstrate ownership of

26  the copied work, and Redbubble itself did not engage in volitional conduct. Both arguments fail.

27    **1.    Atari Owns Copyrights for the Copied Game Graphics**

28    In the Motion, Atari demonstrated that it owns copyright registrations for its Atari Greatest

Hits games, and that those games allow users to play Atari's classic video games, and include original artwork from those games, including *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*. (Dkt. No. 73, 5:13-17.) Atari further captured, and submitted into evidence, game graphics and other copyrighted elements from these games. (Dkt. Nos. 64-45–51; 64-69, ¶¶ 28-33, 38.) Lastly, Atari submitted into evidence agreements tracing its ownership of the copyrights for the games back to the original Atari, Inc. entity. (Dkt. Nos. 64-13–20.)

Redbubble argues that (1) Atari has only derivative rights in its Greatest Hits games and thus was required to present evidence of their "changes and contributions"; and (2) Atari failed to provide "evidence of the specific content of the copyrights that Atari identified in connection with its Complaint." (Dkt. No. 75, 17:17–18:13.) Both arguments fail.

***First***, Atari provided evidence not only that it holds copyright registrations for its Greatest Hits games, but traced ownership of the original copyrights back to Atari, Inc. (Dkt. Nos. 64-13–20.) Atari provided undisputed evidence that Atari, Inc. created *Adventure*, *Asteroids*, *Breakout*, *Centipede*, *Missile Command*, *Pong*, and *Yar's Revenge*; and provided visual examples of their copyrighted elements. (Dkt. No. 64-69, ¶¶ 23, 28–33, 38.) "[B]ecause [Atari] is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 538 (4th Cir. 2007) ("[W]hen the author of the derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author."); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10–3428 PSG, 2013 WL 831528, at *4 (N.D. Cal. Jan. 10, 2013) (same).

***Second***, Atari did provide evidence of the contents of its copyrights, including capturing game graphics from its Greatest Hits games, and exemplars provided by an Atari expert. (Dkt. Nos. 64-45–51; 64-69, ¶¶ 23, 28–33, 38.) To the extent Redbubble complains that Atari did not specifically identify its Greatest Hits registrations in its complaint, Atari's complaint provided ample notice of the copyrights at issue in this case, and on November 20, 2019, Atari filed its

Supplemental Notice of Pending Action Regarding Copyright, expressly identifying the Greatest Hits registrations "as being at issue in this action[.]" (Dkt. No. 59.) If there were any reasonable dispute concerning the Greatest Hits registrations, or if Redbubble had any questions concerning the same, Redbubble later-deposed Atari on December 16, 2019. (Venezia Decl., ¶ 4.)

### 2.   Redbubble Directly Infringed Atari's Copyrights

In the Motion, Atari demonstrated that all parties participating in a copyright infringement are directly liable and that innocent infringement is no defense to liability. (Dkt. No. 73, 22:27–23:4.) Redbubble made no attempt to contradict this point, instead relying on cases like *VHT* to argue that for direct liability to arise, Redbubble must have engaged in "volitional conduct." But as discussed above, the volitional conduct requirement simply means that Redbubble must have been "*actively involved* in the infringement." *VHT*, 918 F.3d at 732. Here, Redbubble takes several actions, beyond providing a platform that allows photos to be uploaded as in *VHT*, rendering it actively involved in copyright infringement.

*First*, Redbubble takes infringing designs uploaded by users and affixes them to its stock model photos to create new infringing photos of the finished product offered for sale. (Dkt. Nos. 64-58–63; 64-79–84; 75, 18:27–19:3.) Redbubble controls the software that creates the product photos and commissioned the stock model photos. (*Id.*; https://www.insider.com/redbubble-male-model-offensive-shirts-2018-3 (last accessed June 9, 2020).) *Cf. VHT*, 918 F.3d at 730 (Zillow automatically pulls photos from "real estate-related sources"); *Milo & Gabby*, 693 Fed. Appx. at 880 (sellers upload the product images which are shown in product listing).

*Second*, Redbubble hires its printing partners to manufacture products affixed with the infringing designs. Redbubble directs the software that routes orders to its printers, and Redbubble establishes relationships with these printers, even visiting them to perform quality checks. (Dkt. No. 68, Exhs. B–D; Dkt. No. 73-2, 43:22–44-6.) Redbubble further provides Redbubble packaging to the printers, and maintains shipping agreements with major carriers which ship the products to the customers. (Dkt. No. 73-2, 44:7–45:22, 65:3–14.) *Cf. VHT*, 918 F.3d at 730 (no physical product is created or sold using the infringing photos); *Milo & Gabby*, 693 Fed. Appx. at 880–81 (sellers provide their own pre-existing goods for sale).

1568800.5

-15-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

***Third***, Redbubble acts when it controls the sales process and sells the infringing products. (Dkt. No. 73, 6:6–11:4.) Redbubble's users never possess or hold title to the infringing products, and thus, per Redbubble's own arguments, cannot be the sellers. *See, supra*, 6–7. *Cf. Milo & Gabby*, 693 Fed. Appx. at 890 ("the third-party sellers retain title to the pillowcases at all times").

***Fourth***, Redbubble publishes the infringing photos to third-party websites and social media platforms by placing paid ads. In addition to Redbubble's role in creating the infringing photos, Redbubble pays Google, Facebook, and Instagram to place these ads. (Dkt. No. 73, 8:1–20.) *Cf. Williams-Sonoma, Inc. v. Amazon.com, Inc.*, No. 18-cv-07548-EDL, 2019 WL 7810815, at *6–7 (N.D. Cal. May, 2, 2019) (denying Amazon's motion to dismiss trademark infringement claims where Amazon placed potentially infringing search engine advertisements).

### 3.    Redbubble Is Further Vicariously Liable for Its Users' Infringements

In the Motion, Atari established that Redbubble is vicariously liable for the infringing actions of its users because Redbubble has both the right and ability to supervise infringements on its platform and a direct financial incentive in those infringements. (Dkt. No. 73, 23:16–25:6.) Redbubble does not dispute that it has a financial incentive in its users infringements, conceding the point. Instead, Redbubble argues it cannot be vicariously liable because "there is no evidence that Redbubble has any technical or practical way to screen out or identify infringing images[.]" (Dkt. No. 75, 21:3–4.) This argument is unsupported by the law and the evidence.

The most instructive authority is *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ("*Napster*"). Napster had a policy allowing it to terminate user access, and the ability to locate infringements on its platform by searching file names, even where that method was imperfect because certain music files could be mislabeled. *Id.* at 1023–24. This was held sufficient to demonstrate the right and ability to supervise. *Id.*

Similarly, it is undisputed that Redbubble has the right to terminate user access, and the ability to locate infringements through its search functions. (Dkt. Nos. 80, ¶¶ 10, 12, 19; 80-4.) Redbubble brags that its "policing efforts are empirically successful: since inception of suit, there have been less than $1000 in sales of products removed due to Atari IP concerns[.]" (Dkt. No. 75, 7:9–10.) And, while Redbubble complains that it would be burdensome to search the large amount

1   of listings on its site, the mere volume of infringing material provides no defense here—Napster

2   was held to have the ability to police its platform where "10,000 music files [were] shared *per*

3   *second*[.]" *A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 902 (N.D. Cal. 2000).

4        Redbubble's cases are distinguishable. In *VHT*, 918 F.3d at 730, VHT operated "the largest

5   professional real estate photography studio in the country[;]" its photos being licensed to its clients

6   for marketing on varying terms. The court relied on evidence that Zillow could not determine

7   which photos exceeded the scope of their license without access to the "Uniform Resource

8   Locator" number such that Zillow could review the licensing terms. *Id.* at 745. Here, none of the

9   Atari designs are licensed; Redbubble can simply search for the infringing designs, as in *Napster*.

10       Next, in *Perfect 10*, 508 F. 3d at 1174–75, the court primarily relied on the fact that Google

11  has no contractual right or practical ability to control infringing content uploaded on *third parties'*

12  websites. Where Google had insufficient technology to locate infringements, the court referred to

13  Google's inability to locate every infringement hosted on third-parties' websites throughout the

14  entire internet. This is far different than Redbubble, which can identify infringements on its own

15  platform by using its search functions, as in *Napster*.

16       **4.    Redbubble Is Liable for Contributory Copyright Infringement**

17       In the Motion, Atari demonstrated that Redbubble is liable for contributory copyright

18  infringement because it is willfully blind to the infringing products sold on redbubble.com, and

19  induces the infringements by paying its users a fee for sales of the infringing products. (Dkt. No.

20  75, 25:7–20.) Redbubble contends that it is not willfully blind, promptly removes infringing

21  material from redbubble.com, and does not induce infringements because its users determine how

22  much money they make when setting the product price. None of this is true.

23       In the Motion, Atari established that Redbubble enacted a policy of willful blindness. (Dkt.

24  No. 73, 21:9–22:5.) Atari has further set forth herein that Redbubble does not promptly remove

25  infringements from redbubble.com upon receiving notice. *See, supra*, 12. (*See also* Cuellar Decl.,

26  Exh. A (current product listings using the Adventure dragon).) Lastly, Redbubble's assertion that

27  its users do not receive a fee for selling infringing products because users set the price borders on

28  absurd—Redbubble users presumably are motivated to make money—and Redbubble's

documents show that its users did in fact receive money as a result of their infringing Atari sales. (Dkt. No. 72, Wesley Decl., Exh. A-2.)

### 5. Redbubble Does Not Qualify for Protection Under the DMCA

#### a. Redbubble Is Not a Service Provider

The DMCA can only provide "safe harbor" to Redbubble where it qualifies as a service provider, and then, the DMCA only applies to Redbubble's hosting of infringing content uploaded by users. 17 U.S.C. § 512(c)(1). To qualify as a service provider, Redbubble must demonstrate that the designs uploaded to its website are stored "without modification to the content of the material as sent or received." 17 U.S.C. § 512(k)(1).

Redbubble relies upon *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013) ("*UMG*") to argue it does not modify the designs uploaded to its website. In *UMG*, the defendant reformatted videos uploaded to its platform for technical compatibility—e.g., to allow playback on portable devices—the court emphasizing that "[n]one of these automated conversions affects the content of the video." *Id.* at 1012. The court held that a service provider may "modify user-submitted material to facilitate storage and access." *Id.* at 1019.

But, Redbubble does not reformat images uploaded on its website to "facilitate storage and access"—again, it affixes the images onto its stock model photos to create new infringing photos of the products it offers for sale. The purpose of the new image is not technical accessibility, but to allow potential customers to view what the infringing design would look like when printed on a particular item. This is a modification under the plain language of Section 512(k)(1). (*Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39 (2d Cir. 2012) offers Redbubble no support for the same reasons as *UMG*, holding consistently.)

Moreover, beyond Redbubble's creation of new infringing photos, Redbubble uses the infringing designs in a number of ways that exceed mere "hosting of infringing content uploaded by users." *See, supra*, 15–16. While Redbubble cites to *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13–1932RSM, 2015 WL 4394673, at *1–2 (W.D. Wash. July 16, 2015), and *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1094 (W.D. Wash. 2004), in neither of those cases did Amazon create any new product photos or commission the manufacture of products.

1568800.5

-18-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1          **b.      Redbubble Does Not Qualify for a Safe Harbor**

2          Assuming that Redbubble qualified as a service provider (it does not), to qualify for safe

3    harbor protection, it must "not receive a financial benefit directly attributable to the infringing

4    activity, in a case in which the service provider has the right and ability to control such activity[.]"

5    17 U.S.C. § 512(c)(1)(B). It is undisputed that Redbubble receives a financial benefit from the

6    infringements on redbubble.com. (Dkt. No. 73, 24:26–25:6.) Instead, Redbubble again argues that

7    it does not have "the right and ability to control such activity[.]" (Dkt. No. 75, 22:23–23:17.)

8          Atari previously demonstrated to the contrary. *See, supra*, 16. While Redbubble is correct

9    that *UMG* held "something more" is required for purposes of the DMCA, "something more" exists

10   in spades here. *UMG*, 718 F.3d at 1030. Redbubble's case, *Corbis*, is instructive. Unlike Amazon

11   in *Corbis*, Redbubble controls every aspect of the sales process. *Cf. Corbis*, 351 F. Supp. 2d at

12   1110 (Amazon does not "otherwise involve itself in the sale.").

13         In addition, to qualify for safe harbor protection, Redbubble must further show that it has

14   responded expeditiously upon notice to remove infringements from Redbubble. 17 U.S.C. §

15   512(c)(1)(C). As discussed above, Redbubble cannot meet this burden. *See, supra*, 13, 17.

16         **C.      A Reasonable Jury Could Find Redbubble's Infringement to Be Willful**

17         Either "reckless disregard" or "willful blindness" is sufficient for Atari to prove

18   willfulness. *Unicolors*, 853 F.3d at 991; *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 785 Fed. Appx.

19   417, 418 (9th Cir. 2019) (Zazzle was willfully blind, where it, among other things, "relied on a

20   user-certification process it knew produced false certifications[,]" and failed to promptly suspend

21   infringing sellers); *Tiffany*, 600 F.3d at 110 ("willful blindness is equivalent to actual knowledge

22   for purposes of the Lanham Act") (internal quotation omitted). While Redbubble argues actual

23   knowledge is required, the Court need not resolve any disagreements over the proper standard.[2]

24         Atari discussed ample evidence above to allow a reasonable jury to find Redbubble acted

25   intentionally with actual knowledge, or with reckless disregard and willful blindness. *See, supra*,

26

27   _____

28   [2] *State of Idaho Potato Commission v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) did not consider whether willful blindness could substitute for intentional knowing use.

11–13, 17. Further, deposition testimony shows Redbubble employees overseeing IP matters and operations had pre-existing knowledge of the Atari brand, and e-mails show Redbubble fielded correspondence from customers concerning purchases for infringing Atari products. (Wesley Decl., Exh. A, 29:1–18; Exh. B, 96:2–98:1; Exh. C, 100:24–101:8 & Exhs. 1024, 1025.)

### D. **Atari May Recover Damages**

Redbubble argues that Atari cannot recover damages, having failed to properly disclose its damages in discovery. (Dkt. No 75, 24:5–6.) This argument fails on the facts and the law.

*First*, Atari timely disclosed that it seeks statutory damages on its trademark and copyright claims, including providing the applicable ranges for the statutory damages. (Dkt. Nos. 76-5–6.) Nothing further is required. *Undiscovered Corp. v. Heist Studios*, No. CV 18-5719 FMO (ASx), 2019 WL 8219489, at *5 (C.D. Cal. Oct. 1, 2019) (holding no computation of statutory damages required); *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp. 2d 1027, 1046 (D. Alaska 2013) (same). None of Redbubble's cases involve statutory damages. *See Ingenco Holdings, LLC v. Ace American Ins. Co.*, 921 F.3d 803, 808, 821–22 (9th Cir. 2019) ("statutory damages" referred to actual damages on Washington law statutory claims).

*Second*, any failure by Atari to provide a calculation of Redbubble's profits from the sale of infringing products was "substantially justified" and "harmless." FED. R. CIV. P. 37(c)(1). Atari's burden is to demonstrate Redbubble's revenue from the infringing sales, which is reflected in Redbubble's own documents. (Dkt. No. 72, Wesley Decl., Exh. A-2; Exh. D at Exh. 1049.)

## IV. **CONCLUSION**

Atari respectfully requests that its Motion be granted, and Redbubble's Motion for Summary Judgment be denied.

Dated: June 10, 2020

BROWNE GEORGE ROSS LLP
Keith J. Wesley
Matthew L. Venezia

By: _/s/ Matthew L. Venezia_
Matthew L. Venezia
Attorneys for Plaintiff Atari Interactive, Inc.

1568800.5

-20-

ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2020, I electronically filed the foregoing **ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

### SERVICE LIST

*Atari Interactive, Inc. v. Redbubble Inc.*
U.S.D.C. N.D. CA, Oakland Division Case No. 4:18-CV-03451-JST
[Related to Case Nos. 3:18-cv-03843-JST; 3:18-cv-04115; 4:18-cv-04949-JST;
and 19-cv-00264-JST]

| | |
|---|---|
| Kenneth B. Wilson | Attorneys for Defendant |
| COASTSIDE LEGAL | Redbubble, Inc. |
| 455 1st Avenue | |
| Half Moon Bay, CA 94019 | |
| Tel:   (650)440-4211 | |
| Fax:   (650)440-4851 | |
| ken@coastsidelegal.com | |
| | |
| Jonathan M. Masur | Attorneys for Defendant |
| Zachary S. Davidson | Redbubble, Inc. |
| ZUBER LAWLER & | |
|   DEL DUCA LLP | |
| 2000 Broadway Street, Suite 154 | |
| Redwood City, California 94063 | |
| Telephone: (650) 434-8538 | |
| Email: jmasur@zuberlawler.com | |
|        zdavidson@zuberlawler.com | |
| | |
| Debora Sanfelippo | |
| dsanfelippo@zuberlawler.com | |

_____
Andrea A. Augustine

1568800.5

-21-
ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT