KENNETH B. WILSON (SBN 130009)
  ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
  jmasur@zuberlaw.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 434-8538
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
  zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>REDBUBBLE INC.,<br><br>            Defendant. | Case No. 4:18-cv-03451-JST<br><br>**DEFENDANT REDBUBBLE INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Supplemental Declarations of Kate Rickert and Kenneth B. Wilson]*<br><br>Judge:   Hon. Jon S. Tigar<br>Date:    July 15, 2020<br>Time:    2:00 p.m.<br>Crtrm.:   6 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION........................................................................................................1

II.     REDBUBBLE CANNOT BE LIABLE FOR TRADEMARK INFRINGEMENT ..............1

    A.      Plaintiff Cannot Establish Direct Trademark Infringement ........................................1

    B.      Plaintiff Cannot Establish Contributory Trademark Infringement............................4

    C.      Plaintiff Cannot Establish Vicarious Trademark Infringement.................................6

    D.      Plaintiff Cannot Establish Its Other Trademark-Related Claims .............................7

    E.      Plaintiff Cannot Establish Counterfeiting ................................................................8

III.    REDBUBBLE CANNOT BE LIABLE FOR COPYRIGHT INFRINGEMENT ................9

    A.      Plaintiff Has Not Proven Infringement by Anyone....................................................9

    B.      Plaintiff Cannot Establish Direct Copyright Infringement.......................................10

    C.      Plaintiff Cannot Establish Contributory Copyright Infringement ...........................11

    D.      Plaintiff Cannot Establish Vicarious Copyright Infringement .................................11

    E.      Redbubble Is Protected by the DMCA Safe Harbor Provisions ..............................12

IV.     REDBUBBLE CANNOT BE LIABLE FOR DAMAGES..................................................14

    A.      Plaintiff's Failure to Disclose Its Damages Claim Precludes Recovery .................14

    B.      Plaintiff Cannot Establish Willful Infringement. ....................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*A&M Records, Inc. v. Napster, Inc.*,
  114 F. Supp. 2d 896 (C.D. Cal. 2000)................................................................. 12

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)............................................................................. 12

*Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.*,
  2015 WL 5311085 (C.D. Cal. 2015)..................................................................... 5

*Align Tech., Inc. v. Strauss Diamond Insts., Inc.*,
  2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ...................................................... 8

*Antonick v. Electronic Arts, Inc.*,
  841 F. 3d 1062 (9th Cir. 2016)............................................................................ 10

*Arcona, Inc. v. Farmacy Beauty, LLC*,
  2019 WL 1260625 (C.D. Cal., Mar. 19, 2019) ................................................. 8, 9

*Born to Rock Design Inc. v. CafePress.com, Inc.*,
  No. 10 Civ. 8588(CM), 2012 WL 3954518 (S.D.N.Y. Sept. 7, 2012) ................ 2

*Corbis Corp. v. Amazon.com, Inc.*,
  351 F. Supp. 2d 1090 (W.D. Wash. 2004) ......................................................... 13

*CoStar Group, Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) .............................................................................. 10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ............................................................................................. 6

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
  785 Fed. Appx. 417 (9th Cir. 2019) .................................................................... 15

*Gucci America, Inc. v. Guess?, Inc.*,
  868 F. Supp. 2d 207 (S.D.N.Y. 2012) .................................................................. 8

*H–D U.S.A., LLC v. SunFrog*,
  311 F. Supp. 3d 1000 (E.D. Wisc. 2018) ......................................................... 2, 3

*Hells Angels Motorcycle Corp.(Aust.) Pty Ltd. v Redbubble Ltd.*,
  [2019] FCA 355 ................................................................................................... 15

*Kelly-Brown v. Winfrey*,
  2012 WL 701262 (S.D.N.Y. Mar. 6, 2012), *aff'd in relevant part*, 717 F.3d 295 (2d
  Cir. 2013) ............................................................................................................... 6

*Ketab Corp. v. Mesriani Law Group*,
  2016 U.S. Dist. LEXIS 37151 (C.D. Cal. 2016);................................................ 14

*Lenz v. Universal Music Corp.*,
    815 F. 3d 1145 (9th Cir. 2015) ................................................................................................ 6

*Levi Strauss & Co. v. Shilon*,
    121 F.3d 1309 (9th Cir. 1997) ................................................................................................. 4

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
    601 Fed. Appx. 469 (9th Cir. 2015) ....................................................................................... 7

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    985 F. Supp. 949 (C.D. Cal. 1997), *aff'd* 194 F.3d 980 (9th Cir. 1999) ............................ 5

*Lopez v. Bonanza.com, Inc.*,
    No. 17 Civ. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ........................... 1

*LTTB, LLC v. Redbubble Inc.*,
    385 F. Supp. 3d 916 (N.D. Cal. 2019) ............................................................................. 5, 15

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................................................. 11

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    2015 WL 4394673 (W.D. Wash. July 16, 2015) ........................................................ passim

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    693 F. App'x 879 (Fed. Cir. 2017) .................................................................................. 1, 2, 3

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ................................................................................................. 1

*Ohio State Univ. v. Redbubble*,
    369 F. Supp. 3d 840 (S.D. Ohio 2019) ......................................................................... passim

*Ohio State Univ. v. Skreened Ltd.*,
    16 F. Supp. 3d 905 (S.D. Ohio 2014) ..................................................................................... 2

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1046 (9th Cir. 2007) ............................................................................................... 12

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ................................................................................................. 8

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F. 3d 657 (9th Cir. 2017) ........................................................................................... 1, 10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................................................... 7

*Ploom, Inc. v. iPloom LLC*,
    2014 WL 1942218 (N.D. Cal. May 12, 2014) ..................................................................... 14

*Pokémon Co. Int'l, Inc. v Redbubble Ltd.*,
    [2017] FCA 1541 .................................................................................................................. 15

REDBUBBLE'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

*Robinson v. Delicious Vinyl Records Inc.*,
No. 13-cv-4111, 2013 WL 3983014 (C.D. Cal. Aug. 1, 2013) .......................................... 7

*Rosetta Stone Ltd. v. Google, Inc.*,
730 F.Supp.2d 531 (E.D. Va. 2010), *aff'd in relevant part,* 676 F.3d 144 (4th Cir.
2012) ................................................................................................................................. 7

*Seiler v. Lucasfilm, Ltd.*,
808 F. 2d 1316 (9th Cir. 1986) ..................................................................................... 9, 10

*Spy Phone Labs LLC v. Google Inc.*,
2016 WL 6025469 (N.D. Cal. 2016) ................................................................................. 5

*State of Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*,
425 F.3d 708 (9th Cir. 2005) ............................................................................................ 9

*Tiffany Inc. v. eBay, Inc.*,
600 F.3d 93 (2nd Cir. 2010) ..................................................................................... 1, 5, 6

*Tre Milano, LLC v. Amazon.com, Inc.*,
No. B234753, 2012 WL 3594380 (Cal. App. 2012) .................................................. 1, 2, 4

*UMG Recordings, Inc. v. Shelter Capital Partners*,
718 F.3d 1006 (9th Cir. 2013) ........................................................................................ 13

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) ............................................................................................ 9

*Universal Pictures Co. v. Harold Lloyd Corp.*,
162 F.2d 354 (9th Cir. 1947) .......................................................................................... 10

*VHT, Inc. v. Zillow Group, Inc.*,
918 F.3d 723 (9th Cir. 2019) .................................................................... 10, 11, 12, 13

*Viacom International, Inc. v. YouTube, Inc.*,
676 F.3d 19 (2nd Cir. 2012) ........................................................................................ 6, 11

*Wolk v. Kodak Imaging Network*,
840 F. Supp. 2d 724 (S.D.N.Y. 2012) ............................................................................ 13

**STATUTES**

17 U.S.C. § 512 ....................................................................................................... 12, 13

Cal. Com. Code § 2106 ........................................................................................................ 3

Cal. Com. Code § 2206(1)(b) ............................................................................................... 2

Cal. Com. Code § 2401 ........................................................................................................ 3

Communications Decency Act, 47 U.S.C. § 230(c)(1) ....................................................... 7

# RULES

Fed. R. Civ. P. 26(a) ................................................................................................ 14

Trademark Manual of Examining Procedure § 808.02 ................................................ 8

# TREATISES

4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:15.10 (5th
    ed. 2019) ............................................................................................................... 9

I.        **INTRODUCTION**

Despite the volume of paper submitted by Plaintiff, there are really no ***genuinely*** disputed material facts. Plaintiff has failed to offer evidence contradicting Redbubble's core evidentiary showings, and most "facts" Plaintiff offers are either unsupported by evidentiary citations, or cite to evidence bearing no relation to the principle for which they are cited, or are immaterial to the issues before the Court. Under the circumstances, summary judgment in Redbubble's favor is warranted.

II.       **REDBUBBLE CANNOT BE LIABLE FOR TRADEMARK INFRINGEMENT**

A.        **Plaintiff Cannot Establish Direct Trademark Infringement**

To defeat summary judgment, Plaintiff was required to demonstrate that Redbubble made an affirmative "use in commerce" of an Atari mark, rather than merely facilitating or enabling such use. See *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2nd Cir. 2010). Not only has Plaintiff failed to meet this standard, but the evidence of record proves that Redbubble did not make, offer, advertise or sell Accused Products, or do anything affirmatively with the Atari marks.

While questioning whether "use" requires a volitional act, Plaintiff does not dispute that courts have only found direct infringement in cases involving volitional acts, such as making, offering, selling and advertising products with infringing marks. *Cf. Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657 (9th Cir. 2017) (volitional conduct requirement applies to all torts). And cases involving online marketplaces have consistently found no liability for direct infringement because they do not engage in a volitional use of the marks in question, even if the opinions haven't used those words. *See, e.g., Tiffany*, 600 F. 3d at 103; *Ohio State Univ. v. Redbubble,* 369 F. Supp. 3d 840 (S.D. Ohio 2019); *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) (*Milo & Gabby I*), *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) (*Milo & Gabby II*); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012).

Indeed, Plaintiff has not cited a single case finding direct infringement where the accused infringer did not consciously use the mark while making, offering, advertising, or selling the accused marks or products. For example, in *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144–45 (9th Cir. 2011), the accused infringer did "not contest … its use of the

REDBUBBLE'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

1  mark" at issue to **advertise** its own products. And in the three cases that Plaintiff primarily relies

2  on – *H–D U.S.A., LLC v. SunFrog*, 311 F. Supp. 3d 1000 (E.D. Wisc. 2018), *Ohio State Univ. v.*

3  *Skreened Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014), and *Born to Rock Design Inc. v.*

4  *CafePress.com, Inc.*, No. 10 Civ. 8588(CM), 2012 WL 3954518 (S.D.N.Y. Sept. 7, 2012) –

5  defendants themselves **made** the accused products, among other potentially infringing volitional

6  acts. *See Ohio State*, 369 F. Supp. 3d at 845, 847 (distinguishing these three cases accordingly).[1]

7          Conceding that Redbubble does not itself make the accused products, Plaintiff attempts to

8  label Redbubble's role in facilitating transactions as that of a seller or advertiser. But to the extent

9  there is any direct infringement, it is by the third-party Sellers who upload the designs, specify the

10  products to be sold, set the price, and provide the information to create the listing page offering the

11  product. Indeed, under Plaintiff's theory, where Redbubble would be deemed the seller, offeror

12  and advertiser, third-party Sellers who intentionally created counterfeit listings would have no

13  liability at all. Such a result highlights the absurdity of Plaintiff's position.

14          Though Plaintiff argues that Redbubble is the seller of Marketplace products, Plaintiff does

15  not contest that "the general U.C.C. definition that a party must transfer title in a product to a

16  buyer in order to be considered a seller" applies to claims against platforms like Redbubble. *See*

17  *Milo & Gabby II*, 693 F. App'x at 886; *Milo & Gabby I*, 2015 WL 4394673 at *6; *Tre Milano*,

18  2012 WL 3594380 at *12. Nor does Plaintiff dispute that the User Agreement among Redbubble,

19  sellers using the Marketplace, and their customers, repeatedly states that the sales contract is

20  between the purchaser and the third-party Seller, not Redbubble,[2] and specifies that "title and risk

21  for loss for such items pass from [Seller] to the customer/purchaser without passing through

22  [Redbubble]." [Toy Decl. Exh. C] Since the UCC (on which Plaintiff relies) specifies that "title to

23  goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on

24  _____

25  [1] While virtually ignoring the *Ohio State* decision, plaintiff continues to rely on two Australian decisions involving Redbubble, without so much as addressing Redbubble's arguments that these foreign decisions involve different factual and legal issues, burdens, and legal standards, and are

26  inadmissible because their findings are both hearsay and irrelevant. [Cross-Motion at 9 fn. 8]

27  [2] Plaintiff cites to Cal. Com. Code § 2206(1)(b) to argue that an implied sales contract was formed based on interactions between Redbubble and purchasers but offers no authority to support its

28  claim that this statute overrides Com. Code Sections 2106 and 2401, or that such interactions trump express contractual language specifying the seller and allocating the risk of title.

1   by the parties," this contractual provision should be dispositive.[3] Cal. Com. Code § 2401; *see also*

2   Cal. Com. Code § 2106 ("sale" is "the passing of title from the seller to the buyer for a price").

3        Try as it may, Plaintiff cannot successfully link Redbubble to SunFrog's misdeeds. As

4   Redbubble noted at page 10 of its Cross-Motion, unlike Redbubble, SunFrog printed, advertised,

5   sold, packed, and shipped the Accused Products. And unlike Redbubble, SunFrog owned the raw

6   materials on which the products were printed; took the majority of sales revenue; and perhaps

7   most importantly, failed to offer evidence that it never held title. 311 F. Supp. 3d at 1015 n. 6.

8        As the *Ohio State* court correctly found, despite Plaintiff's protests, Redbubble's business

9   (as described in the relevant cases) is far closer to Amazon's Marketplace than to SunFrog's. For

10   example, in *Milo & Gabby I,* plaintiff argued (as here) that Amazon was the "real seller" because

11   "(1) the products are advertised on the amazon.com domain; (2) payment is made directly to

12   Amazon; (3) Amazon issues the invoice and tracking information; (4) Amazon ships the products

13   in a box that bears the Amazon logo; and (5) Amazon broadcasts email advertisements from its

14   own account (not the manufacturer's) offering the knockoff." 2015 WL 4394673 at *2. In

15   addition, and unlike Redbubble, Amazon itself stored, handled, boxed, and shipped the products.

16   Nonetheless, because "third-party sellers retain full title to and ownership of the inventory," the

17   court held that Amazon was not the seller. *Id.* at 6; *see also Milo & Gabby II* (Amazon did not

18   "sell" marketplace products it stored, packaged and shipped because "Amazon never held title to

19   the accused products"). Indeed, Amazon's involvement in handling, packaging and shipping

20   products is more active, and therefore more germane to ***direct*** infringement, than Redbubble's

21   alleged role in facilitating the third-party manufacture of Accused Products.

22        Plaintiff also claims – without support – that, unlike Amazon, Redbubble gives customers

23   the impression it is the seller.  But even were that true – and it is not – Plaintiff cites no case law to

24   suggest that "fact" would make Redbubble the Seller, especially where the Redbubble User

25   _____

26   [3] Plaintiff offers a convoluted argument that notwithstanding the parties' allocation of title, the
    third-party Sellers should not be deemed sellers because third-party manufacturers own the raw

27   materials on which products are printed, and therefore the manufacturers, not the Sellers, hold title
    to the printed products. Redbubble has no idea how Plaintiff reaches this conclusion (Plaintiff

28   offers no supporting citations, and Redbubble has certainly never taken this position), and even
    less idea how Plaintiff's unique theory would result in Redbubble being deemed the product seller.

**REDBUBBLE'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

1  Agreement that each Marketplace user agrees to expressly confirms that the third-party artist is the

2  Seller, and the third-party seller is identified by name in multiple locations and on every relevant

3  page or view. *See, e.g.*, *Ohio State*, 369 F. Supp. 3d at 846 (no direct infringement where

4  Redbubble "lists in several places that the product is from an 'independent artist'").

5     Plaintiff's argument that Redbubble "advertises and offers for sale" products through the

6  listings on its website is similarly flawed, as it "ignores the fact that Redbubble is not the one

7  placing [] marks on its website. Rather, the marks are uploaded by the independent artists," as is

8  other product information such as product title, tags and price. *Ohio State,* 369 F. Supp. 3d at 847.

9  Similarly, images appearing on models or product mockups are uploaded and positioned at the

10  direction of the third-party Sellers, not Redbubble. [Toy Decl. ¶ 31; Wilson Supp. Decl. Exh. B]

11  And because Redbubble never takes title to the products, they aren't Redbubble's to offer or sell.

12     Plaintiff chides Redbubble for failing to address *Levi Strauss & Co. v. Shilon*, 121 F.3d

13  1309, 1312 (9th Cir. 1997), but there, the defendant **conceded** that he offered counterfeit products;

14  the issue was whether an offer, standing alone, sufficed for liability. That has no bearing on if

15  Redbubble can be deemed the offeror of products where third-parties acknowledge that they are

16  the Sellers, upload the designs, specify the products offered, set the price, provide the search

17  keywords, and thus create the product listing page. The only relevant authorities dictate that

18  Redbubble cannot. *See, e.g., Milo & Gabby I, supra*; *Tre Milano, supra*.

19     Finally, Plaintiff argues that Redbubble is directly liable for "purchas[ing] advertising

20  space" in which infringing advertisements may be placed, but this argument proves Redbubble's

21  point. Redbubble never placed Atari marks on advertisements; rather, any such ads were created

22  by third parties. [Toy Decl. ¶ 36] Thus, Redbubble has no liability for direct infringement.

23     **B.**  <u>**Plaintiff Cannot Establish Contributory Trademark Infringement**</u>

24     Although Redbubble has removed every listing identified by Plaintiff promptly upon

25  receiving notice (Toy Decl. ¶ 26; Rickert Decl. Exh. A), Plaintiff claims that Redbubble is

26  contributorily liable because *other* purportedly infringing listings remained or reappeared.[4] But

27              

28  [4] At page 13 of its Opposition, Plaintiff identifies two Atari-related listings that were then on the
Redbubble Marketplace, but it has not offered (and cannot offer) any evidence that it notified
Redbubble of those listings before filing the Opposition brief.

1  "[f]or contributory trademark infringement liability to lie, a service provider must have more than

2  a general knowledge or reason to know that its service is being used to sell counterfeit goods.

3  Some contemporary knowledge of which particular listings are infringing or will infringe in the

4  future is necessary." *Tiffany,* 600 F.3d at 108-09. Redbubble had no such knowledge.

5      Plaintiff erroneously contends that once it informs Redbubble that it owns a trademark,

6  Redbubble has an ongoing obligation to police its site for that mark, claiming without support that

7  "[a]ny product bearing a well-known trademark on Redbubble is unquestionably a counterfeit."

8  Plaintiff is wrong: Sellers can lawfully use a mark in a non-trademark sense, or as a fair use, or in

9  a manner permitted by the First Amendment, or in other ways that do not create a likelihood of

10  source confusion. *See, e.g., LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019)

11  (granting summary judgment to Redbubble on aesthetic functionality defense). Because "[t]he use

12  of an identical or similar mark does not necessarily constitute infringement," *Lockheed Martin*

13  *Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997), *aff'd* 194 F.3d 980 (9th

14  Cir. 1999), a marketplace has no "duty to preemptively remove [products] that [allegedly]

15  infringed on Plaintiff's trademark." *Spy Phone Labs LLC v. Google Inc.*, 2016 WL 6025469 (N.D.

16  Cal. 2016); *accord, Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,* 2015 WL

17  5311085 (C.D. Cal. 2015) ("the law does not 'impose ... an affirmative duty to seek out potentially

18  infringing uses'"). Thus, Plaintiff's efforts to distinguish *Tiffany* fail; even if Redbubble "knew as

19  a general matter" that some counterfeit products might be listed on its marketplace, failure to

20  identify and remove those listings does not create contributory liability. 600 F.3d at 110.

21      Plaintiff falsely claims that Redbubble is "willfully blind" to the alleged infringements

22  because it has "a policy to not search for infringements absent prior notice from the rights holder."

23  As discussed above, a marketplace has no duty to proactively search for infringements absent

24  specific notice. And even if Redbubble "kn[ew] its platform [was] overrun with infringements"[5]

25  _____

26  [5] Plaintiff "supports" this claim with a statement in the Annual Report of Redbubble's Australian
   parent that "76% of its product revenue originated from "authentic sellers." From that, Plaintiff
27  argues that 24% of Redbubble's revenue (or $46,000,000) comes from what it calls "inauthentic
   sellers"; falsely equates "inauthentic" with "infringing"; and inexplicably assumes that 100% of
28  those sellers' sales are infringing. [Dkt. No. 64-28, 57] This  inadmissible document [*see* Cross-
   Motion at 10 fn. 9] undermines Plaintiff's argument by expressly defining "authentic sellers" as

1   (it does not and is not), that would be irrelevant; like contributory infringement in general, willful

2   blindness is analyzed for "specific instances of infringement." *See Lenz v. Universal Music Corp.,*

3   815 F. 3d 1145, 1155 (9th Cir. 2015); *Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19

4   (2nd Cir. 2012). As Redbubble noted in its Cross-Motion, and Plaintiff failed to rebut, there is no

5   evidence that "Redbubble believed that there were *specific instances of infringement* of

6   *[Plaintiff]'s* rights, yet deliberately avoided learning of them."

7        Plaintiff's argument is further undermined by Redbubble's efforts to root out infringement;

8   not only does Redbubble immediately remove allegedly infringing listings upon notice, but its

9   aggressive proactive policing program has disabled or removed over 4,000,000 listings from the

10  Marketplace (including 670 Atari-related listings), and terminated nearly 680,000 Seller accounts.

11  [Rickert Decl. ¶¶ 8-10] Redbubble's active efforts to combat infringement bear no comparison to

12  those in cases where "willful blindness" was found. Indeed, other than reciting the general willful

13  blindness standard from *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011), and

14  a failed attempt to distinguish *Tiffany*, Plaintiff cites no case law that might support its argument.

15       **C.    Plaintiff Cannot Establish Vicarious Trademark Infringement**

16       Plaintiff continues to argue that Redbubble is in a partnership with its fulfillers, and

17  therefore vicariously liable, based not on evidence of Redbubble's conduct, but rather on out-of-

18  context, colloquial statements by Redbubble's parent in "investor-facing videos and its 2018

19  Annual Report." Plaintiff neither cites any case where such "vague, puffery-like" uses sufficed to

20  establish vicarious trademark liability, nor addresses Redbubble's cases rejecting such claims on

21  similar facts. [*See* Cross-Motion at 14] It also cites no authority that a subsidiary is bound by its

22  parent's statements, nor addresses Redbubble's contrary case law. [*Id.* at 10 fn. 9] Finally, Plaintiff

23  fails to cite any case finding an "apparent partnership" based on statements to *investors* rather than

24  consumers, or absent a showing of reliance by either. *See Kelly-Brown v. Winfrey*, 2012 WL

25  701262, at *7 (S.D.N.Y. Mar. 6, 2012), *aff'd in relevant part*, 717 F.3d 295 (2d Cir. 2013). As a

26  result, Redbubble cannot be deemed in an actual or apparent partnership with third-party fulfillers.

27  ───────────────

28  "those artists that tend to upload *high quality*, original works which *resonate with customers*."
    [*Id.* (emphasis added)] This passage provides no information whatsoever about how much
    potentially infringing content exists on the Redbubble Marketplace.

1   Plaintiff argues that Redbubble exercises "joint control" over the allegedly infringing

2   products by providing information and guidance to the fulfillers to ensure that products "fit to the

3   Redbubble standard." However, as noted in Redbubble's moving papers, vicarious liability

4   requires control over the allegedly infringing content, and is not established even where direct

5   infringers "operate their businesses according to defendants' rules and regulations and defendants

6   share the profits, transaction by transaction." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d

7   788, 807 (9th Cir. 2007). Plaintiff attempts to distinguish *Rosetta Stone Ltd. v. Google, Inc*., 730

8   F.Supp.2d 531, 550 (E.D. Va. 2010), *aff'd in relevant part,* 676 F.3d 144, 165 (4th Cir. 2012), on

9   the grounds that "Google 'exercise[ed] no control over the content of the [infringing] ads,'" but

10  Redbubble similarly exercises no control over any allegedly infringing content. While Redbubble

11  may ask fulfillers to apply "Redbubble-branded hang tags and stickers on products," it has no

12  knowledge, let alone control, over any *Atari-related* content that may appear on such products.

13  [Deshais Decl. ¶¶ 7- 11] This places Redbubble directly within *Rosetta Stone* and distinguishes it

14  from Plaintiff's cases where defendants exercised control over the allegedly infringing content.

15  *See Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 Fed. Appx. 469, 472–73 (9th Cir.

16  2015) (defendant had "power and practice" of approving and controlling content of allegedly

17  infringing sales scripts); *Robinson v. Delicious Vinyl Records Inc.*, No. 13-cv-4111, 2013 WL

18  3983014, at *6 (C.D. Cal. Aug. 1, 2013) (similar).

19  Plaintiff's assertion that Redbubble and fulfillers can bind each other in transactions with

20  third parties is similarly flawed. There is no inconsistency in testimony from Redbubble's head of

21  operations that "he was only aware of one question from a printer regarding infringement," and

22  Redbubble's evidence that fulfillers "can and do decide unilaterally whether to fulfill or reject

23  orders routed to them by the platform software." Indeed, Plaintiff's argument actually confirms

24  that fulfillers generally had no need to ask Redbubble whether they should fulfill orders.

25  **D.   <u>Plaintiff Cannot Establish Its Other Trademark-Related Claims</u>**

26  Plaintiff concedes by its silence that, if its direct infringement claim fails, its Lanham Act

27  and common law unfair competition claims fail with it, and that its unfair competition claim is

28  barred by 47 U.S.C. § 230(c)(1). *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir.

1  2007). Accordingly, all of Plaintiff's trademark-related claims must also be dismissed.[6]

2        **E.**     **Plaintiff Cannot Establish Counterfeiting**

3        Plaintiff does not dispute that no ***stitch for stitch*** copy of one of Plaintiff's trademarked

4  ***products*** has been sold through the Redbubble Marketplace. Instead, Plaintiff misrepresents the

5  Lanham Act's civil counterfeiting standards, arguing that the mark merely needs to be copied.

6        Counterfeiting provides enhanced remedies for instances where the defendant "seeks to trick

7  the consumer into believing he or she is getting the genuine article, rather than a 'colorable

8  imitation," and thus has requirements beyond those of an ordinary infringement claim. *Align Tech.,*

9  *Inc. v. Strauss Diamond Insts., Inc.*, 2019 WL 1586776, at *11 (N.D. Cal. Apr. 12, 2019) (citations

10  omitted). Of particular relevance, "courts have uniformly restricted trademark counterfeiting claims

11  to those situations where ***entire products*** have been copied stitch-for-stitch." *Gucci America, Inc. v.*

12  *Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (emphasis added). As a result, the Accused

13  Products must be "substantially identical" both to plaintiff's mark ***and*** to its products as a whole;

14  precisely copying the mark alone is insufficient unless the accused products are copies of plaintiff's

15  products. *See Align, supra* (no counterfeiting liability where defendant used plaintiff's exact mark

16  but the products differed in other respects); *Arcona, Inc. v. Farmacy Beauty, LLC*, 2019 WL

17  1260625, at *2-3 (C.D. Cal., Mar. 19, 2019) (no counterfeiting even though defendant used

18  plaintiff's exact word mark on similar but not substantially identical products); *Gucci, supra* (unless

19  the entire products are identical, regular trademark infringement applies rather than counterfeiting).

20        The Atari Mark registration expressly limits that mark to use of the Atari logo "***within a***

21  ***box***." [DE# 64-7] Atari admitted by including the "box" limitation in the Description of Mark that

22  it is a "significant aspect of the mark." TMEP § 808.02. Yet it is undisputed that the Accused

23  Products omit the claimed box. Without a "substantially identical" copy of this specifically

24  claimed design feature, the Accused Products cannot be "counterfeits." *See Align, supra* at *11.

25

26  _____

27  [6] Plaintiff briefly argues at page 4 that "analysis of the *Sleekcraft* factors weighs overwhelmingly in favor of a likelihood of confusion," but this argument cannot serve as a basis for granting Plaintiff's motion because it was not raised in Plaintiff's moving papers, and Redbubble agrees

28  that there are triable issues there, although they are not material to Redbubble's motion because Redbubble is entitled to judgment notwithstanding how the *Sleekcraft* analysis is resolved.

1    Likewise, Plaintiff's only evidence of an authorized product uses the PONG word mark in

2  a particular phrase and design, which is not shown on any Accused Product. [DE# 64-56, Cuellar

3  Decl. Exh. N] Thus, the Accused Products are not counterfeits of the PONG word mark. *See*

4  *Arcona, supra* (no counterfeiting of word mark where product itself was not copied).

5    Finally, Plaintiff does not rebut Redbubble's argument and showing that Redbubble never

6  "intentionally used a counterfeit mark in commerce knowing the mark was counterfeit." *State of*

7  *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *see also* 4

8  J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:15.10 (5th ed. 2019).

9  **III.    REDBUBBLE CANNOT BE LIABLE FOR COPYRIGHT INFRINGEMENT**

10   **A.    Plaintiff Has Not Proven Infringement by Anyone**

11   Plaintiff's argument that it owns copyright registrations in its Greatest Hits games misses

12  the mark. To avoid summary judgment, Plaintiff was required to present not merely its

13  registrations, but evidence showing precisely what they cover, such as the materials deposited with

14  the Copyright Office to obtain the registration. *Seiler v. Lucasfilm, Ltd.,* 808 F. 2d 1316, 1319 (9th

15  Cir. 1986). Because the "Atari Greatest Hits" games on which Plaintiff based its own motion are

16  derivative works, plaintiff was also required to prove the "changes and contributions made" from

17  previous versions. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 990 (9th Cir. 2017).

18   Instead of offering such evidence, Plaintiff submitted photographs of Atari games taken

19  this year by its litigation counsel, without any linkage to what was submitted to the Copyright

20  Office (Dkt. 64-45 to 64-51); an expert report that never mentions copyrights or registrations,

21  from a witness who lacks contemporaneous knowledge of the development of any Atari games

22  (Dkt. 64-69); and documents tracking the general ownership of Atari assets from entity to entity

23  over several decades (Dkt. 64-13 to 64-20). Plaintiff's submissions provide no evidence of what

24  its purported predecessors submitted to the Copyright Office, or what "changes and contributions"

25  comprise the new matter protected by the derivative work "Greatest Hits" registrations.

26   *Seiler* is instructive. There, the plaintiff had destroyed the subject matter of his copyright,

27  and sought to introduce a reconstructed version of the work. The Ninth Circuit refused to admit

28  this evidence and affirmed summary judgment because "the contents of Seiler's work are at issue.

1   There can be no proof of 'substantial similarity' and thus of copyright infringement unless Seiler's

2   works are juxtaposed with [defendant's] and their contents compared." 808 F.3d at 1319.

3        The issue isn't whether Plaintiff holds registrations on which it can bring suit: it's whether

4   Plaintiff can prove what subject matter is covered by those registrations. Since Plaintiff bears the

5   burden of proof on this issue, Plaintiff's failure to come forward with the required evidence

6   mandates dismissal of its claims. *See Antonick v. Electronic Arts, Inc.,* 841 F. 3d 1062, 1066 (9th

7   Cir. 2016) (plaintiff cannot prevail without proving the content of the copyrighted works).

8        **B.    Plaintiff Cannot Establish Direct Copyright Infringement**

9        Plaintiff's assertion that "all parties participating in a copyright infringement are directly

10  liable" misstates the very authority it cites. *See Universal Pictures Co. v. Harold Lloyd Corp.*, 162

11  F.2d 354, 365 (9th Cir. 1947) (defendant was liable only "as a contributory and participating

12  infringer"). Plaintiff also ignores that direct infringement requires a showing of "volitional

13  conduct" by the defendant that "causes" infringement. *See VHT, Inc. v. Zillow Group, Inc.,* 918

14  F.3d 723, 732 (9th Cir. 2019); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir.

15  2004) (requiring "*conduct* by a person who causes in some meaningful way an infringement").

16       Redbubble agrees with Plaintiff that *VHT* is particularly relevant. There, defendant Zillow

17  was found liable for direct infringement for a subset of photos that it affirmatively "curated,

18  selected, and tagged for searchable functionality," but not for images that it did not "control" other

19  than through the operation of its Marketplace software, did not select, and did not cause to be

20  copied, stored or distributed.  918 F.3d at 736; *Giganews*, 847 F.3d at 668-70 (only third parties

21  that uploaded content, not defendant, could be liable for direct infringement). As Redbubble does

22  not selectively manage specific listings, it is not liable for direct infringement under *VHT*.

23       Plaintiff attempts to avoid the volitional conduct requirement by claiming that Redbubble

24  "affixes" images to stock model photos, "sells infringing products," or "publishes" infringing

25  photos to third-party sites, but as previously discussed in Redbubble's Cross-Motion and section

26  II.A here, these claims are unsupported by evidence or law. Plaintiff also alleges that Redbubble

27  enables or facilitates infringement; it "controls" the Marketplace software, "hires" and "establishes

28  relationships with" third-party manufacturers, "maintains shipping agreements" with third-party

1   delivery companies, "controls" the sale process, and "pays" third-parties for ad placement. Even if

2   these characterizations were accurate, they would at most be "facilitating or enabling" activities

3   that "more properly fall[] in the category of secondary infringement." *VHT*, 918 F.3d at 733

### C.   Plaintiff Cannot Establish Contributory Copyright Infringement

5       Plaintiff's contributory copyright infringement argument, which mirrors its trademark

6   position, rests primarily on the assertion that Redbubble is "willfully blind" to direct infringement,

7   but this argument is flawed as set forth in section II.B. Plaintiff also claims that "Redbubble does

8   not promptly remove infringements from redbubble.com upon receiving notice," but cites only

9   evidence that allegedly infringing content appears on the Marketplace, not that Plaintiff provided

10  notice for any of these "specific instances of infringement."[7] And there is no evidence that

11  Redbubble is "willfully blind" to any "specific instances of infringement." *Viacom,* 676 F.3d at 31

12  (like actual knowledge, willful blindness must apply with respect to "specific instances of

13  infringement," and "cannot be defined as an affirmative duty to monitor") *accord, e.g.*, *Metro-*

14  *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n. 12 (2005) (no "contributory

15  infringement liability merely based on a failure to take affirmative steps to prevent infringement, if

16  the device otherwise was capable of substantial noninfringing uses").[8]

### D.   Plaintiff Cannot Establish Vicarious Copyright Infringement

18      Plaintiff concedes that vicarious copyright infringement requires proof that a defendant had

19  "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to

20  do so." *VHT*, 918 F.3d at 746 (defendant must have "the technical ability to screen out or identify

---

22  [7] To argue that "Redbubble does not promptly remove infringements from redbubble.com upon
    receiving notice," Plaintiff cites "Cuellar Decl., Exh. A (current product listings using the
23  Adventure dragon)." But there is no evidence that Redbubble had received notice of these listings.
    Moreover, many of these listings do not use the Adventure ***dragon***, although they may depict
24  other game components, and Plaintiff admitted after a week of correspondence that at least two of
    the listings do not even arguably infringe Plaintiff's rights. [Wilson Supp. Decl. Exh. A] This
25  evidence not only fails to support Plaintiff's position, but it highlights the overbreadth of many
    takedown requests and the difficulties Redbubble has in identifying potentially infringing content.
26
    [8] Plaintiff again superficially asserts without any authority that Redbubble induces infringement
27  "by paying its users a fee for sales of the infringing products, but again ignores *Grokster*'s holding
    that liability for inducement requires evidence that defendant is "promoting its [product or
28  system's] use to infringe copyright, as shown by clear expression or other affirmative steps taken
    to foster infringement." 545 U.S. at 919. Plaintiff has not offered any such evidence here.

1   infring [content]"). Nor does Plaintiff offer any evidence to counter Redbubble's showing that

2   it has no technical or practical way to screen out or identify all potentially infringing images for all

3   copyright and trademark owners among the more than 28,000,000 listings on its site.

4        Instead, Plaintiff argues that Redbubble is liable under *A&M Records, Inc. v. Napster, Inc.*,

5   239 F.3d 1004 (9th Cir. 2001), because it purportedly has "the ability to locate infringements

6   through its search functions." But Redbubble is nothing like Napster. There, plaintiff held

7   copyrights to 70% of the content on Napster; "facilitating the unauthorized exchange of

8   copyrighted music was a central part of Napster, Inc.'s business strategy"; and "as a practical

9   matter" Napster had the ability to easily locate infringing content. *Id.* at 1024; *A&M Records,*

10  *Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 902-03, 917 (C.D. Cal. 2000). Here, by contrast, the

11  Accused Products make up a miniscule fraction of a percent of the listings on the Marketplace,

12  and there is absolutely no evidence that facilitating infringement is part of Redbubble's strategy;

13  indeed, its extensive policing efforts demonstrate the contrary. Moreover, Redbubble's ability to

14  police for potentially infringing content using text searches is limited; there is no dispute that it

15  lacks any practical way to search for infringing *images* like those accused here. Indeed, *Napster*

16  held the district court's preliminary injunction overbroad because it failed to take into account that

17  Napster's ability to locate infringing content was "cabined by the system's current architecture."

18  239 F.3d at 1023-24; *see also Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1046, 1174 (9th Cir.

19  2007) (Google lacked the technological ability to "determine whether a certain image on the web

20  infringes someone's copyright"); *VHT, supra* (given the volume of content on the site, "ferreting

21  out claimed infringement … was beyond hunting for a needle in a haystack").

22       **E.**    **Redbubble Is Protected by the DMCA Safe Harbor Provisions**

23       In response to Redbubble's showing that it is entitled to the safe harbor protections of

24  Section 512(c) of the DMCA, Plaintiff challenges: 1) whether Redbubble qualifies as a "service

25  provider" as defined in Section 512(k)(1)(B); 2) whether Redbubble has the "right and ability to

26  control" infringing activity; and 3) whether Redbubble acted "expeditiously" to remove or disable

27  access to allegedly infringing Atari-related content. None of these challenges holds any merit.

28       Redbubble devoted little space to the "service provider" requirement in its opening papers

1   because it cannot genuinely be controverted. "Service provider" as used in Section 512(c)

2   "encompasses a broad variety of Internet activities"; indeed, Amazon has consistently been held to

3   satisfy this definition, even though it provides a template for sellers to list products, directly

4   receives payment, issues invoices and tracking information, stores and packages the products,

5   ships the products in a box bearing its logo, and broadcasts email advertisements from its own

6   account. *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1100 (W.D. Wash. 2004); *Milo*

7   *& Gabby I*, 2015 WL 4394673 at *2 (quoting same); *see also Wolk v. Kodak Imaging Network*,

8   840 F. Supp. 2d 724, 744 (S.D.N.Y. 2012) ("a site that hosts and allows online sharing of photos

9   and videos at the direction of users … qualifies as a 'service provider'").

10       Plaintiff claims Redbubble is not a service provider because it affixes allegedly infringing

11  images onto stock model photos. But as previously discussed, Redbubble's Marketplace software

12  provides a blank listing page template, and the third-party Sellers choose the particular images and

13  other user-generated content that are automatically displayed within the template's blank fields,

14  much like Amazon's software automatically displays a user's uploaded content on listing pages.

15  Redbubble does not itself "affix" images or other user-generated content to anything.

16       Plaintiff also argues that Redbubble has the "right and ability to control" infringement, but

17  as discussed above at section III.D, Plaintiff has not disputed or even addressed Redbubble's

18  showing that it lacks "the practical ability" to prevent infringement. *VHT, supra.* Moreover,

19  Plaintiff failed to rebut Redbubble's showing that it lacks the ability to "exert substantial influence

20  on the activities of users." *See UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F.3d 1006,

21  1030 (9th Cir. 2013) (video sharing service did not have the ability to control infringing activity,

22  even though "(a) the allegedly infringing material resided on [its] system; (b) [it] had the ability to

23  remove such material; (c) [it] could have implemented, and did implement, filtering systems; and

24  (d) [it] could have searched for potentially infringing content"). While Plaintiff claims that

25  Redbubble somehow meets this requirement, it cites no evidence or case law for its position (other

26  than *Corbis*, which supports Redbubble's arguments).

27       Finally, Plaintiff argues that Redbubble has not "responded expeditiously upon notice to

28  remove infringements," but the cited evidence contradicts this claim. Plaintiff's evidence does not

1   relate in any way to Redbubble's conduct with respect to the ***Atari-related content*** at issue in this

2   case. While Plaintiff cites to certain listings that were apparently on the Redbubble Marketplace

3   when its reply was filed, it offers no evidence that it previously provided notice thereof. Indeed,

4   the undisputed evidence establishes that every time Redbubble received actual notice of alleged

5   infringement from Plaintiff, it promptly removed the listings. [Toy Decl. ¶ 26; Rickert Decl.

6   Exh. A] Accordingly, Plaintiff's challenge to Redbubble's safe harbor immunity fails.

7   **IV.   <u>REDBUBBLE CANNOT BE LIABLE FOR DAMAGES</u>**

8       **A.   <u>Plaintiff's Failure to Disclose Its Damages Claim Precludes Recovery</u>**

9       Plaintiff does not dispute that it failed to provide any computation of the damages it seeks.

10  Rather, it asserts that notwithstanding the express language of Fed. R. Civ. P. 26(a)(1)(A)(iii), it

11  had no duty to disclose the amount of statutory damages it seeks or how they should be quantified.

12  And it argues that its failure to disclose how much it is seeking for "Redbubble's profits" is

13  harmless because Redbubble can figure it out. There is no legal basis for either argument.

14      Statutory damages are not exempt from Rule 26(a)'s requirement that a party claiming

15  damages must disclose "a computation of ***each category of damages claimed.***" Indeed, courts

16  have precluded statutory damages when plaintiffs have failed to provide the required computation,

17  as such failure deprives the defendant of critical information such as "the underlying documents to

18  support any losses claimed, the time period for which it is claiming damages, or which of the

19  allegedly infringing Marks caused those losses." *Ketab Corp. v. Mesriani Law Group*, 2016 U.S.

20  Dist. LEXIS 37151 at *4-5 (C.D. Cal. 2016); *see also Ploom, Inc. v. iPloom LLC*, 2014 WL

21  1942218 (N.D. Cal. May 12, 2014) ("because statutory damages are meant to serve as a substitute

22  for actual damages the Court should discern whether the requested damages 'bear some relation to

23  the actual damages"). Plaintiff's non-disclosure is particularly problematic here, since Plaintiff is

24  asserting an everchanging number of copyrights and trademarks against an indefinite set of

25  Accused Products, both of which would materially impact the statutory damages available.

26      Plaintiff's refusal to disclose the amount of "defendant's profits" that it seeks is similarly

27  flawed. Plaintiff suggests that such amount is "reflected in Redbubble's own documents," but the

28  referenced documents show, not the revenues from "infringing products," but rather revenues from

1   all listings that Redbubble removed in response to a notice from Plaintiff or through proactive

2   policing, including many listings that clearly are not colorably infringing. [Rickert Decl. Exh. A]

3       Plaintiff *still* has not disclosed any meaningful information about what it believes this case

4   is worth.[9] Under the circumstances, the only fair remedy is to preclude any damages recovery.

5       **B.    Plaintiff Cannot Establish Willful Infringement.**

6       Plaintiff comes nowhere near making the requisite showing of recklessness or willful

7   blindness needed for willfulness, as illustrated by the unpublished opinion featured in Plaintiff's

8   Opposition, *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 785 Fed. Appx. 417, 418 (9th Cir. 2019).

9   There, the Court affirmed on willfulness, but not only because the defendant there "'relied on a

10  user-certification process it knew produced false certifications' and failed to promptly suspend

11  infringing sellers," as Plaintiff suggests. Defendant also refused to take measures to improve its

12  oversight system, despite repeated notice over two years of its system's ineffectiveness. It "never

13  gave its content-management team a catalogue of those images provided by [the plaintiff]." It

14  "continued to sell products bearing each of the works for which the jury found willful

15  infringement." And it "took no action to remove a user who had marketed more than 2,000

16  infringing products." *Id.* In contrast, Redbubble has continually improved its content policing

17  systems; it swiftly removed specific listings once so requested; it has effectively and proactively

18  policed for other allegedly infringing images; and it has terminated hundreds of thousands of users

19  for violating Redbubble's User Agreement. [Toy Decl. ¶¶ 9-23; Rickert Decl. ¶¶ 8-10] Indeed,

20  both the *Ohio State* and *LTTB* courts rendered judgments that Redbubble's conduct is lawful.[10]

21  Given this record, no reasonable jury could find that Redbubble engaged in willful infringement.

22      For the foregoing reasons, the Court should enter summary judgment for Redbubble.

23  _____

24  [9] In its Motion, Plaintiff falsely claimed that Redbubble sold more than $285,000 of products that
    infringed Plaintiff's rights, while offering no foundation for its claim. Redbubble's total revenue

25  from potentially infringing products is actually around $20,000. [Rickert Supp. Decl.]

26  [10] If the court admits and considers the Australian decisions, Redbubble notes that in the *Pokémon*
    case, the court found Redbubble "had in place processes to prevent and mitigate breaches which

27  were reasonable and defensible" and awarded "nominal damages" of $1, while in *Hells Angels*, the
    court found "no basis for any consideration of exemplary damages" and awarded "nominal

28  damages" of $5,000. *Hells Angels Motorcycle Corp.(Aust.) Pty Ltd. v Redbubble Ltd.*, [2019] FCA
    355, ¶¶ 539-40; *Pokémon Co. Int'l, Inc. v Redbubble Ltd.*, [2017] FCA 1541, ¶¶ 73-77.

1  Dated:  June 24, 2020.                          COASTSIDE LEGAL
2                                                  KENNETH B. WILSON

3                                                  ZUBER LAWLER & DEL DUCA LLP
4                                                  JOSHUA M. MASUR
                                                   ZACHARY S. DAVIDSON
5

6                                                  By:  */s/ Kenneth B. Wilson*
7                                                        Kenneth B. Wilson
                                                         Attorneys for Defendant
8                                                        Redbubble Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28