1  KENNETH B. WILSON (SBN 130009)
     *ken@coastsidelegal.com*
2  COASTSIDE LEGAL
   455 1st Avenue
3  Half Moon Bay, California 94019
   Telephone: (650) 440-4211

4  JOSHUA M. MASUR (SBN 203510)
5    *jmasur@zuberlaw.com*
   ZUBER LAWLER & DEL DUCA LLP
6  2000 Broadway Street, Suite 154
   Redwood City, California 94063
7  Telephone: (650) 434-8538
   Facsimile: (213) 596-5621

8  ZACHARY S. DAVIDSON (SBN 287041)
9    *zdavidson@zuberlawler.com*
   ZUBER LAWLER & DEL DUCA LLP
10 350 S. Grand Ave., 32nd Fl.
   Los Angeles, California 90071
11 Telephone: (213) 596-5620
   Facsimile: (213) 596-5621

13 Attorneys for Defendant
   REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., | Case No. 4:18-cv-03451-JST |
| Plaintiff, | **STATEMENT OF RECENT DECISION** |
| v. | |
| REDBUBBLE INC., | Judge: Hon. Jon S. Tigar<br>Date:  July 15, 2020 |
| Defendant. | Time:  2:00 p.m.<br>Crtrm.: 6 |

Defendant Redbubble Inc. hereby respectfully submits for the Court's consideration a summary judgment order entered on July 10, 2020 in *Y.Y.G.M. SA v. Redbubble Inc.*, Case No. 2:19-cv-04618-RGK-JPR, a trademark infringement suit pending before Judge Klausner in the U.S. District Court for the Central District of California. A copy of that order is attached to this Notice as Exhibit A.

Dated: July 16, 2020.

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR
ZACHARY S. DAVIDSON

By: */s/ Kenneth B. Wilson*
    Kenneth B. Wilson
    Attorneys for Defendant
    Redbubble Inc.

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order Re: Plaintiff's Motion for Summary Judgment [DE 36], Defendant's Motion for Summary Judgment [DE 40]**

## I. INTRODUCTION

On May 28, 2019, Y.Y.G.M. SA d.b.a. Brandy Melville ("Brandy Melville," or "Plaintiff") filed a complaint against Redbubble, Inc. ("Redbubble," or "Defendant") for claims arising from the unauthorized sale of goods bearing Brandy Melville's trademarks through Redbubble's website. Plaintiff's complaint alleges (1) trademark infringement and counterfeiting under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), (3) common law unfair competition, (4) contributory trademark infringement, and (5) vicarious trademark infringement.

Presently before the Court are the parties' cross-motions for summary judgment. (ECF No. 36, 40.) For the following reasons, the Court **DENIES** Brandy Melville's motion and **Grants in Part** Redbubble's motion.

## II. FACTUAL BACKGROUND

Brandy Melville is a clothing brand whose target demographic includes girls and women between the ages of 12 and 30. Brandy Melville manufactures its own products in Italy in accordance with specific design and quality standards, and owns several trademarks, including the Brandy Melville Mark, USPTO Registration No. 5,238,856, and the LA Lightning Mark, USPTO Registration No. 5,748,883. The LA Lightning mark is registered for use on clothing, and among the products Brandy Melville sells are t-shirts and hooded sweatshirts featuring the LA Lightning Mark. The LA Lightning Mark is displayed below as it appears on its USPTO registration:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | Y.Y.G.M. SA v. Redbubble, Inc. | | |



The Brandy Melville Mark is registered for use on a wide range of products, including clothing, stickers, jewelry and ornaments. The Brandy Melville Mark is displayed below as it appears on its USPTO registration:



Redbubble owns and operates the website www.redbubble.com. The Redbubble website provides an online marketplace for artists to upload their artwork, and for customers to buy that artwork on different products, including clothing, phone cases, and stickers. There are presently more than 2,160,000 users who have uploaded artwork of some kind to the marketplace, contributing to more than 27,000,000 product listings. Redbubble's retail prices are comprised of an "artist margin," which is paid to the artist, and a "base price," which includes the cost of manufacturing the product, and Redbubble's service fee.

When a purchase is made on Redbubble, Redbubble's software automatically collects and processes the payment, then routes the order to a fulfiller who manufactures the product. Redbubble's software selects fulfillers based on the product type, their capabilities, and their geographic proximity to the customer. Redbubble then arranges for products ordered on the Redbubble website to be shipped from the fulfiller to the customer. Neither the artist nor the customer has any direct interaction with the fulfiller, and Redbubble handles refunds and vouchers for products purchased on the Redbubble website.

Prior to shipping, fulfillers put several types of Redbubble-branded packaging on products sold through the Redbubble Website, including poly bags, stickers, and hang tags bearing the Redbubble name or Redbubble logo. Once a product has been printed and prepared by the fulfiller, a third-party shipper picks it up and delivers it directly to the customer. Redbubble does not take physical custody of the products or inspect them prior to shipment.

On May 14, 2018, Brandy Melville's counsel provided notice to Redbubble that content offered for sale on Redbubble's website was infringing its trademarks. Redbubble subsequently removed the specific listings identified, and requested that Brandy Melville notify it of any other designs it would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

like removed. On May 15, 2018, however, and on several subsequent dates thereafter, Brandy Melville again notified Redbubble that it was offering products that incorporated Brandy Melville's name or trademarks.

The infringing items offered through Redbubble's website have included apparel bearing the LA Lightning Mark, as well as stickers, wall decorations, and other items bearing the Brandy Melville Mark.

The parties do not dispute the validity of Brandy Melville's marks, or that a certain number of items bearing those marks were sold through the Redbubble website. The parties dispute, rather, the extent to which Redbubble knew, or should have known, about the infringing sales, and the scope of its corresponding responsibility to prevent them.

The parties also disagree as to the legal extent of Redbubble's liability for infringing sales on its website through its participation in the sales process, its legal relationships with the uploading users and fulfillers, and its knowledge of and control over the instrumentalities of their infringement.

### III.  JUDICIAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a showing "must establish beyond controversy every essential element" of the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex*, 477 U.S. at 325. Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)–(b).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

### IV. DISCUSSION

Brandy Melville has asserted causes of action for direct, contributory, and vicarious trademark infringement. The Court addresses them in that order.

#### A. Direct Infringement

Redbubble argues that it cannot be held liable for direct infringement because as a marketplace for third-party sellers it does not itself sell any infringing goods, and therefore does not "use" Brandy Melville's marks in commerce. The Court agrees.

To prevail on a claim for trademark infringement, "a plaintiff must show that: 1) it has a valid, protectable mark, and 2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). The same requirements apply to claims for false designation of origin and unfair competition. *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 768 (C.D. Cal. 2015).

The United States District Court for the Southern District of Ohio conducted a thorough analysis of Redbubble's business model and potential liability for direct infringement in *Ohio State Univ. v. Redbubble, Inc.*, 369 F. Supp. 3d 840 (S.D. Ohio 2019). The Court in that case considered arguments similar to those presented here, including Redbubble's position that it never takes title to the products sold through its site, nor does it pack, ship, inspect or take custody of them prior to their delivery to the purchaser. It also considered arguments akin to Brandy Melville's in this case, that Rebubble uses the marks in commerce because it establishes quality standards, provides fulfillers with Redbubble packaging in which to ship its products, displays the infringing marks on its website and on others, and handles returns, including through shipment to its own business address.

As the *Ohio State* Court acknowledged, Redbubble does not fit neatly into the category of either an "auction house" on the one hand, that will generally be free from liability for direct infringement, or a company that itself manufactures and ships products on the other, on which liability for direct infringement can be readily imposed. However, this Court agrees with the *Ohio State* Court that Redbubble is nearer to the former category. The Court finds this particularly true in light of the fact that the service fee Redbubble imposes on transactions through its site bears no relation to the price of the goods sold. (Decl. of James Toy ISO Def.'s Mot. for SJ ("Toy Decl."), ¶ 29, ECF No. 40-4.) Although Redbubble's fee varies according to the category of the item in question, the service fee imposed on the sale of a phone case with a particular design will be the same whether the uploading artist chooses to fix the price of the item at twenty-dollars or two-hundred dollars. Such a fee-based business model indicates the role of a service provider rather than a seller, as a seller almost invariably adjusts its price in relation to the value of the goods in question.

Brandy Melville points out that Redbubble collects and remits sales taxes in some circumstances,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

as well as to internal shareholder communications in which Redbubble acknowledges that for accounting purposes it is considered the "principle in the sale" with regard to purchases made through the website. (*See* 2018 Redbubble Annual Stmt., Wesley Decl. ISO Pl.'s Mot. for SJ ("Wesley Decl.") Ex. 46 at 51, ECF No. 51.) However, the fact that Redbubble must elect between principal or agent for tax accounting purposes does not make Redbubble a "seller" for purposes of direct infringement in the absence of custody, transfer of title, or other traditional elements of the sale of goods. *See Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 886 (Fed. Cir. 2017) ("[While] passage of title is not of 'talismanic' significance, we have found the presence or absence of passage of title to be a significant indicator of whether a sale has occurred in the patent law context.")

As Redbubble itself asserted at oral argument to the Sixth Circuit on appeal of the district court's decision in *Ohio State*, and as Brandy Melville argues here, the law provides a well-developed legal doctrine for imposing liability on the proprietor of a marketplace for infringement by a third-party seller. That doctrine is contributory trademark infringement.

The Court therefore grants summary judgment for Redbubble as to Brandy Melville's claim for direct infringement.

As Brandy Melville's claims for false designation of origin and common-law unfair competition require proof of the same elements, Redbubble's motion is granted as to those claims as well. *Spy Optic*, 163 F. Supp. 3d at 768 ([A] claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114.); *Id.* ("The Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code section 17200 are substantially congruent to claims made under the Lanham Act.").

### B. Contributory Infringement

Brandy Melville argues that Redbubble is liable for contributory infringement because it has failed to prevent the sale of infringing products despite notice of their infringing character. Redbubble contends that it is insulated from liability because it has promptly removed any infringing listing about which Brandy Melville complained, and has a system in place to prevent similar infringement in the future. As both parties have presented substantial evidence in support of their positions, the Court finds that the issue of what Redbubble either knew or ought to have known regarding the infringing activity must be tried to a jury.

To be liable for contributory trademark infringement, a defendant must have (1) "intentionally induced" the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982). "When the alleged direct infringer supplies a service rather than a product, under the second prong of this test, the court must consider the extent of control

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

exercised by the defendant over the third party's means of infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). For liability to attach, there must be "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Id.*

For a court to find contributory infringement, however, "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWX), 2015 WL 5311085, at *33 (C.D. Cal. Sept. 10, 2015) (citing *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010)).

Here, Redbubble is a service provider that exercises "direct control and monitoring" over its website, which is the instrumentality of the infringing activity. The contested issue is whether Redbubble possessed only a "general knowledge" that infringing activity was taking place, or rather failed to act despite adequate knowledge of which listings were infringing or what users would infringe in the future.

Each party draws parallels to a separate out of circuit case in support of its position. Taken together, these cases illustrate a spectrum of knowledge and conduct according to which a marketplace service-provider may or may not be held contributorily liable for the infringing conduct of its users.

In *Coach, Inc. v. Goodfellow*, the Sixth Circuit found that Goodfellow, the proprietor of a flea-market, was contributorily liable for the sale of counterfeit Coach products by third party merchants who paid him a fee to operate vendor stalls. 717 F.3d 498 (6th Cir. 2013). The court found that Goodfellow had adequate notice of the infringing activity to incur liability for the following reasons: he had received letters from both Coach and the District Attorney advising him that counterfeit Coach products were being sold at the flea market; he had been served notice of Coach's lawsuit; and the market had subsequently been raided twice by local law enforcement. *Id.* at 504. The Court therefore held Goodfellow contributorily liable because he continued to rent space to vendors that he knew, or should have known, were engaging in infringing activity.

The Sixth Circuit noted that this was true even if it considered evidence of Goodfellow's purported remedial efforts, including his distribution of pamphlets notifying vendors that sale of counterfeit goods was prohibited, and his conduct of a voluntary meeting with the vendors regarding the same. The court also dismissed Goodfellow's assertion that he believed the Coach products offered for sale in plain sight were authentic in light of the fact that (1) he knew the flea market was not licensed to sell Coach products, yet (2) he did not inquire as to whether the vendor's goods were licensed despite being on notice of ongoing infringement. In summary, the *Coach* Court characterized Goodfellow's willful blindness as "ostrich-like." *Id.* at 504-05.

In contrast, the Second Circuit affirmed a district court's finding that the e-commerce website

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

eBay was not contributorily liable as a service provider for the sale of counterfeit Tiffany jewelry through its platform. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010). Tiffany contended that eBay had knowledge of the widespread sale of counterfeit goods on its platform due to Tiffany's prior demand letters, its filing of thousands of Notices of Claimed Infringement ("NOCI") requesting that items be removed, and various complaints from purchasers that they had received counterfeit Tiffany merchandise. Based on this knowledge, Tiffany argued that eBay had incurred an affirmative duty to remove counterfeit listings but had failed to do so.

In response, eBay presented evidence of its extensive fraud prevention efforts, on which it spent approximately $20 million per year, including the following: buyer protection programs offering reimbursement for certain counterfeit products; a trust and safety department of 4,000 employees, 200 of whom focused exclusively on combating infringement; an automated "fraud engine" that employed software models to identify prohibited activity based on factors such as IP address, prior account conduct and keywords; manual reviews for counterfeit listings; and a notice and takedown system according to which it would remove a listing within twenty-four hours of the receipt of a NOCI. The court also noted that Tiffany maintained its own "About Me" page on eBay's website, through which it cautioned potential purchasers that most Tiffany products on eBay were counterfeit. *Id.* at 99-100.

The Second Circuit affirmed the district court's finding that aside from the specific instances of infringement identified in the NOCI's, which eBay had promptly addressed, the factors Tiffany identified provided eBay with only a "generalized knowledge" of infringement "insufficient . . . to impose upon eBay an affirmative duty to remedy the problem." *Id.* at 107. Specifically, the court held that "for contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Id.*

In the present case, Brandy Melville argues that Redbubble exhibited the same type of willful blindness displayed by Goodfellow in *Coach*. Redbubble, in turn, contends that—like eBay—it cannot be held liable on the basis of a "generalized knowledge" of infringement as long as it promptly removes those infringing listings of which it has notice.

First, neither Goodfellow's flea market in *Coach* nor eBay's online resale site is a perfect analogy for Redbubble's business model. On the one hand, Redbubble's online marketplace of millions of listings is almost certainly more difficult to police than the physical vendor displays in a flea-market. On the other, whereas eBay provides a forum for third parties to auction or re-sell existing products, Redbubble provides a marketplace for consumers to purchase new products featuring user-uploaded artwork. Thus, while eBay was faced with the difficult task of differentiating legitimate third-party resales of Tiffany products from illegitimate ones, Redbubble must contend with no such problem. The *Tiffany* Court noted this difficulty specifically:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

> Because eBay never saw or inspected the merchandise in the listings, its ability to determine whether a particular listing was for counterfeit goods was limited. Even had it been able to inspect the goods, moreover, in many instances it likely would not have had the expertise to determine whether they were counterfeit.

*Tiffany*, 600 F.3d at 98. Here, Redbubble is not burdened by the need to parse valid uses of Brandy Melville's trademarks from invalid ones, as Brandy Melville has made clear to Redbubble that there are no legitimate sales of Brandy Melville products through its site. As such, all uses of Brandy Melville's marks that appear on Redbubble's website are presumptively infringing.

With that in mind, the Court must evaluate what constitutes willful blindness in the context of the extent of the control and monitoring available to Redbubble. Here, after Brandy Melville notified Redbubble of the specific instances of infringement, Redbubble was also placed on notice that all subsequent listings displaying the same designs were also infringing.

Redbubble argues that it takes a broad range of steps to both prevent infringement generally and to prevent it against Brandy Melville in particular. These include requiring sellers to confirm that they own or have rights to the content they post for sale, disabling the accounts of users who repeatedly infringe, and employing proprietary software and a thirteen-person marketplace integrity team to evaluate and remove suspect listings.

Redbubble asserts that using these methods it has disabled or removed approximately 3,700,000 listings from the Redbubble marketplace, and has terminated approximately 670,000 seller accounts. (Rickert Decl. ISO Pl.'s Mot. for SJ ¶¶ 9-10, ECF No. 40-14.). Moreover, it maintains that by applying its proactive removal guidelines to Brandy Melville's trademarks it has removed approximately 400 infringing listings. (*Id.* ¶ 8.) Furthermore, Redbubble contends that since Redbubble implemented its proactive policing policy for Brandy Melville content, there have been no sales bearing the images in Brandy Melville's registrations, and it has removed third-party sellers who listed the designs that Brandy Melville identified. (*Id.* ¶ 7). Lastly, Redbubble notes that it has been forced to make the best effort it can based on imperfect information, as Brandy Melville refuses to participate cooperatively in its content removal process.

In sharp contrast, Brandy Melville asserts that trademark infringement on Redbubble is rampant, and that "[a]ny contention that Redbubble is 'unaware' is the fruit of willful blindness facilitated by understaffing its content-moderation team and reviewing a meager number of designs for infringement." (BM Reply ISO SJ 19:3-5, ECF No 65.) Moreover, Brandy Melville argues that Redbubble deliberately takes less action than it could to prevent infringement out of a tacit acknowledgment that infringing products supply a substantial portion of its business.

In support of this position, it points to the fact that in the "My Work Was Removed" section of Redbubble's website, Redbubble states that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

It is Redbubble's policy to remove infringing works in response to valid complaints under applicable law, but content is only removed when it has been specifically identified as infringing in a legally valid takedown notice. <u>We generally don't go looking for similar works to remove from the marketplace.</u>

(*See* Kelly Decl. ISO Pl.'s Mot. for SJ ("Kelly Decl.), Ex. 67, ECF No. 36-74.) (emphasis added.) Brandy Melville further notes that while Redbubble now claims to proactively police its site for Brandy Melville's trademarks, it has not disabled a shopper's ability to search for the keywords "Brandy Melville" as Brandy Melville has requested. (*See* July 19, 2019 email, Wesley Decl. Ex 55, ECF No. 36-60.) While maintaining such a functionality may perform the legitimate service of helping customers find products that are similar to Brandy Melville's without actually infringing them, it also gives users seeking to peddle infringing products a ready means of doing so. By the same token, Brandy Melville presents evidence that despite the fact that it first notified Redbubble of infringing listings in May of 2018, Redbubble did not begin to proactively police its website for Brandy Melville trademarks until over a year later, in May of 2019. (April 21, 2020 Deposition of James Toy, p. 114, ECF No. 35-28).

The Court finds Brandy Melville's argument persuasive. A company such as Redbubble could hypothetically maintain a state of "willful blindness" simply by understaffing its marketplace integrity organization relative to the amount of content on its site. This would allow such a company to simultaneously claim that its employees were doing everything in their limited power to prevent the sale of infringing products, while also enjoying the benefit of substantial revenue from the many infringing sales they were unable to catch. Whether that is the case here or not, however, is a jury question.

The Court need not review every piece of evidence submitted by the parties on this subject. It is enough to conclude that they have each provided sufficient evidence to constitute a material dispute of fact. The Court therefore denies the parties' motions for summary judgment as to this claim.

### C. <u>Vicarious Infringement</u>

Vicarious liability for trademark infringement focuses on the legal relationship between the defendant and the directly infringing third party. *See* 4 McCarthy on Trademarks and Unfair Competition § 25:22 (5th ed.). Vicarious liability for trademark infringement requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). In order to support a finding of vicarious infringement, there must be a finding of direct infringement by the allegedly controlled party. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013) ("Vicarious . . . liability must be predicated on some *direct* infringement by the third party.") (emphasis in original.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

Brandy Melville argues that Redbubble may be held liable for vicarious trademark infringement on three grounds: (1) Redbubble is partners with the fulfillers who manufacture and ship the infringing products, (2) Redbubble is in an agent for its third-party sellers and principle with respect to its fulfillers, and (3) Redbubble exercises joint ownership and control over the infringing products that the fulfillers create. The Court addresses these in order.

1. *Partnership*

Brandy Melville contends that Redbubble is either in a legal partnership with its fulfillers, or in the alternative that it misleads the public into believing that such a relationship exists. The Court disagrees.

First, Redbubble does not have a legal partnership with its third-party manufacturers, or the authority to bind them in transactions with third parties. The manufacturers can make the unilateral decision whether or not to fulfill an order that is routed to them by the Platform software. (Toy. Decl. ¶ 30.) The Court therefore finds that there is no legal partnership relationship such as would give rise to vicarious infringement.

In the alternative, Brandy Melville argues that Redbubble may be held liable on the basis of an apparent partnership. *See Camowraps, LLC v. Quantum Digital Ventures LLC*, No. 13-cv-6808, 2015 WL 546724, at *4 (E.D. La. Feb. 10, 2015) ("Liability may be imposed . . . based on an apparent partnership which arises because of the actions of a principal or employer in somehow misleading the public into believing that the relationship or the authority exists.")

Brandy Melville points to shareholder promotional videos in which senior Redbubble personnel made statements such as "It's actually really important for us to have a global network of fulfillers. These are companies that we partner with to produce our goods[,]" and "[w]e rely on a third-party network of partners that are very good at what they do." (Wesley Decl. Ex. 38, ECF No. 36-43). This argument fails as well.

While Redbubble does in some circumstance refer to its third party sellers as "partners," it correctly points out that "off-handed references" to customers or third-parties as "partners" are insufficient to demonstrate the type of partnership required for the imposition of vicarious liability. *See Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) ("[V]ague, puffery-like references to a 'partnership' between . . . companies and website merchants are not enough to support vicarious liability"); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1113 (N.D. Cal. 2008) ("off-hand references to customers as 'partners' is insufficient to exhibit the type of behavior and relationship that can be considered an actual or apparent partnership.") Furthermore, the videos in question are directed toward shareholders and potential investors, not the general purchasing public. Redbubble has therefore not misled the public into believing that it is in a partnership with its fulfillers so as to support a finding of vicarious infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

2. *Agency*

Brandy Melville next argues that Redbubble operates both as agent for its third-party sellers and principal with regard to its fulfillers, and is therefore vicariously liable for any of their infringing acts under a theory of agency liability.

"Courts have strictly applied the test for vicarious trademark liability based on agency principles, and, unlike vicarious copyright liability, courts do not recognize vicarious liability in the trademark context based on ability to supervise in combination with a financial interest." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 613–14 (S.D. Tex. 2012).

First, with regard to Redbubble's users, Brandy Melville grounds its argument that Redbubble acts as an agent in the following statement from Appendix A to the website's user agreement: "Whilst Redbubble's capacity is one of independent contractor in relation to the Services, it acts as your agent specifically in relation to the sales transaction between you and the customer who buys your product – see further clause 5.2 below." Clause 5.2 refers to tax requirements and exemptions. (Wesley Decl. Ex. 8 at 33, ECF No. 36-13.) Like the statements identified below with regard to Redbubble's fulfillers, this seems to pertain to an accounting rather than legal relationship, as is confirmed in Redbubble's annual report: "The Group is required to exercise critical judgement when determining whether it recognises revenue as either a principal or an agent. The Group has determined, <u>for accounting purposes only</u>, it is acting as the artists' agent in arranging for the selling of the artist's goods to customers." (Redbubble 2018 Annual Stmt., Wesley Decl. Ex 46 at 51, ECF No. 51) (emphasis added).

Likewise, as regards fulfillers, Brandy Melville bases its argument on a statement in Redbubble's 2018 annual report that it is "acting as principle with respect to its fulfillers as opposed to an agent." (*Id.*) However, this statement was made with regard to calculation of income for purposes of Australian Accounting Standards, not an agency relationship as one is legally understood under U.S. law. The full text of the cited quote states that "the Group has determined, <u>for accounting purposes only</u>, it is acting as a principal with respect to fulfillers as opposed to as an agent." (*Id.*) (emphasis added).

As Brandy Melville does not otherwise address any of the legal elements required for the finding of an agency relationship in either case, the Court finds no basis to impose vicarious liability under this theory.

3. *Substantial Control*

Lastly, Brandy Melville argues that Redbubble "exercises substantial control" over the infringing products that its fulfillers create in response to user orders. In this area, Plaintiff leans heavily on the quality control standards and inspections that Redbubble imposes on its fulfillers. Plaintiff also notes that Redbubble controls how the products are packaged as well as the processing of returns.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

In order to support a finding of liability on the basis of substantial control, however, Plaintiff must demonstrate that Redbubble takes some action with regard to the infringing products beyond the uniform steps it takes to maintain its marketplace generally. Courts have typically found instances where an infringing user operated within the bounds of a service provider's general business requirements insufficient to impose vicarious liability for the user's infringing activity. *See Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531, 550 (E.D. Va. 2010), *aff'd in relevant part,* 676 F.3d 144, 165 (4th Cir. 2012) (rejecting vicarious liability claim because plaintiff failed to prove Google 'controls the appearance and content' of infringing products offered through its sponsored links); *Perfect 10*, 494 F.3d 788 (finding allegations that direct infringers "operate their businesses according to defendants' rules and regulations and defendants share the profits" insufficient to support a claim for vicarious infringement.)

As such, Redbubble's control of the raw materials and background processes that a user employs to facilitate their infringement is insufficient to impose vicarious liability without some indication that Redbubble exercised control over the appearance and content of the infringing products themselves. A blank mug or T-Shirt in Redbubble packaging—whatever its quality standards—involves no infringement. The infringement arises only when that blank surface is imprinted with an infringing design. To impose vicarious liability the shared control must extend in some way to the infringed intellectual property itself. The Court finds Brandy Melville's citation to *Life Alert Emergency Response, Inc. v. LifeWatch*, in which a company was found vicariously liable when it engaged telemarketers, instructed them to read a script that infringed a trademarked phrase, and then monitored their calls and recitation of that script, inapposite to the case at hand. *See Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 473 (9th Cir. 2015).

The Court therefore grants Redbubble's motion as to this category of claims.

### D. Counterfeiting

Lastly, Brandy Melville asserts that Redbubble is liable for selling counterfeit Brandy Melville products. As described below, the Court finds that the assessment of whether specific products would create the necessary level of consumer confusion to qualify as counterfeits is best left to the jury.

The Lanham Act prohibits a counterfeit mark from being used "in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1116(d)(1)(A). "Section 1116(d) requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946 (9th Cir. 2011).

"In order to invoke § 1117's special civil monetary remedies against counterfeiting, [a plaintiff] must establish that: (1) [Defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

its use was likely to confuse or deceive." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). An award of statutory damages for counterfeiting may be premised on a finding of contributory liability. *Louis Vuitton*, 658 F.3d at 944–45.

1. *Identity of the Marks*

"A counterfeit is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 608 (C.D. Cal. 2017)

Brandy Melville's Registration for the LA Lightning Mark registers it for use on "Clothing: namely t-shirts, tank tops, and sweatshirts." It further states that "The color(s) yellow is/are claimed as a feature of the mark." (USPTO Reg. No. 5,748,883, ECF No. 36-11.) The company's statement of undisputed facts posits that "Brandy Melville has used the LA Lightning Mark on several different products, including T-shirts, crop tops, hooded sweaters, and stickers." (Pl.'s Stmt. of Undisputed Facts ("SUF") ¶ 29, ECF No. 48-2.) The LA Lightning mark is displayed below as it appears on its USPTO registration, side by side with its appearance as displayed on a t-shirt posted on Redbubble in a listing provided as evidence by Brandy Melville:

        

USPTO Registration                                          Redbubble

(*See* Kelly Response Decl. ISO SJ ("Kelly Resp. Decl."), Ex. 28, ECF No. 82-28.) Based on the above, Plaintiff has provided satisfactory evidence that users on Redbubble's site offered clothing for sale bearing a non-genuine mark that is nearly identical to the "registered, genuine mark of another." *Louis Vuitton*, 658 F.3d at 946.

Brandy Melville likewise owns the Brandy Melville mark, which is registered for use on a wide range of products, including clothes, ornaments, and stickers. (USPTO Reg. No. 5,238,586, ECF No. 36-10.) The colors claimed as features of the mark are pink and black. (*Id.*) The Brandy Melville Mark is displayed below as it appears on its USPTO registration, and as displayed on metal-print posted for sale on Redbubble's site and submitted as evidence by Brandy Melville:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |



USPTO Registration                                   Redbubble

(*See* Wesley Decl. Ex. 31, ECF No. 36-36.) Here, again, the Court finds that the Plaintiff has demonstrated adequate similarity in the marks, based on their essential characteristics of color and composition, to support a finding that they are sufficiently identical, at least with regard to the particular product above. The mere use of Brandy Melville's trademarks is not itself counterfeiting, however. The closer question is whether "the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton,* 658 F.3d at 946.

2. *Registration on the Same Goods*

Some courts have construed this requirement narrowly, and found that the counterfeit item must be a realistic substitute for a genuine product: "counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.,* 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (citing McCarthy on Trademarks and Unfair Competition § 25:10 (5th ed.) "For this reason, courts have uniformly applied this provision to products that are stitch-for-stitch copies of those of another brand." *Id.*

In *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, for instance, this Court held as a matter of law that a plaintiff could not obtain statutory damages for counterfeiting where its mark was registered for use on flavoring for hookah base water, and the defendant used the mark exclusively on a hookah charcoal housing unit, as the defendant had not applied the marks to the same product for which they were registered. No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016).

In a response to Defendant's reply brief, Brandy Melville introduced evidence that on May 26, 2020, the Redbubble user "haleyshore" offered t-shirts and other pieces of apparel for sale on Redbubble's website imprinted with Plaintiff's LA Lightning Mark. (*See* Kelly Response Decl. Ex. 17-34, ECF No. 82:2-18.) In a notable instance of "gotcha" litigation, a paralegal employed by Plaintiff's counsel then evidently attempted to purchase several of the items. Although Redbubble's marketplace integrity team canceled the sales before they could be completed after receiving notice from Brandy Melville, the statute applies to items "offered" for sale as well as sales finally transacted.[1] *State of Idaho Potato Comm'n,* 425 F.3d at 721. The image of the Redbubble listing is displayed below alongside the mark as used on one of Brandy Melville's t-shirts:

---

[1] The Court notes, however, that Redbubble's conduct in preventing the sale and terminating the user's account may be relevant to any hypothetical assessment of statutory damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |



Brandy Melville



Redbubble

(*See* Kelly Response Decl. ISO SJ, ECF Nos. 82:2-18; Wesley Decl. Ex. 26, ECF No. 35-31).

The above pictures leave little doubt that there is a marked similarity between the two items, and Plaintiffs cite to *H-D U.S.A., LLC v. SunFrog, LLC* as a case in which a district court found a defendant liable for counterfeiting at summary judgment primarily on the strength of the resemblance of the marks themselves, regardless of differences in the quality or precise nature of the items sold. 311 F. Supp. 3d 1000, 1028 (E.D. Wis. 2018).

In this case, however, Plaintiffs assert that Defendant's infringing conduct involved the LA Lightning mark as applied to numerous items, including t-shirts, crop tops, and hooded sweatshirts. A specific evaluation of the similar use of the mark across these different categories of items, some of which the Court lacks examples for, can be better conducted at trial. Likewise, with regard to the Brandy Mark, the Court lacks sufficiently detailed evidence to make judgments regarding the similarity of items such as the wall hangings offered on Redbubble to any decorative items that Brandy Melville has actually offered for sale. As such, the Court will leave the subject of specific instances of counterfeiting to be determined by a jury in the event that Redbubble is found liable for contributory infringement.

The Court therefore denies the parties' motions for summary judgment as to this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-04618-RGK-JPR | Date | July 10, 2020 |
|---|---|---|---|
| Title | *Y.Y.G.M. SA v. Redbubble, Inc.* | | |

### V. EVIDENTIARY OBJECTIONS

To the extent that the parties have objected to any of the evidence relied upon by the Court, those objections are overruled for purposes of the Order.

### VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Brandy Melville's motion and **Grants in Part** Redbubble's motion as to Brandy Melville's claims for direct infringement, false designation of origin, unfair competition, and vicarious infringement. The Court **DENIES** Redbubble's motion as to Brandy Melville's claims for contributory infringement and counterfeiting.

**IT IS SO ORDERED.**

_____ : _____
Initials of Preparer         VRV