DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
MATTHAEUS MARTINO-WEINHARDT (SBN 313103)
mweinhardt@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

DURIE TANGRI LLP
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
MOON HEE LEE (SBN 318020)
mlee@durietangri.com
53 East 3rd Street
Los Angeles, CA 90013
Telephone:    213-992-4499
Facsimile:    415-236-6300

Attorneys for Defendant
REDBUBBLE, INC.

(*Additional counsel continued on following page*)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> REDBUBBLE, INC., <br><br> Defendant. | Case No. 4:18-cv-03451-JST <br><br> **DEFENDANT REDBUBBLE, INC.'S RESPONSE TO PLAINTIFF ATARI INTERACTIVE, INC.'S MOTION IN LIMINE NO. 2 TO EXCLUDE MICHAEL MASNICK FROM TESTIFYING** <br><br> Date:   October 8, 2021 <br> Time:   2:00 p.m. <br> Ctrm:   6 – 2nd Floor <br> Judge: Honorable Jon S. Tigar |

COASTSIDE LEGAL
KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
455 1st Avenue
Half Moon Bay, CA 94019
Telephone:    650-440-4211
Facsimile: 650-440-4851

ZUBER LAWLER LLP
JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
2000 Broadway Street, Suite 154
Redwood City, CA 94063
Telephone:    213-596-5620
Facsimile:     213-596-5621

Attorneys for Defendant
REDBUBBLE, INC.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT .......................................................................................................................1

    A.    Mr. Masnick's opinions regarding "similarly situated companies" is admissible because he compared Redbubble to other large internet platforms like Facebook..............1

    B.    Mr. Masnick's discussion of Type I and Type II errors is admissible testimony regarding industry standards. ...............................................................................................2

    C.    Mr. Masnick's opinion regarding the difficulty of content moderation and the "copying is not theft" products are admissible and not unduly prejudicial. ........................3

    D.    Mr. Masnick's statements regarding his understanding of Redbubble's content moderation efforts are admissible. ......................................................................................5

    E.    Mr. Masnick's opinions regarding the challenges of content moderation in the industry are admissible. ......................................................................................................6

    F.    Mr. Masnick's opinions are relevant to the direct seller dispute and to intent and knowledge of counterfeiting. ..............................................................................................6

III. CONCLUSION....................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
   270 F.3d 863 (9th Cir. 2001) ...................................................................................................5

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ................................................................................................2, 3

*King v. GEICO Indem. Co.*,
   712 F. App'x 649 (9th Cir. 2017) ............................................................................................3

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013).....................................................................................................5

**Other Authorities**

Fed. R. Evid. 703 ............................................................................................................................5

## I. INTRODUCTION

Plaintiff Atari Interactive's motion *in limine* to exclude the testimony of Michael Masnick disparages him as a "blogger that does not like the United States' intellectual property laws." Dkt. No. 144 ("Mot.") at 3. To the contrary, Mr. Masnick is an expert on content moderation, and his opinions on that subject are based on the specific facts of Redbubble and the industry standard for content moderation by internet platforms. His opinions are relevant to the question of whether independent artists or Redbubble are the seller—the volume of daily listings and difficulties of moderating it support the contention that artists, not Redbubble, are the seller—as well as to the intent and knowledge requirements of counterfeiting. None of Atari's challenges to Mr. Masnick's testimony withstand scrutiny.

## II. ARGUMENT

### A. Mr. Masnick's opinions regarding "similarly situated companies" is admissible because he compared Redbubble to other large internet platforms like Facebook.

Atari argues that Mr. Masnick lacked sufficient facts or data to opine that Redbubble's content moderation "goes beyond what other, similarly situated companies do in attempting to police infringing content." Mot. at 3 (quoting Dkt. No. 144-2 ("Masnick Report") ¶ 71)). Not so.

Atari does not dispute that Mr. Masnick had sufficient facts and data to assess **Redbubble's** content moderation procedures and policies. Rather, Atari faults Mr. Masnick because he "only considered Redbubble's procedures, not the procedures of any other print-on-demand companies." Mot. at 3. Atari's critique is based on the premise that the only "similarly situated companies" are companies involved with the printing and sale of physical goods. But Mr. Masnick compared Redbubble to other "[l]arge internet platforms like Redbubble [that] need some level of moderation or they can be overwhelmed with infringement, spam, or abuse." Masnick Report ¶ 55. In the paragraph immediately following the one Atari quotes, Mr. Masnick elaborates that Redbubble "appears to go above and beyond *what similar platforms of similar sizes have done*," Masnick Report ¶ 72 (emphasis added), and provides a detailed discussion of other internet platforms: Facebook, *id.* ¶¶ 73-82; the Internet Archive, *id.* ¶ 84; YouTube, *id.* ¶ 85; law professor Eugene Volokh's reporting (hosted by the Washington Post), *id.* ¶ 86; Google, *id.* ¶ 87; and examples documented by the Electronic Frontier Foundation, *id.* ¶ 88. Mr. Masnick chose these internet platforms as points of comparison because of the high volume of user-

generated content they have to moderate: Redbubble artists upload "nearly 19,000 listings on average in recent years," *id.* ¶ 63.

Atari may quibble with whether these internet platforms are comparable to Redbubble, and will likely argue to the jury that certain "print-on-demand" websites are better comparison points. But that does not render Mr. Masnick's opinion inadmissible for instead comparing Redbubble's efforts with those of internet platforms like Facebook, the Internet Archive, or YouTube.

### B. Mr. Masnick's discussion of Type I and Type II errors is admissible testimony regarding industry standards.

Atari attacks Mr. Masnick's discussion of the Type I and Type II errors that occur in content moderation:

> Even when there are clear choices to make content moderation suffers from two types of errors. Using standard statistical terminology, blocking content that shouldn't be blocked is called a "type I error," and failing to block content that probably should be blocked is referred to as a "type II error."

Masnick Report ¶ 16. Mr. Masnick later explains:

> As discussed earlier, with such content moderation decisions, there will always be some level of mistakes (Type I or Type II errors) made, and in reviewing a large list of decisions made by Redbubble, it appears that the company has leaned heavily towards being even more aggressive in proactively taking down content than might otherwise be necessary. That is, there are indications that Redbubble is even over-protecting and has chosen to have more Type I errors -- taking down content that might not need to be taken down -- in order to make sure that it is not running afoul of IP claims.

*Id.* ¶ 70.

Atari argues that Mr. Masnick's discussion of this tradeoff of Type I and Type II errors "appears to define the applicable legal standard" and therefore invades the province of the jury. Mot. at 3-4. Not so. Mr. Masnick never purports to set forth a legal standard, but rather describes the industry standard concerning content moderation, which is his area of expertise. The Ninth Circuit has explained that experts may testify about industry standards, even if that testimony refers to law, so long as the expert does not "testif[y] that he had reached a legal conclusion" on "an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). In *Hangarter*, for example, an expert

1  was permitted to testify "that Defendants deviated from industry standards [which] supported a finding
2  that they acted in bad faith," but "never testified that he had reached a legal conclusion that Defendants
3  actually acted in bad faith (i.e., an ultimate issue of law)." *Id.*  Nor was the expert's testimony
4  inadmissible for relying "in part on his understanding of the requirements of state law," for "a witness
5  may properly be called upon to aid the jury in understanding the facts in evidence even though reference
6  to those facts is couched in legal terms." *Id.* at 1017 (citation omitted); *see also King v. GEICO Indem.*
7  *Co.*, 712 F. App'x 649, 651 (9th Cir. 2017) (affirming admission of expert testimony where the expert
8  "did not address an ultimate issue of law, but rather testified to [the defendant's actions] in relation to
9  industry standards").

10  Mr. Masnick's testimony falls well within the parameters of permissible testimony regarding
11  industry standards.  He appropriately provides testimony regarding the industry standard for large content
12  platforms like Redbubble, which receives "nearly 19,000 listings on average in recent years" every single
13  day.  Masnick Report ¶ 63.  Mr. Masnick's report is explicit that in opining that "Redbubble's approach
14  appropriately balances Atari's and other rightsholders' rights in its intellectual property and Redbubble's
15  users' rights," *id.* ¶ 71, he is assessing that Redbubble's approach is "appropriate" in comparison to
16  "what other, similarly situated companies do in attempting to police infringing content," *id.*—that is, by
17  reference to the industry standard.  Mr. Masnick certainly "never testified that he had reached a legal
18  conclusion that [Redbubble] actually" is not liable for trademark or copyright infringement, which is the
19  "ultimate issue of law." *Hangarter*, 373 F.3d at 1016.  Instead, Mr. Masnick's testimony necessarily and
20  permissibly refers to intellectual property law and infringement because he discusses the industry
21  standard for policing infringing content by large internet platforms.

**C.  Mr. Masnick's opinion regarding the difficulty of content moderation and the "copying is not theft" products are admissible and not unduly prejudicial.**

24  Atari asserts that Mr. Masnick presents "negative opinions about federal intellectual property
25  laws" that must be excluded under Rule 403 because their probative value is substantially outweighed by
26  a danger of unfair prejudice.  Mot. at 4.  Atari identifies just two opinions that supposedly fit this
27  description.

1    *First*, Atari points to Mr. Masnick's opinions regarding "Masnick's Impossibility Theorem," namely that "[c]ontent moderation at scale is impossible to do well." Mot. at 4-5 (citing Masnick Report, Section III). Atari argues that this opinion is "irrelevant to whether Redbubble must comply with federal intellectual property laws." Mot. at 5. Granted, Mr. Masnick's opinions do not directly address Redbubble's legal obligations, but for good reason—that would be closer to an impermissible legal conclusion. Mr. Masnick also does not suggest that Redbubble must not comply with federal intellectual property laws. Instead, Mr. Masnick's "Impossibility Theorem" opinions address industry standards, and cites examples of content moderation efforts from other large internet platforms, such as Facebook removing pro-vaccine ads when attempting to ban anti-vaccine ads, *see* Masnick Report ¶ 28, to support his opinion that in the industry, perfect content moderation is impossible. Explaining that the industry standard for content moderation is something less than 100% perfect content moderation is permissible expert testimony.

Atari also argues that "Redbubble is not entitled to break the law in order to make a profit," Mot. 5, but fails to explain how Mr. Masnick's opinion (that perfect content moderation is impossible) suggests otherwise. Indeed, Mr. Masnick's opinion regarding the industry standard is precisely that ***regardless*** of the resources dedicated to content moderation by large internet platforms, errors occur. His discussion of platforms like Facebook and Twitter illustrates that it is ***not*** the case in the industry that "more hard work can 'solve' the mistakes made in content moderation," Masnick Report ¶ 21, which is what Atari suggests. Mr. Masnick's opinions are thus not unduly prejudicial.

*Second*, Atari contends that Mr. Masnick should not be allowed to present his testimony regarding the "copying is not theft" products. Mot. at 5; *see* Masnick Report ¶¶ 40-43. Those passages from his report primarily discuss Mr. Masnick's firsthand experience with content moderation from Teespring, where the "copying is not theft" products were taken down even though Mr. Masnick and Techdirt "created and owned the original design and it did not include any 'third-party content.'" Masnick Report ¶ 41. Despite requests to identify the policy they violated, Teespring did not change its stance and instead responded that the "policy and choice to remove the content are not up for discussion." *Id.* ¶ 42. Again, Mr. Masnick's discussion serves to illustrate the industry standard for content moderation.

Because this experience involved a design with the phrase "copying is not theft," Mr. Masnick explains in a footnote that he is ***not*** suggesting that copying is lawful or that it is "legally or morally right or defensible." *Id.* ¶ 40 n.2. Rather, he explains what he and Techdirt intended to communicate is his view that "even when copying is unlawful it is not theft" because it "leaves the item from which the copy was made." *Id.* Thus, far from creating a "substantial risk of misleading the jury that theft is required for a plaintiff to prove a claim for infringement," Mot. at 5, this footnote expressly states that the phrase on these products does not address any legal requirement or standard.

### D. Mr. Masnick's statements regarding his understanding of Redbubble's content moderation efforts are admissible.

Atari contends that Mr. Masnick may not describe Redbubble's content moderation efforts, Masnick Report ¶¶ 57-70, because he has no personal knowledge of them and because the statements he relied on are hearsay. Mot. at 5-6. But it is well-established that "experts are entitled to rely on hearsay in forming their opinions," *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001), as Rule 703 provides that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted," Fed. R. Evid. 703. Atari makes no attempt to argue that experts in the particular field would ***not*** reasonably rely on evidence of a platform's content moderation efforts. Indeed, it is difficult to imagine what facts or data an expert discussing Redbubble's content moderation efforts could rely on ***other than*** facts concerning Redbubble's content moderation efforts.

Atari also argues that Mr. Masnick's discussion of his understanding of Redbubble's content moderation efforts violates the rule that "a party cannot call an expert simply as a conduit for introducing hearsay." Mot. at 6 (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)). In *Marvel Characters*, the Second Circuit affirmed the exclusion of testimony by two historians, holding that although historians could offer "background knowledge or context that illuminates or places in perspective past events," these two historians "d[id] not bring their expertise to bear in any such way." *Id.* Instead, they "speculate[d] as to the motivations and intentions of certain parties" and "opine[d] on the credibility of other witnesses' accounts." *Id.* Not so for Mr. Masnick. He does not speculate as to the motivations of any parties, nor opine on the credibility of witnesses. Atari never suggests he does.

Instead, Mr. Masnick does exactly what *Marvel Characters* says *is* permissible—offer "context that illuminates or places in perspective" the content moderation efforts of Redbubble. He describes his understanding of Redbubble's content moderation efforts not to be a conduit for hearsay, but to compare those efforts to industry standard and provide context that illuminates the practical challenges of large-scale contention moderation for internet platforms.

### E. Mr. Masnick's opinions regarding the challenges of content moderation in the industry are admissible.

Finally, Atari argues that Mr. Masnick may not discuss examples of content moderation by platforms like Facebook because they "have nothing to do with the facts of the case" and are "wholly irrelevant." Mot. at 6. But as discussed above, testimony regarding these other platforms shows the industry standard for content moderation, which is the basis for Mr. Masnick's opinions regarding how Redbubble's content moderation aligns with the industry standard. Atari cannot both argue that Mr. Masnick had to make comparisons to similarly situated companies (which he does) and also argue that Mr. Masnick's testimony must be confined strictly to the facts of this case. Atari's disagreement with the comparability of internet platforms like Facebook goes to the weight of the evidence, not its admissibility.

### F. Mr. Masnick's opinions are relevant to the direct seller dispute and to intent and knowledge of counterfeiting.

Atari does not argue that Mr. Masnick's opinions regarding the difficulties of content moderation are irrelevant as a general matter. However, because Atari has stipulated that it will not pursue a contributory infringement theory at trial, *see* Dkt. No. 164, it bears clarifying that Mr. Masnick's opinions are relevant to issues remaining in the case. Specifically, Mr. Masnick's opinions are relevant to the question of who sells products listed on Redbubble's website—the independent artists or Redbubble—which is central to Atari's direct infringement claims (trademark and copyright). The difficulties of content moderation, and the large volumes of content that Redbubble moderates, show that it is the independent artists, not Redbubble, who control what they upload to Redbubble and what they sell via the Redbubble website. Mr. Masnick's opinions are also relevant to the intent and knowledge requirements of counterfeiting: The tools Redbubble uses for content moderation, which are consistent

with and even go beyond industry standard, show that Redbubble lacks the intent or knowledge required for counterfeiting.

### III. CONCLUSION

Mr. Masnick offers expert testimony regarding the industry standard for content moderation and how Redbubble's practices align with that standard. None of Atari's contentions of inadmissibility hold water. The Court should deny Atari's motion to exclude Mr. Masnick from testifying.

Dated:  September 28, 2021                                        DURIE TANGRI LLP

                                                                  By:            */s/ Daralyn J. Durie*
                                                                                 DARALYN J. DURIE

                                                                  Attorneys for Defendant
                                                                  REDBUBBLE, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2021 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Daralyn J. Durie*
DARALYN J. DURIE