1
2
3
4
5
6

DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
MATTHAEUS MARTINO-WEINHARDT (SBN 313103)
mweinhardt@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
Facsimile:      415-236-6300

7
8
9
10
11

DURIE TANGRI LLP
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
MOON HEE LEE (SBN 318020)
mlee@durietangri.com
53 East 3rd Street
Los Angeles, CA 90013
Telephone:     213-992-4499
Facsimile:      415-236-6300

12
13

Attorneys for Defendant
REDBUBBLE, INC.

14

(*Additional counsel continued on following page*)

15

IN THE UNITED STATES DISTRICT COURT

16

FOR THE NORTHERN DISTRICT OF CALIFORNIA

17

OAKLAND DIVISION

18
19
20
21
22
23

ATARI INTERACTIVE, INC.,

                              Plaintiff,

          v.

REDBUBBLE, INC.,

                              Defendant.

Case No. 4:18-cv-03451-JST

**DEFENDANT REDBUBBLE, INC.'S MOTION FOR ATTORNEY'S FEES**

Date:   March 3, 2022
Time:   2:00 p.m.
Ctrm:   6 – 2nd Floor
Judge:  Honorable Jon S. Tigar

24
25
26
27
28

1    COASTSIDE LEGAL
     KENNETH B. WILSON (SBN 130009)
2    ken@coastsidelegal.com
     455 1st Avenue
3    Half Moon Bay, CA 94019
     Telephone:    650-440-4211
4    Facsimile: 650-440-4851

5    ZUBER LAWLER LLP
     JOSHUA M. MASUR (SBN 203510)
6    jmasur@zuberlawler.com
     2000 Broadway Street, Suite 154
7    Redwood City, CA 94063
     Telephone:    213-596-5620
8    Facsimile:    213-596-5621

9    Attorneys for Defendant
     REDBUBBLE, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................................2

II.  ARGUMENT ........................................................................................................................2

A.  Under the Copyright Act, the Court Should Award Redbubble its Attorney's Fees ..........2

1.  Atari Took Objectively Unreasonable Positions.....................................................3

a.  Atari sought $5 million in damages without a legally cognizable basis...........................................................................................................4

b.  Atari failed to provide evidence of deposit copies for its asserted copyrights....................................................................................................6

c.  Atari failed to provide evidence of copyright registrations covering box art and failed to produce screenshots of most asserted video games ...........................................................................................................8

2.  A Fees Award Would Further the Purposes of the Copyright Act ........................9

3.  Atari's Motivation for Bringing Suit is Inconsistent with the Purposes of the Copyright Act...................................................................................................10

4.  Redbubble Achieved Total Success......................................................................10

5.  Awarding Fees to Redbubble Would Not Be Inequitable. ...................................11

B.  No Segregation of Fees Between Copyright Claims and Trademark Claims is Required ..................................................................................................................................12

C.  The Amount of the Fee Award is Determined by the Lodestar Approach ......................14

III.  CONCLUSION....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Ghoulish Gallery*,
No. 06-cv-371 NLS, 2008 WL 474394 (S.D. Cal. Feb. 19, 2008) .......................................................6

*Atari Interactive, Inc. v. ooShirts, Inc.*,
No. 4:19-cv-00264-JST (N.D. Cal.) (filed Jan. 15, 2019) ...................................................................10

*Atari Interactive, Inc. v. Pixels.com, LLC*,
No. 1:21-cv-04272-JPO (S.D.N.Y.) (filed May 12, 2021) ..................................................................10

*Atari Interactive, Inc. v. Redbubble, Inc.*,
515 F. Supp. 3d 1089 (N.D. Cal. 2021) .............................................................................................8

*Atari Interactive, Inc. v. skinnyCorp., LLC*,
No. 1:20-cv-10379-JPO (S.D.N.Y.) (filed Dec. 9, 2020) ..................................................................10

*Atari Interactive, Inc. v. Teespring, Inc.*
No. 4:19-cv-00111-JST (N.D. Cal.) (filed Jan. 8, 2019) ...................................................................10

*Atari Interactive, Inc. v. Zazzle, Inc.*,
No. 4:18-cv-03843-JST (N.D. Cal.) (filed June 27, 2018) ................................................................10

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997) ............................................................................................................14

*Bernal v. Paradigm Talent and Literary Agency*,
No. CV 07-06445 SVW PLAx, 2010 WL 6397561 (C.D. Cal. June 1, 2010) ...................................14

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253, 1271 (9th Cir. 2021) ...............................................................................................2, 4

*Entm't Research Grp., Inc. v. Genesis Creative Grp.*,
122 F.3d 1211 (9th Cir.1997) .....................................................................................................9, 12, 13

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*,
893 F.3d 1176 (9th Cir. 2018) ...........................................................................................................8

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir. 1996) ...............................................................................................................3

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)..............................................................................................................3, 9, 10

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881 (2019)........................................................................................................................6, 7

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  No. CV 13-00496 SOM/BMK, 2015 WL 5601853 (D. Haw. Sept. 23, 2015) ................................4, 11

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (2018) ........................................................................................3, 9, 10, 11

*Hayes v. Minaj*,
  No. 2:12-CV-07972-SVW-SH, 2013 WL 11328453 (C.D. Cal. Mar. 7, 2013) ..............................7, 8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................12, 13, 14

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197 (2016) ........................................................................................2, 3

*Lopez v. Fashion Nova*,
  No. 20 Civ. 9238 (LGS), 2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ............................................11

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
  81 F.3d 881 (9th Cir. 1996) ........................................................................................11

*Mattel, Inc. v. MGA Ent., Inc.*,
  No. CV 04-9049 DOC RNBX, 2011 WL 3420603 (C.D. Cal. Aug. 4, 2011), *aff'd sub
  nom. Mattel, Inc v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013) ..............................................3

*Michael Grecco Prods., Inc. v. Enthusiast Gaming, Inc.*,
  No. 19-cv-06399-LHK, 2020 WL 7227199 (N.D. Cal. Dec. 8, 2020) ....................................................4

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB SHX, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847
  F.3d 657 (9th Cir. 2017) ........................................................................................9, 10, 11

*Schwarz v. Sec'y of Health & Hum. Servs.*,
  73 F.3d 895 (9th Cir. 1995) ........................................................................................13, 14

*Scott v. Meyer*,
  No. CV 09-6076 ODW(RZX), 2010 WL 2569286 (C.D. Cal. June 21, 2010) ....................................................9

*Shame On You Prods., Inc. v. Banks*,
  893 F.3d 661 (9th Cir. 2018) ........................................................................................3

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ........................................................................................6, 7

*Stonebrae, L.P. v. Toll Bros., Inc.*,
  No. C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ....................................................14

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016) ........................................................................................2

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
     340 F.3d 829 (9th Cir. 2003) ................................................................................................. 12

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
     896 F.2d 403 (9th Cir. 1990) ................................................................................................. 14

**Statutes**

15 U.S.C. § 1117(a) ................................................................................................................. 2

15 U.S.C. § 1117(c)(1) ............................................................................................................ 5

17 U.S.C. § 408(a) ................................................................................................................... 7

17 U.S.C § 408(b)(2) .............................................................................................................. 7

17 U.S.C. § 410 ....................................................................................................................... 7

17 U.S.C. § 411 ................................................................................................................... 6, 7

17 U.S.C. § 504 ....................................................................................................................... 5

17 U.S.C. § 505 .................................................................................................................*passim*

35 U.S.C. § 285 ....................................................................................................................... 2

42 U.S.C. § 1988 ................................................................................................................... 12

**Other Authorities**

*Compendium of Copyright Office Practices* § 108.04 (2d ed. 1998) ....................................... 7

1

## <u>NOTICE OF MOTION AND MOTION</u>

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE THAT on March 3, 2022 at 2:00 p.m., or as soon thereafter as counsel

4   may be heard, Defendant Redbubble Inc. ("Redbubble"), as the prevailing party in this litigation, will and

5   hereby does move the Court for an award of attorney's fees under 17 U.S.C. § 505.  Pursuant to Local

6   Rule 54-5(b)(1), counsel for Redbubble met and conferred with counsel for Plaintiff Atari Interactive,

7   Inc. ("Atari") on December 16, 2021.

8          This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and

9   Authorities included herewith, the supporting Declaration of Matthaeus Martino-Weinhardt, all pleadings

10  and papers on file in this action, and such further evidence, argument, and exhibits that may be submitted

11  to the Court at or before the hearing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Plaintiff Atari Interactive, Inc. ("Atari") sued Defendant Redbubble, Inc. ("Redbubble") for copyright infringement and trademark infringement and counterfeiting.  Dkt. No. 1.  Following summary judgment rulings, the jury reached a verdict for Redbubble on all remaining claims, finding no copyright infringement, no trademark infringement, and no trademark counterfeiting.  Under the Copyright Act, the court may award fees to the prevailing party.  *See Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202, 209 (2016).  There is no requirement that the case be "exceptional" nor that the losing party have acted in bad faith or asserted frivolous claims.

This Court held at summary judgment that Atari could not pursue actual damages because it had not produced any evidence of actual damages during discovery, and that any award of statutory damages should not provide a "windfall" to the plaintiff.  Dkt. No. 127 at 6 (quoting *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1271 (9th Cir. 2021)).  The Court also prohibited Atari from relying on harm to its licensees to show damages, because it had failed to produce evidence of that harm during discovery.  *See* Dkt. No. 197 at 4, 11.  Total sales revenue of all merchandise tagged "Atari" was just $215,000 (much of which was for merchandise that was not even potentially infringing, such as a t-shirt bearing the legend "Atari Lives," a reference to a Wes Anderson movie, not Atari videogames).  Atari nevertheless proceeded to trial and asked the jury to award it $5 million in damages—an amount that had no legally cognizable basis.  In addition, Atari pursued copyright claims without evidence of deposit copies, without screenshots from most of the asserted video games, and without registrations for the box art that it asserted Redbubble had infringed.  Redbubble should be awarded attorney's fees to compensate it for the time, effort, and expense of being forced to participate in a trial that should not have happened.

## II.   ARGUMENT

### A.   Under the Copyright Act, the Court Should Award Redbubble its Attorney's Fees

The Copyright Act provides that "the court may . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  This is a lower standard than the standard for attorney's fees in patent or trademark cases, which require a finding that the case is "exceptional."  *See* 15 U.S.C. § 1117(a) (trademark); 35 U.S.C. § 285 (patent); *see also SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (discussing trademark and patent fee-shifting provisions).  Under the

Copyright Act, the plaintiff's "blameworthiness is not a prerequisite to awarding fees to a prevailing defendant" and "district courts may freely award fees, as long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558-59 (9th Cir. 1996) (cleaned up); *see id.* at 558, 561 (awarding attorney's fees under Section 505 for the appeal because "it served the purposes of the Copyright Act for Fogerty to defend an appeal," notwithstanding that the appeal presented new issues "not squarely addressed" by Ninth Circuit precedent).  The Supreme Court has explained that the Copyright Act's fee-shifting provision reflects that "copyright law ultimately serves the purpose of enriching the general public through access to creative works."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).  A "successful defense may further the purposes of the Act" where a plaintiff engages in "pursuit of grossly overbroad monetary . . . relief."  *See Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04-9049 DOC RNBX, 2011 WL 3420603, at *4 (C.D. Cal. Aug. 4, 2011), *aff'd sub nom. Mattel, Inc v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013).

The Supreme Court and Ninth Circuit have established several factors for the court to consider in making a fee determination.  First, the court "should give substantial weight to the objective reasonableness of the losing party's position."  *Kirtsaeng*, 579 U.S. at 199-200, 209.  The Supreme Court in *Fogerty*, 510 U.S. at 534 n.19 identified the following non-exclusive factors: "frivolousness, motivation, objective unreasonableness [both in the factual and in the legal components of the case] and the need in particular circumstances to advance considerations of compensation and deterrence."  *See also Kirtsaeng*, 579 U.S. at 202.  The Ninth Circuit has "added factors that may be considered and need not all be met: the degree of success obtained in the litigation, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great. . . ."  *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (2018) (cleaned up).  The Ninth Circuit has re-affirmed the applicability of these factors following *Kirtsaeng*.  *Id.*; *see also Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018).

### 1.    Atari Took Objectively Unreasonable Positions

The court "should give substantial weight to the objective reasonableness of the losing party's position."  *Kirtsaeng*, 579 U.S. at 199-200, 209.  "A claim that is not 'objectively unreasonable' at the

1   outset can become so if the litigant continues to pursue it when the litigant knew or should have known

2   that the chance of success was slim to none." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CV 13-

3   00496 SOM/BMK, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015).

4                   **a.   Atari sought $5 million in damages without a legally cognizable basis**

5            Atari's insistence on a multi-million-dollar payout was objectively unreasonable, particularly

6   after this Court's order on summary judgment sharply curtailed its theoretical recovery.  Atari's demand

7   for $5 million in damages, Trial Tr. at 1112:25-1113:4, was entirely out of proportion to its actual

8   injuries and untethered to any evidence in the case.  In closing argument, Atari did not even attempt to tie

9   its $5 million damages request to any evidence or factual support, instead suggesting that the number was

10   appropriate because "[i]t's a number they have to take seriously" and "[i]t's a number that tells them

11   change what you're doing.  Stop churning out 10,000 infringements every single day."  Trial Tr. at

12   1113:3-6.

13            This Court observed in its summary judgment order that "[a] statutory damages award 'must bear

14   a plausible relationship to Plaintiff's actual damages.'"  Dkt. No. 127 at 6 (quoting *Michael Grecco*

15   *Prods., Inc. v. Enthusiast Gaming, Inc.*, No. 19-cv-06399-LHK, 2020 WL 7227199, at *10 (N.D. Cal.

16   Dec. 8, 2020)).  Statutory damages may not provide a "windfall" to the plaintiff.  *Id.* (quoting *Desire*, 986

17   F.3d at 1271).  In discovery, Atari "provided no quantification or computation of damages" and "did not

18   disclose or produce any documents that it might use to support its claimed damages, such as documents

19   showing lost profits or its license fees, sales figures, valuations of its goodwill, or corrective advertising

20   costs."  Dkt. No. 127 at 3.  In short, Atari "presented no evidence on which to base an award of anything

21   other than minimum statutory damages on any of its claims."  Dkt. No. 127 at 6.

22            In its order on the parties' motions *in limine*, the Court reiterated its summary judgment order on

23   damages and precluded Atari from relying on harm to its licensees to support a damages award, because

24   Atari had not produced any such evidence during discovery.  *See* Dkt. No. 197 at 4 (excluding purported

25   expert opinions because they "relate to the financial harm to Atari," including that "[t]he presence of

26   counterfeits and infringing products has a negative impact on the value and potential commercial

27   opportunities of an authentic brand"); *id.* at 11 (holding that Atari could present evidence of its license

28   agreements for the limited purpose of showing the strength of its marks, but not to "backdoor an actual

---

damages case where Atari is not permitted to present one").  Atari nevertheless attempted to rely on

evidence of harm to its licensees and licensing opportunities at trial, eliciting testimony from its

corporate representative and licensing director, Casandra Brown, as follows:

> Q.  Is it important for Atari to protect its brand form the presence of counterfeits and infringing products in the market?
>
> A. … [C]ounterfeiting, it hurts our licensees.  It hurts Atari as well because there's no control over the process. . . . So I take it very seriously when somebody is essentially getting for free what other people have paid for . . . .
>
> Q.  Do you believe that counterfeiting hurts Atari's ability to enter into licenses to sell its intellectual property?
>
> A:  Yes.

*See* Trial Tr. at 408:4-409:2.  The Court sustained an objection to this line of inquiry, agreeing that this

"testimony regarding the financial impact to Atari's licensing program from Redbubble's alleged

infringement is foreclosed by the Court's summary judgment ruling."  Trial Tr. at 432:23-433:3.

In closing, Atari did not bother to explain whether it was seeking a $5 million damages award

under the Copyright Act, the Lanham Act, or some combination of both, and the request was

unreasonable under any available theory.  Statutory damages for copyright infringement are limited to

between $750 and $30,000 per work.  *See* 17 U.S.C. § 504.  Even if Atari had prevailed on infringement

and on its argument that each of the seven video games was a separate work (rather than constituting a

single work as a part of a compilation), the damages would be capped at $210,000, far below the

requested $5 million.

Under the Lanham Act, statutory damages are available only for counterfeiting, in the amount of

$1,000 to $200,000 "per counterfeit mark per type of goods."  *See* 15 U.S.C. § 1117(c)(1).  The Court

provided a special jury instruction on trademark counterfeiting, which stated that types of goods are

limited to "the goods for which a mark is registered," and that "[g]oods of the same 'type' if they

serve the same functional purpose or have the same basic functionality. Subtle differences in size, shape,

color, pattern, or fabric do not make something a different type of good."  Dkt. No. 252 at 28.  In its closing,

Atari ignored this standard, instead arguing to the jury that "25, conservatively you could pick 25, that's

less than what we're seeing" in website screenshots listing products (such as different t-shirts styles), and

to "make it 25 counterfeits. That would be a safe number." Trial Tr. 1109:11-15. Atari's position on the number of types of goods was objectively unreasonable because it was untethered to the law regarding what constitutes a type of good. And minimum statutory damages for counterfeiting are $1,000 per mark per type of goods, meaning that even using Atari's unsupported number of 25 types of goods, absent evidence of actual damages, Atari's statutory damages would be $50,000 ($1,000 x 25 types of goods x 2 marks)—100 times less than its asserted damages of $5 million.

Total sales revenue for all products that had been tagged "Atari" was $285,477.31 (AUS), representing the approximately 2,900 designs Redbubble initially removed in response to Atari's complaint (most of which Atari ultimately conceded are non-infringing). *See* Trial Tr. at 791:4-7. That corresponds to $215,000 (US) at the prevailing exchange rate. Trial Tr. at 791:11-15. Atari's demand for $5 million was orders of magnitude greater than the highest dollar number that could have been supported by the evidence, untethered to any plausible loss to Atari, and would have resulted in exactly the "windfall" that this Court had held was improper.

As a result, at least after the Court's summary judgment order on damages, Atari was unreasonable in pursuing a multi-million-dollar payday rather than seeking to recover what the case was by that point actually worth.

### b.    Atari failed to provide evidence of deposit copies for its asserted copyrights

Atari never provided evidence of the content of the deposit copies for the allegedly infringed copyrighted works submitted to the Copyright Office. A plaintiff's position is objectively unreasonable where the plaintiff fails to "produce[] any evidence of what he actually copyrighted." *See Allen v. Ghoulish Gallery*, No. 06-cv-371 NLS, 2008 WL 474394, at *6 (S.D. Cal. Feb. 19, 2008). As the Ninth Circuit held in *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1062-63 (9th Cir. 2020), "the scope of the copyright is limited by the deposit copy." Copyright owners must submit a "deposit copy" to the Copyright Office when registering their copyright, and registration is a prerequisite to suing for infringement, *see Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019); 17 U.S.C. § 411.

The copyright at issue in *Skidmore* was governed by the 1909 Act, but its holding applies equally

to the 1976 Act.  The *Skidmore* court based its holding on two rationales: (1) under the statute (there the 1909 Act), "the author must deposit one *complete copy* of such work" and (2) the purpose of that deposit is to "make a record of the claimed copyright, provide notice to third parties, and prevent confusion about the scope of the copyright."  *Skidmore* also cited the Copyright Office Compendium in effect at the time, which stated its practice of "writing to the applicant, *pointing out that protection extends only to the material actually deposited*, and suggesting that in his own interest he develop his manuscript to supply the missing element."  *Id.* (citation omitted).  The same is true under the 1976 Act.  With limited exceptions not applicable here, "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by *delivering to the Copyright Office the deposit* specified by this section."  17 U.S.C. § 408(a) (emphasis added).  Specifically, "in the case of a published work," like the video games at issue here, the registrant must deposit "two complete copies or phonorecords of the best edition."  *Id.* § 408(b)(2).  And just as with the 1909 Act, an important purpose of the deposit copy is to delineate the scope of the copyright.  As the Supreme Court has explained, under Section 410 of the 1976 Act, "if the Register determines that *the material deposited* constitutes copyrightable subject matter and other legal and formal requirements are met, the Register shall register the claim."  *Fourth Estate*, 139 S. Ct. at 889 (cleaned up) (emphasis added).  Moreover, the Copyright Office Compendium in effect in 2010 and 2011—when the asserted *Greatest Hits* game were registered—states that "the coverage of a registration cannot, subject to certain exceptions, extend beyond the material deposited to make that registration."  *Compendium of Copyright Office Practices* ("*Copyright Office Compendium*") § 108.04 (2d ed. 1998).

Atari offered no evidence that Atari had no evidence of what had been included in the deposit copies for the asserted works.  *See* Trial Tr. 832:20-833:4.  Failing to provide such evidence was especially unreasonable given the numerous different aspects of the video games Atari contended were encompassed by its copyrights—from artwork to specific game graphics to stylized fonts.  As *Skidmore* recognized, a purpose of the deposit copy is precisely to "prevent confusion about the scope of the copyright."  952 F.3d at 1062.  Nor was it reasonable for Atari to attempt to rely instead on witness testimony regarding what was submitted to the Copyright Office.  For example, in *Hayes v. Minaj*, No. 2:12-CV-07972-SVW-SH, 2013 WL 11328453, at *4 (C.D. Cal. Mar. 7, 2013), the Court granted

summary judgment of no copyright infringement because the plaintiff "failed to provide any evidence

that the Second Book or the Songs were submitted as part of the Registered Work."  "Plaintiff's self-

serving testimony that the Second Book and the Songs were submitted [to the Copyright Office] along

with the Registered Work is insufficient to create a triable issue of fact."  *Id.*  The same was true here.

### c.   Atari failed to provide evidence of copyright registrations covering box art and failed to produce screenshots of most asserted video games

Atari was required to prove that it has a copyright registration covering the allegedly infringing

material, and that there was an actual distribution or reproduction of that material.  Except possibly as to

game graphics for *Breakout* and *Pong*, which Atari contended were both included in *Greatest Hits*

*Volume I* as parts of a compilation, Atari did not introduce any such evidence at trial.

Atari alleged infringement of the box art of several games, such as *Missile Command*, *Centipede*,

and *Yar's Revenge*, but did not provide evidence of a copyright registration stating that it covered box art

for those games.  The only registration for box art was a 1978 registration for the "Printed carton" of

"Breakout, Video Computer System, Game Program."  TX 21 at 6.  However, Atari did not allege that

any product on Redbubble infringed the image that its witness Mr. Lapetino identified as the "photograph

of the Breakout box."  *See* Tr. 593:1-4; TX 80-78 (bottom left).

Atari also alleged copyright infringement of in-game graphics but did not submit evidence (such

as screenshots) of the in-game graphics for *Adventure*, *Asteroids*, *Missile Command*, or *Yar's Revenge*.[1]

It is well-established that to establish copyright infringement, a plaintiff must introduce evidence of the

copyrighted works that permits the jury to make a "side-by-side" comparison.  *See Experian Info. Sols.,*

*Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1186 (9th Cir. 2018).  In its summary judgment

order, this Court held that "the screenshots of the [*Greatest Hits*] game[s] are sufficient to establish the

content of the protected audiovisual elements."  *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp.

3d 1089, 1111 (N.D. Cal. 2021).  But because Atari had failed to produce *Greatest Hits* game screenshots

during discovery, the Court granted Redbubble's motion *in limine* No. 11 to exclude them, reasoning that

---

[1] At trial, there was some evidence that appeared to show in-game graphics for a version of *Pong,*
*Breakout*, and *Centipede*, though Atari did not accuse any product of infringing the in-game graphics of
*Centipede*.

"Atari produced these exhibits significantly longer after the discovery cut-off" even though "[i]t could have created and produced [the evidence] within the discovery cut-off period."  Dkt. No. 197 at 13-14. Under these circumstances, it was objectively unreasonable for Atari to maintain its claims.  *See Entm't Research Grp., Inc. v. Genesis Creative Grp.,* 122 F.3d 1211, 1229 (9th Cir.1997) (party acted objectively unreasonably by pursuing claims for which it produced "no evidence at all . . . even after three years and numerous depositions").

In sum, it was objectively unreasonable for Atari to take copyright claims through trial without offering evidence of deposit copies or game screenshots, and to assert infringement of box art for which it did not have a copyright registration.

### 2.    A Fees Award Would Further the Purposes of the Copyright Act

Courts must consider "whether awarding fees would further the purpose of the Copyright Act." *Glacier Films*, 896 F.3d at 1040 (cleaned up).  Regarding this factor, the Supreme Court has emphasized the "important role played by copyright defendants."  *Fogerty*, 510 U.S. at 532 n.18.  "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright."  *Id.*

Courts in the Ninth Circuit have held that "deterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudible ends."  *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *12 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (quoting *Scott v. Meyer*, No. CV 09–6076 ODW(RZX), 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010)).  Thus, in *Mattel, Inc. v. MGA Entertainment, Inc.*, No. CV 04-9049 DOC RNBX, 2011 WL 3420603, at *4 (C.D. Cal. Aug. 4, 2011), *aff'd*, 705 F.3d 1108 (9th Cir. 2013), the district court held that awarding fees to the prevailing defendant "further[ed] the purposes of the Act" in part because of the plaintiff's "pursuit of grossly overbroad monetary and injunctive relief."

As explained above, Atari had no realistic prospect of obtaining the $5 million it sought in damages at trial.  By pursuing this inflated amount, Atari forced Redbubble to expend significant resources to defend itself through trial.  In the absence of a fee award, plaintiffs like Atari would have strong incentive to overinflate their damages and pursue claims despite failures of proof, just to force

defendant to choose between settling for an unreasonable amount or spending more than the rational value of the case to try it. Awarding fees for at least the amount that Redbubble was forced to expend following the Court's summary judgment order would appropriately deter that behavior and compensate Redbubble for having to proceed to trial.

### 3. Atari's Motivation for Bringing Suit is Inconsistent with the Purposes of the Copyright Act

Another factor in determining whether to award fees is the motivation of the losing party. *See Fogerty*, 510 U.S. at 534 n.19; *Glacier Films*, 896 F.3d at 1037. This factor is not limited to whether a party brought claims in bad faith but asks more generally whether their motivations for bringing suit are "inconsistent with the purpose[s] of the Copyright Act." *Giganews*, 2015 WL 1746484 at *11. In *Giganews*, for example, the court held this factor to weigh in favor of awarding fees because it found that the plaintiff "Perfect 10 is in the business of litigation, not protecting its copyrights or stimulating artistic creativity for the general public good." *Id.* at *9 (cleaned up). So too here. Atari is not in the business of generating new creative works—the video games it asserted date back to the 1970s and 1980s—but rather monetizes existing intellectual property it acquired through licensing, including through filing serial lawsuits. *See, e.g.*, *Atari Interactive, Inc. v. Zazzle, Inc.*, No. 4:18-cv-03843-JST (N.D. Cal.) (filed June 27, 2018); *Atari Interactive, Inc. v. Teespring, Inc.* No. 4:19-cv-00111-JST (N.D. Cal.) (filed Jan. 8, 2019); *Atari Interactive, Inc. v. ooShirts, Inc.*, No. 4:19-cv-00264-JST (N.D. Cal.) (filed Jan. 15, 2019); *Atari Interactive, Inc. v. skinnyCorp., LLC*, No. 1:20-cv-10379-JPO (S.D.N.Y.) (filed Dec. 9, 2020); *Atari Interactive, Inc. v. Pixels.com, LLC*, No. 1:21-cv-04272-JPO (S.D.N.Y.) (filed May 12, 2021). Here, Atari sat silent for years and then filed this lawsuit without asking Redbubble to take down the listings at issue, *see* Trial Tr. at 501:5-502:10, 507:19-24, 510:16-18, and even thereafter did not cooperate in any proactive policing program, demonstrating that its interest was not in stopping any alleged infringement, but to the contrary in allowing as much alleged infringement to take place as possible so as to maximize the potential recovery at trial.

### 4. Redbubble Achieved Total Success

The Ninth Circuit has also instructed courts to consider the "degree of success obtained in the litigation" in making a fees determination. *Glacier Films*, 896 F.3d at 1037. Courts in the Ninth Circuit

have often awarded fees where the prevailing party achieved total success on the copyright claims in a case.  *See, e.g.*, *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (awarding fees on appeal under Section 505 of the Copyright Act where "GoodTimes has obtained total success in defending against MPI's copyright claims"); *Giganews*, 2015 WL 1746484, at *7 ("This factor weighs heavily in support of an award of attorneys' fees under the Copyright Act. On each of Perfect 10's three theories of copyright infringement, Defendants won unqualified victories . . . . This sort of complete victory on the merits is significant"); *Frost-Tsuji*, 2015 WL 5601853, at *4 (holding that this factor "clearly weighs in favor of awarding attorney's fees" where Defendants prevailed on both copyright claims and did so "on the merits, rather than on technical grounds").

Given that the Court entered final judgment in Redbubble's favor on all claims, Dkt. No. 259, Redbubble achieved total success in the litigation.  Thus, this factor weighs strongly in favor of awarding fees.

### 5.    Awarding Fees to Redbubble Would Not Be Inequitable.

Another factor considered in the Ninth Circuit is "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious litigant."  *Glacier Films*, 896 F.3d at 1037 (cleaned up).  Even if the losing party is impecunious, courts may still award attorney's fees against it if doing so would not be "inequitable."  For example, the Ninth Circuit affirmed the district court's determination in *Giganews* that awarding fees against Perfect 10 was not inequitable despite declarations submitted by Perfect 10 that it was in "substantial debt" and "will be forced to shut down" and "declare bankruptcy" if the court awarded fees.  2015 WL 1746484, at *12-13, *aff'd*, 847 F.3d at 675.  The court reasoned that "its decision to award attorneys' fees under the Copyright Act in this action is driven in part by Perfect 10's own conduct (as is the size of the fee award)."  *Id.* at *13; *see also Lopez v. Fashion Nova*, No. 20 Civ. 9238 (LGS), 2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) (awarding Redbubble's subsidiary TPA its attorney's fees against a plaintiff who proceed pro se because of his "refusal to dismiss this action against TPA" even after TPA "informed Plaintiff of the law" precluding his claims).

Here there is no suggestion that Atari cannot afford to pay the fees in question.  Moreover, any financial burden caused by the fees award would be attributable at least in substantial part by Atari's

1  decision to pursue these claims, including its unreasonable request for $5 million in damages.  Thus,

2  there is nothing inequitable about awarding fees against Atari.

3  **B.     No Segregation of Fees Between Copyright Claims and Trademark Claims is**
         **Required**

4

5          If the Court finds that an award of fees is appropriate under the framework of the Copyright Act,

6  that award should not attempt to segregate between the copyright claims and the trademark claims.  In

7  the context of fees awards in civil rights cases under 42 U.S.C. § 1988, the Supreme Court has explained

8  the circumstances where segregation of fees is appropriate: Where a case involves "distinctly different

9  claims for relief that are based on different facts and legal theories," and a party prevails on some claims

10  but not others, "[t]he congressional intent to limit awards to prevailing parties requires that these

11  unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be

12  awarded for services on the unsuccessful claim."  *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

13  By contrast, where the claims "involve a common core of facts or will be based on related legal

14  theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it

15  difficult to divide the hours expended on a claim-by-claim basis."  *Id.* at 435.  "Such a lawsuit cannot be

16  viewed as a series of discrete claims.  Instead the district court should focus on the significance of the

17  overall relief obtained . . . ."  *Id.*

18          The Ninth Circuit has applied the holding of *Hensley* to fees determinations under the Copyright

19  Act.  *See Entm't Research*, 122 F.3d at 1230 ("It is well-established law that a party entitled to attorney's

20  fees as a prevailing party on a particular claim, but not on other claims in the same lawsuit, can only

21  recover attorney's fees incurred in defending against that one claim or any 'related claims.'") (citing

22  *Hensley*, 461 U.S. at 434-35).  That makes sense, as the text of the civil rights fee-shifting provision in

23  *Hensley* is highly similar to that of the Copyright Act.  *Compare* 42 U.S.C. § 1988 ("[T]he court, in its

24  discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . .") *with* 17 U.S.C. § 505

25  ("[T]he court may . . . award a reasonable attorney's fee to the prevailing party.").

26          There is no basis for segregating fees in this fashion here.  *First*, the *Hensley* rule applies only

27  where a party "succeeded on *only some* of his claims for relief."  461 U.S. at 434 (emphasis added); *see*

28  *also The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003) (holding that the

district court should have determined whether the non-copyright claims were related because the defendants requesting fees were "successful in their defense against Plaintiffs' copyright infringement claims only" with "no determination made by the court on the remaining claims of defamation and conversion"); *Entm't Research*, 122 F.3d at 1230 ("It is well-established law that a party entitled to attorney's fees as a *prevailing party on a particular claim, but not on other claims in the same lawsuit*, can only recover attorney's fees incurred in defending against that one claim or any 'related claims.'" (emphasis added)). That is so because the limitation is based on the statutory language providing for reasonable fees to the "prevailing party," and work on an unsuccessful and unrelated claim "cannot be deemed to have been expended in pursuit of the ultimate [successful] result achieved." *Hensley*, 461 U.S. at 435 (citation omitted). Here Redbubble prevailed on all claims, so there is no need to examine whether any unsuccessful claims were "related" to successful claims.

  *Second*, even were the Court to analyze whether the copyright and trademark claims in this case are related, the claims readily meet that threshold. *Hensley* states that claims qualify as related if they "involve a common core of facts" or are "based on related legal theories." *Id.* at 434-35. The Ninth Circuit has elaborated that in conducting this inquiry, "the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 903 (9th Cir. 1995). Atari's trademark and copyright claims both arose out of the same "course of conduct": Redbubble provides a website to which users uploaded listings that Atari contended infringed its intellectual property. The "common core of facts" consisted of the facts concerning how artists upload images to Redbubble's website, what control they have (or do not have) over aspects of the process (such as pricing, choice of types of products, delivery, customer support), what Redbubble's website says about the relationship between artists, purchasers, and Redbubble (such as in the user agreement), and how Redbubble handles takedown notices. These facts are equally applicable to both the trademark and copyright claims. To be sure, there are differences in the legal theories, such as the specific requirements of Atari's trademark counterfeiting claim, but they still arise out of the same "course of conduct"—Redbubble providing a website to which users uploaded listings. The factual differences between the trademark and copyright claims are comparable to the factual differences among the different copyright claims—varying in the particular intellectual property Atari was asserting (e.g.,

1   box art for one video game, game graphics for another game, or the Atari "Fuji" logo)—but

2   fundamentally arising out of the same conduct.  The time spent by Redbubble's counsel on any of these

3   claims without exception "aided the work done on the merits" of the other claims.  *Schwarz*, 73 F.3d at

4   903 (citation omitted).  At bottom, there is no set of hours that could be deemed not to have been

5   "expended in pursuit of the ultimate result achieved."  *Hensley*, 461 U.S. at 435 (citation omitted).

6   **C.**     **The Amount of the Fee Award is Determined by the Lodestar Approach**

7            Under the Copyright Act, courts determine the amount of the fee award using the lodestar

8   approach, multiplying the number of hours reasonably expended by the reasonable hourly rate.  *See, e.g.*,

9   *Bernal v. Paradigm Talent and Literary Agency*, No. CV 07-06445 SVW PLAx, 2010 WL 6397561, at

10  *4 (C.D. Cal. June 1, 2010).  Courts consider "the hours worked and rates claimed" by the moving party.

11  *See Hensley*, 461 U.S. at 433.  Courts also assess the "rate prevailing in the community for similar work

12  performed by attorneys of comparable skill, experience, and reputation."  *Barjon v. Dalton*, 132 F.3d

13  496, 502 (9th Cir. 1997).  "[T]he relevant community is the forum in which the district court sits."  *Id.* at

14  500.  Absent a showing that attorneys billed excessive rates or "performed below the level of expertise

15  that would command those rates . . . the court must presume those requested rates are reasonable." *United*

16  *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Furthermore, the fact the

17  fees are actually paid by a sophisticated party "adds weight to the presumption of reasonableness."

18  *Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221-EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7,

19  2011).

20           Redbubble has provided the supporting documentation required by Local Rule 54-5(b) for the

21  hours that its attorneys and staff expended, as well as the rates they charge.  *See* Declaration of

22  Matthaeus Martino-Weinhardt.  The hours are broken out by relevant stage of the case: from the filing of

23  the complaint to the close of fact discovery (during which Atari failed to produce evidence of actual

24  damages); from there to the Court's summary judgment on damages; from there to the Court's order on

25  motions *in limine*; and from there to the jury verdict at trial.  Redbubble suggests that at a minimum, the

26  Court award it fees from the date of the Court's summary judgment order regarding damages, which

27  made clear that Atari had no viable claim for damages above minimum statutory damages, a ruling that

28  should have resulted in the resolution of the case.

1

**III.     CONCLUSION**

2

3          For the reasons stated, the Court should award Redbubble its attorney's fees incurred in litigating

this case.

4

5     Dated:  December 20, 2021                    DURIE TANGRI LLP

6

7                                        By:_____ */s/ Daralyn J. Durie*_____
                                                          DARALYN J. DURIE

8
                                              Attorney for Defendant
9                                             REDBUBBLE, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28