ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@egcfirm.com
Christopher W. Arledge (State Bar No. 200767)
  carledge@egcfirm.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@egcfirm.com
George B. A. Laiolo (State Bar No. 329850)
  glaiolo@egcfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
Atari Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., | Case No. 4:18-cv-03451-JST<br>*[Related to Case No. 4:19-cv-00111-JST]* |
| Plaintiff, | |
| vs. | **PLAINTIFF ATARI INTERACTIVE, INC.'S OPPOSITION TO REDBUBBLE, INC.'S MOTION FOR ATTORNEYS' FEES** |
| REDBUBBLE, INC., | |
| Defendant. | Judge:  Hon. Jon S. Tigar<br>Date:   March 3, 2022<br>Time:   2:00 p.m.<br>Crtrm.: 6, 2nd Floor |
| AND RELATED ACTIONS | |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT. ...................................................................................1

II.    PROCEDURAL BACKGROUND. ............................................................................2

    A.    Atari sues Redbubble for trademark counterfeiting and copyright infringement. ...................................................................................................2

    B.    The majority of Atari's claims survive summary judgment. ......................3

    C.    The parties litigate these issues in the context of motions in limine. ........5

    D.    The parties try the case to a jury......................................................................5

    E.    Atari files its notice of appeal. ...................................................................6

III.   THE COURT SHOULD STAY THE MOTION PENDING APPEAL. ....................7

IV.   SHOULD THE COURT CONSIDER THE MOTION, IT MUST BE DENIED.................7

    A.    This case is not exceptional under the Lanham Act..................................7

    B.    No award of attorneys' fees is appropriate under the Copyright Act.......................9

        1.    The Copyright Act factors strongly weigh against awarding fees. ...............9

            a.    Atari's case was neither frivolous nor objectively unreasonable..................................................................10

                (i)    Atari's damages request ......................................11

                (ii)   Deposit copies, copyright registrations, and screenshots ............................................................12

            b.    Atari's motivations were legitimate. ................................15

            c.    Awarding Redbubble's requested fees would run counter to the purposes of the Copyright Act and would deter potentially successful claims...................................16

            d.    Awarding Redbubble fees would be inequitable and would stymie the development of new creative works and inventions. ..................................................................17

        2.    Redbubble cannot use the Copyright Act to evade the Lanham Act's exceptional case requirement. ...................................................18

    C.    Redbubble failed to establish its fees request is reasonable....................................21

V.    CONCLUSION. ......................................................................................................22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Althouse v. Warner Bros. Entm't,*
5     CV 13-696 RGK, 2014 WL 12599798 (C.D. Cal. June 17, 2014) ........................................ 14

6
*Applied Pro. Training, Inc. v. Mira Costa Coll.,*
      No. 10cv1372, 2012 WL 12882918 (S.D. Cal. Oct. 30, 2012) ........................................ 17
7

8
*Atari Interactive, Inc. v. Redbubble, Inc.,*
      515 F. Supp. 3d 1089 (N.D. Cal. 2021) ........................................................... 10

9
*Caiz v. Roberts,*
10     No. 15-09044, 2017 WL 830386 (C.D. Cal. Mar. 2, 2017) ....................................... 9

11
*Chalmers v. City of L.A.,*
      796 F.2d 1205 (9th Cir. 1986) ................................................................ 21
12

13
*Choyce v. SF Bay Area Indep. Media Ctr.,*
      No. 13-cv-01842, 2014 WL 5597274 (N.D. Cal. Nov. 3, 2014) (Tigar, J.) .................. 14, 21

14
*Eldred v. Ashcroft,*
15     537 U.S. 183 (2003) ........................................................................ 15

16
*Elohim EPF USA, Inc. v. Total Music Connection, Inc.,*
      No. CV 14-02496, 2015 WL 12655668 (C.D. Cal. Dec. 7, 2015) ............................... 21
17

18
*Ets-Hokin v. Skyy Spirits,*
      323 F.3d 763 (9th Cir. 2003) .............................................................. 9, 17

19
*Gracie v. Gracie,*
20     217 F.3d 1060 (9th Cir. 2000) .............................................................. 20

21
*Green v. Kanazawa,*
      No. 16-00054 ................................................................................ 7

22
*Kirtsaeng v. John Wiley & Sons, Inc.,*
23     579 U.S. 197 (2016) ......................................................................... 9

24
*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),*
      71 F.3d 996 (2d Cir. 1995) ................................................................. 19
25

26
*L.A. Printex Indus., Inc. v. Aeropostale,*
      No. CV 08-07085, 2010 WL 11596481 (C.D. Cal. June 29, 2010) ............................... 16

27
*Metcalf v. Bocho,*
28     200 F. App'x 635 (9th Cir. 2006) ......................................................... 10, 17

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
    692 F.3d 983 (9th Cir. 2012) ................................................................................. 8

*U.S. ex rel. Modglin v. DJO Global Inc.*,
    48 F. Supp. 3d 1362 (C.D. Cal. 2014) .................................................................... 8

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
    No. 98 Civ. 641, 1998 WL 274285 (S.D.N.Y. May 27, 1998) .............................. 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. at 555 ............................................................................................. 7, 8, 9

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    No. 16-cv-01393, 2019 WL 10303651 (Nov. 12, 2019) (Tigar, J.) ........ 10, 11, 16, 17

*Phoenix Techs. Ltd. v. VMware, Inc.*,
    No. 15-cv-01414, 2018 WL 828030 (N.D. Cal. Feb. 12, 2018) ...................... 10, 15

*Reserve Media, Inc. v. Efficient Frontierts, Inc.*,
    No. 2-15-cv-05072, 2017 WL 2562098, (C.D. Cal. June 12, 2017) ....................... 9

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ................................................................................. 8

*Sarieddine v. Allen Visions E-Juice, Inc.*,
    No. CV 18-3658, 2019 WL 4316245 (C.D. Cal. June 14, 2019) ............................ 9

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
    No. 3:15-CV-04618, 2017 WL 6059271 (N.D. Cal. Dec. 7, 2017) ........................ 9

*Shame On You Prods., Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018) ........................................................................ 18, 20

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ............................................................................. 14

*Skidmore v. Led Zeppelin*,
    No. CV 15-03462, 2016 WL 6674985 (C.D. Cal. Aug. 8, 2016), *vacated and remanded on other grounds, Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 905 F.3d 1116 (9th Cir. 2018) ........................................................ 13, 14

*SOFA Entm't v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ........................................................................ 16, 17

*Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*,
    No. 12-CV-2472, 2019 WL 1429588 (S.D. Cal. Mar. 29, 2019) ........................... 9

*Stewart v. Gates*,
    987 F.2d 1450 (9th Cir. 1993) ............................................................................. 21

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
    839 F.3d 1179 (9th Cir. 2016) ................................................................................. 8

*Tokidoki, LLC v. Fortune Dynamic, Inc.*,
    No. CV07-1923, 2009 WL 10675360 (C.D. Cal. Nov. 17, 2009) .................................... 14, 15

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) .................................................................................. 19

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (9th Cir. 2016) ................................................................................... 10

**Statutes**

15 U.S.C. § 1117 ...................................................................................................... *passim*

17 U.S.C § 505 ......................................................................................................... *passim*

1    Plaintiff Atari Interactive, Inc. ("Atari") hereby opposes Redbubble, Inc.'s ("Redbubble")

2    Motion for Attorneys' Fees, ECF No. 265 (the "Motion"), as follows.

3    **I.       PRELIMINARY STATEMENT.**

4    Redbubble seeks to use this case to send a message to intellectual property owners—if you

5    dare sue Redbubble for the infringements on its website, Redbubble will not only make you try the

6    case, but will try to punish you by seeking millions of dollars in fees and costs. This puts

7    intellectual property owners that see infringements on Redbubble's website in a tenuous position.

8    Let Redbubble continue to profit off your intellectual property without recourse, or engage in

9    protracted litigation over the course of years with the risk that if a jury ultimately rules against

10   you, Redbubble will try to bankrupt you. The Court should send a clear message that no such fee

11   award is appropriate.

12   Atari was forced to bring this lawsuit against Redbubble due to the significant amount of

13   infringements on Redbubble's website. These claims were well-founded in both law and fact,

14   substantially proceeding past summary judgment. After losing another trial last year, and being

15   adjudged a willful counterfeiter, in arguing that it should not be liable for attorneys' fees,

16   Redbubble argued:

17       A litigant that has prevailed against summary judgment or other
         dispositive motions "cannot be faulted for litigating a claim it was
18       granted permission to pursue." *Munchkin, Inc. v. Luv n'Care, Ltd.*,
         960 F.3d 1373, 1381 (9th Cir. 2020) (reversing fee award).
19

20   Venezia Decl., Ex. A at 20 (citation and quotation omitted).

21   Should the Court consider the Motion, as opposed to staying the Motion pending

22   resolution of Atari's appeal, Redbubble should be judicially estopped from arguing otherwise

23   here. It would be patently unfair to burden Atari with millions of dollars in attorneys' fees for

24   pursuing claims that the Court authorized it to pursue to trial. Indeed, while the amount of profit

25   was disputed, Redbubble does not dispute that it profited in some amount from the sale of Atari-

26   related products on its website, Redbubble kept that money, but ironically now *seeks a windfall*

27   *from Atari*, while criticizing Atari for allegedly doing the same.

28   Redbubble engages in legal gymnastics in attempt to reach that result. As the Court knows,

1   Atari brought the majority of its claims under the Lanham Act. Only in exceptional cases under

2   the Lanham Act may fees be awarded, and Ninth Circuit authority is clear that claims which

3   proceed past summary judgment are not exceptional. Redbubble knows it can never recover fees

4   under the Lanham Act standard, and its Motion thus completely ignores the Lanham Act and the

5   reality that this case centered around trademark counterfeiting claims.

6       Redbubble instead argues it is entitled to fees under the Copyright Act, and the Court

7   should compensate 100% of Redbubble's fees under the Copyright Act, despite the indisputable

8   proposition that the majority of Atari's claims were for trademark counterfeiting. This gambit

9   must fail because (1) Redbubble cannot recover any fees under the Copyright because, among

10  other reasons, Atari's copyright infringement claims proceeded past summary judgment; and (2)

11  Atari's trademark infringement claims rest on separate facts and legal theories from its copyright

12  infringement claims such that the claims could never be deemed related for the purposes of

13  recovering fees under the Copyright Act. Redbubble fails to cite even a single case that has ever

14  ruled trademark infringement claims to be related to copyright infringement claims.

15      Lastly, Redbubble failed to provide appropriate records to substantiate its fee request.

16  Redbubble did not provide a single time entry, and the Court and Atari are thus left entirely unable

17  to evaluate the reasonableness of Redbubble's fee request, even if the Court were inclined to grant

18  fees. For this separate and independent reason, the Motion must also be denied.

19      Accordingly, the Court should deny the Motion.

20  **II.**     **PROCEDURAL BACKGROUND.**

21      **A.**     **Atari sues Redbubble for trademark counterfeiting and copyright**

22              **infringement**.

23      On June 11, 2018, Atari filed its Complaint against Redbubble, bringing causes of action

24  for trademark infringement and counterfeiting, copyright infringement, trademark dilution, false

25  designation of origin, common law unfair competition, contributory trademark infringement,

26  contributory copyright infringement, vicarious trademark infringement, and vicarious copyright

27  infringement, based upon the sale of numerous allegedly infringing Atari products on Redbubble's

28  website. *See* ECF No. 1. The Court being familiar with this matter following a recent trial, Atari

1   will not provide an in-depth recitation of the facts here.

2            **B.      The majority of Atari's claims survive summary judgment**.

3            On April 29, 2020, and May 27, 2020, the parties filed cross-motions for summary

4   judgment. *See* ECF Nos. 64, 75. Notably, Redbubble's motion argued that all of Atari's claims fail

5   as a matter of law, among other things. ECF No. 75 at 2 (Redbubble moved "for Summary

6   Judgment on Plaintiff Atari Interactive, Inc.'s ("Plaintiff's") Complaint, and for partial summary

7   judgment on each claim therein").

8            On January 28, 2021, the Court largely denied Redbubble's motion, specifically denying

9   Redbubble's request for summary judgment on Atari's direct trademark infringement, vicarious

10  trademark infringement, contributory trademark infringement, and direct copyright infringement

11  claims.[1] *See generally* ECF No. 97. The Court repeatedly explained that Atari was entitled to a

12  jury trial for determination of disputed factual issues:

13       •   "These distinctions [from *SunFrog*] are entitled to some weight, certainly. But they
             do not compel the conclusion that Redbubble is not a seller as a matter of law.
14           Accordingly, Redbubble's motion for summary judgment must be denied." *Id.* at
             13.
15
         •   "Redbubble has not established that no reasonable jury could find it vicariously
16           liable based on Atari's circumstantial evidence." *Id.* at 17.

17       •   "[G]enuine disputes of material fact remain over contributory infringement." *Id.* at
             21.
18
         •   "[S]ince Redbubble actively instigates and exercises control over the sales on its
19           website, a reasonable jury could find that Redbubble is liable for direct
             infringement of Atari's copyright distribution rights." *Id.* at 26.
20

21           Importantly, as to Atari's copyright claims, the Court expressly rejected Redbubble's

22  assertions that Atari failed to provide appropriate copyright registrations or prove the scope of its

23  copyrights, and went so far as to hold that Atari's protected works were in fact copied:

24                       Here, Atari has introduced copyright registrations for Atari's
                         Greatest Hit games. ECF Nos. 64-9, 64-10, as well as screenshots
25                       from those games, ECF Nos. 64-45 - 64-51, 64-37 ¶ 4. Atari then
                         introduces a side-by-side comparison of these screenshots with
26

27  [1] The court did grant Redbubble's motion for summary judgment as to Atari's vicarious and
    contributory copyright infringement theories, and on the issue of willfulness. ECF No. 97 at 29,
28  31.

1
2
3

photos of products available on Redbubble. ECF No. 64-30; ECF No. 23 ¶¶ 7, 9. Because the side-by-side comparison shows "striking similarity" (the designs are identical), Atari has made out a prima facie case of copying of the protected elements of its Greatest Hit games.

4
5
6
7
8
9
10
11

Redbubble nevertheless argues that Atari failed to meet its burden because the registrations cover only derivative elements (i.e., elements of the new work) and because Atari failed to submit the specific content submitted to the Copyright Office. As to the first issue, because Atari undisputedly owns the original works' copyrights, the registration of the subsequent work allows Atari to maintain an infringement action for the original copyright. *See Brocade Commn's Sys., Inc. v, A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *4-5 (N.D. Cal. Jan 10, 2013) (citing *Christopher Phelps & Asssocs., LLC v. Galloway*, 492 F.3d 532, 538 (4th Cir. 2007) and *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998)). *But see Borden v. Horwitz*, No. CV 10-00141-MWF (AJWx), 2012 WL 12877995, at *2-3 (C.D. Cal. Sept. 20, 2012) (distinguishing scenario where alleged copying took place after the derivative work was registered).

12
13
14
15
16
17
18

As to the second issue, the screenshots of the game are sufficient to establish the content of the protected audiovisual elements. *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988). Redbubble cites cases that rejected comparisons based on after-the-fact reconstructions, *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318-19 (9th Cir. 1986), and expert testimony of source code similarity, *Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016), but those cases are distinguishable because they left plaintiff with inadequate evidence to make a side-by-side comparison. *See Experian*, 893 F.3d at 1186-87. By contrast, the Ninth Circuit requires only "sufficient evidence of content to make a fair comparison." *Id.* at 1187; *see also Epyx*, 862 F.2d at 207 (finding video game screen shots sufficient to make comparison).

19
20

Accordingly, Atari has established that the designs in Exhibit F of the Wesley Declaration were copied from protected audiovisual elements of Atari's works.

21

*Id.* at 23–24.

22

Following the Court's first summary judgment order, the parties filed additional briefing

23

concerning willfulness and Atari's ability to seek damages at trial. On June 29, 2021, the Court

24

entered an order on this additional briefing, holding that: (1) the Court's earlier ruling on

25

willfulness applies to all of Atari's claims; and (2) Atari may seek statutory damages at trial,

26

however, if Atari seeks in excess of the statutory minimums, the only evidence of Atari's damages

27

that it may present is evidence showing Redbubble's revenues from allegedly infringing products.

28

ECF No. 127 at 2, 7.

1   Thus, following summary judgment, the Court held that several of Atari's infringement

2   theories could proceed to trial, held that Atari had provided sufficient evidence to prove

3   registration and copying of its copyrighted materials, and expressly allowed Atari to seek an award

4   of statutory damages above the statutory minimums, with the only caveat being that Atari could

5   not submit evidence of damages other than Redbubble's revenues.

6   **C.   The parties litigate these issues in the context of motions in limine**.

7   Before trial, Redbubble filed several motions in limine. Relevant here is Redbubble's

8   motion in limine no. 11, seeking to exclude evidence that Atari purportedly failed to properly

9   disclose. Included within this motion were the screenshots taken from *Atari's Greatest Hits*

10  *Volume I* game that Atari presented in opposition to Redbubble's motion for summary judgment,

11  more than one year earlier (Exhs.108–14).

12  Atari noted in its opposition that the screenshots were provided to Redbubble's counsel

13  eight days after they were created, citing the docket entries where the screenshots were filed in

14  opposition to Redbubble's motion for summary judgment. ECF No. 186 at 3. Redbubble never

15  objected at that time, nonetheless, on October 14, 2021, 11 days before trial, the Court excluded

16  Atari from using these screenshots at trial to demonstrate the works included within the *Atari*

17  *Greatest Hits Volume I* game.

18  **D.   The parties try the case to a jury**.

19  Beginning on October 25, 2021, the parties tried this case to a jury. Atari will not endeavor

20  to fully recap that trial, however a few points are worth making in response to Redbubble's

21  arguments.

22  **First**, despite the Court's exclusion of Atari's screenshots of the *Atari Greatest Hits*

23  *Volume I* game, Atari provided evidence of the copyrighted works included within that game. For

24  example, Casandra Brown testified concerning which classic Atari games are included within

25  *Atari Greatest Hits Volume 1*. Trial Transcript ("Trial Tr.") at 386:13–387:22. Tim Lapetino then

26  testified regarding and introduced graphics from those classic Atari games. *Id.* at 588:25–595:13;

27  Admitted Trial Exhibits ("TX") 121-15, 144, 80-133, 80-78, 147, 121-12. This was sufficient to

28  prove that the allegedly infringing products used graphics from Atari's games, and that those

1    games were included within the *Atari Greatest Hits Volume I* game.

2        **Second**, while Redbubble argues Atari's damages claim was untethered to the facts of this

3    case or to the law, Atari's closing argument made clear that its suggested $5 million figure was

4    tied to its trademark counterfeiting claims, specifically referencing the types of goods calculation

5    only relevant to trademarks. *See* ECF No. 208 (Order re Jury Instruction re Types of Goods; Trial

6    Tr. 1106:18–1109:15 (explaining to the jury, "one of the things you have to figure out *for the*

7    *trademark and counterfeiting claim*") (emphasis added). On the types of goods issue, Atari put in

8    evidence that Redbubble sold or offered for sale allegedly infringing goods on more than 25 types

9    of goods, and linked its arguments in closing to that evidence. *Id.*; TX 198.

10       Nonetheless, as the Court is aware, the jury ultimately returned a verdict that Redbubble

11   did not infringe either Atari's trademarks or copyrights. ECF No. 253.

12       **E.    Atari files its notice of appeal**.

13       On December 15, 2021, Atari filed its Notice of Appeal. ECF No. 262. Atari's appeal has

14   now been docketed in the Ninth Circuit, as Case No. 21-17062. App. Dkt. No. 1-1, 1. Atari's

15   opening brief is currently due on March 25, 2022, with briefing to be concluded by May 16, 2022,

16   absent any extensions—only approximately 2.5 months after the hearing date on the Motion. *Id.* at

17   2–3.

18       While the substance of this appeal is beyond the scope of the Motion, Atari will argue,

19   among other things, that the Court improperly held on summary judgment that Redbubble's

20   conduct was not willful, undercutting its contributory infringement claims, that the Court

21   improperly instructed the jury on the issue of trademark use, modifying the Ninth Circuit Model

22   Civil Jury Instructions to limit "use" to selling, offering for sale, or advertising, while refusing to

23   offer an instruction explaining to the jury how to determine which party acts as a seller, and that

24   the Court erred in excluding several different types of evidence. Importantly, should Atari prevail

25   on its appeal, this case will need to be retried and Redbubble would no longer stand as the

26   prevailing party.

27

28

1    III.    **THE COURT SHOULD STAY THE MOTION PENDING APPEAL**.

2         Courts may stay consideration of attorneys' fees motions pending resolution of an appeal

3    on the merits. *Green v. Kanazawa*, No. 16-00054 LEK-KSC, 2018 WL 6592045, at *3 (D. Haw.

4    July 2, 2018) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) (staying attorneys' fees

5    motion pending outcome of appeal on the merits). In determining whether they should do so,

6    "court[s] must 'rest on considerations of wise judicial administration, giving regard to

7    conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting

8
9    *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

10        *Green* is instructive. There, the defendants filed a motion seeking to recover their

11   attorneys' fees and non-taxable expenses in a total amount of approximately $3 million. The court

12   held that the motion should be stayed given the pendency of an appeal to the Ninth Circuit. *Green*,

13
14   2018 WL 6592045, at *1. The court explained that a stay pending appeal would conserve judicial

15   resources where briefing on the fees motion would be voluminous, and would likely lead to

16   further requests for reconsideration or objections. *Id.* at **2–3.

17        Similarly, Redbubble seeks to recover millions in attorneys' fees. Should the Ninth Circuit

18   find in Atari's favor, the Motion would be rendered moot, and work on the Motion unnecessary,

19   because Redbubble would no longer be the prevailing party.

20   IV.    **SHOULD THE COURT CONSIDER THE MOTION, IT MUST BE DENIED**.

21         A.    **This case is not exceptional under the Lanham Act**.

22        Requests for attorneys' fees on trademark claims are governed by the Lanham Act, which

23   provides that "[t]he court in exceptional cases may award reasonable attorney fees to the

24   prevailing party." 15 U.S.C. § 1117(a). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

25   the Supreme Court explained that "an 'exceptional' case is simply one that stands out from others

26   with respect to the substantive strength of a party's litigating position (considering both the

27   governing law and the facts of the case) or the unreasonable manner in which the case was

28

1   litigated." 572 U.S. 545, 554 (2014).[2]

2     Redbubble's Motion conspicuously avoids discussion of the Lanham Act or the

3   exceptional case standard altogether, despite the fact that Atari brought trademark counterfeiting

4   claims under the Lanham Act, with those claims accounting for the large majority of Atari's

5   monetary ask. This was no accident: In opposing an attorneys' fees request in another recent trial

6   where Redbubble was held liable for willful trademark counterfeiting, Redbubble argued that a

7   party who survived summary judgment cannot be forced to pay its adversaries' fees:

8      A litigant that has prevailed against summary judgment or other
   dispositive motions "cannot be faulted for litigating a claim it was
9      granted permission to pursue." *Munchkin, Inc. v. Luv n'Care, Ltd.*,
   960 F.3d 1373, 1381 (9th Cir. 2020) (reversing fee award). "[A]
10     party is entitled to rely on a court's denial of summary judgment and
   JMOL ... as an indication that the party's claims were objectively
11     reasonable and suitable for resolution at trial." *Checkpoint Systems,*
   *Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).
12     "It would strain logic for the Court to hold that [a party] presented
   enough evidence to establish genuine issues of material fact…, but
13     that the claim was also 'objectively unreasonable' as a factual
   matter" for fee-shifting purposes. *Black v. Irving Materials, Inc.*,
14     No. 17-CV-06734-LHK, 2020 WL 60202, at *13 (N.D. Cal. Jan. 6,
   2020).

15

16

17  Venezia Decl. Ex. A at 20 (Redbubble's recently-filed opposition to attorneys' fee motion filed by

18  plaintiff in Brandy Melville case); Ex. B at 8 (court's order declining to award fees).[3]

19    The same logic applies here, and Redbubble should be judicially estopped from arguing

20  otherwise, particularly where Redbubble used the argument to successfully defeat a fee request.

21  *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012)

22  ---

23  [2] While *Octane Fitness* was a patent case, it controls as to the meaning of an exceptional case
under the Lanham Act as well. *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179,
24  1180–81 (9th Cir. 2016).

25  [3] Atari requests that the Court take judicial notice of this filing, and the fact that the Central
District ultimately declined to award attorneys' fees against Redbubble. Courts can, and routinely
26  do, take notice of pleadings in other actions. *See, e.g., Reyn's Pasta Bella, LLC vs. Visa USA, Inc.*,
442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings in separate action); *U.S.*
27  *ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)
(same); *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1382 (C.D. Cal. 2014)
28  (same).

1   (explaining that judicial estoppel applies where a party's later position must be clearly inconsistent

2   with its earlier position, and noting that courts also consider whether the argument previously

3   prevailed) (cleaned up). Atari's claims substantially proceeded past summary judgment, and with

4   the Court holding that Atari's claims should proceed to trial, Atari cannot be faulted for trying this

5   case.

6        Indeed, as recognized by the Supreme Court "[a]n exceptional case is 'uncommon,' 'rare,'

7   'not ordinary,' 'unusual,' or 'special.'" *Octane Fitness*, 572 U.S. at 555. Courts thus regularly

8   deny motions seeking fees under the Lanham Act even where the plaintiff's claims failed at the

9   summary judgment stage, so long as the plaintiff put forward a plausible claim. *See, e.g.,*

10  *Sarieddine v. Allen Visions E-Juice, Inc.*, No. CV 18-3658, 2019 WL 4316245, at *6 (C.D. Cal.

11  June 14, 2019); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472, 2019 WL

12  1429588, at *10 (S.D. Cal. Mar. 29, 2019); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, No. 3:15-

13  CV-04618, 2017 WL 6059271, at *6 (N.D. Cal. Dec. 7, 2017); *Reserve Media Inc. v. Efficient

14  Frontierts, Inc.*, No. 2-15-cv-05072, 2017 WL 2592098, at **3–4 (C.D. Cal. June 12, 2017); *Caiz

15  v. Roberts*, No. 15-09044, 2017 WL 830386, at *5 (C.D. Cal. Mar. 2, 2017).

16       In summary, Atari did in fact pursue the majority of its claims under the Lanham Act, and

17  Redbubble cannot avoid the exceptional case standard by simply ignoring the Lanham Act,

18  knowing that Redbubble could never show Atari's claims to meet the exceptional case standard.

19       **B.    No award of attorneys' fees is appropriate under the Copyright Act.**

20            **1.    The Copyright Act factors strongly weigh against awarding fees.**

21       Prevailing parties do not automatically win their fees under the Copyright Act; courts in

22  the Ninth Circuit consider each case individually, assessing (1) the losing party's frivolousness

23  and objective unreasonableness; (2) the losing party's motivations for bringing suit or taking

24  certain litigation positions; (3) the need in particular circumstances to advance considerations of

25  compensation and deterrence (*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016));

26  (4) the degree of success obtained, (5) the purposes of the Copyright Act, and (6) whether the

27  chilling effect of attorneys' fees may impose an inequitable burden on an impecunious party (*Ets-

28  Hokin v. Skyy Spirits*, 323 F.3d 763, 766 (9th Cir. 2003)).

1   No single factor is dispositive, and even when the factors are split between both sides,

2   courts have completely denied a prevailing defendant's motion for fees. *See, e.g., Phoenix Techs.*

3   *Ltd. v. VMware, Inc.*, No. 15-cv-01414, 2018 WL 828030, at *9 (N.D. Cal. Feb. 12, 2018)

4   (denying fees even though the degree of success favored the defendant, plaintiff was not

5   objectively unreasonable, and all other factors were neutral); *Metcalf v. Bocho*, 200 F. App'x 635,

6   641 (9th Cir. 2006) ("because about half of the factors weigh in favor of Defendants and about

7   half against them, the record does not compel an award of attorneys' fees"). Here, each of the

8   factors, besides the degree of success obtained, weigh against compelling Atari to pay

9   Redbubble's fees.

10          a.      **Atari's case was neither frivolous nor objectively unreasonable**.

11  In determining whether to award fees under the Copyright Act, this Court gives

12  "substantial weight" to the reasonableness of Atari's positions. *Oracle Am., Inc. v. Hewlett*

13  *Packard Enter. Co.*, No. 16-cv-01393, 2019 WL 10303651, at *1 (Nov. 12, 2019) (Tigar, J.)

14  (citing *Kirtsaeng*, 579 U.S. at 199–200). With this factor tipping strongly in Atari's favor,

15  Redbubble starts any request for attorneys' fees in a deep hole.

16  In this regard, "[i]f plaintiff has a claim that hinges on disputed facts sufficient to reach a

17  jury, that claim necessarily is reasonable because a jury might decide the case in plaintiff's favor."

18  *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (vacating the district court's fee

19  award). Claims that are reasonable sufficient to land in front of a jury are per se not frivolous.

20  *Oracle*, 2019 WL 10303651, at *2 (finding that "similarly" to an objectively unreasonable claim, a

21  frivolous claim is one in which the factual contention is clearly baseless, such as factual claims

22  that are fantastic or delusional scenarios) (cleaned up). Though Atari lost at trial, this Court denied

23  Redbubble summary judgment on the allegations of counterfeiting, trademark infringement, and

24  copyright infringement. *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1104–05,

25  1113 (N.D. Cal. 2021). That denial of summary judgment pushes this substantially-weighted

26  factor in Atari's favor as a matter of law. *Oracle*, 2019 WL 10303651, at *1.

27  Redbubble isolates three of Atari's tactics leading up to and during trial as alleged proof

28  that Atari's claims, per se reasonable after surviving summary judgment, somehow morphed into

---

10

1   objectively unreasonable and frivolous ones by trial's end. This argument is flawed in the first

2   instance—"a claim is objectively unreasonable where the party advancing it *should have known*

3   *from the outset* that its chances of success in the case were slim to none." *Oracle*, 2019 WL

4   10303651, at *2 (citing *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383, 2016 WL 1258690, at

5   *5 (N.D. Cal. Mar. 31, 2016)) (emphasis added and cleaned up). Nonetheless, none of Atari's

6   litigation positions were objectively unreasonable, whether it be at the outset of the case, or

7   through trial.

8                              **(i)      Atari's damages request**

9          Redbubble argues that Atari had no legal basis for seeking $5 million in closing arguments,

10  claiming that Atari "did not even attempt to tie its $5 million damages request to any evidence or

11  factual support." ECF No. 265 at 10. Not true.

12         Atari tied its $5 million request to the bevy of products offered for sale or sold on

13  Redbubble's website bearing Atari trademarked and copyrighted material. *See*, *e.g.*, TX 9

14  (showing the results on Redbubble's website of a search for "Atari", including numerous blatant

15  counterfeits). Specifically, Atari proposed damages to the jury based on the statutory damages

16  amount authorized for trademark counterfeiting—$1,000 to $200,000 per counterfeit mark per

17  type of good. 15 U.S.C. § 1117(c)(1). Atari was well within its rights to seek more than the

18  minimum amount under the Court's supplemental order on summary judgment. *See* ECF No. 127

19  at 7 (permitting Atari to seek more than the minimum statutory damages amount if it presented

20  evidence of Redbubble's revenues); TX 1049; Trial Tr. 730–33 (admitting that evidence of

21  Redbubble's $285,000 AUD in sales of products related to Atari).

22         The Court's jury instruction on type of goods, the penalization and deterrence goals of

23  trademark statutory damages, and the evidence admitted at trial all permitted Atari to seek $5

24  million in damages. The Court left to the jury the determination of the number of types of

25  counterfeit goods allegedly sold or offered for sale on Redbubble's website, and whether those

26  types of goods were, in fact, different, or had the same basic functionality. ECF No. 208.[4] Taking

27  _____

28  [4] Order re Jury Instructions re Type of Good: "Goods are of the same 'type' if they serve the same

as an example just one ATARI Fuji counterfeit, Atari presented evidence that Redbubble offered that counterfeit for sale on *ninety-two different types of products*. TX 198. Since Atari complied with the Court's supplemental summary judgment order and offered evidence of Redbubble's revenues, it was entitled to seek more than the minimum statutory damages award, and so it did. If the jury had found 92 types of goods for the counterfeit of the Atari Fuji mark, saying nothing of the PONG mark, the jury could have awarded Atari up to $18,400,000 ($200,000 x 92 types of goods x 1 mark), not the $50,000 Redbubble erroneously calculated. In keeping with the Court's order that Atari could not seek a windfall, that statutory damages are intended to penalize defendants (ECF No. 127 at 6), that some of the different types of "products" available on Redbubble may not have constituted different types of "goods" under the jury instructions (ECF No. 208), and that some of the different types of products may not have fallen within the classes of goods covered by the trademark registration, Atari requested $5 million instead. This number was neither frivolous nor objectively unreasonable, but meaningfully attempted to balance the jury instructions, evidence, and supplemental summary judgment order. In fact, $5 million is the mathematically correct result of one counterfeit mark on 25 types of goods at $200,000 per mark—the figure sought in closing. Trial Tr., 1109:11–15.

Additionally, Atari based this damages request primarily on Redbubble's alleged *trademark* infringement, not its alleged copyright infringement. Redbubble's arguments for the alleged objective unreasonableness of Atari's damages request are thus not even relevant to a request for fees under the Copyright Act.

(ii)     **Deposit copies, copyright registrations, and screenshots**

Redbubble next argues that Atari's alleged failure to provide evidence of deposit copies, box art registrations, and screenshots of Atari's videogames was objectively unreasonable. ECF No. 265 at 12–15. As a threshold matter, again, on summary judgment the Court held that Atari could rely on the *Atari Greatest Hits Volume I* registration, and that Atari established that "the

---

functional purpose or have the same basic functionality. Subtle differences in size, shape, color, pattern, or fabric do not make something a different type of good."

1   designs in Exhibit F of the Wesley Declaration were copied from protected audiovisual elements

2   of Atari's works." ECF No. 97 at 23–24.

3        The only difference at trial was that, eleven days prior, the Court excluded the screenshots

4   Atari used at summary judgment to show the visual elements of the games and graphics in *Atari*

5   *Greatest Hits Volume I* (Exhs. 108–14). Despite this ruling, it was not objectively unreasonable for

6   Atari to attempt to prove the protected visual elements of the *Atari Greatest Hits Volume I* game

7   using alternative evidence. Atari ultimately introduced sufficient evidence at trial such that a

8   reasonable jury could have found in its favor on the trademark claims. Casandra Brown, Atari's

9   Director of Licensing, testified that *Atari Greatest Hits Volume I* allows customers to play the

10  Atari games at issue—*Asteroids, Adventure, Breakout, Centipede, Missile Command, Pong, Yars'*

11  *Revenge*—with their original game graphics. Trial Tr. at 386:13–387:22. Atari also introduced the

12  copyright registration for *Atari Greatest Hits Volume I* (*id.* at 387:23–388:10; TX 83), and

13  provided expert testimony and evidence showing the original artwork contained within the games

14  at issue. *See* Trial Tr. 588:25–595:13; 121-15, 144, 80-133, 80-78, 147, 121-12.

15       These facts are fundamentally different from those of *Hayes v. Minaj*—relied on by

16  Redbubble (ECF No. 265 at 7, 8)—where, on summary judgment, the Court ruled that plaintiff

17  failed to create a triable issue that the pertinent works were registered with the Copyright Office.

18  No. 2:12-CV-07972, 2013 WL 11328453, at *4 (C.D. Cal. Mar. 7, 2013). In *Hayes*, the copyright

19  registration did not refer to the allegedly infringed materials by name. *Id.* ("These titles clearly

20  reference Plaintiff's First Book, but do not mention the Second Book or the Songs. Nor does the

21  registration identify by name any of the 8 CD's attached to the application."). Here, the copyright

22  registration in evidence references *Atari Greatest Hits Volume I* by name, and Atari offered

23  evidence about the games included within that compilation from a witness with personal

24  knowledge, having worked on the release of that particular game. Trial Tr. at 386:13–387:22.

25       Even if Atari's proffered evidence at trial was insufficient, such an evidentiary failing

26  would not transform Atari's claims to being objectively unreasonable—Redbubble's conception of

27  late-stage objective unreasonableness has been expressly rejected. *Skidmore v. Led Zeppelin*, No.

28  CV 15-03462, 2016 WL 6674985, at *2 (C.D. Cal. Aug. 8, 2016) (claims that survived summary

1  judgment did not become objectively unreasonable because the Court later excluded expert

2  testimony upon which the Court relied in denying summary judgment).[5]

3  　　　More generally, Redbubble sets far too low a bar for objective unreasonableness. Courts in

4  this circuit have refused to grant fees against losing parties orders of magnitude less reasonable

5  than Atari. *See, e.g.*, *Althouse v. Warner Bros. Entm't*, CV 13-696 RGK, 2014 WL 12599798, at

6  *2 (C.D. Cal. June 17, 2014) (plaintiff's claim was not objectively unreasonable even though his

7  work and the allegedly infringing work—*The Matrix Trilogy*—did not share a single protectable

8  feature, and the dissimilarity of the works was "glaring"); *Tokidoki, LLC v. Fortune Dynamic,*

9  *Inc.*, No. CV07-1923, 2009 WL 10675360, at *2, n.2 (C.D. Cal. Nov. 17, 2009) (explaining claim

10 not objectively unreasonable despite plaintiff failing to establish it had *any* valid copyright

11 registration over, or ownership of, the IP at issue, and noting defendant conceded that plaintiff had

12 a valid copyright registration, and that defendant could have reviewed the public copyright

13 registration prior to so conceding).

14 　　　Even when this Court has granted fees and found a plaintiff objectively unreasonable, the

15 flaws of that plaintiff's copyright claim were far afield from Atari's alleged flaws, here. *See*

16 *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842, 2014 WL 5597274, at *5 (N.D. Cal.

17 Nov. 3, 2014) (Tigar, J.) (pillorying plaintiff who (a) had not even applied for a copyright

18 registration when he filed the initial complaint, (b) knowingly falsely claimed the work's

19 authorship, (c) made numerous meritless, factually-unsupported arguments). In *Choyce*, this Court

20 reiterated that plaintiffs are objectively unreasonable and frivolous when they "should have known

21 from the outset that their chances of success were slim to none," and that if plaintiff's counsel had

22 "consulted even basic authority regarding copyright law," he would have known the baselessness

23 of his claim. *Id.*, *5 (cleaned up). Atari's claims were not flawed from the outset—they survived

24

25

26 _____
[5] *vacated and remanded on other grounds*, *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*,
27 905 F.3d 1116 (9th Cir. 2018), *but district court's denial of fee award upheld in reh'g en banc*,
*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1078–79 (9th
28 Cir. 2020).

1  until the jury's verdict. They are thus neither frivolous nor objectively unreasonable.[6]

2  **b.    Atari's motivations were legitimate.**

3  From the inception of this lawsuit to the conclusion of trial, Atari was motivated to stop

4  Redbubble from illicitly profiting off the deluge of products containing Atari's intellectual

5  property available for sale on Redbubble's website, from which Redbubble itself has undisputedly

6  reaped at least $20,000 dollars in profits. *See* ECF No. 127 at 7 (citing ECF No. 105, 8). That

7  legitimate motivation cuts against awarding Redbubble its fees. *See Tokidoki*, 2009 WL 10675360,

8  at *2 ("a party does not act with *mala fides* by litigating an issue it reasonably believes it can

9  win").

10  That Atari also sought to recover damages for Redbubble's alleged infringement does not

11  suggest any improper motivation. The desire to recover damages is not inconsistent with the

12  purposes of the Copyright Act, and, frankly, is not controversial whatsoever. Copyright law

13  *celebrates* the profit motive. *Eldred v. Ashcroft*, 537 U.S. 183, 212 n.18 (2003) (emphasis in

14  original). Redbubble's attempt to shame Atari for leveraging legendary video games because those

15  games are not "new" (ECF No. 265, 16:12–13) should fall on deaf ears. *See Phoenix Techs. Ltd. v.*

16  *VMware, Inc.*, No. 15-CV-01414, 2018 WL 828030, at *8 (N.D. Cal. Feb. 12, 2018) (finding no

17  bad faith or improper motivation because "the fact that plaintiff's [IP] long ago lapsed into

18  obscurity does not, on its own render worthless its copyright . . . A copyright on old software is

19  still a copyright . . . [and] a pecuniary motivation on plaintiff's part would not be improper")

20  (cleaned up).

21  In arguing Atari's motivations for filing suit were inconsistent with the purposes of the

22  Copyright Act, Redbubble inaptly compares Atari to a notorious pornography repository: "Perfect

23  10 is in the business of litigation, not protecting its copyrights or stimulating artistic creativity for

24

25  _____

   [6] Redbubble argues that because Atari refused to drop its summary-judgment-surviving copyright
26  claims in the *eleven days* between the issuance of the Order on the motion in limine and the
   beginning of trial, Redbubble should receive millions of dollars in fees—roughly 58% of which
27  stem from legal services rendered *before* the order excluding Atari's screenshots. *See* Martino-
   Weinhardt Decl., Exh. 1 (fees rendered before "MIL ruling to verdict" divided by total). Even if
28  this conduct were wrongful, it could not be relevant to those fees incurred beforehand.

Case No. 4:18-cv-03451-JST

1   the general public good." ECF No. 265, 10:11–12 (citing *Perfect 10, Inc. v. Giganews, Inc.*, No.

2   CV 11-07098, 2015 WL 1746484, at *9 (C.D. Cal. Mar. 24, 2015) (cleaned up in citation). As a

3   threshold matter, there is nothing wrong with profiting from expressive works, and the ability to

4   protect expressive works from copying incentivizes the creation of such works, a key goal of the

5   Copyright Act. *See SOFA Entm't v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013)

6   (noting the Act's primary objective is to "encourage the production of original literary, artistic,

7   and musical expression for the good of public." (cleaned up) Nonetheless, Redbubble is wrong

8   when it argues Atari is not in the business of "stimulating artistic creativity for the general public

9   good." ECF No. 285 at 10. Atari's primary focus is the development of video games, and several

10   projects are currently in development. Declaration of Ethan Zoubek ("Zoubek Decl."), ¶¶ 2–4.

11         Similarly, Redbubble's attempts to paint Atari as a serial-litigator fail. Redbubble points to

12   five other copyright and/or trademark suits filed by Atari in the last four years, but this piddling

13   number pales in comparison to another plaintiff uncompelled to pay its adversary's fees in this

14   circuit. *See L.A. Printex Indus., Inc. v. Aeropostale*, No. CV 08-07085, 2010 WL 11596481, at *5

15   (C.D. Cal. June 29, 2010) (denying a motion for fees despite plaintiff filing *hundreds* of copyright

16   infringement actions in *five years*) (emphasis added). Lastly, while Redbubble argues that Atari

17   unreasonably delayed filing this lawsuit, there is no evidence in the record that Atari knew about

18   any of the Redbubble products specifically at issue in this case and failed to promptly take action.

19   Indeed, Ms. Brown's testimony is to the contrary. *See* Trial Tr. 412:24–414:21.

20         **c.**   **Awarding Redbubble's requested fees would run counter to the**

21         **purposes of the Copyright Act and would deter potentially**

22         **successful claims**.

23         This Court said it best, twice. "Plaintiffs acting in good faith and with potentially

24   meritorious claims should not be deterred from seeking to protect their copyrights based on the

25   fear of a large attorneys' fees award should the court rule against them." *Oracle*, 2019 WL

26   10303651, at *3 (citing *Epikhin v. Game Insight N. Am.*, 14-CV-04383, 2016 WL 1258690, at *8

27   (N.D. Cal. Mar. 31, 2016) (cleaned up). "While the burden of defending frivolous and objectively

28   unreasonable litigation may be deleterious to the objectives of the Copyright Act, it is not the

1    purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even

2    though those claims may be ultimately unsuccessful." *Oracle*, *supra* (citing *Minden Pics., Inc. v.*

3    *John Wiley & Sons, Inc.*, No. C-12-4601, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014).

4    Atari's claims survived summary judgment, rendering them potentially meritorious, not frivolous,

5    and not objectively unreasonable. The syllogism writes itself.[7]

6                          **d.    Awarding Redbubble fees would be inequitable and would**

7                                  **stymie the development of new creative works and inventions**.

8            In determining whether to grant Copyright fees motions, courts in the Ninth Circuit

9    consider whether the chilling effect of attorneys' fees may be too great or impose an inequitable

10   burden on an impecunious plaintiff. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir.

11   2003). Given the evidence of hundreds of products displaying Atari's intellectual property being

12   sold on Redbubble's website, awarding fees would chill IP-holders of any size from bringing

13   potentially meritorious suits, lest they fear that even if they progress all the way through trial, they

14   may be on the hook for millions of dollars in their adversary's attorneys' fees, let alone their own.

15          The Copyright Act's primary objective is to "encourage the production of original literary,

16   artistic, and musical expression for the good of public." *SOFA Entm't*, 709 F.3d at 1280 (cleaned

17   up). Under the new leadership of CEO Wade Rosen and CRO Ethan Zoubek, Atari is currently

18   developing substantially overhauled remakes of many of its definitive titles, including *Centipede*,

19   *Asteroids*, *Black Widow*, *Food Fight*, and many more. Zoubek Decl., ¶ 2. These new versions

20   feature original and enhanced gameplay, graphics, and sound design in order to bring new light to

21   the classic elements of these games to their lifelong fans, and also to a completely new audience of

22   younger gamers. *Id.* In addition to these modern revisions, Atari is developing brand new games

23

24   _____
     [7] *See also Metcalf v. Bocho*, 200 F. App'x at 641 (weighing deterrence factor in plaintiff's favor
25   because, since plaintiff's claims were not objectively unreasonable, and thus not meritless,
     defendants' deterrence argument "could be made on behalf of any Copyright Act defendant who
26   pursues his defenses to trial and is unsuccessful . . . [y]et, fees are not awarded automatically to
     every prevailing party, but at the court's discretion"); *Applied Pro. Training, Inc. v. Mira Costa*
27   *Coll.*, No. 10cv1372, 2012 WL 12882918, at *2 (S.D. Cal. Oct. 30, 2012) ("the goals of the
     Copyright Act are not furthered by awarding fees for the successful defense of an objectively
28   reasonable claim").

like *Days of Doom* and *RollercoasterTycoon Idle*.  *Id.* at ¶ 3. Besides just video games, Atari is also planning to develop new gaming technology, which will allow everyday gamers to make, share, and play games they create themselves on Atari's VCS console. *Id.* at ¶ 4. The Copyright Act exists to encourage these exact sorts of creations.

Contrary to what Redbubble asserts in its Motion (ECF No. 265 at Section II.A.5), paying Redbubble millions of dollars in fees would be devastating to Atari's business. Zoubek Decl., ¶ 5. Such a loss would prevent Atari's hiring of the developers necessary to make the games mentioned above, as well as others, and also the marketing of those games to the public. Allowing Atari to channel its resources into new creations furthers the principal aim of the Copyright Act more equitably than forcing it to funnel roughly 12% of its revenue last year (*see* Atari Annual Results 2020/2021, attached as Exhibit A to the Zoubek Decl.) to Redbubble, especially when that amount constitutes but a drop in the bucket for Redbubble. *See* Redbubble Annual Report at 3, "Year in Review" Venezia Decl. at ¶ 3, Ex. C (showing $657.3 AUD million in revenue last year (roughly $473 million USD).

### 2.  Redbubble cannot use the Copyright Act to evade the Lanham Act's exceptional case requirement.

For the reasons set forth above, in Section IV.A., this case is not exceptional as required for an award of fees under the Lanham Act. Redbubble thus attempts to use the Copyright Act to recover fees incurred in defending against Atari's trademark infringement claims under the Lanham Act. The Court should reject this gambit.

A party entitled to recover fees on a copyright claim may not use the Copyright Act to recover fees on other claims, unless those claims are "related claims." *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018). Related claims are those that "involve a common core of facts or are based on related legal theories." *Id.* (internal citation omitted). By way of illustration, in *Shame On You Prods.*, the Court found a breach of contract claim to be related to a copyright claim, where both "turned on whether or not Defendants had copied [the copyrighted works at issue]." *Id.* at 670.

While the Ninth Circuit has not squarely addressed the issue, other federal courts have

1   recognized that trademark infringement claims brought under the Lanham Act are distinct from

2   copyright claims such that they are not "related" under the Copyright Act. *Nihon Keizai Shimbun,*

3   *Inc. v. Comline Bus. Data, Inc.*, No. 98 Civ. 641, 1998 WL 274285, at *2 (S.D.N.Y. May 27,

4   1998) (plaintiff recovered attorneys' fees under the Copyright Act, but the court held that "the fee

5   award in this case must be reduced to account for the time spent in connection with the legal issues

6   involved in [plaintiff's] claim for trademark infringement" because "[plaintiff] neither sought nor

7   demonstrated an entitlement to fees under" the Lanham Act's "exceptional cases" standard);

8   *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1012 (2d Cir. 1995) (vacating attorneys' fee

9   award under the Copyright Act "to the extent that [plaintiff's] costs and attorney's fees reflect

10   prosecution of its Lanham Act claim"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d

11   1366, 1383 (2d Cir. 1993) (holding that attorneys' fees related to trademark claims "stand on a

12   different ground" and must be considered under the Lanham Act's "exceptional cases" standard).

13       The same result should follow here, where Atari's trademark claims rest on distinct facts

14   and legal theories from its copyright claims. For example, Atari relied upon federal trademark

15   registrations to show its ownership of the ATARI and PONG marks, and Atari's ownership of

16   enforceable marks was not in dispute. Trial Tr. 1026:16–1027:1. Contrarily, Atari's copyright

17   claims concerned the game graphics and original artworks associated with *Asteroids, Adventure,*

18   *Breakout, Centipede, Missile Command, Pong,* and *Yars' Revenge*, as covered by the *Atari*

19   *Greatest Hits Volume I* registration. TX 83. Each of these games have their own history relevant to

20   the original copyrights, as explored by Atari's expert at trial. 588:25–595:13; TX 121-15, 144, 80-

21   133, 80-78, 147, 121-12

22       Atari's trademark counterfeiting and copyright infringement claims necessarily involved

23   separate and distinct products sold on Redbubble's website. That is, the trademark counterfeiting

24   claims required Atari to show products on Redbubble's website using the registered ATARI and

25   PONG marks, whereas the copyright infringement claims involved products that copied protected

26   elements from Atari's games, such as the centipede used in *Centipede* or the *Breakout* game

27   graphics. There was thus little overlap between the relevant infringing products.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

　　　　　Moreover, Atari's trademark counterfeiting and copyright infringement claims rested on separate and distinct legal theories. The trademark claims required that Atari establish likelihood of confusion and Redbubble's intent to counterfeit, whereas copyright claims require a showing of copying and substantial similarity. Separate bodies of law have developed governing the meaning of trademark use and volitional conduct, as relevant to trademark claims and copyright claims, respectively. ECF 97 at 14, n.6 (explaining that "the Court is not aware of any case within the Ninth Circuit applying the volitional conduct doctrine to a trademark infringement claim, and noting that courts "have explicitly rejected the proposition that a . . . kinship exists between copyright law and trademark law" (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984))). With that principle in mind, this Court held Atari's vicarious and contributory trademark infringement claims survived, but its vicarious and contributory copyright infringement claims did not. ECF No. 97, at 18, 21, 29, 31. This demonstrates the point that unlike *Shame On You Prods.*, here, it was entirely possible that Atari could have prevailed on its trademark claims but lost its copyright claims, because the claims involve both different facts and legal standards.

　　　　　Unable to locate a single case that has ever found Lanham Act claims to be "related" to copyright claims under the Copyright Act, Redbubble attempts to turn to an employment discrimination case to find a more favorable standard. Nonetheless, even in Redbubble's case, *Schwarz v. Secretary of Health & Human Services*, the Ninth Circuit affirmed a finding that employment discrimination claims brought by the same employee against the same employer were unrelated where the claims targeted different conduct by the employer. 73 F.3d 895, 903–04 (9th Cir. 1995). Similarly, here, Atari's claims target different types of products sold on Redbubble's website (in addition to resting on distinct legal theories). *Cf. Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000) (party may not recover attorneys' fees for related claims under the Lanham Act "*unless* the Lanham Act claims and non-Lanham Act claims are so intertwined that it is

1   *impossible to differentiate* between work done on claims") (internal quotations omitted).

2          **C.**    <u>**Redbubble failed to establish its fees request is reasonable**</u>.

3          Section 505 of the Copyright Act permits, in the Court's discretion, the awarding of only a

4   *reasonable* attorneys' fee to the prevailing party. Despite seeking $2.3 million in attorneys' fees,

5   Redbubble has provided zero evidence useful for evaluating whether its request is reasonable. On

6   the contrary, Redbubble's request for fees is *un*reasonable in the following ways:

7          First, Redbubble failed to meet its burden to submit "detailed time records justifying the

8   hours claimed to have been expended." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir.

9   1986); *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (holding that it is an abuse of

10   discretion to award fees for hours not properly documented). This Court excludes from its

11   calculation of fees hours that were not reasonably expended, such as hours that were excessive,

12   redundant, or otherwise unnecessary. *See Choyce*, 2014 WL 5597274, at *3, 6–7 (awarding each

13   prevailing party 75% of their requested fees only after "carefully review[ing] the documents,

14   billing records, and declarations submitted" and "considering principles of fairness"). As

15   Redbubble submitted merely a two-page chart with each of its 21 attorneys' rates and number of

16   hours billed, instead of time records, neither the Court nor Atari can evaluate potential

17   overstaffing, overbilling, or undertaking of unnecessary tasks. *See Elohim EPF USA, Inc. v. Total*

18   *Music Connection, Inc.*, No. CV 14-02496, 2015 WL 12655668, at *6 (C.D. Cal. Dec. 7, 2015)

19   (declining to decide the amount of fees to award and ordering the party seeking attorneys fees' to

20   provide a spreadsheet detailing the specific tasks performed by each attorney and the amount of

21   hours performed on each task).

22          Additionally, Redbubble misstates the law of the case. It requests that "at a minimum, the

23   Court award it fees from the date of the Court's summary judgment order regarding damages,

24   which made clear that Atari had no viable claim for damages above minimum statutory damages, a

25   ruling that should have resulted in the resolution of the case." ECF No. 265 at 14. The Court's

26   Order makes quite clear that characterization is incorrect. It reads, "Atari may seek the minimum

27   amounts of statutory damages, as to both its copyright and trademark claims, at trial. *If it seeks*

28   *more than the minimum amounts, it may rely only on the documents produced by Redbubble*

*showing Redbubble's revenues . . .* " (ECF No. 127 at 7) (emphasis added). Atari did just that at trial, cross-examining Mr. Toy on the tens to hundreds of thousands of dollars in revenue Redbubble reaped from sales of products that allegedly infringed Atari IP. TX 1049; Trial Tr. 730–33.

**V.      CONCLUSION.**

For the foregoing reasons, Atari respectfully requests Atari requests that the Court defer ruling on Redbubble's Motion pending the resolution of Atari's appeal, or alternatively, should the Court rule at this time, that the Court deny the Motion in its entirety.

Dated:  January 18, 2022

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Keith J. Wesley
Christopher W. Arledge
Matthew L. Venezia
George B. A. Laiolo

By:  _____
Matthew L. Venezia
Attorneys for Plaintiff Atari Interactive, Inc.