# EXHIBIT A

1  KENNETH B. WILSON  (SBN 130009)
     *ken@coastsidelegal.com*
2  COASTSIDE LEGAL
3  455 1ˢᵗ Avenue
   Half Moon Bay, California 94019
4  Tel: (650) 440-4211

5  JOSHUA M. MASUR  (SBN 203510)
     *jmasur@zuberlawler.com*
6  ZUBER LAWLER LLP
7  2000 Broadway Street, Suite 154
   Redwood City, California 94063
8  Tel: (213) 596-5620 / Fax: (213) 596-5621

9  JEFFREY J. ZUBER  (SBN 220830)
     *jzuber@zuberlawler.com*
10 ZUBER LAWLER LLP
11 350 S. Grand Ave., 32ⁿᵈ Fl.
   Los Angeles, California 90071
12 Tel: (213) 596-5620 / Fax: (213) 596-5621

13 JENNIFER C. KUHN (*Admitted Pro Hac Vice*)
     *jkuhn@zuberlawler.com*
14 ZUBER LAWLER LLP
15 100 Congress Avenue, Suite 2000
   Austin, TX 78701
16 Tel: (512) 717-7430 / Fax: (213) 596-5621

17 Attorneys for Defendant
   Redbubble Inc.
18

19            **UNITED STATES DISTRICT COURT**

20    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

21

22 Y.Y.G.M. SA d.b.a. BRANDY          Case No. 2:19-cv-04618-RGK (JPRx)
   MELVILLE, a Swiss corporation,
23                                    **DEFENDANT REDBUBBLE, INC.'S**
                   Plaintiff,         **OPPOSITION TO PLAINTIFF'S**
24                                    **MOTION FOR PERMANENT**
                                      **INJUNCTION, ATTORNEY'S FEES,**
        v.                            **AND PRE-JUDGMENT INTEREST**
25
   REDBUBBLE INC.,                    *[Filed Concurrently with Declaration of*
26                                    *Joshua M. Masur and [Proposed] Order]*
                   Defendant.
27                                    Date:    September 7, 2021
                                      Time:    9:00 a.m.
28                                    Crtrm.:  850

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  PLAINTIFF IS NOT ENTITLED TO A PERMANENT INJUNCTION ......... 1

    A.  Plaintiff Fails to Show Irreparable Harm .............................................. 2

    B.  The Jury Granted an Adequate Remedy at Law ..................................... 3

    C.  The Balance of Hardships Tips Towards a Narrow Injunction ............... 4

    D.  The Public Interest Supports at Most a Narrow Injunction .................... 6

    E.  Plaintiff's Proposed Injunction Is Unenforceably Vague and
        Broad ................................................................................................... 7

III.  BECAUSE THIS CASE IS NOT "EXCEPTIONAL," THE COURT
      SHOULD NOT SHIFT PLAINTIFF'S ATTORNEY'S FEES ........................ 8

    A.  Redbubble, not Plaintiff, Prevailed on the Vast Majority of
        Claims ................................................................................................ 10

    B.  The Jury's Willfulness Finding Does Not Establish Exceptionality ..... 11

    C.  Redbubble's Defenses to the Surviving Contributory
        Infringement Claim Were Objectively Reasonable and
        Appropriately Litigated ...................................................................... 12

    D.  Deterrence Is Not a Reason to Shift Attorneys' Fees Here ................... 14

    E.  Plaintiff Has Failed to Justify the Amount of Fees It Seeks ................. 16

    F.  Plaintiff Has Requested Fees on Claims It Lost ................................... 17

    G.  Plaintiff's Request for a "Blended Rate" Is Inappropriate ................... 18

IV.  PRE-JUDGMENT INTEREST IS INAPPROPRIATE .................................. 18

    A.  Election of Statutory Damages Waived Pre-Judgment Interest ............ 18

    B.  Plaintiff Does Not Justify Abandoning the Standard T-Bill Rate ......... 19

    C.  Plaintiff's Proposed Methodology Is Contrary to Law ......................... 19

V.  CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*1-800 Contacts, Inc. v. Lens.com, Inc.,*
    722 F.3d 1229 (10th Cir. 2013).................................................................... 7

*Amoco Production Co. v. Gambrell,*
    480 U.S. 531 (1987) .................................................................................. 1

*Anhing v. Corp. v. Thuan Phong Co. Ltd.,*
    2016 WL 6661178 (C.D. Cal. Jan. 25, 2016) .................................................. 12

*Arcona, Inc. v. Farmacy Beauty, LLC,*
    No. 217CV7058ODWJPRX, 2021 WL 2414856
    (C.D. Cal. June 14, 2021).......................................................................... 12

*Atari Interactive, Inc. v. Redbubble, Inc.,*
    --- F. Supp. 3d. ----, 2021 WL 706790
    (N.D. Cal. Jan. 28, 2021)............................................................................ 7

*Bekins Holding Corp. v. BGT Trans, Inc.,*
    No. CV0908982MMMMANX, 2010 WL 11597623
    (C.D. Cal. Nov. 19, 2010) ........................................................................... 3

*Black v. Irving Materials, Inc.,*
    No. 17-CV-06734-LHK, 2020 WL 60202
    (N.D. Cal. Jan. 6, 2020)............................................................................ 13

*Brighton Collectibles, Inc. v. Pedre Watch Co., Inc,*
    No. 11CV00637 AJB WVG, 2013 WL 5719071
    (S.D. Cal., Oct. 21, 2013) ........................................................................... 4

*Cairns v. Franklin Mint Co.,*
    292 F.3d 1139 (9th Cir. 2002).................................................................... 17

*California Pharmacists Ass'n v. Maxwell–Jolly,*
    563 F.3d 847 (9th Cir. 2009)....................................................................... 3

*Camancho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008)..................................................................... 16

*Cambrian Sci. Corp., v. Cox Commc'ns, Inc.,*
    79 F. Supp. 3d 1111 (C.D. Cal. 2015)......................................................... 12

*Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.,*
    No. CV2010220CBMJEMX, 2021 WL 2497928
    (C.D. Cal. May 19, 2021)........................................................................... 2

*Chalmers v. City of Los Angeles,*
    796 F.2d 1205 (9th Cir. 1986).................................................................... 16

*Checkpoint Systems, Inc. v. All-Tag Security S.A.*,
    858 F.3d 1371 (Fed. Cir. 2017) .................................................................. 13

*Colorado River Indian Tribes v. Town of Parker*,
    776 F.2d 846 (9th Cir. 1985) ..................................................................... 3

*Ctr. for Food Safety v. Vilsack*,
    636 F.3d 1166 (9th Cir. 2011) ................................................................... 2

*Dominant Semiconductors v. OSRAM GmbH*,
    524 F.3d 1254 (Fed. Cir. 2008) ................................................................ 14

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .................................................................................. 1

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996) ...................................................................... 15

*Flexible Lifeline Sys. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) ..................................................................... 3

*Florentine Art Studio, Inc. v. Vedet K. Corp.*,
    891 F. Supp. 532 (C.D. Cal. 1995) ........................................................... 10

*Forschner Grp., Inc. v. Arrow Trading Co.*,
    124 F.3d 402 (2d Cir. 1997) ..................................................................... 4

*Gates v. Shinn*,
    98 F.3d 463 (9th Cir. 1996) ...................................................................... 7

*Globefill Inc. v. Elements Spirits, Inc.*
    756 F. App'x 764 (9th Cir. March 12, 2019) ........................................... 11

*Godaddy.com LLC v. RPost Communs. Ltd.*,
    No. CV-14-00126-PHX-JAT, 2016 WL 4569122
    (D. Ariz. Sept. 1, 2016) ...................................................................... 14, 15

*Goldie's Bookstore, Inc. v. Superior Court*,
    739 F.2d 466 (9th Cir. 1984) ..................................................................... 3

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013) ................................................................... 16

*Gordon v. Drape Creative, Inc.*,
    909 F.3d 257 (9th Cir. 2018) ..................................................................... 6

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
    874 F.2d 431 (7th Cir. 1989) ..................................................................... 19

*Gracie v. Gracie*,
    217 F.3d 1060 (9th Cir. 2000) ................................................................... 9

*Great Southern Co. v. Irvin*,
    1995 WL 23931 (N.D. Ill. Jan. 19, 1995) ............................................... 15

*Hensley Corp. v. Thuan Phong Co. Ltd.*,
No. CV1305167BROMANX, 2015 WL 4517846
(C.D. Cal. July 24, 2015).................................................................................... 3

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......................................................................................... 16

*Iconix, Inc. v. Tokuda*,
457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................................ 5

*In re Protegrity Corp.*,
No. 3:15-md-02600-JD, 2017 WL 747329
(N.D. Cal. 2017) ................................................................................................. 9

*Lerma v. Armijo*,
2017 WL 2233617 (C.D. Cal. May 22, 2017) .................................................. 11

*LTTB, LLC v. Redbubble, Inc.*,
385 F. Supp. 3d 916 (N.D. Cal. 2019),
*aff'd*, 2021 WL 195024 (9th Cir. Jan 20, 2021)......................................... 13, 14

*Maljack Prods., Inc. v. Good Times Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996)............................................................................... 10

*Mattel, Inc. v. MCA Records, Inc.*,
296 F. 3d 894 (9th Cir. 2002)............................................................................. 6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007)............................................................. 4

*Miller v. Cal. Pac. Med. Ctr.*,
991 F.2d 536 (9th Cir. 1993).............................................................................. 2

*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*,
67 F. Supp. 1000 (E.D. Mich. 1946),
*aff'd*, 165 F.2d 616 (6th Cir. 1947).................................................................. 10

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ........................................................................................... 2

*Mulcahy v. Cheetah Learning LLC*,
386 F.3d 849 (8th Cir. 2004).............................................................................. 4

*Munchkin, Inc. v. Luv n'Care, Ltd.*,
960 F.3d 1373 (9th Cir. 2020).......................................................................... 13

*Neitzke v. Williams*,
490 U.S. 324 (1989) ......................................................................................... 12

*Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*,
No. CV 09-6988 DSF (JEMx), 2014 WL 12567167 (C.D. Cal. Dec. 2,
2014)................................................................................................................. 19

*Nitto Tire U.S.A. Inc. v. Gigatires, LLC*,
  No. 8:21-cv-00797-JVS-JDEx
  (C.D. Cal., Aug. 12, 2021) ............................................................................ 2

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
  762 F.2d 1374 (9th Cir. 1985) ..................................................................... 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ..................................................................... 9, 12, 15

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
  646 F.2d 800 (2d Cir. 1981) ......................................................................... 4

*Pipe Restoration Techs., LLC v. Coast Building & Plumbing, Inc.*,
  No. 8:13-cv-00499-JDE, 2018 WL 6012219
  (C.D. Cal. Nov. 16, 2018) ..................................................................... 9, 11

*Polaris Indus. Inc. v. TBL Int'l Inc.*,
  No. 19-CV-0291, 2020 WL 1075019
  (D. Minn. Mar. 6, 2020) ............................................................................. 19

*Price v. City of Stockton*,
  390 F.3d 1105 (9th Cir. 2004) ..................................................................... 5

*Reno Air Racing Ass'n, Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) ................................................................. 7, 8

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ......................................................................... 6

*Russello v. United States*,
  464 U.S. 16 (1983) ...................................................................................... 19

*Sampson v Murray*,
  415 U.S. 61 (1974)) ....................................................................................... 3

*Schmidt v. Lessard*,
  414 U.S. 473 (1974). ..................................................................................... 8

*Smith & Nephew, Inc. v. Interlace Med., Inc.*,
  955 F. Supp. 2d 69 (D. Mass. 2013) ........................................................... 6

*Sophia & Chloe v. Brighton Collectibles*,
  2019 WL 149588 (S.D. Cal. 2019) ..................................................... 12, 15

*SunEarth, Inc. v. Sun Earth Solar Power*,
  839 F.3d 1179 (9th Cir. 2016) ............................................................ 9, 11, 15

*Teller v. Dogge*,
  No. 2:12-cv-00591-JCM-GWF, 2014 WL 4929413
  (D. Nev. Sept. 30, 2014) .............................................................................. 5

*United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*,
  No. 07CV2172 AJB, 2012 WL 3861946,
  (S.D. Cal. Sept. 5, 2012) .............................................................................. 2

*Watec v. Liu,*
 403 F.3d 645 (9th Cir. 2005) ...................................................... 11, 12

*YZ Prods., Inc. v. Redbubble, Inc.,*
 --- F. Supp. 3d ----, 2021 WL 2633552
 (N.D. Cal. June 24, 2021) ............................................................ 5, 14

## FEDERAL STATUTES

15 U.S.C. § 1117(a) ............................................................ 8, 11, 15, 19

15 U.S.C. § 1117(b) ...................................................................... 18, 19

15 U.S.C. § 1117(c) .............................................................................. 19

17 U.S.C. § 505 ..................................................................................... 15

28 U.S.C. § 1961 ................................................................................... 19

35 U.S.C. § 285 ..................................................................................... 15

## RULES

Fed. R. Civ. P. 65(d) ........................................................................... 7, 8

## OTHER AUTHORITIES

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
 § 23:11 (5th Ed. 2020) ....................................................................... 7

Rutter Group Prac. Guide Fed. Civ. Trials & Ev., Ch. 19-C ................... 19

## I.    INTRODUCTION

Although Plaintiff argues, in the abstract, that the Court should enter an injunction, Plaintiff makes little if any attempt to justify the specific injunction it actually seeks. Its failure to move for a preliminary injunction, and to raise new infringements when found (notwithstanding the substantial success of Redbubble's proactive policing efforts), rebut the presumption of irreparable harm. Damages provided Plaintiff adequate remedy at law, and the proposed injunction would relieve no genuine hardship while vitiating the public's interest in criticism and other non-confusing uses of Plaintiff's marks – and according to Plaintiff, would jeopardize Redbubble's "entire business model." (DE#208 at 12)

Nor is this the rare "exceptional case" in which Plaintiff should be awarded its attorneys' fees. The fact that the jury found Redbubble to have infringed willfully on a single mark does not justify shifting fees at all. It certainly does not justify shifting Plaintiff's fees for the entire litigation, as Plaintiff requests – *including the claims on which Redbubble, not Plaintiff, prevailed*.

Finally, the Lanham Act bars Plaintiff's request for prejudgment interest. But even were it available, its proposed rate and methodology would be unsupportable.

Plaintiff's motion should be denied in its entirety.

## II.    PLAINTIFF IS NOT ENTITLED TO A PERMANENT INJUNCTION

To obtain a permanent injunction, as with a preliminary injunction, "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Amoco Production Co. v. Gambrell,* 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction"). Plaintiff cannot meet this test.

## A. Plaintiff Fails to Show Irreparable Harm

Plaintiff offers no evidence or argument that it will sustain any actual harm, let alone irreparable harm, absent a permanent injunction. Plaintiff relies on newly-amended Section 1116(a)'s "rebuttable presumption" (DE#208 at 4), ignoring that the burden remains on Plaintiff, and where (as here) the presumption has been rebutted, Plaintiff is obligated to come forward with evidence of actual irreparable harm. *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.,* No. 07CV2172 AJB, 2012 WL 3861946, at *9 (S.D. Cal. Sept. 5, 2012) (citing *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 162-63 (2010); *Ctr. for Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011)).

Plaintiff's delay in pursuing its claims, and its refusal to notify Redbubble of infringing activity as Plaintiff became aware of it, rebuts Plaintiff's irreparable harm claim.  In *Nitto Tire U.S.A. Inc. v. Gigatires, LLC,* No. 8:21-cv-00797-JVS-JDEx, Dkt. No. 28 (C.D. Cal., Aug. 12, 2021), for example, Judge Selna found that where a plaintiff moved for a preliminary injunction 20 months after sending an infringement notice letter, that "delay demonstrates a lack of any irreparable harm" and rebutted the newly-amended statutory presumption.  *Nitto Tire U.S.A. Inc. v. Gigatires, LLC*, No. 8:21-cv-00797-JVS-JDEx, Dkt. No. 28, at 4-5 (C.D. Cal., Aug. 12, 2021) (citing *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993)); *accord, e.g.*, *Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, No. CV2010220CBMJEMX, 2021 WL 2497928, at *7 (C.D. Cal. May 19, 2021) (citing *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)).  Here, rather than seek preliminary relief or advise Redbubble when it found new alleged infringements, Plaintiff repeatedly and strategically waited to raise them.  (Masur Decl., Exhs. B (Tr. at 239:15-242:25), F-H, J-Q, S)  Plaintiff's conduct belies irreparable harm.

Plaintiff concedes, as it must, that "Redbubble [began] proactive policing … after being sued."  (DE#208 at 4.)  Because there is no serious dispute that Redbubble's policing efforts dramatically reduced the challenged uses of its

1  marketplace – thereby reducing *any* harm, reparable or not – well before trial.

2  (Masur Decl., Ex. C (Trial Tr. at 424:14-21, 426:10-427:10, 429:14-432:15)  Had the

3  remaining infringement been truly irreparable, Plaintiff presumably would have

4  moved for preliminary relief at *some* point before trial.

5      Moreover, injuries compensable by "economic damages are not traditionally

6  considered irreparable because the injury can later be remedied by a damage award."

7  *Bekins Holding Corp. v. BGT Trans, Inc.*, No. CV0908982MMMMANX, 2010 WL

8  11597623 at *12 (C.D. Cal. Nov. 19, 2010) (citing *California Pharmacists Ass'n v.*

9  *Maxwell–Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009)).  "The possibility that

10  adequate or compensatory or other corrective relief will be available at a later date, in

11  the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

12  *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir. 1985)

13  (quoting *Sampson v Murray,* 415 U.S. 61 (1974)).  Further, because "[a]ctual

14  irreparable harm must be demonstrated to obtain a permanent injunction in an

15  infringement action," Plaintiff's failure to present evidence of actual irreparable harm

16  at trial therefore waived the opportunity to obtain an injunction; instead, Plaintiff is

17  free to seek damages for actual future infringement, should any occur.  *Flexible*

18  *Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).

19      **B.    The Jury Granted an Adequate Remedy at Law**

20      "The terms 'inadequate remedy at law' and 'irreparable harm' describe two

21  sides of the same coin. If the harm being suffered by plaintiff … is 'irreparable,' then

22  the remedy at law (monetary damages) is inadequate." *Hensley Corp. v. Thuan*

23  *Phong Co. Ltd.,* No. CV1305167BROMANX, 2015 WL 4517846, at *23 (C.D. Cal.

24  July 24, 2015) (citing 5 McCarthy § 30:2).  The "facts" supporting Plaintiff's

25  purported lack of an adequate legal remedy are limited to less than a page of

26  speculative, conclusory, and unsupported testimony from its corporate representative.

27  "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v.*

28  *Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) (citation omitted).  The fact that

1   the jury granted damages establishes the existence of an adequate legal remedy. *See,*

2   *e.g.*, *Brighton Collectibles, Inc. v. Pedre Watch Co., Inc*, No. 11CV00637 AJB

3   WVG, 2013 WL 5719071, at *5 (S.D. Cal., Oct. 21, 2013) (damages provide

4   adequate remedy at law absent indications that defendant could not pay; future

5   infringement could be compensated by further damages).

6           **C.     The Balance of Hardships Tips Towards a Narrow Injunction**

7           As noted above, Plaintiff has not identified any substantial harm that it will

8   suffer absent an injunction.  In contrast, while a clear injunction requiring Redbubble

9   to remove listings for specific products upon receiving a notice of infringement

10  regarding such products would not present a substantial hardship to Redbubble, the

11  broad injunction that Plaintiff proposed, which would subject Redbubble to potential

12  contempt liability for use of unspecified "variations of the Brandy Melville name" on

13  unspecified listings that are similar to unspecified Brandy Melville products, would

14  be completely unmanageable.

15          Were Plaintiff correct that "[t]here is no hardship to a defendant when a

16  permanent injunction would merely require the defendant to comply with law"

17  (DE#208 at 5), courts would never need to balance the hardships at all, much less in

18  response to a request for a permanent injunction.  In reality, "blanket injunctions to

19  obey the law are disfavored." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

20  518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) (quoting *Mulcahy v. Cheetah Learning*

21  *LLC*, 386 F.3d 849, 852 n. 1 (8th Cir. 2004)).  A bedrock principle of equity

22  jurisdiction is the "power to grant relief no broader than necessary to cure the effects

23  of the harm caused by the violation" and "to mould each decree to the necessities of

24  a particular case." *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d

25  Cir. 1997) (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 806

26  (2d Cir. 1981) (internal citation and quotations omitted)).  Thus, an injunction should

27  be narrowly tailored to effectuate a remedy for "only the specific harms shown by

28  the plaintiffs, rather than "to enjoin all possible breaches of the law." *Iconix, Inc. v.*

*Tokuda*, 457 F. Supp. 2d 969, 998–99 (N.D. Cal. 2006) (quoting *Price v. City of Stockton,* 390 F.3d 1105, 1117 (9th Cir. 2004)).

Moreover, balancing hardships is particularly important where the defendant is liable for contributory, rather than direct, infringement.  Direct infringement is a strict liability offense, while contributory infringement requires actual or constructive knowledge.  Yet Plaintiff uniformly cites cases supporting injunctions against direct rather than indirect infringement.  That direct infringers might use Redbubble's services "in an infringing manner, requiring plaintiff to bring future enforcement actions against additional defendants is not a concern for this court.  Injunctions must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law."  *Teller v. Dogge*, No. 2:12-cv-00591-JCM-GWF, 2014 WL 4929413, at *6 (D. Nev. Sept. 30, 2014).  That is especially true where the injunction would effectively convert a cause of action requiring actual or constructive knowledge into a strict liability offense.  Simply to avoid a motion to dismiss, a plaintiff must plead that it "notified Defendant of specific acts of infringement, namely specific infringing products"; "a 'generalized notification that infringement is occurring,' … is insufficient to establish specific knowledge."  *YZ Prods., Inc. v. Redbubble, Inc.*, --- F. Supp. 3d ----, 2021 WL 2633552, at *5 (N.D. Cal. June 24, 2021).  The Court should not issue an injunction that would relieve Plaintiff of its notice obligation.

Although a narrowly-tailored injunction might appropriately balance the hardships, Plaintiff's proposed injunction would not.  A broad injunction requiring Redbubble to remove *any* listing in which an artist used, for example, the terms "brandy" or "melville" as keyword tags, would unduly burden Redbubble in a substantially more severe manner than any hardship faced by Plaintiff, because it would make it impossible for Redbubble's proactive policing techniques to identify that listing for manual review before it became available to the public.  (Masur Decl., Ex. C (Trial Tr. at 383:22-384:9))  As such, principles of equity weigh against

5

1  unduly burdening Redbubble's marketplace with the imposition of a broadly

2  constructed injunction. *Smith & Nephew, Inc. v. Interlace Med., Inc.,* 955 F. Supp. 2d

3  69, 79-80 (D. Mass. 2013) (denying permanent injunction where defendant's

4  hardship due to loss of business model outweighed plaintiff's compensable injury).

5      **D.**    **The Public Interest Supports at Most a Narrow Injunction**

6         Plaintiff's public interest argument rests solely on unsupported speculation that

7  consumers are likely to be confused.  However, there is no reliable evidence that any

8  *actual* consumer was *actually* confused – and there was absolutely no evidence

9  whatsoever of actual confusion after Redbubble began proactive policing.

10         Moreover, the First Amendment interest in freedom of expression militates

11  heavily against the broad injunction that Plaintiff seeks.  Artists have a right to create

12  and sell – and the public has a right to seek and purchase – works that criticize

13  Plaintiff or use Plaintiff's marks in a non-source-identifying, non-confusing manner.[1]

14  There is no practical way for them to do so unless artists can tag such listings with

15  "brandy" and/or "melville."  As Judge Tigar held in other litigation between

16  Redbubble and a plaintiff represented by Plaintiff's counsel:

17

18  _____

[1] Expressive works are protected from Lanham Act claims by the First Amendment, unless the expression is either not artistically relevant to the accused product or explicitly misleading as to the product's source or content. *Mattel, Inc. v. MCA Records, Inc.*, 296 F. 3d 894, 902 (9th Cir. 2002).  While trademark infringement is typically analyzed for likelihood of confusion, "the traditional test fails to account for the full weight of the public's interest in free expression," since a trademark owner "does not have the right to control public discourse" by enforcing its mark. *Id.* at 900. Thus, the Ninth Circuit has adopted the Second Circuit's test in *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989), which requires that the Lanham Act applies "to an expressive work only if the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018). Once the defendant "make[s] a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment," a plaintiff has a "heightened burden" to establish both that its mark is infringed *and* that the mark is either not artistically relevant to the underlying work or explicitly misleading as to the source or content of the work. *Id.* at 264-65.

19

20

21

22

23

24

25

26

27

28

[Plaintiff] argues that Redbubble could do more, such as disabling search terms on its website based on trademarked names. Redbubble convincingly responds that many of the excluded search results would actually constitute fair use. In particular, product designs may use [plaintiff]'s name in a descriptive sense without creating likelihood of confusion. Alternatively, [plaintiff]'s name may be used as a keyword for designs "inspired by" [plaintiff] or the general … aesthetic without infringing trademarks. Redbubble is not required to disable functionality capable of substantial non-infringing use merely because some parties may use it to infringe.

*Atari Interactive, Inc. v. Redbubble, Inc.*, --- F. Supp. 3d. ----, 2021 WL 706790, at *11 (N.D. Cal. Jan. 28, 2021) (citations and footnote omitted; citing 4 McCarthy on Trademarks and Unfair Competition § 23:11 (5th Ed. 2020); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1253-54 (10th Cir. 2013)).

Plaintiff's requested injunction would go far beyond protecting its intellectual property rights; it would shut down criticism and other references to it and force Redbubble to undertake measures far in excess of what the law requires. Any injunction should, at most, require Redbubble to remove listings only if they (a) make no non-transformative or otherwise fair use of (b) Plaintiff's registered marks and other marks for which Plaintiff has provided actual notice.

**E.     Plaintiff's Proposed Injunction Is Unenforceably Vague and Broad**

Rule 65(d) "requires that any injunction or restraining order be 'specific in terms' and describe `in reasonable detail … the act or acts sought to be restrained.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006) (quoting Fed. R. Civ. P. 65(d)). "If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996). These are "no mere technical requirements, but were "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too

vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  Thus, in *Reno Air*, the Ninth Circuit reversed an injunction that did not clearly specify the subject trademarks and purported to enjoin "confusingly similar variations thereof," finding the order was unenforceably vague and "failed to meet even the most minimal fair notice requirement." 452 F.3d at 1132-34.

Plaintiff's proposed injunction here is similarly flawed. Like *Reno Air,* Plaintiff fails to properly specify the marks, instead referencing unspecified "unregistered variations of the Brandy Melville mark." Like *Reno Air,* Plaintiff's proposed injunction uses the "confusingly similar" language that "failed to meet even the most minimal fair notice requirement.  Indeed, Plaintiff's proposed permanent injunction is even worse than the one struck in *Reno Air*, as it purports to require Redbubble to prevent use of Plaintiff's marks on or in the listing title or tags of any products that are confusingly similar to "authentic Brandy Melville products or designs," whatever those are.  It would also bar use of the trademarked words in non-trademark ways (*i.e.*, for criticism or descriptive uses) in violation of the First Amendment, as discussed above.  Such an injunction would exceed the statutory authority under both Rule 65 and section 1116(a).

At most, Plaintiff has proved infringement of specific marks, by specific products or uses. While an injunction, if warranted, may properly cover the marks, products and uses adjudicated by the Court, Plaintiff's proposed injunction far exceeds this permissible scope, and must therefore be rejected.

## III.  BECAUSE THIS CASE IS NOT "EXCEPTIONAL," THE COURT SHOULD NOT SHIFT PLAINTIFF'S ATTORNEY'S FEES

Upon a determination that a case is "exceptional," a Court assessing a request for fees in a Lanham Act case may award reasonable attorney fees to the prevailing party. 15 U.S.C. § 1117(a). However, even if a case is deemed exceptional, "whether to award attorney fees remains within the court's discretion, as the Lanham Act 'provides that the court may award fees; it does not require them.'" *Pipe Restoration*

*Techs., LLC v. Coast Building & Plumbing, Inc.*, No. 8:13-cv-00499-JDE, 2018 WL 6012219, at *5 (C.D. Cal. Nov. 16, 2018) (citations omitted); *see also Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000) ("the Lanham Act permits, but does not mandate, an award of attorneys' fees to a prevailing party in 'exceptional circumstances'"). In determining if a case is "exceptional," courts must examine the "totality of the circumstances," and specifically, the non-exclusive factors of "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *SunEarth, Inc. v. Sun Earth Solar Power*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554 (internal quotations omitted). By definition, only rare cases "stand out" as exceptional – typically, albeit not exclusively, those in which the claims or defenses were "exceptionally meritless or unreasonably handled, or amounted to a gross injustice against" the prevailing party. *In re Protegrity Corp.,* No. 3:15-md-02600-JD, 2017 WL 747329, at *2, *9 (N.D. Cal. 2017).

Here, Redbubble prevailed on summary judgment on most of the claims on which fees are being sought. The Court refused to grant summary judgment against Redbubble on the limited claims that went to trial, confirming that the claims were not objectively unreasonable. Plaintiff's ultimate verdict on those claims was less than 5% of what it originally sought in damages. And Plaintiff recovered a windfall of $200,000 in statutory damages on a counterfeiting claim where it offered no proof of damages and for which Redbubble earned no profits. Under these circumstances, there is no basis in law or equity to further compensate Plaintiff with a fee award.

## A. Redbubble, not Plaintiff, Prevailed on the Vast Majority of Claims

Citing to *Maljack Prods., Inc. v. Good Times Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996), Plaintiff admits that courts in this Circuit consider "the degree of success obtained on the claim" in deciding if fees are warranted. (DE208 at 8) This factor weighs heavily against an award of fees. At summary judgment, Plaintiff lost its direct and vicarious infringement and counterfeiting claims, its false designation of origin claim (other than for unregistered marks), and its state law unfair competition claim on which its punitive damage claims were based. (DE#103) Only after what the Court described as "a notable instance of 'gotcha' litigation" tactics (*Id.* at 14) did the Court even allow the jury to hear Plaintiff's contributory counterfeiting claim. And even then, Plaintiff "failed to present evidence" of counterfeiting of two of the three registered marks in suit, the Brandy Heart and Brandy Flags marks. (DE#204 at 3)

Plaintiff's degree of success, or lack thereof, is also highlighted by a comparison of its damages request and its ultimate reward. In particular, in its initial disclosures and throughout the case, Plaintiff indicated that it was seeking "statutory damages of $2 million per registered mark" for three marks, in addition to treble damages or profits. (Masur Decl. Ex. A at 3.) But the final judgment of $220,000 was less than 4% of that amount, and even that award is unlikely to survive further challenge. This can hardly be considered a high "degree of success."

It is a longstanding and obvious principle that, even though a party that prevails on a minority of its claims may technically qualify as "prevailing," it will rarely be entitled to fee-shifting in its favor. *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 67 F. Supp. 1000, 1003 (E.D. Mich. 1946), *aff'd*, 165 F.2d 616 (6th Cir. 1947) (where plaintiff asserted infringement by six products, but prevailed only on two, "neither party should be required to bear the burden of the other's litigation expenses, attorney fees or costs"); *cf. Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532 (C.D. Cal. 1995) (defendant was prevailing party

under more lenient Copyright Act standards, despite losing two of nine infringement claims. Even assuming that the Court denies Redbubble's forthcoming Rule 50(b) and 59 motions, Plaintiff will have prevailed only on its contributory counterfeiting claim for the LA Lightning mark, and its contributory infringement claim (with limited damages) for certain other marks. (DE##193, 204) Redbubble submits that the fee-shifting inquiry should properly end there.

### B. The Jury's Willfulness Finding Does Not Establish Exceptionality

Plaintiff argues that the jury's determination of willful trademark counterfeiting should "entitle" Plaintiff to attorneys' fees. (DE#208 at 7) But exceptionality "is a question of law for the district court, not the jury." *Watec v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005) (reversing district court that relied solely on the jury's willfulness finding). While, prior to *Sun Earth*, "willfulness used to be an explicit factor that could support an award of attorney fees under § 1117(a), that is no longer the case, and courts have declined to award attorneys' fees based solely on a finding of willfulness."[2] *Pipe Restoration supra*, 2018 WL 6012219, at *5 (citations omitted) (refusing to award fees despite a willfulness determination); *see also Globefill Inc. v. Elements Spirits, Inc.* 756 F. App'x 764, 766 (9th Cir. March 12, 2019) (affirming denial of attorneys' fees award against defendant despite finding of willful trade dress infringement); *Lerma v. Armijo*, 2017 WL 2233617, at *3 (C.D. Cal. May 22, 2017) (declining to conclude a case was exceptional despite defendants' willful and deliberate infringement). "While a jury finding of willful infringement is relevant to the question of whether a case is exceptional, it is insufficient on its own to support an award of fees in the absence of some aggravating circumstance or

---

[2] Plaintiff relies on a single case, *SAS v. Sawabeh Info. Servs. Co.*, No. 11-cv-4147, 2015 WL 12763541, at *10 (C.D. Cal. June 22, 2015), to support its claim that willfulness is sufficient to support a finding of an "exceptional" case after *Sun Earth,* but this case is readily distinguishable because the court there granted *summary judgment* of willfulness, finding no dispute as to defendant's motives. Here, in contrast, the Court denied summary judgment on the underlying claims.

1    heightened level of culpability." *Anhing v. Corp. v. Thuan Phong Co. Ltd.*, 2016 WL

2    6661178, at *3-4 (C.D. Cal. Jan. 25, 2016).

3          On the facts of this case, there is no "aggravating circumstance or heightened

4    level of culpability." *Id.* Plaintiff repeatedly misrepresents that the jury found

5    Redbubble's overall infringement to be willful, but in reality, the jury's sole

6    surviving willfulness finding relates to the LA Lightning mark (DE#193 at 2) that

7    went to the jury only due to what this Court described as "a notable instance of

8    'gotcha' litigation" tactics. (DE#103 at 14). Plaintiff has not pointed to any other

9    evidence of malevolent intent that would support exceptionalality, even conceding

10   that "Redbubble [began] proactive policing … after being sued." (DE#208 at 4)

11   Thus, the jury's "willfulness" finding does not "necessarily equate with the

12   malicious, fraudulent, deliberate or willful conduct that we usually require before

13   deeming a case exceptional." *Watec*, 403 F.3d at 656.

14          **C.    Redbubble's Defenses to the Surviving Contributory Infringement**

15          **Claim Were Objectively Reasonable and Appropriately Litigated**

16          "Courts in this district have held that a party's litigating position must be

17   objectively meritless for a case to be exceptional under the *Octane* standard."

18   *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 217CV7058ODWJPRX, 2021 WL

19   2414856, at *2 (C.D. Cal. June 14, 2021) (citing *Cambrian Sci. Corp., v. Cox*

20   *Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1115 (C.D. Cal. 2015)). Thus, to obtain fees,

21   Plaintiff must show that Redbubble's defenses were "clearly baseless" and involves

22   "fantastic or delusional scenarios" to establish that these defenses were frivolous.

23   *Sophia & Chloe v. Brighton Collectibles*, 2019 WL 149588, at *3 (S.D. Cal. 2019)

24   (quoting *Neitzke v. Williams*, 490 U.S. 324, 327 (1989)). Plaintiff cannot.

25          As an initial matter, although Plaintiff has sought recovery of its fees for the

26   entire action, Redbubble prevailed as a matter of law on the vast majority of

27   Plaintiff's claims. This Court granted summary judgment that Redbubble was not

28   liable as a matter of law for direct infringement, false designation of origin, unfair

1    competition, or vicarious infringement.  (DE#103)  And on the surviving

2    contributory counterfeiting claim, Plaintiff prevailed on only one of three marks.

3         A litigant that has prevailed against summary judgment or other dispositive

4    motions "cannot be faulted for litigating a claim it was granted permission to

5    pursue." *Munchkin, Inc. v. Luv n'Care, Ltd.*, 960 F.3d 1373, 1381 (9th Cir. 2020)

6    (reversing fee award).  "[A] party is entitled to rely on a court's denial of summary

7    judgment and JMOL ... as an indication that the party's claims were objectively

8    reasonable and suitable for resolution at trial." *Checkpoint Systems, Inc. v. All-Tag*

9    *Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).  "It would strain logic for the

10   Court to hold that [a party] presented enough evidence to establish genuine issues of

11   material fact…, but that the claim was also 'objectively unreasonable' as a factual

12   matter" for fee-shifting purposes.  *Black v. Irving Materials, Inc.*, No. 17-CV-06734-

13   LHK, 2020 WL 60202, at *13 (N.D. Cal. Jan. 6, 2020).

14        Indeed, Redbubble has prevailed on these same claims in other cases. In *LTTB,*

15   *LLC v. Redbubble, Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019), *aff'd*, 2021 WL

16   195024 (9th Cir. Jan 20, 2021), for example, Redbubble obtained summary judgment

17   that products like the accused LA Lightning products that consisted of a purported

18   mark on the front of a t-shirt and other prominent locations, as opposed to a collar

19   tag, were not trademark uses at all, but rather, were non-trademark aesthetic uses.

20   Here, Plaintiff's purported proof of Redbubble's counterfeiting was a single

21   cancelled sale of a shirt and sweatshirt with the design large and centered on the

22   shirt, just as in the *LTTB* case. (Masur Decl., Exh. I)  The only Plaintiff witness who

23   testified about source-confusion testified that she was not confused about the source

24   of the (ultimately cancelled) purchase. (*Id.*, Exh. B (Trial Tr.) at 229:19-21)  No

25   witness testified that any customer was confused as to source, such as that a customer

26   tried to return a purported infringement to a Brandy Melville store.  (*Id.*, Ex. B (Trial

27   Tr.) at 278:19-25)  A mark-holder cannot "preclude others from displaying the

28   [mark] on products, absent a showing of source-confusion."  *LTTB*, 385 F. Supp. 3d

1    at 922; *see also YZ Prods., Inc. v. Redbubble, Inc.*, --- F. Supp. 3d ----, 2021 WL

2    2633552, at \*6 (N.D. Cal. June 24, 2021) (dismissing contributory infringement and

3    counterfeiting claims because plaintiff had not pled that Redbubble knew of specific

4    infringing products and failed to address infringement with respect to those

5    products).

6        Because Redbubble pressed essentially the identical arguments here as it had

7    won in other courts, it had an objectively reasonable expectation of success.  "[T]his

8    is not a case where … 'no reasonable litigant could reasonably expect success on the

9    merits.'  Accordingly, the … 'substantive strength' of [Redbubble's] litigating

10   position does not 'stand out' from other cases to merit a finding that this case is

11   'exceptional.'"  *Godaddy.com LLC v. RPost Communs. Ltd.*, No. CV-14-00126-

12   PHX-JAT, 2016 WL 4569122, at \*7 (D. Ariz. Sept. 1, 2016) (quoting *Dominant*

13   *Semiconductors v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)).

14       Plaintiff asserts that "Redbubble's settlement positions were also objectively

15   unreasonable." (DE#208 at 9-10)  As an initial matter, Plaintiff's assertion is a clear

16   violation of the confidentiality protections afforded to ADR under this Court's rules,

17   including the Mediation Confidentiality Agreement (form ADR-17).  The sole

18   "evidence" for Plaintiff's assertion is its counsel's conclusory declaration.  (DE#208-

19   1 ¶ 14)  And of course, Plaintiff nowhere discloses its own demands and conduct

20   during the negotiations.  While Redbubble will not respond to Plaintiff's violations

21   of the rules with a tit-for-tat violation of its own, suffice it to say that, to the extent

22   that the Court might consider asking Magistrate MacKinnon to disclose or describe

23   the parties' positions and conduct in connection with the June 4, 2021 Settlement

24   Conference, Redbubble would have absolutely no objection.

25       **D.    Deterrence Is Not a Reason to Shift Attorneys' Fees Here**

26       "Under the second prong of *Octane Fitness*, a court may find a case

27   "exceptional" given the 'unreasonable manner in which [it] was litigated.'" *Sophia &*

28   *Chloe, Inc. v. Brighton Collectibles, Inc.*, 2019 WL 1429588 at \*10 (S.D. Cal. March

14

29, 2019) (quoting *SunEarth*, 839 F.3d at 1180). In evaluating deterrence, "the *Octane Fitness* reasonableness factor focuses on the losing party's litigation conduct with the prevailing party…." *GoDaddy.com,* 2016 WL 4569122, at *9.

Plaintiff has cited several Copyright cases to support its argument that fees should be granted to deter future infringement. Of course, the Copyright Act imposes a lower fee-shifting standard – one that, unlike the Lanham Act and Patent Act, does not require exceptionality. *Compare* 17 U.S.C. § 505 (court has discretion to award costs and fees), *with* 15 U.S.C. § 1117(a) (authorizing shifting for "exceptional case") *and* 35 U.S.C. § 285 (same). But even when faced with both trademark claims and copyright claims, the court in *Sophia & Chloe*, separately evaluated arguments for fees for copyright claims and trademark claims and considered different legal factors before denying the motion brought by Plaintiff's counsel here. "The key factor in determining whether to award fees under the Copyright Act is whether the award will further the purposes of the Act." 2019 WL 1429588 at *2 (citing *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996)).

Finally, Plaintiff argues that Redbubble "persists in its wrongful conduct." (DE#208 at 12) Plaintiff ignores the evidence at trial that Redbubble's proactive policing substantially decreased infringing listings. (Masur Decl., Exs. _ (TE 629), _ (TE631), _ (Trial Tr.) at 433:14-19) Importantly, no counterfeit LA Lightning products have been sold since Redbubble received notice. (*Id.*, Ex. _ (Trial Tr.) at 433:1-7. Further, although Plaintiff includes images of Redbubble listings that purportedly infringe Plaintiff's trademarks, none of these listings contain marks that were successfully asserted at trial. Purported infringement of unregistered trademarks for which Plaintiff has given no notice does not support fees. Plaintiff's only cited trademark case where fees were granted does not support its position. In *Great Southern Co. v. Irvin*, 1995 WL 23931 at 4 (N.D. Ill. Jan. 19, 1995), fees were awarded for violation of a prior injunction, but counterfeiting was not even at issue.

**E.    Plaintiff Has Failed to Justify the Amount of Fees It Seeks**

Even were Plaintiff entitled to the extraordinary remedy of fee shifting, it has failed to meet its burden of proving the amount it claims. "The burden is on the fee applicant to produce satisfactory evidence – in addition to the attorneys' own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The party requesting fees also bears "the burden of submitting billing records to establish that the number of hours" requested are reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The number of hours should not exceed the number of hours reasonable competent counsel would bill for similar services. *Hensley v. Eckerhart*, 461 U.S. 424 at 434 (1983). Courts may reduce the hours expended "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 433-34).

Here, Plaintiff has requested more than $1,200,000 in fees in a lawsuit where it proved no actual damages, where the defendant's profits from the allegedly infringing conduct were $20,000, and where the jury award was $220,000 (less than 20% of the fees sought). The request seeks fees for all of the claims in the case, although Plaintiff lost most of its claims on summary judgment and lost or withdrew 2/3 of its registered trademark claims at trial. It presents no evidence whatsoever that its lawyers' rates "are in line with those prevailing in the community," and does not even include the actual billing records sent to Plaintiff, instead offering an after-the-fact "summary." And its documentation is woefully inadequate, containing numerous instances of non-descriptive entries or block billing. The record before the Court simply does not support Plaintiff's fee request.

**F.      Plaintiff Has Requested Fees on Claims It Lost**

Even were fee-shifting appropriate, the Court would be required to apportion to exclude fees expended in support of the claims that Plaintiff lost:

> The Supreme Court has observed that where, as in this case, the plaintiff's claims involve a "common core of facts" or are based on "related legal theories," it is "difficult to divide the hours expended on a claim-by-claim basis." *Hensley* [*v. Eckerhart*]*,* 461 U.S. [424,] 435 [(1983)]. This Circuit has cautioned, however, that "the impossibility of making an *exact* apportionment [between recoverable Lanham Act claims and non-recoverable non-Lanham Act claims] does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *Gracie v. Gracie,* 217 F.3d 1060, 1070 (9th Cir. 2000). By analogy, the same rule should apply in cases such as this one, which involves non-recoverable *Lanham Act claims,* rather than—as *Gracie* did—non-recoverable *non-Lanham Act claims.*

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157–58 (9th Cir. 2002).

Moreover, Plaintiff repeatedly misrepresents the scope of the verdict on willfulness. (*See, e.g.*, DE#208 at 6 (misrepresenting "the jury's finding of willful infringement of multiple trademarks")) The jury was asked only whether Redbubble's purported contributory *counterfeiting* was willful, not whether any non-counterfeiting infringement was. (DE#193 at 2, 3) And the Court already found that "Plaintiff failed to establish that Redbubble is liable for contributory counterfeiting of the Brandy Melville Heart Mark." (DE#204 at 3) Thus, even were the Court to determine that the surviving finding of willful contributory counterfeiting of the LA Lightning Mark justified fee-shifting here, the fee award should be apportioned to limit it to fees related to counterfeiting, rather than mere garden-variety infringement, of the LA Lightning Mark, not the other marks.

Plaintiff, however, has made no attempt to apportion its fees among its claims. That is hardly surprising, since the vast majority of its expenses were presumably

1   unrelated to contributory counterfeiting of the LA Lightning Mark.  Indeed, a word-
2   search of Plaintiff's counsel's time records shows not a single entry that includes the
3   word "lightning," and only nine that use the stem "counterfeit."  (DE#208-13 at 10-
4   12, 14, 18 (7/27/20, 7/29/20, 8/29/20, 9/3/20, 9/22/20, 10/5/20, 2/12/21, 2/17/21, and
5   6/15/21 "JYK" time entries))  Even without accounting for the fact that most of those
6   time entries are not limited to the counterfeiting issues, they total 16 hours – a tiny
7   fraction of the "1,871 attorney hours and 482 paralegal hours" for which Plaintiff
8   asserts that fees should be shifted. (DE#208 at 14)

9   Plaintiff's counsel knew that willfulness was relevant only to counterfeiting,
10  and therefore only to registered marks, and that it would be the sole realistic basis for
11  fee shifting.  Yet Plaintiff's counsel gambled, choosing not to record time in a
12  manner that would facilitate apportionment, even after losing at summary judgment
13  on the vast majority of its claims.  *Redbubble should not be compelled to pay*
14  *Plaintiff's attorneys' fees on claims that Redbubble itself won.*

15          **G.      Plaintiff's Request for a "Blended Rate" Is Inappropriate**

16  Plaintiff produced billing records broken down by timekeeper (DE#208-13),
17  but omitted those timekeepers' billing rates in favor of a purported "blended rate"
18  unsupported by evidence other than a purported range (DE#208-1 ¶ 16).  Given that
19  Plaintiff's timekeepers recorded time individually, there is no reason why a blended
20  rate, rather than actual rates, should be awarded.  Presumably, Plaintiff did so as a
21  pure matter of gamesmanship, to calculate a higher dollar amount.

22  **IV.    PRE-JUDGMENT INTEREST IS INAPPROPRIATE**

23          **A.      Election of Statutory Damages Waived Pre-Judgment Interest**

24  As Plaintiff's counsel is acutely aware, *having lost the issue before Judge*
25  *Fischer*, the Lanham Act authorizes pre-judgment interest *only* where the plaintiff
26  elects treble damages for counterfeiting under 15 U.S.C. § 1117(b), not for damages
27  or profits for ordinary infringement.  *See Neurovision Med. Prods., Inc. v. Nuvasive,*
28  *Inc.*, No. CV 09-6988 DSF (JEMx), 2014 WL 12567167, at *2 (C.D. Cal. Dec. 2,

2014) (contrasting 15 U.S.C. § 1117(a) and (b) and quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  Because subsection (c), unlike subsection (b), does not provide for interest, Plaintiff waived pre-judgment interest when it elected, "[p]ursuant to 15 U.S.C. § 1117(c), … to recover an award of statutory damages." (DE#192)  Particularly where, as here, the amount of statutory damages is not tied to any actual damages or profits (and more than adequately compensates plaintiff and punishes and deters the defendant), and where there was no amount certain to calculate interest until the jury reached its verdict, an award of pre-judgment interest would not merely be contrary to the statute and to Plaintiff's election of remedies, but would constitute an impermissible multiple recovery. *See, e.g.*, *Polaris Indus. Inc. v. TBL Int'l Inc.*, No. 19-CV-0291, 2020 WL 1075019, at *8 (D. Minn. Mar. 6, 2020) (denying pre-judgment interest on statutory damages).

### B.      Plaintiff Does Not Justify Abandoning the Standard T-Bill Rate

Plaintiff admits that that "the post-judgment interest rate in 28 U.S.C. § 1961 – the interest rate on a one-year Treasury bill – … remains the default in this circuit." (DE#208 at 17); *accord, e.g.*, Rutter Group Prac. Guide Fed. Civ. Trials & Ev., Ch. 19-C ("interest rate set forth in 28 USC § 1961 as the prejudgment rate… fully compensates aggrieved parties").  Plaintiff relies, however, on a single decades-old out-of-circuit opinion to assert that that rate "has been criticized as systemically low."  (DE#208 at 17 (citing *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989)).  Particularly given that, as Plaintiff admits, the Lanham Act "makes no reference to prejudgment interest" (DE#208 at 17 (quoting *Gorenstein*, 874 F.2d at 436-37), it would be particularly inappropriate to impose a higher rate than the "default" without specific justification.

### C.      Plaintiff's Proposed Methodology Is Contrary to Law

The vast majority of the jury's surviving damages award was for counterfeiting of the LA Lightning logo.  (DE#193 at 3-4)  Even if Plaintiff had not waived interest by electing statutory damages, the notice letter date could not be the

1  basis for compounding those damages, because (a) the notice letter never mentioned

2  the LA Lightning mark (Masur Decl., Ex. E); (b) the mark wasn't registered until a

3  year after the letter was sent (*Id.*, Ex. D); and (c) the purported counterfeit that served

4  as the primary basis for liability did not occur until a year after that. (*Id.*, Ex. V)

5      As for the jury's award of Redbubble's profits, even if the statute permitted

6  recovery, it would be inappropriate to allow for interest from the notice letter date,

7  rather than from the dates on which Redbubble made those profits.

8  **V.    CONCLUSION**

9      Even if Plaintiff's own actions did not establish a lack of irreparable harm (and

10  they do), and even if the verdict did not provide Plaintiff more than adequate remedy

11  at law (and it does), the requested injunction should be denied because Plaintiff

12  makes no attempt to justify the massively overbroad scope of the *specific injunction*

13  it requests.  Even if this were the rare "exceptional case" in which attorneys' fees

14  should be shifted (and it is not), Plaintiff should not receive its attorneys' fees for the

15  *entire case*, including the claims that Redbubble unequivocally won.  Finally, even if

16  Plaintiff's request for prejudgment interest were authorized by statute (and it is not),

17  the Court should not assess interest at a rate and based on an inception date at odds

18  with precedent and the trial record.

19      Plaintiff's motion should be denied in its entirety.

20

21  Dated: August 17, 2021          Respectfully submitted,

22              COASTSIDE LEGAL     ZUBER LAWLER LLP

23              KENNETH B. WILSON   JOSHUA M. MASUR
                                    JEFFREY J. ZUBER
24                                  JENNIFER C. KUHN

25                          By:  */s/ Joshua M. Masur*
26                              Attorneys for Defendant Redbubble Inc.

27

28